CUYAHOGA COUNTY COURT OF COMMON PLEAS

| DATE: 3/14/2023 | APPEARANCE DOCKET | PAGE: 1 |
| TIME: 9:26 AM | | CMSR5143 |

1:23 CV 468-DCN
Judge Nugent

| | |
|---|---|
| Case No: CV-23-973509 | RAYMOND STREET PARTNERS, LLC |
| | VS |
| Filing Date: 01/09/2023 | THE CINCINNATI INDEMNITY COMPANY |

Filing Cd:1391    CONTRACT - OTHER                    [  ] Arbitration
Judge:WILLIAM T MCGINTY
Prior Judge:                                           [  ] Mediation
Magistrate:
Panel Chair:                                           [  ] Settlement

     Status:I                                          [X] Notes
   Jury Req:Y
      Class:                                           [  ] Appealed
 Prayer Amt:

FILED
MAR 21 2023

                                   Disposition:                    Date:
                                   NEWLY FILED                     01/09/2023
                                   DISP. TRANSCT                   03/09/2023

 Next Action:
 Date/Time:

----------File Location ---------
          Name:   JUDGES FILE
          Date:   01/12/2023

---

P  1    RAYMOND STREET PARTNERS, LLC         0081503   RUTTER/ROBERT/A.
                                                       4700 ROCKSIDE ROAD   SUITE 650    (216)  642-1425
        3603 E. RAYMOND STREET                         CLEVELAND, OH 44131-0000
        INDIANAPOLIS, IN 46203

                                             0021907   RUTTER/ROBERT/P
                                                       4700 ROCKSIDE ROAD            (216)  642-1425
                                                       SUITE 650
                                                       INDEPENDENCE, OH 44131-0000

        Service:
D  1    THE CINCINNATI INDEMNITY COMPANY     0081057   REAGAN/JAMES/J.
                                                       6480 ROCKSIDE WOODS BOULEVARD SOU
        6200 S. GILMORE ROAD                           SUITE 145
        FAIRFIELD, OH 45014                            INDEPENDENCE, OH 44131-0000

        Service:   01/12/2023    SUMS COMPLAINT    CERTIFIED MAIL

---

| Type | - Docket -<br>Code | Party | Date | Description | Cost<br>Amount |
|---|---|---|---|---|---|
| SF | INIT | | 1/09/2023 | CASE FILED: COMPLAINT | |
| SF | LA | P  1 | 1/09/2023 | LEGAL AID | 26.00 |
| SF | CF | P  1 | 1/09/2023 | CLERK'S FEE | 25.00 |
| SF | CM | P  1 | 1/09/2023 | COMPUTER FEE | 20.00 |
| SF | RECT | P  1 | 1/09/2023 | DEPOSIT AMOUNT PAID ROBERT P RUTTER | 250.00 |
| SF | CSPF | P  1 | 1/09/2023 | COURT SPECIAL PROJECTS FUND | 50.00 |
| SF | LN | P  1 | 1/09/2023 | LEGAL NEWS | 10.00 |
| SF | 245 | | 1/09/2023 | JUDGE WILLIAM T MCGINTY ASSIGNED (RANDOM) | |
| SF | LR | P  1 | 1/09/2023 | LEGAL RESEARCH | 3.00 |
| CS | WRIS | D  1 | 1/11/2023 | WRIT FEE | 2.00 |

Case: 1:23-cv-00468-DCN  Doc #: 6  Filed: 03/21/23  2 of 344.  PageID #: 347

**CUYAHOGA COUNTY COURT OF COMMON PLEAS**

**DATE:** 3/14/2023

**TIME:** 9:26     AM

**CASE:** CV-23-973509

**APPEARANCE  DOCKET**

**PAGE:** 2

**CMSR5143**

| | | | | | |
|---|---|---|---|---|---|
| SR | COPY | | 1/11/2023 | SUMMONS E-FILE COPY COST | 1.00 |
| SR | CRTM | D 1 | 1/12/2023 | SUMS COMPLAINT(49507560) SENT BY CERTIFIED MAIL.<br>TO:<br>THE CINCINNATI INDEMNITY COMPANY<br>6200 S. GILMORE ROAD<br>FAIRFIELD, OH 45014 | 6.57 |
| NT | REMO | D 1 | 3/08/2023 | NOTICE OF REMOVAL FILED NOTICE OF FILING REMOVAL | |
| JE | JE | | 3/09/2023 | UPON DEFENDANT'S NOTICE OF REMOVAL, FILED 3/8/2023, THIS CASE IS REMOVED TO THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF OHIO.<br>COURT COST ASSESSED TO THE PLAINTIFF(S).<br>NOTICE ISSUED | 14.00 |



141365973

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

RAYMOND STREET PARTNERS, LLC
    Plaintiff

THE CINCINNATI INDEMNITY COMPANY
    Defendant

Case No: CV-23-973509

Judge: WILLIAM T MCGINTY

## **JOURNAL ENTRY**

93 DISP. TRANSCT - FINAL

UPON DEFENDANT'S NOTICE OF REMOVAL, FILED 3/8/2023, THIS CASE IS REMOVED TO THE UNITED STATES
DISTRICT COURT, NORTHERN DISTRICT OF OHIO.
COURT COST ASSESSED TO THE PLAINTIFF(S).

_____
Judge Signature               03/09/2023

The State of Ohio } SS. I, The Clerk of the Court
Cuyahoga County } Of Common Pleas within
And for said County

Hereby certify that the above and foregoing is truly
Taken and copied from the original _____
Now on file in my office
Witness my hand and seal of said Court this 14th
Day of March A.O. 20 23
CUYAHOGA COUNTY CLERK OF COURTS
By _____, Deputy

- 93
03/09/2023



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**NOTICE OF REMOVAL**
March 8, 2023 16:21

By: JAMES J. REAGAN 0081057

Confirmation Nbr. 2796321

RAYMOND STREET PARTNERS, LLC

vs.

THE CINCINNATI INDEMNITY COMPANY

CV 23 973509

**Judge:**  WILLIAM T. MCGINTY

**Pages Filed:**  6

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| RAYMOND STREET PARTNERS, LLC, | ) | CASE NO.: CV 23 973509 |
| | ) | |
| Plaintiff, | ) | JUDGE WILLIAM T. MCGINTY |
| | ) | |
| vs. | ) | **NOTICE OF FILING REMOVAL** |
| | ) | |
| | ) | |
| THE CINCINNATI INDEMNITY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | | |

To: Clerk of Court, Cuyahoga County Common Pleas Court

PLEASE TAKE NOTICE THAT Defendant The Cincinnati Indemnity Company, filed today its Notice of Removal, a copy of which is attached hereto, in the offices of the Clerk of the United States District Court, Northern District of Ohio, Carl B. Stokes U.S. Courthouse, 801 West Superior Avenue, Cleveland, Ohio 44113.

Respectfully Submitted,

*/s/ James J. Reagan*
JAMES J. REAGAN (0081057)
6480 Rockside Woods Boulevard South
Suite 145
Independence, Ohio 44131
James_Reagan@staffdefense.com
Phone: (216) 696-6454/ Fax: (216) 696-0227
*Attorney for Defendant, The Cincinnati Indemnity Company*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been filed electronically on this 8th day of March, 2023. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Robert P. Rutter (0021907)
Robert A. Rutter (0081503)
Rutter & Russin, LLC
One Summit Office Park, Suite 650
4700 Rockside Road
Cleveland, Ohio 44131
(216) 642-1425
brutter@OhioInsuranceLawyer.com
bobbyrutter@OhioInsuranceLawyer.com
*Attorney for Plaintiff, Raymond Street Partners, LLC*

*/s/ James J. Reagan*
James J. Reagan (0081057)
*Attorney for Defendant, The Cincinnati Indemnity Company*

2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| RAYMOND STREET PARTNERS, LLC, | CASE NO.: |
| Plaintiff, | DISTRICT COURT JUDGE |
| vs. | MAGISTRATE JUDGE |
| THE CINCINNATI INDEMNITY COMPANY, | |
| Defendant. | |

Robert P. Rutter (0021907)
Robert A. Rutter (0081503)
Rutter & Russin, LLC
One Summit Office Park, Suite 650
4700 Rockside Road
Cleveland, Ohio 44131
(216) 642-1425
brutter@OhioInsuranceLawyer.com
bobbyrutter@OhioInsuranceLawyer.com
*Attorney for Plaintiff, Raymond Street
Partners, LLC*

James J. Reagan (0081057)
Rockside Woods Boulevard South
Suite 145
Independence, Ohio 44131
James_Reagan@staffdefense.com
Phone: (216) 696-6454/ Fax: (216) 696-0227
*Attorney for Defendant, The Cincinnati
Indemnity Company*

**NOTICE OF REMOVAL OF CAUSE TO THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

Defendant The Cincinnati Indemnity Company and hereinafter "Defendant" by and through

its undersigned counsel, gives notice of Removal of this action to this Court pursuant to 28 U.S.C. §

1332, 1441, and 1446, and respectfully states as follows:

1.  One or about January 9, 2023, Plaintiff, Raymond Street Partners, LLC, 3603 East

    Raymond Street, Indianapolis, IN 46203, filed a Complaint for Declaratory and other Relief

in Cuyahoga County Court of Common Pleas, Ohio, Case No. CV 23 973509, a copy of which is attached hereto as Exhibit A.

2. Removal is proper under 28 U.S.C. § 1441 where the Court has original subject matter jurisdiction over the action. This Court has original jurisdiction because (a) it is a civil action between citizens of different states and (b) the amount in controversy requirements are satisfied. See 28 U.S.C. § 1332 (A).

3. Plaintiff is domiciled in Indianapolis, Indiana and owns the property known as 3617-3655 East Raymond Street, Indianapolis, Indiana. See Exhibit A, Plaintiff's Complaint at Paragraph 1 and 2.

4. Defendant is an Ohio Company organized under the laws of Ohio. See Exhibit A, Plaintiff's Complaint at Paragraph 3.

5. Defendant is domiciled in Butler County, Ohio, and has its principal place of business in Butler County, Ohio.

6. There are no John Does listed in Exhibit A, Plaintiff's Complaint.

7. For purposes of diversity of citizenship, neither Plaintiff nor Defendant reside in the same State. There is complete diversity between Plaintiff and Defendant. This action may be removed to this Court by Defendant pursuant to 28 U.S.C. § 1441.

8. Further as demonstrated below, the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Specifically, in the Complaint, Plaintiff alleges damages for a loss of property including a policy of insurance from Defendant that includes coverage alleged in excess of $75,000.

9. Plaintiff further alleges that Plaintiff has suffered other reasonably contemplated damages.

2

10. A cause of action may be removed where the defendant establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Hayes v. Equitable Energy Resources Co.*, 266 f.3D 560, 572 (6th Cir. 2001). The preponderance of evidence standard requires only that the defendant allege facts sufficient to establish that the plaintiff would more likely than not seek to recover more than the jurisdictional amount. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006).

11. Considering the foregoing allegations, the amount in controversy more likely than not exceeds $75,000. Id.; see also *Santos-Tiller v. Krispy Kreme Doughnut Corp.*, No. 16-10342, 2016 U.S. Dist. LEXIS 112786, *5-6 (E.D. Mich. Aug. 24, 2016). Accordingly, the amount in controversy requirement of 28 U.S.C. § 1332(a)(1) has been met.

12. Removal of this action is timely. Pursuant to 28 U.S.C. § 1446(b), removal must be filed within 30 days after the receipt by the defendant of the initial pleading. Plaintiff has not completed service on Defendant with Exhibit A, Plaintiff's Complaint. *Michetti Pipe Stringing, Inc. v. Murphy Bros.,* 526 U.S. at 347 (1999).

13. The United States District Court for the Northern District of Ohio, is the proper venue for this action under 28 U.S.C. § 1441(a) because it presides over the county within which the Complaint was filed, which is Cuyahoga County, Ohio.

14. Pursuant to 28 U.S.C. § 1446(d), a copy of the initial Notice of Removal, as well as a Notice of Filing of the Notice of Removal, was filed with Cuyahoga Common Pleas Court, Ohio, and a copy of the same was served upon all parties. A copy of this filing is attached hereto.

15. Defendant reserves the right to amend or supplement this Notice of Removal or to present

3

additional arguments in support of its entitlement to remove this case.

16. Defendant reserves all defenses and objections, including, without limitation, the
defenses of insufficiency of process, insufficiency of service of process, and any other
defenses or objections available under applicable law, and the filing of this Notice of
Removal is subject to, and without waiver of, any such defenses or objections.

WHEREFORE, Defendant respectfully requests removal of this action from Cuyahoga
County Common Pleas Court to this Court for all other appropriate proceedings.

Respectfully Submitted,

*/s/ James J. Reagan*
JAMES J. REAGAN (0081057)
6480 Rockside Woods Boulevard South
Suite 145
Independence, Ohio 44131
James_Reagan@staffdefense.com
Phone: (216) 696-6454/ Fax: (216) 696-0227
*Attorney for Defendant, The Cincinnati Indemnity*
*Company*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been filed electronically
on this 8th day of March, 2023, and emailed to all parties, and parties may access this filing
through the Court's system.

*/s/ James J. Reagan*
James J. Reagan (0081057)
*Attorney for Defendant, The Cincinnati Indemnity*
*Company*

4

## THE COURT OF COMMON PLEAS, CIVIL DIVISION
## CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

RAYMOND STREET PARTNERS, LLC
**Plaintiff**

**CASE NO.**  CV23973509

**JUDGE**  WILLIAM T MCGINTY

V.

THE CINCINNATI INDEMNITY COMPANY
**Defendant**

# SUMMONS   SUMC  CM

**Notice ID:**  49507560

| From: | RAYMOND STREET PARTNERS, LLC | P1 |
|---|---|---|
| | 3603 E. RAYMOND STREET | |
| | INDIANAPOLIS IN 46203 | |

| Atty.: | ROBERT A. RUTTER |
|---|---|
| | 4700 ROCKSIDE ROAD    SUITE 650 |
| | CLEVELAND, OH 44131-0000 |

| To: | THE CINCINNATI INDEMNITY COMPANY | D1 |
|---|---|---|
| | 6200 S. GILMORE ROAD | |
| | FAIRFIELD OH 45014 | |

### NOTICE TO THE DEFENDANT:

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

Date Sent: <u>01/11/2023</u>

By_____
**Deputy**

CMSN130



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**January 9, 2023 08:39**

By: ROBERT P. RUTTER 0021907

Confirmation Nbr. 2742954

RAYMOND STREET PARTNERS, LLC                    CV 23 973509

    vs.

THE CINCINNATI INDEMNITY COMPANY        **Judge:**  WILLIAM T. MCGINTY

**Pages Filed:**  332

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| RAYMOND STREET PARTNERS, LLC<br>3603 East Raymond Street<br>Indianapolis, IN 46203<br><br>        Plaintiff<br><br>    vs.<br><br>THE CINCINNATI INDEMNITY COMPANY<br>6200 South Gilmore Road<br>Fairfield, OH 45014<br><br>        Defendant | CASE NO.:<br><br>JUDGE:<br><br>**COMPLAINT FOR DECLARATORY<br>AND OTHER RELIEF**<br>(With Jury Demand) |

## THE PARTIES

1.      Plaintiff Raymond Street Partners, LLC ("Raymond Street") is a limited liability company organized under Indiana law.

2.      Raymond Street owns the property commonly known as 3617-3655 East Raymond Street, Indianapolis, Indiana (hereinafter the "Subject Property").

3.      Defendant The Cincinnati Indemnity Company ("Cincinnati") is an insurance company organized under the laws of Ohio with its principal place of business in Ohio.

## GENERAL ALLEGATIONS

4.      At all relevant times, Cincinnati insured Raymond Street and the Subject Property under policy number ████████ / ████████. Exhibit A ("the Policy").

5.      During the policy period, the Subject Property sustained a loss, which the Policy defines as "direct physical loss of or damage to Covered Property." See Exhibit A. This loss has and will continue to cause direct physical loss of or damage to Covered Property.

6.      The Policy covers all direct loss to Covered Property unless the loss is excluded or limited in the Policy.

7.     Cincinnati has the burden of proving that a loss is excluded or limited in the Policy.

8.     Cincinnati has not and cannot prove that Raymond Street's loss is excluded or limited in the Policy.

9.     Nevertheless, Cincinnati has not fully indemnified Raymond Street for the damage to the Covered Property.

10.     On June 23, 2022, the parties agreed on a tolling agreement to extend the contractual limitation period of the policy.  That tolling agreement expires on January 11, 2023. See Exhibit B, Tolling Agreement. Plaintiff files this lawsuit to comply with the suit-filing deadline while the parties continue to work toward a claim resolution.

### FIRST CAUSE OF ACTION
### (Request for Declaratory Relief)

11.     Plaintiff incorporates by reference all the allegations set forth above.

12.     Plaintiff has a written contract or contracts with Cincinnati.

13.     The parties have a dispute as to the proper interpretation of the Policy and any other relevant policies. Pursuant to R.C. §2721.03, *et. seq.*, plaintiff is entitled to a declaratory judgment from this Court construing the terms, exclusions, limitations, and conditions contained in the Policy and any other relevant insurance contracts.

14.     Plaintiff is entitled to declaratory relief that (1) the loss at the Subject Property was covered by the Policy or another relevant Cincinnati policy; (2) Cincinnati has not proven and cannot prove the application of any exclusion or limitation; (3) the Policy dictates that appraisal is the proper mechanism to resolve disputes concerning the amount of loss, which is what exists here; and (4) any other issue that may arise during the course of litigation that is a proper issue on which to grant declaratory relief.

WHEREFORE, Plaintiff prays for any further relief the Court deems proper, including attorney fees, interest, and costs as allowed by law or in the exercise of the Court's equitable jurisdiction.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

15. Plaintiff incorporates by reference all the allegations set forth above.

16. Plaintiff had a contract or contracts with Cincinnati on the day the loss occurred.

17. Cincinnati breached the insurance contract by failing to pay to plaintiff the full amount due under the insurance policy.

18. As a direct and proximate result of Cincinnati's breach of the insurance contract, plaintiff has been denied the policy benefits due it under the contract.

19. As a further direct and proximate result of Cincinnati's breach of the insurance contract, plaintiff has suffered other reasonably contemplated damages.

20. Plaintiff prays for judgment on this count against Cincinnati in an amount in excess of $25,000, with the exact amount to be determined via jury.

WHEREFORE, Plaintiff seeks judgment against the defendant, as set forth above, plus interest, costs, and attorney fees as allowed by law.

Respectfully submitted,

*/s/ Robert P. Rutter*
Robert P. Rutter (0021907)
Robert A. Rutter (0081503)
RUTTER & RUSSIN, LLC
One Summit Office Park, Suite 650
4700 Rockside Road
Cleveland, Ohio 44131
(216) 642-1425
brutter@OhioInsuranceLawyer.com
bobbyrutter@OhioInsuranceLawyer.com

**JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues triable to a jury.

/s/ Robert P. Rutter
ROBERT P. RUTTER



The Cincinnati Insurance Company

**Business Tips**

# CONTROLLING RISKS OF PROPERTY OWNERS

**Exhibit A**

## What could happen?

The potential for losses to or at your property is something every property owner needs to consider. When you understand the risks you face, you can better manage them. Consider these scenarios:

- **Natural perils** – A tornado sweeps through town, damaging your building and your tenants' contents.
- **Fire** – A grease fire starts in a restaurant at one end of your building. Before it gets extinguished, the fire damages multiple units and tenant contents.
- **Third-party injury or illness** – A patron slips and falls in the parking lot, spraining her ankle.
- **Change in occupancy** – A restaurant replaces a retail store in one of your units. As a property owner, you consider if the current sprinkler system is able to handle the demands of a restaurant.
- **Change in tenant operations** – A retail craft store expands its operations to include pottery making. With this expansion, your tenant adds kilns to heat-treat ceramic projects.
- **Vacancy** – Your unoccupied building is vandalized, resulting in damaged property and theft of stored equipment.

## How can you reduce your risk?

A well-designed lease agreement can assist in transferring responsibility for payment due to bodily injury or property damage to the legally responsible party. When evaluating your current lease or other formal contract, consult this checklist to make sure your agreement:

- is drafted by knowledgeable counsel and reviewed by your attorney
- is signed by all tenants
- contains anti-subrogation wording and indemnification/hold harmless provisions favorable to you and acceptable under your state's laws
- authorizes you to develop, change and enforce rules and regulations for the premises
- defines which areas you control and which the tenant controls
- defines the maintenance obligations of all parties while specifying the scope of the operations and the steps you will take if the tenant defaults on these obligations
- grants you the right to inspect the leased premises for conformance with lease provisions concerning maintenance. Point out to the tenant obvious hazards noticed during inspections, such as uncontrolled cooking operations, improper handling of flammable and combustible liquids, lack of fire protection equipment, blocked or locked fire exits and exposed electrical connections. Then, document hazards in a follow-up letter to the tenant so future infractions may be addressed through the lease.

Losses that occur on property you own can affect your livelihood and that of your tenants. They can also affect your insurance. Without controls in place, you could be saddled with the responsibility of settling a claim to which you did not contribute.

(Continued on reverse.)

Adv. 963 (2/15)



**THE CINCINNATI INSURANCE COMPANIES**

*Everything Insurance Should Be®*

## How can you reduce your risk (continued)

- requires the tenant to obtain permission before performing any building alterations. You should retain the right to approve contractors and to specify minimum insurance requirements for the contractor. In addition, you should establish rules for when construction activities may take place and where parking and staging may take place and how public spaces will be protected.
- contains provisions regarding use of hazardous substances, dispensing of liquor and other activities that increase the risk of loss
- requires service contractors who come on your premises, such as automatic fire sprinkler system contractors, snow removal contractors, HVAC contractors, plumbers, electricians and janitorial contractors, provide certificates of insurance verifying adequate limits of insurance and appropriate state licenses, where applicable.
- requires tenants to obtain specified liability insurance on behalf of the owner, with you listed as an additional insured on a primary basis. Make sure you obtain proof that the tenant has acquired and maintains all required insurance. Your tenant's insurance policy should have minimum commercial general liability limits of:
  - $1,000,000 each occurrence/$2,000,000 general aggregate, subject to a per location aggregate applicable to all locations owned by you and rented or leased by the tenant
  - $2,000,000 products/completed operations aggregate
  - $1,000,000 personal and advertising injury
  - $500,000 damage to premises rented to you
  - $5,000 medical payments

Familiarize yourself with state laws before you lease space to bars, restaurants or stores that sell liquor. In jurisdictions where the property owner may be held responsible for incidents resulting from the sale of liquor, the lease should require the tenant to adhere to applicable liquor control laws and to indemnify the owner for any claims that result from improper sale.

While it is your duty to live up to your obligations as a property owner, it is also smart to make sure your tenants take responsibility for their actions and premises upkeep. By adhering to a legal, binding lease or contract, you ensure everyone understands what is expected at the property you own and who is responsible in the event of a loss.

Your local independent insurance agent is there to help you maneuver around the challenges you face as a property owner. Contact your agent whenever a new tenant moves into the building, a current tenant changes its operations or a part of the building becomes vacant for over 30 days.



Our loss control service is advisory only. We assume no responsibility for management or control of customer loss control activities or for implementation of recommended corrective measures. These materials were gathered from trade services and public information. We have not tried to identify all exposures. We do not warrant that this information is consistent with Cincinnati underwriting guidelines or with any federal, state or local law, regulation or ordinance.

This is not a policy. For a complete statement of the coverages and exclusions, please see the policy contract. For information, coverage availability in your state, quotes or policy service, please contact your local independent agent recommending coverage. "The Cincinnati Insurance Companies" and "Cincinnati" refer to member companies of the insurer group providing property and casualty coverages through □ The Cincinnati Insurance Company or one of its wholly owned subsidiaries – □ The Cincinnati Indemnity Company, □ The Cincinnati Casualty Company or □ The Cincinnati Specialty Underwriters Insurance Company – and life and disability income insurance and annuities through □ The Cincinnati Life Insurance Company. Each insurer has sole financial responsibility for its own products. Not all subsidiaries operate in all states. 6200 S. Gilmore Road, Fairfield, OH 45014-5141. Copyright © 2015 The Cincinnati Insurance Company. All rights reserved. Do not reproduce or post online without permission.

Electronically filed 01/09/2023 08:39 / COMPLAINT / 973509 / Confirmation Nbr. 2742954 / CLJSZ



# THE
# CINCINNATI INSURANCE COMPANIES

| THE CINCINNATI INSURANCE COMPANY | THE CINCINNATI INDEMNITY COMPANY |
|---|---|
| THE CINCINNATI CASUALTY COMPANY | THE CINCINNATI LIFE INSURANCE COMPANY |

**P.O. BOX 145496**
**CINCINNATI, OHIO  45250-5496**
**(513) 870-2000**

Date:  1 2 - 1 1 - 2 0 1 7

Insured:  R A Y M O N D   S T R E E T   P A R T N E R S   L L C
Policy Number:  ██████████████

Dear Agent,

One or more of the classifications on the above captioned policy is a Lessors Risk Only class.

You and your clients benefit when you identify situations where they can reduce or even avoid loss by legitimately transferring risk to a party in the best position to prevent loss.  When your client owns a building occupied by a tenant(s), we strongly suggest that:

- Your client have all tenants sign a written lease agreement with anti-subrogation wording, indemnification terms and hold harmless provisions favorable to your client and acceptable under state law;

- The written lease agreement requires that your client be added as an additional insured on a primary basis on the tenant's CGL; and

- The written lease agreement requires minimum general liability limits of $1,000,000/$2,000,000 with a per location general aggregate that names all locations owned by your client and rented by the tenant.

We also suggest that:

- Your client obtain certificates of insurance to confirm their additional insured status.

This is a valuable professional service you can provide to your clients and one that may separate you from your competition.  Proper risk transfer can help protect your client's assets and may help them avoid being brought into litigation over damages for which someone else is responsible.

You should also always advise your client to seek the opinion of their own legal counsel when developing and assessing contracts to make sure your client's interests are protected.

Cordially,

Your Commercial Lines Department Underwriter

**GA 4181 05 02**



**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**Policy Number:** ▉▉▉▉▉▉▉▉▉

**Effective Date:** 12-20-2017

**Named Insured:** RAYMOND STREET PARTNERS LLC

For professional advice and policy questions or changes, please contact your local independent agency:

GREGORY & APPEL, INC.
1402 N CAPITOL AVE STE 400
INDIANAPOLIS, IN 46202-2375


317-634-7491

Dear Policyholder:

**Thank you**
Thank you for trusting The Cincinnati Insurance Companies with your commercial insurance coverage. We recognize that locally based independent agents have the working knowledge to help you choose the right insurance company for your needs. Together with your local independent insurance agency, we are committed to providing you with the highest level of service.

Please review your enclosed policy information to verify your coverage details, as well as deductibles and coverage amounts. Should your needs change, your agent is available to review and update your policy.

**Please promptly report claims**
If you experience a policy-related loss, you may report it by contacting your local professional independent agency representing The Cincinnati Insurance Companies or by directly calling us toll-free at **877-242-2544** and providing your policy number and claim-related information.


Sincerely,



Steve Spray
Senior Vice President - Commercial Lines

IA 4443 04 14



# The Cincinnati Indemnity Company
A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

## COMMON POLICY DECLARATIONS

Billing Method: DIRECT BILL

POLICY NUMBER ▓▓▓▓▓▓▓ / ▓▓▓▓▓▓▓

**NAMED INSURED** RAYMOND STREET PARTNERS LLC
**ADDRESS** 3603 E RAYMOND ST
(Number & Street, INDIANAPOLIS, IN 46203-4762
Town, County,
State & Zip Code)

This is a true and certified copy of the complete policy:

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**Previous Policy Number:**
ENP0111968

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: ▓▓▓▓▓▓▓    FROM: 12-20-2017   TO: 12-20-2020

**Automobile and / or Garage**
Policy number: ▓▓▓▓▓▓▓    FROM: 12-20-2017   TO: 12-20-2018

Agency   GREGORY & APPEL, INC. 13-295
City     INDIANAPOLIS, IN

**Legal Entity / Business Description**

LIMITED LIABILITY COMPANY

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| MI1371IN | 09/05 | NOTICE TO POLICYHOLDERS |
| IA4105IN | 08/16 | INDIANA CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA460 | 01/16 | PROTECTIVE SAFEGUARDS |
| IL0156 | 07/89 | INDIANA CHANGES - CONCEALMENT, MISREPRESENTATION OR FRAUD |
| IL0158 | 09/08 | INDIANA CHANGES |
| IL0192 | 02/08 | INDIANA CHANGES - POLLUTION |
| FMD502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAD532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| AAD505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| USD513 | 05/10 | COMMERCIAL UMBRELLA LIABILITY COVERAGE PART DECLARATIONS |
| HCD502 | 01/16 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |

`12-11-2017 13:33`

Countersigned _____  By _____

(Date)                                   (Authorized Representative)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

   1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      a. 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

      b. 30 days before the effective date of cancellation if we cancel for any other reason.

   3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   4. Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

   5. If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

   6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections and Surveys**

   1. We have the right to:

      a. Make inspections and surveys at any time;

      b. Give you reports on the conditions we find; and

      c. Recommend changes.

   2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.  And we do not warrant that conditions:

      a. Are safe or healthful; or

      b. Comply with laws, regulations, codes or standards.

   3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

   4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

   1. Is responsible for the payment of all premiums; and

   2. Will be the payee for any return premiums we pay.

**F. Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.  Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**IL 00 17 11 98** Copyright, Insurance Services Office, Inc., 1998

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER: ██████████ / ██████████          Effective Date: 12-20-2017

Named Insured:  RAYMOND STREET PARTNERS LLC

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
### PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part | $ 10,096 |
| Commercial General Liability Coverage Part | $ 6,602 |
| Commercial Auto Coverage Part | $ 125 |
| Commercial Umbrella / Excess Liability Coverage Part | $ 1,371 |
| DATA DEFENDER COVERAGE PART | $ 143 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Terrorism Coverage | $ 154 |
| Installment Charge | $ |
| ANNUAL TOTAL | $ 18,491 |

### PAYMENTS

| | First Installment | Remaining Installment(s) |
|---|---|---|
| QUARTERLY | * | * |

*SEE BILLING STATEMENT MAILED SEPARATELY

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

IA 102 A 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 3517-3635 E RAYMOND ST INDIANAPOLIS, IN 46203 | | | |
| 2 | 3655 E RAYMOND ST INDIANAPOLIS, IN 46203-4762 | | | |
| 3 | 2205 HOBART ROAD INDIANAPOLIS, IN 46203 | | | |

**IA 904 04 04**

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

## Premium:

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

- Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

## Federal Participation:

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

- **Schedule:**

| Federal Share of Terrorism Losses | |
|---|---|
| Percentage | Calendar Year |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

## Cap on Insurer Participation:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE:** **IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY <u>AND</u> (2) AT THE TIME THE RENEWAL IS COMPLETED.**

IA 4236 01 15

# THE **CINCINNATI INSURANCE COMPANY**
# THE **CINCINNATI CASUALTY COMPANY**
# THE **CINCINNATI INDEMNITY COMPANY**

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

# THE
# CINCINNATI INSURANCE COMPANIES

THE CINCINNATI INSURANCE COMPANY        THE CINCINNATI INDEMNITY COMPANY
THE CINCINNATI CASUALTY COMPANY       THE CINCINNATI LIFE INSURANCE COMPANY

P.O. BOX 145496
CINCINNATI, OHIO  45250-5496
(513) 870-2000

## NOTICE TO POLICYHOLDERS

**Questions regarding your policy or coverage should be directed to:**

**The Cincinnati Insurance Companies**
**P.O. Box 145496**
**Cincinnati, OH 45250-5496**
**(800) 635-7521**
     **or**
**(513) 870-2000**

If you:
a)   Need the assistance of the governmental agency that regulates insurance; or
b)   Have a complaint you have been unable to resolve with your insurer

You may contact the Department of Insurance by mail, telephone or email:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, IN 46204

Consumer Hotline:  (800) 622-4461 or (317) 232-2395

Complaints can be filed electronically at www.in.gov/doi.

**MI1371IN (9/05)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CHEMICAL DRIFT LIMITED LIABILITY COVERAGE PART - CLAIMS-MADE
CINCINNATI CYBER DEFENSE™ COVERAGE PART
CINCINNATI DATA DEFENDER™ COVERAGE PART
CINCINNATI NETWORK DEFENDER™ COVERAGE PART
CLAIMS-MADE CONTRACTORS ERRORS AND OMISSIONS COVERAGE PART
CLAIMS-MADE EXCESS LIABILITY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME AND FIDELITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
CONTRACTORS' LIMITED POLLUTION LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE FORM
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART
EXCESS LIABILITY COVERAGE PART
EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MACHINERY AND EQUIPMENT COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. a. Cancellation of Policies in Effect for 90 days or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

**(2)** 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us;

**(3)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b. Cancellation of Policies in Effect for More Than 90 Days**

If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

**(2)** 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us;

**(3)** 45 days before the effective date of cancellation if:

**(a)** There has been a substantial change in the scale of risk covered by this policy; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.

IA 4105 IN 08 16

Page 1 of 2

Electronically Filed 01/09/2023 08:39 / / CV 23 973158 / Confirmation Nbr. 2741850 / CLRMR

(b) Reinsurance of the risk associated with this policy has been cancelled.

(c) You have failed to comply with reasonable safety recommendations.

B. The following is added to the Common Policy Conditions and supersedes any provision to the contrary.

**NONRENEWAL**

1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

   a. The expiration date of this policy, if the policy is written for a term of one year or less; or

   b. The anniversary date of this policy, if the policy is written for a term of more than one year.

2. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
Includes copyrighted material of ISO Commercial
Risk Services, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act and any amendments and extensions thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Cap On Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion, does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or Endorsement such as losses excluded by:

   **1.** Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

   **2.** Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

   **3.** Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D. Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO Properties, Inc. and American Association of Insurance Services, with their permission.

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary                                                    President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

**IA 4338 05 11**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

Policy Number ████████████████

This endorsement modifies insurance provided under the following:

**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

## SCHEDULE

| Loc.<br>Number | Bldg.<br>Number | Protective Safeguards<br>Symbols Applicable |
|---|---|---|
| 1 | 1 | P-1 |

Describe any "P-9":

**A.** The following is added to the:

**Commercial Property Conditions**
**Farm Property Coverage Form, General Conditions**
**Commercial Inland Marine Conditions**

**PROTECTIVE SAFEGUARDS**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the **SCHEDULE** of this endorsement.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

    **"P-1"**  **Automatic Sprinkler System,** including related supervisory services.

    Automatic Sprinkler System means:

    **a.** Any automatic fire protective or extinguishing system, including connected:

        **(1)** Sprinklers and discharge nozzles;

        **(2)** Ducts, pipes, valves and fittings;

        **(3)** Tanks, their component parts and supports; and

        **(4)** Pumps and private fire protection mains.

    **b.** When supplied from an automatic fire protective system:

        **(1)** Non-automatic fire protective systems; and

        **(2)** Hydrants, standpipes and outlets.

    **"P-2"**  **Automatic Fire Alarm,** protecting the entire building, that is:

    **a.** Connected to a central station; or

    **b.** Reporting to a public or private fire alarm station.

    **"P-3"**  **Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the "premises" are not in actual operation.

    **"P-4"**  **Service Contract** with a privately owned fire department providing fire protection service to the "premises".

    **"P-5"**  **Automatic Commercial Cooking Exhaust and Extinguishing System** installed on cooking appliances and having the following components:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

IA 460 01 16                                                                                          Page 1 of 2

a. Hood;

b. Grease removal device;

c. Duct system; and

d. Wet chemical fire extinguishing equipment.

**"P-9"** The protective system described in the **SCHEDULE** of this endorsement.

B. The following is added to the **EXCLUSIONS** section of any Coverage Form within the Commercial Property, Farm or Commercial Inland Marine Coverage Part:

**Failure to Maintain Protective Safeguards**

We will not pay for "loss" caused by or resulting from fire, if prior to the fire, you:

1) Knew of any suspension or impairment in any protective safeguard listed in the **SCHEDULE** of this endorsement and failed to notify us of that fact; or

2) Failed to maintain in complete working order any protective safeguard listed in the **SCHEDULE** of this endorsement over which you had control.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you restore full protection within 48 hours.

**Date** _____

**Signature of Insured** _____

GREGORY & APPEL, INC. 13-295
INDIANAPOLIS, IN

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

IA 460 01 16                                              Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES --
# CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

**BOILER AND MACHINERY COVERAGE PART**
**BUSINESSOWNERS POLICY**
**COMMERCIAL AUTO COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

The CONCEALMENT, MISREPRESENTATION OR FRAUD Condition is replaced by the following:

CONCEALMENT, MISREPRESENTATION OR FRAUD

We will not pay for any loss or damage in any case of:

**1.**   Concealment or misrepresentation of a material fact or

**2.**   Fraud

committed by an insured at any time and relating to a claim under this policy.

**IL 01 56 07 89**          Copyright, Insurance Services Office, Inc., 1989
                    Copyright, ISO Commercial Risk Services, Inc., 1989

IL 01 58 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY - LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY - MORTGAGEHOLDERS ERRORS AND OMISSIONS
COVERAGE FORM*
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

\*    Under the **Mortgageholders Errors And Omissions Coverage Form,** the following condition applies only to Coverage **C** and Coverage **D**.

The following condition is added:

Notice given by or on behalf of the insured to any of our authorized agents in Indiana, with particulars sufficient to identify the insured, shall be considered to be notice to us.

IL 01 58 09 08                    © ISO Properties, Inc., 2007                    Page 1 of 1  ☐

IL 01 92 02 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES - POLLUTION

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

In this Coverage Part or Policy, any exclusion, limitation or other provision relating to pollutants ("pollutants"), or any amendment to or replacement of such exclusions, limitations or other provisions, applies whether or not the irritant or contaminant has any function in your business, operations, premises, site or location.

IL 01 92 02 08                    © ISO Properties, Inc., 2007                    **Page 1 of 1**  ☐

# THE CINCINNATI INDEMNITY COMPANY

### A Stock Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: ██████████

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.** **(address)**
PER STATEMENT OF VALUES ON FILE
REFER TO IA904

| | | | | | | OPTIONAL COVERAGES Applicable only when an entry is made | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | COVERAGE PROVIDED | | | | | | | | Business Income Indemnity | | |
| Item | Coverage | Limits | Coin-surance | Covered Cause Of Loss | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Incl. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
| | BLANKET BUILDING | 5,329,480 | 100% | SPECIAL | 4% | X | | X | | | |
| | BLANKET BUSINESS INCOME W/EXTRA EXPENSE (c) | 185,000 | 100% | SPECIAL | | | | X | | | |

DEDUCTIBLE: $500.00 unless otherwise stated $    10,000

MORTGAGE HOLDER

| Item | Name and Address |
|---|---|

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| CP1515 | 06/95 | BUSINESS INCOME REPORT/WORK SHEET |
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| FA4168 | 05/16 | NOTICE TO POLICYHOLDERS COMMERCIAL PROPERTY COVERAGE PART DESCRIPTION OF REVISIONS EDITION 05 16 |
| FA4052 | 04/06 | CINCIPLUS™ COMMERCIAL PROPERTY EXPANDED COVERAGE (XC™) ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA499IN | 04/04 | INDIANA CHANGES - RIGHTS OF RECOVERY |
| FA237 | 05/16 | CINCIPLUS® COMMERCIAL PROPERTY XC® (EXPANDED COVERAGE) ENDORSEMENT |
| FA213 | 05/16 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS)

## TABLE OF CONTENTS

|  | Begins on Page |
|---|---|
| SECTION A. COVERAGE | 3 |
| 1. Covered Property | 3 |
| a. Building | 3 |
| b. Outdoor Signs | 3 |
| c. Outdoor Fences | 3 |
| d. Business Personal Property | 3 |
| 2. Property Not Covered | 4 |
| a. Accounts, Deeds, Money or Securities | 4 |
| b. Animals | 4 |
| c. Automobiles | 4 |
| d. Contraband | 4 |
| e. Electronic Data | 4 |
| f. Excavations, Grading & Backfilling | 4 |
| g. Foundations | 4 |
| h. Land, Water or Growing Crops | 4 |
| i. Paved Surfaces | 4 |
| j. Property While Airborne or Waterborne | 4 |
| k. Pilings or Piers | 4 |
| l. Property More Specifically Insured | 4 |
| m. Retaining Walls | 4 |
| n. Underground Pipes, Flues or Drains | 4 |
| o. Valuable Papers & Records and Cost to Research | 5 |
| p. Vehicles or Self-Propelled Machines | 5 |
| q. Property While Outside of Buildings | 5 |
| 3. Covered Causes of Loss | 5 |
| a. Covered Causes of Loss | 5 |
| b. Exclusions | 5 |
| c. Limitations | 11 |
| 4. Additional Coverages | 13 |
| a. Change in Temperature or Humidity | 13 |
| b. Debris Removal | 13 |
| c. Fire Department Service Charge | 14 |
| d. Fire Protection Equipment Recharge | 14 |
| e. Inventory or Appraisal | 14 |
| f. Key and Lock Expense | 15 |
| g. Ordinance or Law | 15 |
| h. Pollutant Clean Up and Removal | 16 |
| i. Preservation of Property | 16 |
| j. Rewards | 16 |

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

## TABLE OF CONTENTS (CONT'D)

**Begins on Page**

5. Coverage Extensions .................................................................................................16
    a. Accounts Receivable.......................................................................................17
    b. Business Income and Extra Expense...........................................................18
    c. Collapse............................................................................................................21
    d. Electronic Data................................................................................................22
    e. Exhibitions, Fairs or Trade Shows...............................................................23
    f. Fences .............................................................................................................23
    g. Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage ......................23
    h. Glass ................................................................................................................24
    i. Newly Purchased, Leased or Constructed Property...................................25
    j. Nonowned Building Damage..........................................................................26
    k. Outdoor Property............................................................................................26
    l. Personal Effects..............................................................................................26
    m. Property Off Premises.....................................................................................27
    n. Signs ................................................................................................................27
    o. Trailers (Nonowned Detached).....................................................................27
    p. Transportation .................................................................................................27
    q. Utility Services ................................................................................................27
    r. Valuable Papers and Records .......................................................................28
    s. Water Damage, Other Liquids, Powder or Molten Material Damage ..........29
SECTION B. LIMITS OF INSURANCE..............................................................................29
SECTION C. DEDUCTIBLE................................................................................................29
  1. Deductible Examples .......................................................................................30
  2. Glass Deductible ..............................................................................................30
SECTION D. LOSS CONDITIONS.....................................................................................30
  1. Abandonment....................................................................................................30
  2. Appraisal...........................................................................................................30
  3. Duties in the Event of Loss or Damage .........................................................30
  4. Loss Payment...................................................................................................31
  5. Recovered Property .........................................................................................34
  6. Vacancy.............................................................................................................34
    a. Description of Terms.......................................................................................34
    b. Vacancy Provisions........................................................................................34
  7. Valuation...........................................................................................................34
SECTION E. ADDITIONAL CONDITIONS ........................................................................35
  1. Coinsurance......................................................................................................35
  2. Mortgage Holders ............................................................................................36
SECTION F. OPTIONAL COVERAGES.............................................................................36
  1. Agreed Value ....................................................................................................37
  2. Inflation Guard .................................................................................................37
  3. Replacement Cost............................................................................................37
SECTION G. DEFINITIONS ...............................................................................................38

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM
# (INCLUDING SPECIAL CAUSES OF LOSS)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION G. DEFINITIONS.**

## SECTION A. COVERAGE

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

1. **Covered Property**

   Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

   a. **Building**

      Building, means the building or structure described in the Declarations, including:

      (1) Completed additions;

      (2) Fixtures, including outdoor fixtures;

      (3) Permanently installed:

         (a) Machinery and equipment;

         (b) Building glass, including any lettering and ornamentation;

         (c) Signs attached to a building or structure that is Covered Property;

         (d) Awnings and canopies;

      (4) Personal property owned by you that is used to maintain or service a covered building or its "premises", including:

         (a) Fire extinguishing equipment;

         (b) Outdoor furniture;

         (c) Floor coverings; and

         (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

      (5) If not covered by other insurance:

         (a) Additions under construction, alterations and repairs to a covered building;

         (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "premises", used for making additions, alterations or repairs to a covered building.

   b. **Outdoor Signs**

      Your outdoor signs permanently installed and not attached to a covered building, and located within 1,000 feet of the "premises".

   c. **Outdoor Fences**

      Your outdoor fences.

   d. **Business Personal Property**

      Your Business Personal Property consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater. Your Business Personal Property consists of the following unless otherwise specified in the Declarations or on the **BUSINESS PERSONAL PROPERTY - SEPARATION OF COVERAGE ENDORSEMENT.**

      (1) Furniture;

      (2) Machinery and equipment;

      (3) "Stock";

      (4) All other personal property owned by you and used in your business;

      (5) The cost of labor, materials or services furnished or arranged by you on personal property of others;

      (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

         (a) Made a part of the building or structure you occupy but do not own; and

         (b) You acquired or made at your expense but cannot legally remove;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**FM 101 05 16**                      **Page 3 of 40**

(7) Leased personal property used in your business for which you have a contractual responsibility to insure. Such leased property is not considered personal property of others in your care, custody or control;

(8) Personal Property of Others that is in your care, custody or control or for which you are legally liable.

   (a) This does not include personal effects owned by you, your officers, your partners, or if you are a limited liability company, your members or your managers, or your employees (including leased and temporary workers), except as provided in **5. Coverage Extensions, l. Personal Effects**;

   (b) This does not include property of others for which you are legally liable as:

      1) A carrier for hire; or

      2) An arranger of transportation, including car loaders, consolidators, brokers, freight forwarders, or shipping associations; and

(9) Sales samples.

2. **Property Not Covered**

   Covered Property does not include:

   a. **Accounts, Deeds, Money or Securities**

      Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable,** Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities";

   b. **Animals**

      Animals, unless

      (1) Owned by others and boarded by you; or

      (2) Owned by you and covered as "stock" while inside of buildings;

      and then only as provided in **3. Covered Causes of Loss, c. Limitations**.

   c. **Automobiles**

      Automobiles held for sale;

   d. **Contraband**

      Contraband, or property in the course of illegal transportation or trade;

   e. **Electronic Data**

      Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data,** "Electronic data". This Paragraph **e.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

   f. **Excavations, Grading & Backfilling**

      The cost of excavations, grading, backfilling or filling;

   g. **Foundations**

      Foundations of buildings, structures, machinery or boilers, if their foundations are below:

      (1) The lowest basement floor; or

      (2) The surface of the ground, if there is no basement.

   h. **Land, Water or Growing Crops**

      Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetative roof);

   i. **Paved Surfaces**

      Bridges, roadways, walks, patios or other paved surfaces;

   j. **Property While Airborne or Waterborne**

      Personal property while airborne or waterborne;

   k. **Pilings or Piers**

      Pilings, piers, bulkheads, wharves or docks;

   l. **Property More Specifically Insured**

      Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except as provided in **G. Other Insurance** of the COMMERCIAL PROPERTY CONDITIONS;

   m. **Retaining Walls**

      Retaining walls that are not part of any building described in the Declarations;

   n. **Underground Pipes, Flues or Drains**

      Underground pipes, flues or drains;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**o.** **Valuable Papers & Records and Cost to Research**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the cost to research, replace or restore the information on "valuable papers and records", including those which exist as "electronic data".

This does not apply to "valuable papers and records" held for sale by you.

**p.** **Vehicles or Self-Propelled Machines**

Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the "premises".

This paragraph does not apply to:

**(1)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(2)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(3)** Rowboats or canoes out of water and located at the "premises"; or

**(4)** Trailers, but only as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, o. Trailers (Nonowned Detached).**

**q.** **Property While Outside of Buildings**

The following property while outside of buildings (except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions**):

**(1)** Grain, hay, straw or other crops;

**(2)** Signs, except:

**(a)** Signs attached to a covered building or structure;

**(b)** Signs for which a Limit of Insurance is shown in the Declarations.

**(3)** Outdoor fences, except outdoor fences for which a Limit of Insurance is shown in the Declarations;

**(4)** Radio antennas, television antennas or satellite dishes; including their lead-in wiring, masts, and towers; and

**(5)** Trees, shrubs or plants (other than trees, shrubs or plants that are "stock" or part of a vegetative roof).

**3.** **Covered Causes of Loss**

**a.** **Covered Causes of Loss**

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

**b.** **Exclusions**

**(1)** We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**(a)** **Ordinance or Law**

Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law,** the enforcement of or compliance with any ordinance or law:

**1)** Regulating the construction, use or repair of any building or structure; or

**2)** Requiring the tearing down of any building or structure, including the cost of removing its debris.

This exclusion applies whether "loss" results from:

**1)** An ordinance or law that is enforced even if the building or structure has not been damaged; or

**2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of any building or structure, or removal of its debris, following a direct "loss" to that building or structure.

**(b)** **Earth Movement**

**1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**2)** Landslide, including any earth sinking, rising or shifting related to such event;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4) Earth sinking (other than "sinkhole collapse"), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **(b)1)** through **4)** above, results in fire or explosion, we will pay for the "loss" caused by that fire or explosion.

5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the "loss" caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

a) Airborne volcanic blast or airborne shock waves;

b) Ash, dust or particulate matter; or

c) Lava flow.

With respect to coverage for Volcanic Action, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct "loss" to the described property.

This Earth Movement exclusion applies regardless of whether any of the above, in paragraphs **1)** through **5),** is caused by an act of nature or is otherwise caused.

(c) **Governmental Action**

Seizure or destruction of property by order of governmental authority. However, we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

(d) **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

(e) **Utility Services**

1) Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, q. Utility Services**, the failure of power, communication, water or other utility services supplied to the "premises", however caused, if the failure:

a) Originates away from the "premises"; or

b) Originates at the "premises", but only if such failure involves equipment used to supply the utility service to the "premises" from a source away from the "premises".

Failure of any utility service includes lack of sufficient capacity and reduction in supply. "Loss" caused by a surge of power is also excluded if the surge would not have occurred but for an event causing the failure of power.

However, if the failure or surge of power, or the failure of communication, water, wastewater removal or other utility service results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss.

Communication services include but are not limited to

Includes copyright material of Insurance Services Office, Inc., with its permission.

Electronically Filed 01/09/2023 08:39 /  CV 23 973599 / Confirmation Nbr. 2742954 / CLJSZ

service relating to Internet access or access to any electronic, cellular or satellite network.

**(f) War and Military Action**

1) War, including undeclared or civil war;

2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**(g) Water**

1) Flood, meaning the partial or complete inundation of normally dry land areas due to:

a) The unusual or rapid accumulation or runoff of rain or surface waters from any source; or

b) Waves, tidal waters, tidal waves (including tsunami); or

c) Water from rivers, ponds, lakes, streams, or any other body of water that rises above, overflows from, or is not contained within its natural or man-made boundary;

and all whether driven by wind or not, including storm surge.

2) Mudslides or mudflows, which are caused by flooding as defined above in Paragraph **(g)1)** above. Mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current;

3) Water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

4) Water under the ground surface pressing on, or flowing or seeping through:

a) Foundations, walls, floors or paved surfaces;

b) Basements, whether paved or not; or

c) Doors, windows or other openings.

5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs **(g)1), 3)** or **4)**, or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2)**.

This exclusion applies regardless of whether any of the above in Paragraphs **(g)1)** through **(g)5)** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

However, if any of the above, as described in Paragraphs **(g)1)** through **(g)5)**, results in fire, explosion or sprinkler leakage, we will pay for that portion of "loss" caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**(h) "Fungi", Wet Rot, Dry Rot, and Bacteria**

1) Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria. But if "fungi", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

2) This exclusion does not apply:

a) When "fungi", wet or dry rot or bacteria results from fire or lightning; or

b) To the extent that coverage is provided in **SECTION A. COVERAGE, 5. Coverage Extensions, g. "Fungi", Wet Rot, Dry Rot and Bacteria - Limited Coverage** with respect to "loss" from a cause of loss other than fire or lightning.

Exclusions **b.(1)(a)** through **b.(1)(h)** apply whether or not the "loss" event results in widespread damage or affects a substantial area.

(2) We will not pay for "loss" caused by or resulting from any of the following:

(a) **Electrical Current**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

1) Electrical or electronic wire, device, appliance, system or network; or

2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

1) Electrical current, including arcing;

2) Electrical charge produced or conducted by a magnetic or electromagnetic field;

3) Pulse of electromagnetic energy; or

4) Electromagnetic waves or microwaves.

However, if fire results, we will pay for "loss" caused by that fire.

(b) **Delay or Loss of Use**

Delay, loss of use or loss of market.

(c) **Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

(d) **Miscellaneous Causes of Loss**

1) Wear and tear;

2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

3) Smog;

4) Settling, cracking, shrinking or expansion;

5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, if mechanical breakdown results in elevator collision, we will pay for that portion of "loss" caused by that elevator collision; or

7) The following causes of loss to personal property:

a) Marring or scratching;

b) Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, a. Change in Temperature or Humidity** and **5. Coverage Extensions, q. Utility Services;**

i) Dampness or dryness of atmosphere; and

ii) Changes in or extremes of temperature.

However, if an excluded cause of loss listed in **(2)(d)1)** through **7)** results in a "specified cause of "loss" or building glass breakage, we will pay for that portion of "loss" caused by that "specified cause of loss" or building glass breakage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

### (e) Explosion of Steam Apparatus

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. However, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for that portion of "loss" caused by that fire or combustion explosion. We will also pay for "loss" caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

### (f) Water Seepage

Continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more.

### (g) Freezing of Plumbing

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protection systems) caused by or resulting from freezing, unless:

1) You did your best to maintain heat in the building or structure; or

2) You drained the equipment and shut off the supply if the heat was not maintained.

### (h) Dishonest or Criminal Acts

Dishonest or criminal acts (including theft) by you, any of your partners, members (if a limited liability company), officers, managers, employees (including leased workers or temporary employees) directors, trustees, or authorized representatives; whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion applies whether or not an act occurs during the hours of operation.

This **Dishonest or Criminal Acts** exclusion does not apply to acts of destruction by your employees (including leased workers or temporary employees) or by authorized representatives; except theft by employees (including leased workers or temporary employees) is not covered.

### (i) Voluntary Parting Under False Pretense

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

### (j) Exposure to Weather

Rain, snow, ice or sleet to personal property in the open.

### (k) Collapse

Collapse, including any of the following conditions of property or any part of the property:

1) An abrupt falling down or caving in;

2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **(k)1** or **2)** above.

But if collapse results in a Covered Cause of Loss at the "premises", we will pay for "loss" caused by that Covered Cause of Loss.

This exclusion **Collapse** does not apply:

1) To the extent that coverage is provided under the **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse**; or

2) To collapse caused by one or more of the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**a)** The "specified causes of loss";

**b)** Breakage of building glass;

**c)** Weight of rain that collects on a roof; or

**d)** Weight of people or personal property.

**(l) Pollutants**

Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

This exclusion does not apply to "loss" to glass caused by chemicals applied to the glass.

**m) Loss or Damage to Product**

We will not pay for "loss" to Covered Property consisting of merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for "loss" caused by that Covered Cause of Loss.

**(n) Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of "loss".

**(3)** We will not pay for "loss" caused by or resulting from any of the following in Paragraphs **(3)(a)** through **(3)(c)**. However, if an excluded cause of loss that is listed in Paragraphs **(3)(a)** through **(3)(c)** results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss:

**(a) Weather Conditions**

Weather conditions, but this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(a)** through **(1)(h)** to produce the "loss".

**(b) Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**(c) Defects, Errors, and Omissions**

**1)** An act, error, or omission (negligent or not) relating to:

**a)** Land use;

**b)** Design, specifications, construction, workmanship;

**c)** Planning, zoning, development, surveying, siting, grading, compaction; or

**d)** Maintenance, installation, renovation, repair, or remodeling

of part or all of any property on or off the "premises";

**2)** A defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair of part or all of any property on or off the "premises"; or

**3)** The cost to make good any error in design.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(4) Special Exclusions**

The Special Exclusions apply only to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense**; and if attached to this policy, the following coverage forms: **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM,** and **EXTRA EXPENSE COVERAGE FORM.**

We will not pay for:

**(a)** Any "loss" caused by or resulting from:

**1)** Damage or destruction of "finished stock"; or

**2)** The time required to reproduce "finished stock".

This Exclusion **(4)(a)** does not apply to Extra Expense.

**(b)** Any "loss" caused by or resulting from damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(c)** Any increase of "loss" caused by or resulting from:

**1)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**2)** Suspension, lapse or cancellation of any license, lease or contract. However, if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such "loss" that affects your "Business Income" during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period of Indemnity Optional Coverage or any variation of these.

**(d)** Any Extra Expense caused by or resulting from suspension, lapse

or cancellation of any license, lease or contract beyond the "period of restoration".

**(e)** Any other indirect "loss".

**c.  Limitations**

The following limitations apply to all policy forms and endorsements shown on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**, unless otherwise stated:

**(1) Limitations - Various Types of Property**

We will not pay for "loss" to property as described and limited in this section. In addition, we will not pay for any "loss" that is a consequence of "loss" as described and limited in this section.

**(a) Steam Apparatus**

Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for "loss" to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(b) Hot Water Boilers**

Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(c) Building Interiors**

The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**2)** The "loss" is caused by or results from thawing of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

snow, sleet or ice on the building or structure.

**(d) Theft of Building Materials**

Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

1) Building materials and supplies held for sale by you; or

2) "Business Income" coverage or Extra Expense coverage.

**(e) Missing Property**

Property that is missing, where the only evidence of the "loss" is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**(f) Transferred Property**

Property that has been transferred to a person or to a place outside the "premises" on the basis of unauthorized instructions.

**(g) Vegetative Roofs**

Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

1) Dampness or dryness of atmosphere or of soil supporting the vegetation;

2) Changes in or extremes of temperature;

3) Disease;

4) Frost or hail; or

5) Rain, snow, ice or sleet.

**(2) Limitations - Various Property for Specified Causes**

We will not pay for "loss" to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(a)** Animals, and then only if they are killed or their destruction is deemed necessary.

**(b)** Contractors equipment, machinery and tools owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

1) If the property is located on or within 1,000 feet of the "premises"; or

2) To Business Income coverage or to Extra Expense coverage.

**(3) Limitation - Personal Property Theft**

This Limitation does not apply to "Business Income" coverage or to Extra Expense coverage. For each category described in Paragraph **c.(3)(a)** through **(3)(d)** below, the most we will pay for "loss" in any one occurrence of theft to all property in that category, regardless of the types or number of articles for that category that are lost or damaged in that occurrence, are the following special limits:

**(a)** $2,500 for Furs, fur garments and garments trimmed with fur.

**(b)** $2,500 for Jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limitation does not apply to jewelry and watches worth $100 or less per item.

**(c)** $2,500 for Patterns, dies, molds and forms.

**(d)** $250 for Stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are not additional Limits of Insurance.

**(4) Limitation - System or Appliance Defects**

**(a)** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes; and

**(b)** We will not pay to replace the substance that escapes as described in Paragraph **c.(4)(a)** above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system, or is directly caused by freezing.

However, this Limitation **c.(4)(a)** does not apply to "Business Income" Coverage or to Extra Expense Coverage.

**4.   Additional Coverages**

Unless stated otherwise, **SECTION C. DEDUCTIBLE** does not apply to Paragraph **4. Additional Coverages.**

Unless stated otherwise, these Paragraph **4. Additional Coverages** apply on a per location basis.

**a.   Change in Temperature or Humidity**

We will pay for direct "loss" to your covered Business Personal Property caused by a change in temperature or humidity or contamination by refrigerant resulting from damage by a Covered Cause of Loss to equipment used for refrigerating, cooling, humidifying, dehumidifying, air conditioning, heating, generating or converting power (including their connections and supply or transmission lines and pipes) when located on the "premises".

This Coverage is included within the Limits of Insurance shown in the Declarations.

**b.   Debris Removal**

**(1)** Subject to Paragraphs **b.(2)**, **(3)** and **(4)** of this Additional Coverage, we will pay your expense to remove debris of Covered Property and other debris that is on the "premises", when such debris is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct "loss".

**(2)** Debris Removal does not apply to costs to:

**(a)** Extract "pollutants" from land or water;

**(b)** Remove, restore or replace polluted land or water;

**(c)** Remove debris of property of yours that is not insured under this Coverage Part, or property in your possession that is not Covered Property;

**(d)** Remove debris of property owned by or leased to the landlord of the building where your "premises" are located, unless you have a contractual responsibility to insure such property and it is insured under this Coverage Part;

**(e)** Remove any property that is Property Not Covered, including property addressed under **5. Coverage Extensions, k. Outdoor Property.**

**(f)** Remove property of others of a type that would not be Covered Property under this Coverage Part;

**(g)** Remove deposits of mud or earth from the grounds of the "premises".

**(3)** Subject to the exceptions in Paragraph **b.(4)** below, the following provisions apply:

**(a)** The most we will pay for the total of direct "loss" plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained "loss".

**(b)** Subject to Paragraph **b.(3)(a)**, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

**(4)** We will pay up to an additional $10,000 for debris removal expense for each "premises", in any one occurrence of direct "loss" to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct "loss" exceeds the Limit of Insurance on the Covered Property that has sustained "loss".

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

Therefore, if Paragraph **b.(4)(a)** and/or **(4)(b)** apply, our total payment for direct

Electronically Filed 01/09/2023 08:39 / / CV 23 / 278589 / Confirmation Nbr. 2742056A / CL JSZ

FM 101 05 16                 Includes copyrighted material of Insurance                 **Page 13 of 40**
                             Services Office, Inc., with its permission.

"loss" and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained "loss", plus $10,000.

**(5) Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $50,000 |
| Amount of "Loss" Payable ($50,000 - $500) | $49,500 |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense Payable ($10,000 is 20% of $50,000) | $10,000 |

The debris removal expense is less than 25% of the sum of the "loss" payable plus the deductible. The sum of the "loss" payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example #2**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $80,000 |
| Amount of "Loss" Payable ($80,000 - $500) | $79,500 |
| Debris Removal Expense | $30,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $10,500 |
| Additional Amount | $10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows:  $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the "loss" payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the "loss" payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the "loss" payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4)**. Thus the total payable for debris removal ex-

pense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000 in any one occurrence for your liability, which is determined prior to the direct "loss", for fire department service charges:

**(1)** Assumed by contract or agreement; or

**(2)** Required by local ordinance.

Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**d. Fire Protection Equipment Recharge**

**(1)** We will pay for the expenses you incur to recharge your automatic fire suppression system or portable fire extinguishers when the equipment is discharged:

**(a)** To combat a covered fire to which this insurance applies;

**(b)** As a result of another covered Cause of Loss other than fire; or

**(c)** As a result of an accidental discharge.

**(2)** We will not pay your expenses to recharge fire protection equipment as a result of a discharge during testing or installation.

**(3)** If it is less expensive to do so, we will pay your costs to replace your automatic fire suppression system or portable fire extinguishers rather than recharge that equipment.

The most we will pay in any one occurrence under this Additional Coverage is $25,000. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**e. Inventory or Appraisal**

**(1)** We will pay the necessary expenses you incur to prepare claim information as required by this Coverage Part. Expenses must result from:

**(a)** Taking inventories;

**(b)** Making appraisals; and

(c) Preparing a statement of loss and other supporting exhibits.

(2) We will not pay for any expenses:

(a) Incurred to prove that "loss" is covered;

(b) Incurred under **SECTION D. LOSS CONDITIONS, 2. Appraisal;**

(c) Incurred for examinations under oath;

(d) Billed by and payable to independent or public adjusters; or

(e) To prepare claims not covered by this Coverage Part.

The most we will pay for any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the shown in the Declarations.

f. **Key and Lock Expense**

(1) If a key or master key is lost, stolen, or damaged, we will pay for:

(a) The actual expense of the new keys; and

(b) The adjustment of locks to accept new keys; or

(c) If required, new locks, including the expense of their installation;

but only for locks at buildings or structures covered by this Coverage Part.

(2) This Coverage does not apply to keys that were given to former employees.

The most we will pay in any one occurrence under this Additional Coverage is Limit of Insurance $1,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

g. **Ordinance or Law**

(1) If a covered building or structure sustains direct "loss" from a Covered Cause of Loss, resulting in the enforcement of or compliance with an ordinance or law that is in force at the time of "loss" and regulates the demolition, construction or repair of buildings or structures, or establishes zoning or land use requirements at the "premises", then subject to **SECTION D, LOSS CONDITIONS, 4. Loss Payment,** we will pay:

(a) **Loss of Use of Undamaged Parts of Buildings**

The costs you incur to rebuild at the same "premises" any undamaged portion of your building or structure caused by enforcement of or compliance with an ordinance or law requiring demolition of undamaged parts of the same building or structure. We will only pay the costs to satisfy the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered.

(b) **Demolition Costs**

The costs you incur to demolish and clear the site of undamaged parts of the same building or structure as a result of Paragraph **g.(1)(a)** above.

(c) **Increased Costs of Construction**

1) For buildings or structures to which **SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies, the increased costs to comply with the minimum standards of an ordinance or law to:

a) Repair or reconstruct damaged portions of that building or structure; and

b) Reconstruct or remodel undamaged portions of that building or structure whether or not demolition is required;

However, this increased cost of construction applies only if the building or structure is repaired, reconstructed or remodeled and is intended for occupancy similar to the building or structure it replaces, unless such occupancy is not permitted by zoning or land use ordinance or law.

2) For this Paragraph **g.(1)(c)** only, the increased costs to repair or reconstruct the following:

Electronically Filed 01/09/2023 08:39 / / CV 23 / 1278599 / Confirmation Nbr. 2742064 / CLSZ

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FM 101 05 16        Page 15 of 40

a) The cost of excavations, grading, backfilling and filling;

b) Foundation of the building;

c) Pilings;

d) Underground pipes, flues and drains.

The items listed in Paragraphs **g.2)a)** through **g.2)d)** above are deleted from **SECTION A. COVERAGE, 2. Property Not Covered**;

**(2)** We will not pay for:

**(a)** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(b)** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**(3)** We will not pay for "loss" due to any ordinance or law that:

**(a)** You were required to comply with before the "loss", even if the building or structure was undamaged; and

**(b)** With which you failed to comply.

**(4)** The terms of this Additional Coverage apply separately to each building or structure covered by this Coverage Part.

The most we will pay under this Additional Coverage is $10,000 per building. This is in addition to the Limit of Insurance shown in the Declarations for the building suffering "loss".

**h.  Pollutant Clean Up and Removal**

We will pay your expenses to extract "pollutants" from land and water at the "premises" if the discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each "premises" is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**i.  Preservation of Property**

If it is necessary to move Covered Property from the "premises" to preserve it from imminent "loss" by a Covered Cause of Loss, we will pay for any direct "loss" to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the "loss" occurs within 60 days after the property is first moved.

This Coverage is included within Limit of Insurance shown in the Declarations for such Covered Property.

**j.  Rewards**

We will pay to provide a reward for information that leads to a conviction for arson, theft, vandalism, or burglary. The conviction must involve a covered "loss" caused by arson, theft, vandalism, or burglary.

The most we will pay for "loss" in any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**5.  Coverage Extensions**

Unless amended within a particular Coverage Extension, each Extension applies to property located in or on the building described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the "premises".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

The limits applicable to the Coverage Extensions are in addition to the Limit of Insurance shown in the Property Declarations. Limits of Insurance specified in these Extensions apply per location unless stated otherwise.

**SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, does not apply to these Coverage Extensions.

a. <u>Accounts Receivable</u>

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

(1) When you sustain direct "loss" to your accounts receivable records caused by a Covered Cause of Loss, we will pay:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by the "loss"; and

(d) Other reasonable expenses that you incur to re-establish your records of accounts receivable.

(2) Coverage does not apply to:

(a) Records of accounts receivable in storage away from the "premises"; or

(b) Contraband, or property in the course of illegal transportation or trade.

(3) We will extend coverage to include:

(a) Removal

If you give us written notice within 30 days of removal of your records of accounts receivable because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for "loss" while they are:

1) At a safe place away from your "premises"; or

2) Being taken to and returned from that place.

This Removal coverage is included within the Limit of Insurance applicable to this Coverage Extension.

(b) Away From Your Premises

The most we will pay in any one occurrence is $5,000, regardless of the number of locations, for "loss" caused by a Covered Cause of Loss to Accounts Receivable while they are away from your "premises".

This Away From Premises Limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

(4) **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

(a) **Exclusion (1)(c) Governmental Action;**

(b) **Exclusion (1)(d) Nuclear Hazard;**

(c) **Exclusion (1)(f) War and Military Action.**

(5) In addition to Paragraph **a.(4)** of this Coverage Extension, we will not pay for "loss" resulting from any of the following:

(a) Dishonest or criminal acts by:

1) You, your partners, employees, directors, trustees or authorized representatives;

2) A manager or a member if you are a limited liability company;

3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

4) Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **a.(5)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **a.(5)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

(b) Alteration, falsification, concealment or destruction of records of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**(c)** Bookkeeping, accounting or billing errors or omissions.

**(d)** Electrical or magnetic injury, disturbance or erasure of "electronic data" that is caused by or results from:

**1)** Programming errors or faulty machine instructions;

**2)** Faulty installation or maintenance of data processing equipment or component parts;

**3)** An occurrence that took place more than 100 feet from your "premises"; or

**4)** Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

But we will pay for direct "loss" caused by lightning.

**(e)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(f)** A "loss" that requires any audit of records or any inventory computation to prove its factual existence.

**(6)** **Determination of Receivables:**

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of direct "loss", the following method will be used:

**1)** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the direct "loss" occurs; and

**2)** Adjust that total for any normal fluctuations in the amount of accounts receiv-

able for the month in which the direct "loss" occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**1)** The amount of the accounts for which there is no direct "loss"; and

**2)** The amount of the accounts that you are able to re-establish or collect; and

**3)** An amount to allow for probable bad debts that you are normally unable to collect; and

**4)** All unearned interest and service charges.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

**b.** **Business Income and Extra Expense**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1)** **Business Income**

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle or portable storage unit, the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

With respect to the requirements of the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purpose of this Coverage Extension only, your "premises" is the portion of the building that you rent, lease or occupy, including:

**(a)** Any area within the building or on the site at which the "premises" are located if that area ser-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

vices or is used to gain access to the "premises"; and

**(b)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

**(2) Extra Expense**

**(a)** We will pay Extra Expense you sustain during the "period of restoration". Extra Expense means necessary expenses you sustain (as described in Paragraphs **(2)(b)**, **(c)** and **(d)**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

**(b)** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **(2)(c)**) to:

**1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

**a)** At the "premises"; or

**b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

**2)** Minimize the "suspension" of business if you cannot continue "operations".

**(c)** We will also pay expenses to:

**1)** Repair or replace property; or

**2)** Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal

"operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.

**(d)** Extra Expense does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

**(3) Civil Authority**

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

This Civil Authority coverage for "Business Income" will begin immediately after the time of that action and will apply for a period of up to 30 days from the date of that action.

This Civil Authority coverage for Extra Expense will begin immediately after the time of that action and will end:

**1)** 30 consecutive days after the time of that action; or

**2)** When your "Business Income" coverage ends;

whichever is later.

**(4) Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss to:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**FM 101 05 16** — **Page 19 of 40**

**(a)** New buildings or structures, whether complete or under construction;

**(b)** Alterations or additions to existing buildings or structures; and

**(c)** Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

**1)** Used in the construction, alterations or additions; or

**2)** Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" Coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

**(5) Newly Purchased or Leased Locations**

We will pay the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" to Covered Property at any location you purchase or lease caused by or resulting from a Covered Cause of Loss. This coverage for the Newly Purchased or Leased Locations will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** You report values to us;

**(c)** 90 days pass from the date you acquire or begin to construct the Covered Property.

**(6) Extended Business Income**

**(a)** For "Business Income" Other Than "Rental Value", if the necessary "suspension" of your "operations" produces a "Business Income" or Extra Expense "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur during the period that:

**1)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**2)** Ends on the earlier of:

**a)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct "loss" had occurred; or

**b)** 60 consecutive days after the date determined in **b.(6)(a)1)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained or Extra Expense incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(b)** For "Rental Value", if the necessary "suspension" of your "operations" produces a "Rental Value" "loss" payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you incur during the period that:

**1)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**2)** Ends on the earlier of:

**a)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

**b)** 60 consecutive days after the date determined in **b.(6)(b)1)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(7) Interruption of Computer Operations**

(a) Subject to all provisions of this Coverage Extension, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data.**

(b) Paragraph **b.(7)(a)** does not apply to "loss" sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **b.(7)(c)** has not been exhausted.

(c) The most we will pay under Paragraph **b.(7)** of this Coverage Extension is $2,500 for all "loss" sustained and expense incurred in the "coverage term", regardless of the number of interruptions or the number of "premises" or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not carry over to the next "coverage term". With respect to an interruption that begins in a "coverage term" and continues or results in additional "loss" or expense in a subsequent "coverage term", all "loss" and expense is deemed to be sustained in the "coverage term" in which the interruption began.

This $2,500 coverage for Interruption of Computer Operations does not increase the Limit of Insurance provided in this Coverage Extension.

The most we will pay for "loss" in any one occurrence under this "Business Income" and Extra Expense Coverage Extension is $25,000.

c. **Collapse**

The coverage provided under this Coverage Extension applies only to an abrupt collapse as described and limited in Paragraphs **c.(1)** through **c.(7)** below.

(1) For the purpose of this Coverage Extension only, abrupt collapse means an abrupt falling down or caving in of a building or structure or any part of a building or structure with the result that the building or structure or part of the building or structure cannot be occupied for its intended purpose.

(2) We will pay for direct "loss" to Covered Property, caused by abrupt collapse of a building or structure or any part of a building or structure insured under this Coverage Part, or that contains Covered property insured under this Coverage Part, if such collapse is caused by one or more of the following:

(a) Building or structure decay that is hidden from view, unless the presence of such decay is known or should reasonably have been known to an insured prior to collapse;

(b) Insect or vermin damage that is hidden from view, unless the presence of such damage is known or should reasonably have been known to an insured prior to collapse;

(c) Use of defective material or methods in construction, remodeling, or renovation if the abrupt collapse occurs during the course of the construction, remodeling, or renovation.

(d) Use of defective materials or methods in construction, remodeling, or renovation if the abrupt collapse occurs after construction, remodeling, or renovation is complete but only if the collapse is caused in part by:

1) A cause of loss listed in Paragraph **c.(2)(a)** or **c.(2)(b)** of this Coverage Extension;

2) One or more of the "specified causes of loss";

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

3) Breakage of building glass;

4) Weight of people or personal property; or

5) Weight of rain that collects on a roof.

**(3)** This Coverage Extension does not apply to:

**(a)** A building or structure or any part of a building or structure that is in danger of falling down or caving in;

**(b)** A part of a building or structure that is standing, even if it has separated from another part of the building or structure; or

**(c)** A building or structure that is standing or any part of a building or structure that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**(b)** Awnings, gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Fences;

**(f)** Piers, wharves and docks;

**(g)** Beach or diving platforms; including their appurtenances;

**(h)** Retaining walls; and

**(i)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraph **c.(2)(a)** through **c.(2)(d)**, we will pay for "loss" to that property only if:

**(a)** Such "loss" is a direct result of the abrupt collapse of a building or structure insured under this Coverage Part; and

**(b)** The property is Covered Property under this Coverage Part.

**(5)** If personal property abruptly falls down or caves in and such collapse

is **not** the result of abrupt collapse of a building or structure, we will pay for direct "loss" to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse of personal property was caused by a Cause of Loss listed in **c.(2)(a)** through **c.(2)(d)** of this Coverage Extension;

**(b)** The personal property that collapses is inside a building; and

**(c)** The property that collapses is not of a kind listed in Paragraph **c.(4)** above of this Coverage Extension, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **c.(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Coverage Extension does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Coverage Extension shall not increase the Limit of Insurance provided in this Coverage Part.

**(8)** The term Covered Cause of Loss includes Collapse as described and limited in Paragraphs **c.(1)** through **c.(7)**.

**d.** Electronic Data

**(1)** This Coverage Extension does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** We will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss that applies to **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property.** To the extent that "electronic data" is not replaced or restored, the "loss" will be valued at the cost of replacement of the me-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**FM 101 05 16**                                                                                          **Page 22 of 40**

dia on which the "electronic data" was stored with blank media of substantially identical type.

**(3)** For the purposes of this Coverage Extension only, Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, that is designed to damage or destroy any part of the system or disrupt its normal operation. However, there is no coverage for "loss" caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system or "electronic data".

**(4)** The most we will pay for all direct "loss" under this Coverage Extension, regardless of the number of "premises" or computer systems involved, is $2,500. This limit is the most we will pay for the total of all direct "loss" arising out of all occurrences that take place in the "coverage term". If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent "loss" sustained in the "coverage term". A balance remaining in a "coverage term" does not carry over to the next "coverage term". With respect to an occurrence which begins in the "coverage term" and continues or results in additional "loss" in a subsequent "coverage term", all "loss" is deemed to be sustained in the "coverage term" in which the occurrence began.

**e.** **Exhibitions, Fairs or Trade Shows**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered property of others, while it is located at exhibitions, fairs and trade shows. This Coverage Extension does not apply while Covered Property is in transit to or from the exhibition, fair or trade show.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided under this Coverage Extension does not apply per location.

**f.** **Fences**

We will pay for direct "loss" caused by a Covered Cause of Loss to your outdoor fences that are located within 1,000 feet of the "premises" and not otherwise insured as Covered Property in this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

**g.** **Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage**

**(1)** The coverage described in Paragraphs **g.(2)** and **g.(3)** of this Coverage Extension only apply when the "fungi", wet or dry rot or bacteria is the result of a Covered Cause of Loss that occurs during the "coverage term" and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

**(2)** We will pay for "loss" by "fungi", wet or dry rot or bacteria. As used in this Coverage Extension, the term "loss" means:

**(a)** Direct "loss" to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet or dry rot or bacteria are present.

**(3)** For the coverage described under Paragraph **g.(2)** of this Coverage Extension, the most we will pay for "loss", regardless of the number of claims, is $15,000. This limit is the most we will pay for the total of all "loss" arising out of all occurrences that take place in the "coverage term". With respect to a particular occurrence of "loss" which results in "fungi", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungi", wet or dry rot or bacteria continues to be pre-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

sent or active, or recurs, in a subsequent "coverage term".

**(4)** The coverage provided under this Coverage Extension does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in "loss" by "fungi", wet or dry rot or bacteria, and other "loss", we will not pay more, for the total of all "loss" than the applicable Limit of Insurance on the affected Covered Property.

If there is covered "loss" to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Coverage Extension, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the "loss". Any such increase in the "loss" will be subject to the terms of this Coverage Extension.

**(5)** The terms of this Coverage Extension do not increase or reduce the coverage provided under:

**(a)** **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse;**

**(b)** **SECTION A. COVERAGE, 5. Coverage Extensions, s. Water, Other Liquids, Powder or Molten Material Damage**

**(6)** The following **(6)(a)** or **(6)(b)** apply only if "Business Income", "Rental Value", or Extra Expense Coverage applies to the "premises" and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable "Business Income", "Rental Value", or Extra Expense Coverage.

**(a)** If the "loss" which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to "loss" to property caused by "fungi", wet or dry rot or bacteria, then our payment under "Business Income" and/or Extra Expense is limited to the amount of "loss" and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered "suspension" of "operations" was caused by "loss" other than "fungi", wet or dry rot or bacteria but remedia-

tion of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for "loss" and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**(7)** This Coverage Extension does not apply to lawns, trees, plants or shrubs that are part of any vegetative roof.

**h.** <u>Glass</u>

**(1)** If a Covered Cause of Loss occurs to building glass that is Covered Property, we will also pay necessary expenses you incur to:

**(a)** Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

**(b)** Repair or replace encasing frames;

**(c)** Remove or replace obstructions (except expenses to remove or replace window displays); and

**(d)** Repair or replace alarm tapes.

**(2)** If you are a tenant at a covered "premises" and:

**(a)** The building you occupy is not Covered Property; and

**(b)** You are legally liable for direct "loss" to the building glass in that building;

such building glass, for the purposes of this Paragraph **h.(2)**, is Covered Property. The most we will pay for "loss" in any one occurrence is $5,000. This building glass is subject to the building deductible as described in **SECTION C. DEDUCTIBLE.**

**(3)** For the purposes of this Coverage Extension only, **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

**(a)** Exclusion **(1)(b)** Earth Movement;

**(b)** Exclusion **(1)(c)** Governmental Action;

Electronically Filed 01/09/2023 08:39 / CV 23 973598 / Confirmation Nbr. 2742954 / CLJSZ

**FM 101 05 16**                     Includes copyrighted material of Insurance                     **Page 24 of 40**
Services Office, Inc., with its permission.

**(c)** **Exclusion (1)(d) Nuclear Hazard;**

**(d)** **Exclusion (1)(f) War and Military Action;**

**(e)** **Exclusion (2)(d)1)** Wear and tear; and

**(f)** As listed in **Exclusion (2)(d)2)**: Rust or other corrosion, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

**i.** **Newly Purchased, Leased or Constructed Property**

**(1)** **Buildings**

If buildings are Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to:

**(a)** Your new buildings or additions while being built on the "premises";

**(b)** Buildings you newly purchase or become newly required to insure by written contract that are:

**1)** Intended for use by you as a warehouse; or

**2)** Similarly used by you as buildings insured under this Coverage Part.

The most we will pay for "loss" in any one occurrence to a building under this Coverage Extension is 1,000,000 for each building.

**(2)** **Business Personal Property**

**(a)** If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to business personal property you newly purchase or are required to insure by written contract:

**1)** While located at buildings described in Paragraph **a.(1)** of this Coverage Extension; or

**2)** While located in a leased building or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

**(b)** Paragraph **a.(2)(a)** of this Coverage Extension does not apply to:

**1)** Any business personal property covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs, or Trade Shows** or **m. Property Off Premises;**

**2)** Any business personal property that is covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, p. Transportation** or is otherwise considered to be in-transit to or from a "premises".

**3)** Business personal property of others that is temporarily in your possession in the course of installing or performing work on such property, or temporarily in your possession in the course of your manufacturing or wholesaling activities.

The most we will pay for "loss" in any one occurrence to your Business Personal Property under this Coverage Extension is $500,000 at each building.

**(3)** **Period of Coverage**

Coverage provided under this Coverage Extension will end when any of the following first occurs:

**(a)** This policy expires,

**(b)** For buildings described in Paragraph **(1)(a)** of this Coverage Extension, 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

**(c)** For business property described in Paragraph **(1)(b)** and Paragraph **(2)(a)1)**, 90 days after your purchase or lease;

**(d)** For business personal property described in Paragraph **(2)(a)2)**, 90 days from the effective date

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

of the lease of the building space in the building; or

**(e)** You report values to us.

We will charge you additional premium for values reported from the date you lease or purchase the property, or begin construction on that part of the building that would qualify as Covered Property.

**j.** **Nonowned Building Damage**

If you are a tenant at a covered "premises" and:

**(1)** The building you occupy is not Covered Property; and

**(2)** You are legally liable for direct "loss" to that building;

We will pay for direct "loss" to that building caused by burglary, robbery, theft or attempted theft.

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

    **(a)** Repair or replacement of encasing frames or alarm tapes; and

    **(b)** Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

This Coverage Extension does not apply if you have purchased other insurance in your name on the building you occupy as required by the lease.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

**k.** **Outdoor Property**

We will pay for direct "loss" caused by a Covered Cause of Loss to the following types of your Covered Property:

**(1)** Radio antennas, television antennas or satellite dishes (including their lead-in wiring, masts and towers);

**(2)** Trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or part of a vegetative roof), including debris removal ; and

**(3)** If you are a tenant, to your awnings that are attached to a building you occupy;

but only if caused by or resulting from any of the following causes of loss if they are included as Covered Causes of Loss under this Coverage Part:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion;

**(5)** Aircraft; or

**(6)** Falling objects.

We will pay for the debris removal expenses of the above type property that are not your Covered Property if such debris is on your "premises" due to the Covered Causes of Loss described in this Coverage Extension. If you are a tenant, we do not pay debris removal expenses for trees, plants or shrubs owned by the landlord or owner of the building you occupy.

No other coverage for debris removal expenses provided in this Coverage Part applies to this Outdoor Property Coverage Extension.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000, but not more than $1,000 for any one tree, shrub or plant.

**l.** **Personal Effects**

If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to personal effects owned by:

**(1)** You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

**(2)** Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business. However, employee tools are not covered for theft.

This Coverage Extension does not apply to "money" or "securities".

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Coverage Extension has a $500 per occurrence limitation for direct "loss" by theft.

Electronically Filed 01/09/2023 08:39 / CV23 973508 / Confirmation Nbr. 2742954 / CLJSZ

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**FM 101 05 16**                                               **Page 26 of 40**

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

**m. Property Off Premises**

(1) We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others, while it is away from the "premises", if it is:

    (a) Temporarily at a location you do not own, lease or operate; or

    (b) In storage at a location you lease, provided the lease was executed for the first time after the beginning of the current "coverage term".

(2) This Coverage Extension does not apply to Covered Property at exhibitions, fairs, trade show, or in transit.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**n. Signs**

We will pay for direct "loss" caused by a Covered Cause of Loss, including debris removal expense, to signs not otherwise insured by this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**o. Trailers (Nonowned Detached)**

(1) If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to trailers that you do not own, provided that:

    (a) The trailer is used in your business;

    (b) The trailer is temporarily in your care, custody or control at the "premises"; and

    (c) You have a contractual responsibility to pay for "loss" to the trailer.

(2) We will not pay for any direct "loss" that occurs:

    (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

    (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) This insurance is excess over the amount due, whether you can collect on it or not, from any other insurance covering such property.

(4) This Coverage Extension does not apply to any property inside or on the trailer.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

**p. Transportation**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others while it is in or on a vehicle, including loading and unloading of the property.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**q. Utility Services**

We will pay for:

(1) Direct "loss" to Covered Property at your "premises" except for direct "loss" resulting from the partial or complete failure of Wastewater Removal Services; and

(2) Loss of "Business Income" you sustain and Extra Expenses you incur as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense;**

caused by or resulting from the partial or complete failure of utility services to the "premises".

The partial or complete failure of the utility services listed below must be caused by direct "loss" caused by a Covered Cause of Loss to the following property:

(1) Power Supply Property, meaning the following types of property supplying

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**FM 101 05 16**

electricity, steam or natural gas to the "premises":

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Substations;

**(d)** Transformers; and

**(e)** Transmission, distribution, service, or similar lines, excluding all such overhead lines of any type.

**(2)** Water Supply Property, meaning the following types of property supplying water to the "premises":

**(a)** Pumping stations; and

**(b)** Water mains.

**(3)** Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the "premises", other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities. Coverage under this Coverage Extension does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

**(4)** Communication Supply Property, meaning property supplying communication services, including service relating to Internet access or access to any electronic, cellular or satellite network; telephone, radio, microwave or television services to the "premises", such as:

**(a)** Communication transmission, distribution, service or similar lines, including fiber optic lines, excluding all such overhead lines of any type;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays, excluding satellites.

This Coverage Extension does not apply to "loss" to "electronic data", including destruction or corruption of "electronic data".

The most we will pay for all direct "loss" and loss of "Business Income" and Extra Expense in any one occurrence is $25,000.

**r.** **Valuable Papers and Records**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1)** Subject to Paragraph **r.(3)** of this Coverage Extension, we will pay necessary costs you incur to research, replace or restore lost or damaged information on "valuable papers and records" that are your property or the property of others in your care, custody or control; resulting from direct "loss" caused by a Covered Cause of Loss.

**(2)** Coverage does not apply to:

**(a)** Property that cannot be replaced with other property of like kind and quality;

**(b)** Property held as samples or for delivery after sale;

**(c)** Property in storage away from the "premises", except as provided in Paragraph **r.(4)(b)** of this Coverage Extension;

**(d)** Contraband, or property in the course of illegal transportation or trade;

**(e)** "Valuable papers and records" in the form of "electronic data", including the materials on which the "electronic data" is recorded.

**(3)** The most we will pay for "loss" is the least of the following amounts:

**(a)** The cost of reasonably restoring the damaged property to its condition immediately before the "loss";

**(b)** The cost of replacing the damaged property with substantially identical property; or

**(c)** The actual cash value of the damaged property at the time of "loss".

However, we will not pay for "loss" unless or until the damaged property is actually replaced or restored; and then only if such replacement or restoration occurs within 36 months from the date of direct "loss".

**(4)** We will extend coverage to include:

**(a)** **Removal**

If you give us written notice within 30 days of removal of your "valuable papers and records"

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for direct "loss" while they are:

1) At a safe place away from your "premises"; or

2) Being taken to and returned from that place.

This Removal coverage is included within the Limits of Insurance applicable to this Coverage Extension.

**(b) Away From Your Premises**

We will pay up to $5,000 in any one occurrence, regardless of the number of locations, for direct "loss" caused by a Covered Cause of Loss to "valuable papers and records" while they are away from your "premises".

This Away From Premises limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

**(5) SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension except as follows:

**(a) Exclusion (1)(c) Governmental Action;**

**(b) Exclusion (1)(d) Nuclear Hazard; and**

**(c) Exclusion (1)(f) War and Military Action.**

**(6)** In addition to Paragraph **r.(5)** of this Coverage Extension, we will not pay for direct "loss" resulting from any of the following:

**(a)** Dishonest or criminal acts by:

1) You, your partners, employees, directors, trustees or authorized representatives;

2) A manager or a member if you are a limited liability company;

3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

4) Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **r.(6)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **r.(6)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

**(b)** Errors or omissions in processing or copying. However, we will pay for that portion of direct "loss" caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Part.

**(c)** Electrical or magnetic injury, disturbance or erasure of electronic recordings. But we will pay for direct "loss" caused by lightning.

**(d)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

The most we will pay for "loss" in any one occurrence is $25,000.

**s. Water Damage, Other Liquids, Powder or Molten Material Damage**

If a covered direct "loss" to which this insurance applies was caused by or resulted from water or other liquid, powder or molten material damage, we will also pay the cost to tear out and replace any otherwise undamaged part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

**SECTION B. LIMITS OF INSURANCE**

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations, except as amended in **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, 4. Additional Coverages,** and **5. Coverage Extensions.**

**SECTION C. DEDUCTIBLE**

Except as otherwise provided; in any one occurrence of direct "loss" we will first reduce the amount of "loss" if required by **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** or **SECTION F. OPTIONAL COVERAGES, 1. Agreed Value.** If the adjusted amount of direct "loss" is less than or equal to the Deductible, we will not pay for that direct "loss". If the adjusted amount of direct "loss" exceeds the Deductible, we will then

Electronically Filed 01/09/2023 08:39 / / CV 23-18758 / Confirmation Nbr. 2742984 / CL-JSZ

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**FM 101 05 16**
**Page 29 of 40**

subtract the Deductible from the adjusted amount of direct "loss", and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves direct "loss" to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

1. **Deductible Examples**

   **Example No. 1:**

   (This example assumes there is no coinsurance penalty as outlined in **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**).

   | | |
   |---|---|
   | Deductible: | $250 |
   | Limit of Insurance - Bldg. 1: | $60,000 |
   | Limit of Insurance - Bldg. 2: | $80,000 |
   | "Loss" to Bldg. 1: | $60,100 |
   | "Loss" to Bldg. 2: | $90,000 |

   The amount of "loss" to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

   The Deductible will be subtracted from the amount of "loss" in calculating the "loss" payable for Bldg. 1:

   $60,100 - $250 = $59,850 "Loss" Payable - Bldg. 1

   The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of "loss" payable for Bldg. 2. "Loss" payable for Bldg. 2 is the Limit of Insurance of $80,000.

   Total amount of "loss" payable:  $59,850 + 80,000 = $139,850.

   **Example No. 2:**

   (This example also assumes there is no coinsurance penalty).

   The Deductible and Limits of Insurance are the same as those in Example No. 1:

   "Loss" to Bldg. 1: $70,000 (Exceeds Limit of Insurance plus Deductible)

   "Loss" to Bldg. 2: $90,000 (Exceeds Limit of Insurance plus Deductible)

   "Loss" Payable - Bldg. 1:  $60,000 (Limit of Insurance)

   "Loss" Payable - Bldg. 2:  $80,000 (Limit of Insurance)

   Total amount of "loss" payable: $140,000.

2. **Glass Deductible**

   When direct "loss" to the building you occupy only involves building glass, the Deductible for that "loss" will be the lesser of:

   a. $500; or

   b. The Deductible shown in the Declarations for that Covered Property.

**SECTION D. LOSS CONDITIONS**

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS**.

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we still retain our right to deny the claim.

3. **Duties in the Event of Loss or Damage**

   a. In the event of "loss" to Covered Property, you must see that the following are done in order for coverage to apply:

      (1) Notify the police if a law may have been broken.

      (2) Give us prompt notice of the "loss". Include a description of the property involved.

      (3) As soon as possible, give us a description of how, when and where the "loss" occurred.

      (4) Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Keep a

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**FM 101 05 16**   **Page 30 of 40**

record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase your limit of insurance. However, in no event will we pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of "loss" claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

**(7)** Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4.** **Loss Payment**

**a.** In the event of "loss" insured by this Coverage Part, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **SECTION D. LOSS CONDITIONS, 7. Valuation** or any applicable provision that amends or supercedes this valuation condition.

**b.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property, except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust "losses" with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** Our payment for "loss" to personal property of others and personal effects will only be for the account of the owner of the property.

**g.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**h.** We will pay for insured "loss" within 30 days after we receive the sworn proof of loss if you have complied with all of the terms of this Coverage Part; and

**(1)** We have reached agreement with you on the amount of "loss"; or

**(2)** An appraisal award has been made.

**i.** **Loss Payment - Ordinance or Law.**

With respect to **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law:**

**(1)** **Loss of Use of Undamaged Parts of Building**

When there is a loss in value of an undamaged portion of a building or structure to which this coverage applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(a) If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is repaired or replaced, on the same "premises" or another "premises"; we will not pay more than the lesser of:

1) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same "premises" and to the same height, floor area, style and comparable quality of the original property insured; or

2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

(b) If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is not repaired or replaced, or if the Replacement Cost Coverage Option does not apply, we will not pay more than the lesser of:

1) The "actual cash value" of the building at the time of "loss"; or

2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

**(2) Demolition Costs**

Loss payment for Demolition Costs will be determined as follows:

We will not pay more than the lesser of the following:

(a) The amount you actually spend to demolish and clear the site of the "premises"; or

(b) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Demolition Costs** for the building that has suffered "loss".

**(3) Increased Costs of Construction**

Loss payment for **Increased Costs of Construction** will be determined as follows:

(a) We will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same "premises" or another location and unless the repairs or replacement are made as soon as reasonably possible after the direct "loss", not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same "premises", or if you elect to rebuild at another "premises", the most we will pay for the **Increased cost of construction** is the lesser of:

1) The increased cost of construction at the same "premises"; or

2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suffered "loss".

(c) If the ordinance or law requires relocation to another location the most we will pay for the increased cost of construction is the lesser of:

1) The increased cost of construction at the new location; or

2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suffered "loss".

**(4) Proportional Payments**

If the building or structure sustains both direct "loss" that is covered un-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**FM 101 05 16**                                                                   **Page 32 of 40**

der this Coverage Part and direct "loss" that is not covered under this Coverage Part; and as a result of the direct "loss" in its entirety you are required to comply with the ordinance or law, we will not pay the full amount of direct "loss" otherwise payable under the terms of **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law**. Instead, we will pay a proportion of such direct "loss"; meaning the proportion that the covered direct "loss" bears to the total direct "loss".

**j. Loss Determination - Business Income and Extra Expense**

With respect to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense,**

**(1)** The amount of "Business Income" and "Rental Value" "loss" will be determined based on:

**(a)** The Net Income of the business before the direct "loss" occurred;

**(b)** The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(c)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

**(d)** Other relevant sources of information, including;

**1)** Your financial records and accounting procedures;

**2)** Bills, invoices and other vouchers; and

**3)** Deeds, liens or contracts.

**(2)** The amount of Extra Expense will be determined based on:

**(a)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct "loss"

had occurred. We will deduct from the total of such expenses:

**1)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**2)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(b)** Necessary expenses that reduce the "Business Income" and "Rental Value" "loss" that otherwise would have been incurred.

**(3) Resumption of Operations**

We will reduce the amount of your:

**(a)** "Business Income" and "Rental Value" "loss", other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or "stock") at the "premises" or elsewhere.

**(b)** Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

**(4)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**k. Party Walls**

A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the "loss" to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the "loss" to the party wall, subject to all applicable policy provisions all other provisions of this **SECTION D. LOSS CONDITIONS, 4. Loss Payment** including:

Electronically Filed 01/09/2023 08:39 / / CV 23 / CV 23078509 / Confirmation Nbr. 2742964 / CLJSZ
Includes copyrighted material of Insurance
**FM 101 05 16**            Services Office, Inc., with its permission.            **Page 33 of 40**

**(1)** Limit of Insurance shown in the Declarations;

**(2)** **SECTION D. LOSS CONDITIONS, 7. Valuation**; and

**(3)** **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**.

Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of **COMMERCIAL PROPERTY CONDITIONS, I. Transfer Of Rights Of Recovery Against Others To Us** in this Coverage Part.

**5.** **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6.** **Vacancy**

**a.** **Description of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this Coverage Part is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this Coverage Part is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**1)** Rented to a lessee or sublessee and used by them to conduct their customary operations; or

**2)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b.** **Vacancy Provisions**

If the building where direct "loss" occurs has been vacant for more than 60 consecutive days before that "loss", we will:

**(1)** Not pay for any "loss" caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** Reduce the amount we would otherwise pay for the "loss" by 15% with respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** of this Loss Condition.

**7.** **Valuation**

We will determine the value of Covered Property in the event of direct "loss" as follows:

**a.** At "Actual Cash Value" as of the time of direct "loss", except as provided in **b., c., d.,** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

Electronically Filed 01/09/2023 08:39 | CV 23 973508 | Confirmation Nbr. 2742954 | CLJSZ

Includes copyrighted material of Insurance

FM 101 05 16                     Services Office, Inc., with its permission.                     Page 34 of 40

**d.** Glass at the cost of replacement with safety glazing material if required by law.

**e.** Tenant's Improvements and Betterments at:

**(1)** Replacement Cost of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the "loss" or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**(4)** For the purposes of valuation, tenants' improvements and betterments are not considered to be the personal property of others.

## SECTION E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any "loss" if the value of Covered Property at the time of direct "loss" times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of direct "loss" by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in step **(1)**;

**(3)** Multiply to the total amount of "loss", before the application of any deductible, by the figure determined in step **(2)**; and

**(4)** Subtract the deductible from the figure determined in step **(3)**.

We will pay the amount determined in step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the "loss" yourself.

**Example No. 1 (Underinsurance):**

| | |
|---|---|
| The value of the property is: | $250,000 |
| The coinsurance percentage is: | 80% |
| The Limit of Insurance is: | $100,000 |
| The Deductible is: | $250 |
| The amount of "loss" is: | $40,000 |

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$100,000 divided by $200,000 = .50

Step (3):

$40,000 X .50 = $20,000

Step (4):

$20,000 - $250 = $19,750.

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

| | |
|---|---|
| The value of the property is: | $250,000 |
| The coinsurance percentage is: | 80% |
| The Limit of Insurance is: | $200,000 |
| The Deductible is: | $250 |
| The amount of "loss" is: | $40,000 |

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$200,000 : $200,000 = 1.00

Step (3):

$40,000 X 1.00 = $40,000

Step (4):

$40,000 - $250 = $39,750.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

We will pay no more than $39,750 "loss" in excess of the Deductible. No penalty applies.

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

The values of the property are:

| | |
|---|---|
| Bldg. at Location No. 1: | $75,000 |
| Bldg. at Location No. 2: | $100,000 |
| Personal Property at Location No. 2: | $75,000 |
| | 250,000 |

| | |
|---|---|
| The coinsurance percentage is: | 90% |
| The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is: | $180,000 |
| The Deductible is: | $1,000 |
| The amount of "loss" is: | |
| Bldg. at Location No. 2: | $30,000 |
| Personal Property at Location No. 2: | $20,000 |
| | $50,000 |

Step (1):

$250,000 X 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):

$180,000 : $225,000 = .80

Step (3):

$50,000 X .80 =  $40,000

Step (4):

$40,000 - $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2.** **Mortgage Holders**

**a.** The term "mortgage holder" includes trustee.

**b.** We will pay for covered "loss" to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply

with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

**e.** If we pay the mortgage holder for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgage holder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgage holder at least ten days before the expiration date of this policy.

**SECTION F. OPTIONAL COVERAGES**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1. **Agreed Value**

   a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for direct "loss" to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Limit of Insurance indicated in the most current Statement of Values that applies to this Coverage Part.

   b. If the Agreed Value Optional Coverage is deleted from the policy, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage does not apply.

   c. The terms of this Optional Coverage apply only to "loss" that occurs:

      (1) On or after the effective date of this Optional Coverage; and

      (2) Before the policy expiration date.

   d. This Agreed Value Optional Coverage does not apply to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense.**

2. **Inflation Guard**

   a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

      (1) The Limit of Insurance that applied on the beginning of the current "coverage term" or any other Coverage Part change amending the Limit of Insurance, multiplied by

      (2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), multiplied by

      (3) The number of days since the beginning of the current "coverage term" or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365. In the event of "loss", this number of days ends at the original date of "loss".

      Example:

      If: The applicable Limit of Insurance is: $100,000

      The Annual percentage increase is: 8%

      The number of days since the beginning of the policy year (or last policy change) is: 146

      The amount of increase is $100,000 X .08 X (146/365) = $3,200

3. **Replacement Cost**

   a. Replacement Cost (without deduction for depreciation) replaces "Actual Cash Value" in **SECTION D. LOSS CONDITIONS, 7. Valuation** of this **BUILDING AND PERSONAL PROPERTY COVERAGE FORM.**

   b. This Optional Coverage does not apply to:

      (1) Personal Property of others, except leased personal property as described in **SECTION A. COVERAGE, 1. Covered Property, d.(7).** The valuation of such leased personal property will be based on the amount for which you are liable under the lease, but not to exceed the replacement cost of the leased item.

      (2) Personal effects;

      (3) Contents of a residence;

      (4) Manuscripts;

      (5) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac;

      (6) "Stock" unless the Replacement Cost including "Stock" option is shown in the Declarations; or

      (7) Property, that at the time of "loss":

         (a) Is outdated, or obsolete and is stored or not being used; or

         (b) Has no practical value to you.

   c. You may make a claim for "loss" covered by this insurance on an "Actual Cash Value" basis instead of on a replacement cost basis. In the event you elect to have "loss" settled on an "Actual Cash Value" basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the "loss".

   d. We will not pay on a replacement cost basis for any "loss":

      (1) Until the lost or damaged property is actually repaired or replaced with other property of generally the same construction and used for the same

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

purpose as the lost or damaged property; and

(2) Unless the repairs or replacement have been completed or at least underway within 2 years following the date of "loss".

e. We will not pay more for "loss" on a replacement cost basis than the least of:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace, on the same "premises", the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use, or repair of any building or structure except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

## SECTION G. DEFINITIONS

1. "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

2. "Business Income" means the:

a. Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

b. Continuing normal operating expenses sustained, including payroll.

3. "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

4. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

a. The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if

any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

(1) The day the policy period shown in the Declarations ends; or

(2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

5. "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

6. "Finished stock" means stock you have manufactured, except "stock" you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

7. "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

8. "Loss" means accidental physical loss or accidental physical damage.

9. "Money" means:

a. Currency, coins and bank notes whether or not in current use; and

b. Travelers checks, registered checks and money orders held for sale to the public.

10. "Operations" means:

a. Your business activities occurring at the "premises"; and

b. The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

11. "Period of restoration" means the period of time that:

a. Begins at the time of direct "loss".

b. Ends on the earlier of:

Includes copyrighted material of Insurance

**FM 101 05 16**          Services Office, Inc., with its permission.          **Page 38 of 40**

**(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

**c.** "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

**d.** The expiration date of the policy will not cut short the "period of restoration".

**12.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** You use, generate or produce the "pollutant".

**13.** "Premises" means the Locations and Buildings described in the Declarations.

**14.** "Rental Value" means "Business Income" that consists of :

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that "premises", including:

**(1)** Payroll; and

**(2)** The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**15.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps whether or not in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which are not of your own issue; but does not include "money". Lottery tickets held for sale are not "securities" or evidences of debt.

**16.** "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the Covered Property into subterranean voids created by the action of water on a limestone or similar rock formation. This does not include:

**a.** The cost of filling sinkholes;

**b.** Sinking or collapse of land into man-made subterranean cavities; or

**c.** The value of the land.

**17.** "Specified causes of loss" means fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects; weight of snow, ice or sleet; and water damage.

**a.** Falling objects does not include "loss" to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**b.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the "premises" and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**FM 101 05 16**

But water damage does not include "loss" otherwise excluded under the terms of **BUILDING AND BUSINESS PERSONAL PROPERTY, SECTION A. COVERAGE, 3. Covered Causes of Loss, (g) Water**. Therefore, for example, there is no coverage under this Coverage Part in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Exclusion **(g) Water**, there is no coverage for "loss" caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **18.b.(1)** or **18.b.(2)** of this definition of "Specified causes of loss", such water is not subject to the provisions of Exclusion **(g) Water.**

18. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

19. "Suspension" means:

   **a.** The slowdown or cessation of your business activities; and

   **b.** That a part or all of the "premises" is rendered untenantable.

20. "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information.

   But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

Electronically Filed 01/09/2023 08:39 / CV/23 973508 / Confirmation Nbr. 2742954 / CLJSZ
FM 101 05 16              Includes copyrighted material of Insurance
Services Office, Inc., with its permission.              Page 40 of 40

# NOTICE TO POLICYHOLDERS
# COMMERCIAL PROPERTY COVERAGE PART
# DESCRIPTION OF REVISIONS EDITION 05 16

This is a summary of the major changes in your Commercial Property Coverage Forms. NO COVERAGE IS PROVIDED BY THIS SUMMARY nor can it be construed to replace any provisions of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

The areas within the policy that broaden, reduce or clarify coverage are indicated below. The material is organized by individual coverage forms; however, not all coverage forms are included in a particular policy.

## AMENDMENTS TO COMMERCIAL PROPERTY COVERAGE FORM FM 101:

Below is a description of amendments to our **FM 101** coverage form, which is our base form for Building and Personal Property coverage. Our **FM 101** is being revised to become more up-to-date with ISO's Commercial Property forms and endorsements. With our revised **FM 101** coverage form and our corresponding commercial property forms and endorsements we are incorporating many of ISO's Countrywide Commercial Property form changes, having edition dates 06 07 and 10 12.

## Editorial Changes Only:

Many of the form revisions are editorial in nature. Examples of editorial changes made in our revised forms include the following:

Items in a form may be re-numbered or re-lettered if such referenced item number or letter changed within the **FM 101** form.

Direct physical "loss" is now described simply as direct "loss", thereby dropping the unneeded word *physical*.

Quotation marks have been removed from the word "loss" in many cases where *loss* is not being used as a defined term. In **FM 101** "loss" is defined as "accidental physical loss or accidental physical damage". Expenses incurred due to physical damage are not themselves physical damage, loss payments for business income or extra expense due to "loss" are not payments for physical damage itself. In our forms we have clarified that loss has a broader sense than "loss" when used as a defined term.

Extra Expense is no longer a defined term and the quotation marks for it are removed in all of our forms.

Defined words and terms are no longer in bold type (unless they are part of a heading).

The phrase, "For the purposes of this endorsement only," is inserted as a lead-in for many items listed in our endorsements, for clarification.

In paragraphs indicating that a loss will be paid, the phrase, "in any one occurrence", has been moved to be in front of the payment limits, for emphasis, rather than having the phrase at the end of the sentence.

## Building and Personal Property Coverage Form (Including Special Causes of Loss) - FM 101 05 16

### Section A. COVERAGE, 1. Covered Property, d. Business Personal Property

- Business Personal Property is expanded to include property in buildings or structures. (Broadening)

- Business Personal Property "in the open", or "in a vehicle" does not expressly handle situations in which business personal property is located outside of the covered building, but still on premises in a storage unit. Coverage is extended to Business Personal Property in a portable storage unit, more like a POD. The base sublimit, which can be increased, will be $10,000.

We will use our 1,000 feet coverage boundary for Business Personal Property outside a building. (Broadening)

- For tenants in multi-story buildings it makes a difference whether coverage applies outside the building or outside their premises. Language is added that the greater of those distances applies. (Broadening)

### SECTION A. COVERAGE, 2. Property Not Covered

#### e. Electronic Data:

- Electronic data which is integrated into building systems for lighting, elevators, heating, ventilation, A/C, or security is considered part of the

coverage on the building and is not subject to Electronic Data exclusion. (Broadening)

h. **Land, Water or Growing Crops:**

- Lawns that are part of a vegetative roof are considered covered property. (Broadening)

## SECTION A. COVERAGE, 3.a. Covered Causes of Loss

As ISO has done in reaction to court decisions, we are deleting the word "Risks" from the preamble to the Covered Causes of Loss section of **FM 101**. Item **3.a.** is changed from "Risks of Direct Physical Loss" to "Covered Causes of Loss". (Clarification)

## SECTION A. COVERAGE, 3.b. Exclusions, (1)

(a) **Ordinance or Law:**

- Exclusion is clarified to exclude loss due to compliance with local ordinances. (Clarification)

(b) **Earth Movement:**

- Clarifies Earthquake includes tremors and aftershocks. (Clarification)

- Clarifies man-made causes (excavating, hydro fracking) are excluded as well as naturally caused earthquakes. (Clarification)

- Removes exception to earthquake exclusion for office equipment, Accounts Receivable, Valuable Papers and Records, and Transportation. (Reduction)

(e) **Utility Services:**

- Clarifies that owned equipment on the customer's premises is still considered as part of the utility service and excluded. An example of such equipment would be a transformer (property of utility) on the insured's premises. (Clarification)

- Removes the special Business Income exclusion for utility service outside building. (Clarification)

(g) **Water:**

- Incorporates ISO's **CP 10 32** endorsement wording (drafted to address post-Katrina issues) into our water exclusion. Clarifies that we exclude storm surge and includes examples of excluded events. (Clarification)

- Definition of flood added that matches our Flood Coverage Endorsement **FA 104**. (Clarification)

- Removes exception to water exclusion for office equipment, Accounts Receivable, Valuable Papers and Records, and Transportation. (Reduction)

- Flood exclusion language matches our Flood **FA 104** coverage buyback. (Clarification)

- Exclusion reorganized to make waterborne material its own paragraph. (Clarification)

## SECTION A. COVERAGE, 3.b. Exclusions, (2)

(a) **Electrical Current:**

- Updates the exclusion language to match the endorsement buyback with current technology about power sources and associated systems, specifically with respect to power surges. (Broadening)

(h) **Dishonest or Criminal Acts:**

- Paragraph title is amended from "Dishonest Acts" to "Dishonest or Criminal Acts". (Clarification)

- The exclusion applies in full for dishonest or criminal acts, including theft, for those who have a role in the insured's business (partners, managers, directors, trustees, employees, authorized representatives). But for people who are entrusted with the insured's property (a category that would include tenants and bailees), only theft is excluded. (Broadening)

- The exception to the exclusion that covers acts of destruction by employees now includes authorized representatives. (Broadening)

(i) **Voluntary Parting Under False Pretense:**

- Paragraph title is amended from "False Pretense" to "Voluntary Parting Under False Pretense". (Clarification)

(k) **Collapse:**

- Clarifies policy intent that an insured event of collapse must be abrupt. (Clarification)

- Reformats language to track with Collapse coverage extension. (Clarification)

(m) **Loss or Damage to Product:**

- Renames the "Work Process" exclusion to be "Loss or Damage to Product". Clarifies policy intent that only the property being processed at time of loss is excluded. Loss caused by

that damaged Business Personal Property is covered. The exclusion is worded more like E&O. (Broadening)

## SECTION A. COVERAGE, 3.b. Exclusions, (4)

**Special Exclusions - Utility Service Business Income Exclusions:**

- Item **(a)** on the prior **FM 101** form, special Business Income limitation, is now deleted. Direct and indirect exclusions are both worded such that any component of the utility delivery system, even if on the insured premises, is considered part of the utility service. (Clarification)

## SECTION A. COVERAGE, 3.c. Limitations, (1)

### (f)  Gutters and Downspouts:

- This limitation for loss caused by weight of ice, snow or sleet has been removed. With the Gutters and Downspouts limitation removed, Transferred Property becomes Item **(f)** instead of Item **(g)**. (Broadening)

### (g)  Vegetative Roofs:

- Vegetative roofs are considered as part of the building. Coverage is added for vegetative roofs which was previously Property Not Covered. (Broadening)

## SECTION A. COVERAGE, 3.c. Limitations, (4)

**Limitation - System or Appliance Defects:**

Relocated the second paragraph in our prior **FM 101** form for Coverage Extension **s. Water, Other Liquids, Powder or Molten Material Damage** to this new item under Limitations to more clearly indicate that we exclude any loss to the substance that escapes the system. (Clarification)

## SECTION A. COVERAGE, 4. Additional Coverages

### b.  Debris Removal:
Coverage is broadened to include debris of others on the insured's premises as long as such debris is Covered Property on the policy and is a result of a Covered Cause of Loss. (Broadening)

### c.  Fire Department Service Charge:
Clarifies our limit is the most we pay regardless of the number of fire departments that respond or services they provide. (Clarification)

### f.  Key and Lock Expense:
Coverage is broadened to include a master key. (Broadening)

### g.  Ordinance or Law:
Language is amended to include "compliance" with the required ordinance or law that deals with rebuilding after a loss. (Clarification)

## SECTION A. COVERAGE, 5. Coverage Extensions

We have amended the opening phrase for coverages identified within the Coverage Extensions portion of the **FM 101**, to indicate "We will pay for direct "loss"…...". This replaces the previous beginning phrase in most Coverage Extensions, "You may extend the insurance provided by this <u>Coverage Part</u> to apply to "loss" ......". We have changed the opening phrase for clarification because our intent is to apply the **FM 101** <u>base</u> form Covered Causes of Loss to Covered Property, not to indicate that any coverage provided anywhere in Division 5 applies to the Coverage Extensions. (Clarification)

### b.  Business Income and Extra Expense:

#### (1)  Business Income:

- Coverage is expanded to apply to property that is outside a covered building in a portable storage unit. (Broadening)

- Coverage for property within 1,000 feet of a building is expanded to include property within 1,000 feet of the premises. (Broadening)

- This same feature applies if our insured is the tenant for personal property in the open or   in a portable storage unit. (Broadening)

**Previous (3) Tenant Premises:**

**A.5. Coverage Extensions, b. Business Income and Extra Expense, (3) Tenant Premises**, explaining that the "premises" is the portion of the building the tenant rents, leases or occupies, including personal property in the open within 1,000 feet, is removed because it is now incorporated in the revised Business Income Coverage Forms **FA 212**, **FA 213** and **FA 216**. All subsequent items under Extension **b.** are renumbered accordingly. (Clarification)

#### (3)  Civil Authority:
This Item **(3)** was previously Item **(4)**. The intent of this coverage involves damage to a neighboring premises. We incorporated ISO's civil authority wording in ISO's Business Income Forms to clarify coverage intent, which was necessitated by post-911 security protocols. <u>ISO's Business Income Forms</u> now require that the damaged premises must be <u>within one mile</u> of the insured premises in order to qualify for Civil Authority coverage. However, we are less restrictive than ISO because we <u>do not include ISO's one</u>

mile restriction for Civil Authority coverage in our **FM 101**. Our Business Income coverage will apply for up to 30 days from the date of civil authority action, and our Extra Expense coverage will end 30 days after the time of action or when Business Income coverage ends, whichever is later. (Broadening)

**(5) Newly Purchased or Leased Locations:** This Item **(5)** was previously Item **(6)**. The word "acquired" has been deleted and the phrase "purchased or leased" has been added. This language tracks with the direct damage coverage extension for such property. (Clarification)

**c. Collapse:**

• The Collapse exclusion clarifies collapse must be abrupt. Further clarification is added to this Collapse coverage extension to explain what is not collapse. Even if the building shows signs it might collapse or is in the process of cracking or bulging, coverage does not apply. (Clarification)

**d. Electronic Data:**

• Since electronic data integrated into building systems is considered part of the building, it is not considered here as a coverage extension. (Broadening)

**e. Exhibitions, Fairs or Trade Shows:**

• Added "trade shows" to title of coverage since this is more contemporary language and gives broader coverage than before. (Broadening)

**g. Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage:**

• Item **g.(7)** clarifies that vegetative roofs do not get this coverage extension. (Clarification)

**i. Newly Purchased, Leased or Constructed Property:**

• The phrase "acquired or constructed" has been replaced with the phrase "purchased, leased or constructed" to more clearly state our coverage intent and not provide coverage for short term storage situations. (Clarification)

**j. Nonowned Building Damage:**

• Language is clarified to apply to the building the tenant occupies if the lease makes the tenant legally liable for direct losses. We will pay for direct loss to the building caused by

burglary, robbery, theft or attempted theft. This extension does not apply if the lease requires the tenant to insure the building. (Clarification)

**k. Outdoor Property:**

• The Debris Removal Additional Coverage is broadened to include removal of similar property of others that is now on the insured's premises. The same extension has been granted here since debris removal of trees, plants and shrubs is contained within this coverage extension. (Broadening)

**q. Utility Services:**

• Wastewater/Sewage treatment facilities are added as a utility service for Business Income only. However, coverage does not apply if the wastewater removal facility is overwhelmed itself with heavy rainfall or flooding. That falls under any Flood coverage, not Utility Services. (Broadening)

• Communication Supply Property now includes service relating to Internet access or access to electronic, cellular, or satellite networks. (Broadening)

• While the Utility Services exclusions are concerned with whether the Utility Service is on or off premises, the coverage extension focuses on the source of the utility failure. (Broadening)

• The "Overhead Transmission and Distribution Lines" reference has been broadened to apply to overhead lines of any type. (Broadening)

**s. Water Damage, Other Liquids, Powder or Molten Material Damage:**

• The word "Damage" has been added to title to distinguish it from water exclusion. (Clarification)

**SECTION D. LOSS CONDITIONS, 4. Loss Payment**

**i. Loss Payment - Ordinance or Law:**

• This section has been formatted to track more closely with the separate Ordinance or Law Coverage Forms. (Clarification)

**k. Party Walls:**

• A definition of party walls is added and Loss Payment provisions are introduced for claims involving building loss that affects multiple tenants. Under this insurance, loss payment re-

lating to a party wall reflects the insured's partial interest in that wall. However, if the owner of the adjoining building elects not to repair or replace that building (and the building insured under this insurance is being repaired or replaced), this insurance will pay the full value of the party wall subject to all other applicable policy provisions. (Broadening)

## SECTION D. LOSS CONDITIONS, 7. Valuation

Tenant's Improvements and Betterments has been broadened to replacement cost instead of actual cash value. (Broadening)

## SECTION F. OPTIONAL COVERAGES

1. **Agreed Value:**

   - Language is amended to compare the Limit of Insurance indicated in the Commercial Property Declarations to the Limit of Insurance indicated in the latest Statement of Values on file with our Company. (Clarification)

2. **Inflation Guard:**

   - Clarifies that coverage starts at the beginning of the current "coverage term" or the effective date of the most recent policy change. The number of days referenced in the policy language ends at the original date of loss. (Clarification)

## SECTION G. DEFINITIONS

6. Definition of "Extra Expense" in our prior **FM 101** form is removed as a defined term. The Extra Expense explanation is moved into the Business Income coverage agreement. All subsequent definitions are renumbered. (Clarification)

8. Definition of "Loss" is amended to indicate "accidental <u>physical</u> loss or accidental <u>physical</u> damage". This avoids stating this throughout the **FM 101**. (Clarification)

12. Definition of "Pollutants" is amended to add Asbestos and Petroleum Products so it tracks with our General Liability and Auto definitions. (Clarification)

13. Definition of "Premises" is amended to now track with how we indicate Covered Locations by referencing a Location - Building Number. (Clarification)

17. Definition of "Specified causes of loss" is amended to further explain the meaning of water damage. Coverage for water damage is expanded to include accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of certain off-

premises systems due to wear and tear. (Broadening)

## COMMERCIAL PROPERTY FORMS & ENDORSEMENTS (NOT SPECIAL PROGRAMS):

Below are Commercial Property forms and endorsements, other than our Special Program endorsements, that are amended to reflect changes in our revised **FM 101**. Since **FM 101** is our base form for Building and Personal Property coverage, each commercial property form or endorsement has incorporated all **FM 101** wording changes that apply.

## Business Personal Property Extension of Coverage Endorsement - FM 201 05 16

Adds **FM 101** language for Trade Shows, to now indicate "Exhibitions, Fairs or Trade Shows". (Broadening)

## Mortgage Interest Coverage Form - FA 102 05 16

Title is changed from "Mortgage Holder's Insurance Coverage Form" to "Mortgage Interest Coverage Form". This form incorporates all **FM 101** changes that apply to this endorsement. (Broadening)

## Flood Coverage Endorsement - FA 104 05 16

Our endorsement is worded to buy back the Flood coverage in our **FM 101** Water exclusion. It incorporates ISO's **CP 10 65** Flood Coverage wording. (Clarification)

## Temperature Change Loss Form - FA 202 05 16

Indicates that mechanical breakdown includes mechanical failure of the refrigerating, cooling, or humidity control apparatus. (Broadening)

## Business Income (Without Extra Expense) Coverage Form - FA 212 05 16

## Business Income (And Extra Expense) Coverage Form - FA 213 05 16

## Extra Expense Coverage Form - FA 216 05 16

- **Civil Authority**

  We incorporated ISO's civil authority wording in ISO's Business Income Forms to clarify coverage intent. ISO's Business Income Forms require that there be physical damage and that the damaged premise must be <u>within one mile</u> of the insured premises in order to qualify for Business Income Civil Authority coverage. However, we will not impose the <u>one mile radius</u> in the base **FM 101**, even though the intent of the coverage involves damage to a neighboring premise. (Broadening)

- **Ingress/Egress**

  This is a new Additional Coverage added to our Business Income Forms at no extra cost. Coverage will apply within the Business In-

come limit and is not additional insurance. Coverage will apply for 30 consecutive days after the direct physical loss to the contiguous premises. This coverage is not part of the Business income within the **FM 101**. (Broadening)

- **Newly Purchased or Leased Locations**

  For covered property the phrase "acquired locations" has been replaced by the phrase "newly purchased or leased locations", and coverage may also include a building the insured must insure as required by a written contract. (Clarification)

- **Agreed Value Option**

  If Agreed Value Optional Coverage applies, a Business Income Worksheet does not need to be considered a part of the policy, but still must be on file with the Company. (Broadening) (Not Applicable to **FA 216**)

**Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems Endorsement - FA 223 05 16**

- Clarifies roof drains are covered by this endorsement. (Clarification)

- Adds language to clarify we do not pay to repair or replace a failed pump. (Clarification)

- Clarifies that coverage is determined by the proximate cause of the sewer backup (e.g., flood, Equipment Breakdown Coverage, Utility Services becomes primary). (Clarification)

**Ordinance or Law Coverage - FA 231 05 16**

**Building Laws Safeguard Coverage - FA 441 05 16**

**Business Income Changes - Educational Institutions - FA 462 05 16**

**Ordinance or Law - Increased Period of Restoration - FA 463 05 16**

**Functional Building Valuation - FA 488 05 16**

Incorporates language as described in **FM 101** Additional Coverage Ordinance or Law. For Ordinance or Law coverage the reference to <u>enforcement</u> of an ordinance or law is changed to include reference to a <u>requirement to comply</u> with an ordinance or law. (Broadening)

**Printers Optional Coverage - FA 235 05 16**

Adds expanded **FA 223** language for Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems. See **FA 223** summary for details. (Broadening)

**CinciPlus® Commercial Property XC® (Expanded Coverage) Endorsement - FA 237 05 16**

**CinciPlus® Commercial Property XC+® (Expanded Coverage Plus) Endorsement - FA 250 05 16**

**CinciPlus® Commercial Property Power XC® (Expanded Coverage) Endorsement - FA 257 05 16**

**CinciPlus® Commercial Property Power XC+® (Expanded Coverage Plus) Endorsement - FA 258 05 16**

- **Ordinance or Law Coverage** - Formatting is amended to follow the reformatting of the **FM 101** Ordinance or Law Coverage. (Clarification)

- **Sewer Backup** - Adds expanded **FA 223** language for Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems. See **FA 223** summary for details. (Clarification)

- **Fire Department Service Charge** - Clarifies our coverage limit applies in total regardless of how many fire departments respond or what type of services they provide. (Clarification)

- Adds **FM 101** wording changes for Business Income and Extra Expense, Ordinance or Law, and Utility Services. (Broadening)

- **Fine Arts** - Deletes coverage for Earthquake and Water to correspond with our **FM 101** exclusions. The exception to the Earth Movement and Water exclusions no longer applies to Fine Arts. (Reduction)

**Printers Personal Property Coverage Endorsement - FA 238 05 16**

Adds **FM 101** wording changes for Dishonest or Criminal Acts (previously Dishonest Acts), Collapse, Loss or Damage to Product (previously Work Process) exclusions. (Clarification)

**Earthquake and Volcanic Eruption Endorsement - FA 240 05 16**

**Earthquake and Volcanic Eruption Endorsement - (Sublimit Form) - FA 241 05 16**

- Definition of Earthquake is expanded to include tremors and aftershocks. (Broadening)

- If sprinkler leakage is the only loss from Earthquake that we are covering, then the Fire deductible applies instead of Earthquake deductible. (Broadening)

- We editorially changed "Sub-limit" to "Sublimit" in the title and text of endorsement **FA 241**. (Clarification).

**Religious Institutions Property Coverage Endorsement - FA 243 05 16**

Incorporates all **FM 101** wording changes that apply to this endorsement. Amends the definition of "Specified causes of loss" to clarify the meaning of water damage. (Clarification)

**Manufacturers' Additional Coverage - FA 260 05 16**

Incorporates all **FM 101** editorial changes that apply to this endorsement. (Clarification)

**Manufacturers' Optional Coverage - FA 261 05 16**

Adds expanded coverage found in the Electrical Apparatus endorsement (**FA 473**). (Broadening)

**Pollutant Clean Up and Removal - Additional Aggregate Limit of Insurance - FA 291 05 16**

This coverage requires a specific limit of insurance. Limits may be increased over the **FM 101** base limit of $10,000. Previously we used ISO's Pollutant Clean Up endorsement **CP 04 07** and we have now introduced our own endorsement for the same purposes. (Clarification)

**Business Personal Property Limited International Coverage - FA 4014 05 16**

- Broadens coverage to track with ISO to include en-route to and from the temporary foreign location. Includes while airborne or waterborne. (Broadening)

- Clarifies that coverage is void if travel is in a country subject to United States economic or trade sanctions. (Clarification)

**Business Income - Civil Authority Increased Coverage Period - FA 4016 05 16**

- Our current endorsement is re-titled to add "Business Income" to reflect that it applies to Business Income coverages. (Clarification)

- Allows the 30 consecutive days coverage period to be increased. (Broadening)

**Limitation on Loss Settlement - Margin Clause - FA 4043 05 16**

- Our current endorsement is re-titled from "Margin Clause" to reflect this is a "Limitation on Loss Settlement" endorsement. (Clarification)

- Language is added to clarify when margin clause does and does not apply. Under this endorsement, loss payment on an individual property under the blanket is limited to its stated value plus a percentage of that value as shown in the Schedule. The margin does not increase the blanket Limit of Insurance. (Clarification)

- Examples are added to illustrate how the margin clause works. (Clarification)

**Named Storm Percentage Deductible - FA 4061 05 16**

- Calculation of the Deductible clarifies that if loss occurs to a building and the business personal property inside, that the deductible applies separately to each. This endorsement is available only in select states. (Clarification)

**Condominium Association Property Coverage Enhancement - FA 4076 05 16**

**Condominium Commercial Unit-Owners Property Coverage Enhancement - FA 4077 05 16**

Adds **FM 101** Business Personal Property changes to cover Business Personal Property in a portable storage unit. (Broadening)

**Windstorm or Hail Dollar Deductible - FA 4144 05 16**

**Windstorm or Hail Dollar Deductible Subject to Aggregate Deductible - FA 4145 05 16**

- The Windstorm or Hail Deductible is clarified by deleting language concerning concurrent or sequential causes of loss that occur along with the windstorm. (Clarification)

- Language is added that the deductible only applies once to all covered property at each premises shown in the endorsement schedule. (Broadening)

**Newly Purchased, Leased or Constructed Property - Increased Limit - FA 442 05 16**

The title and text of the endorsement is changed to reflect **FM 101** wording. The phrase "newly acquired or constructed" is replaced by the phrase "newly purchased, leased or constructed". (Clarification)

**Funeral Directors Coverage Enhancement - FA 448 05 16**

- Adds expanded **FA 223** language for Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems. See **FA 223** summary for details. (Broadening)

- Provides water damage coverage for jewelry and furs. (Broadening)

**Commercial Property Conditions - FA 450 05 16**

Definition of loss is deleted since this definition is now part of **FM 101**. (Clarification)

**Utility Services - Time Element - FA 460 05 16**

**Utility Services - Direct Damage - FA 472 05 16**

- These separate endorsements contain the same coverage changes as detailed in the **FM 101** Utility Services coverage extension. "Service lines" is added to the definition. Exclusion is now referred to as "overhead lines of any type." (Broadening)

- Language stipulating whether the Utility Services equipment is on or off premises has been deleted and the focus is placed on the origin of the utility service. So a transformer on the insured's premises is clearly still part of the Utility system. (Clarification)

**Extra Expense From Dependent Properties - FA 461 05 16**

**Business Income From Dependent Properties - Limited Form - FA 466 05 16**

**Business Income From Dependent Properties - Broad Form - FA 467 05 16**

- We have clarified that all dependent locations must be located within the coverage territory. (Broadening)

- Wastewater services is added to the eligible list of dependent properties. (Broadening)

- Miscellaneous Locations description is expanded to make it explicit that highways and other transportation conduits are not considered to be miscellaneous locations. (Clarification)

**Outdoor Trees, Shrubs and Plants - FA 470 05 16**

Clarifies that coverage does not apply to trees, shrubs or plants that are part of a vegetative roof. Vegetative roofs are considered part of the building and therefore not considered Outdoor Property. (Clarification)

**Debris Removal - Scheduled Additional Limits of Insurance - FA 471 05 16**

This coverage requires a specific limit of insurance. Limits may be increased over the $10,000 **FM 101** base excess limit for debris removal. (Broadening)

**Electrical Apparatus - FA 473 05 16**

Adds verbiage clarifying what is meant by electrical, magnetic or electromagnetic energy. (Clarification)

**Windstorm or Hail Percentage Deductible - FA 474 05 16**

- The Windstorm or Hail Deductible is clarified by deleting language concerning concurrent or sequential causes of loss that occur along with the windstorm. (Clarification)

- Calculation of the Deductible clarifies that if loss occurs to a building and the business personal property inside, that the deductible applies separately to each. (Clarification)

**SPECIAL PROGRAM ENDORSEMENTS:**

We have Special Programs which focus on market specialization by providing commercial products for specific market segments. Below are our Special Program endorsements that are amended to reflect changes in our revised **FM 101**. Since **FM 101** is our base form for Building and Personal Property coverage, each Special Program endorsement has incorporated all **FM 101** wording changes that apply.

**Home Health Care Commercial Property Endorsement - FA 262 05 16**

- The form title is changed from "CindiPlus® Home Health Care Property Endorsement" to "Home Health Care Commercial Property Endorsement". (Clarification)

- Coverage Extension Mobile Medical Equipment is amended from "mobile" to show as "portable". (Clarification)

- Coverage Extension Money and Securities - Resident or Client indicates the most we will pay in any one occurrence is $500, subject to an aggregate of $5,000 in any "coverage term", and this is not changing. But the endorsement Schedule is clarified by adding the $5,000 in any "coverage term" Limit for Money and Securities. (Clarification)

- The term "exhibitions or trade shows' is updated to "exhibitions, fairs or trade shows" since it is more contemporary language. (Broadening)

**Synthetic Turf, Field or Track Endorsement - FA 280 05 16**

In Item **B.** indicating that a loss will be paid, the phrase, "in any one occurrence", has been moved to be in front of the Limit of Insurance, for emphasis, rather than having the phrase at the end of the sentence. This is an editorial change only. (Clarification)

**Water Utilities Commercial Property Endorsement - FA 263 05 16**

**Manufacturers' Commercial Property Endorsement - FA 267 05 16**

**Hotel Commercial Property Endorsement - FA 268 05 16**

**Fitness & Recreation Expanded Commercial Property Endorsement - FA 271 05 16**

**Craft Beverage Commercial Property Endorsement - FA 272 05 16**

**Medical Facility Commercial Property Endorsement - FA 4134 05 16**

- The **FM 101, A.5. Coverage Extensions, j. Nonowned Building Damage** has revised language which is incorporated into each endorsement having Nonowned Building Damage coverage. Language is clarified to apply to the building the tenant occupies if the lease makes the tenant legally liable for direct losses. We will pay for direct loss to the building caused by burglary, robbery, theft or attempted theft. This extension does not apply if the lease requires the tenant to insure the building. (Clarification)

- **FA 267** only: The endorsement has a Table of Contents added at the beginning to list each section and its corresponding page number. (Clarification)

**Medical Facility Commercial Property Endorsement - FA 4134 05 16**

- Coverage Extension Mobile Medical Equipment is amended from "mobile" to show as "portable". (Clarification)

**Water Utilities Commercial Property Endorsement - FA 263 05 16**

**Golf & Country Club Commercial Property Endorsement - FA 266 05 16**

**Manufacturers' Commercial Property Endorsement - FA 267 05 16**

**Hotel Commercial Property Endorsement - FA 268 05 16**

**Social Services Commercial Property Endorsement - FA 269 05 16**

**Fitness & Recreation Expanded Commercial Property Endorsement - FA 271 05 16**

**Craft Beverage Commercial Property Endorsement - FA 272 05 16**

**Educational Institutions Commercial Property Endorsement - FA 282 05 16**

**Health Care Facility Commercial Property Endorsement - FA 285 05 16**

**Medical Facility Commercial Property Endorsement - FA 4134 05 16**

- For each endorsement with a Water Backup coverage extension, expanded language is added for Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems, including the new terms "discharged", "septic" and "pump systems". (Clarification)

- "Waterborne material" is added as included along with water in the Water Backup coverage extension. (Broadening)

- The **FM 101, A.4. Additional Coverages, g. Ordinance or Law** has revised language which is incorporated into each endorsement having Ordinance or Law coverage. Language is amended to include "compliance" with the required ordinance or law that deals with rebuilding after a loss. (Clarification) (Not Applicable to **FA 285**)

- For each endorsement with fairs or exhibitions coverage, the term "fairs or exhibitions" is updated to "exhibitions, fairs or trade shows" since it is more contemporary language. (Broadening) (Not Applicable to **FA 285**)

- For each endorsement where applicable, revised **FM 101** coverage extension language is added to replace wording previously referred to as "newly acquired or constructed property". The word "acquired" has been deleted and replaced with "purchased, leased" to more clearly state our coverage intent and not provide coverage for short term storage situations. "Newly acquired locations" are replaced with

"newly purchased or leased locations", "newly acquired Electronic Data Processing Property" is replaced with "newly purchased or leased Electronic Data Processing Property", and "newly acquired or constructed property" is replaced with "newly purchased, leased or constructed property". (Clarification) (Not Applicable to **FA 285**)

- For each endorsement which refers to this **FM 101** exclusion, revised **FM 101** language is added for Dishonest or Criminal Acts (previously Dishonest Acts). (Clarification) (Not Applicable to **FA 285**)

- For each endorsement which refers to the **FM 101** Covered Causes of Loss, revised **FM 101** language is added for **3.a. Covered Causes of Loss** (previously **Risks of Direct Physical Loss**). (Clarification)

- For each endorsement with a Utility Services coverage extension, the **FM 101** broadened language for **q. Utility Services** is added to the endorsement. (Broadening)

- Under the Utility Services coverage extension, Wastewater/Sewage treatment facilities are being added as a utility service for Business Income only. However, coverage does not apply if the wastewater removal facility is overwhelmed itself with heavy rainfall or flooding. That falls under any Flood coverage, not Utility Services. (Broadening)

- Under the Utility Services coverage extension, Communication Supply Services includes service relating to Internet access or access to electronic, cellular, or satellite networks. (Broadening)

- Under the Utility Services coverage extension, while the Utility Services exclusions are concerned with whether the Utility Service is on or off premises, the coverage extension focuses on the source of the utility failure. (Broadening)

- Under the Utility Services coverage extension, the "Overhead Transmission and Distribution Lines" reference has been broadened to apply to overhead lines of any type. (Broadening)

**Fitness & Recreation Property Endorsement - FA 264 05 16**

- For fairs or exhibitions coverage, the term "fairs or exhibitions" is updated to "exhibitions, fairs or trade shows" since it is more contemporary language. (Broadening)

- Since all coverage limits are shown in the endorsement Schedule, in the text of the endorsement we removed the dollar amount of limits we will pay for each coverage, and instead we refer to the limits amounts shown in the Schedule. (Clarification)

## Hotel Commercial Property Endorsement - FA 268 05 16

- The **FM 101, A.5. Coverage Extensions, b. Business Income and Extra Expense, (4) Civil Authority** is renumbered as **(3)**. We fixed the reference to this extension to **(3)** in the endorsement. (Clarification)

- The **FM 101** revised **(3)** Civil Authority language is added to the endorsement to clarify coverage intent. (Clarification)

- Revised **FM 101** language is added for Voluntary Parting Under False Pretense exclusion (previously False Pretense). (Clarification)

## Commercial Property Green Endorsement - FA 270 05 16

- We removed reference to **FM 101, A.5. Coverage Extensions, g. Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage** because this limited coverage no longer exists for vegetative roofs. **FM 101**, Item **g.(7)** indicates that the Fungi coverage extension does not apply to vegetative roofs. (Broadening)

- This endorsement reflects the revised **FM 101** coverage extension language, previously referred to as "newly acquired or constructed property". "Newly acquired or constructed property" is replaced with "Newly purchased, leased or constructed property". (Clarification)

## Social Services Commercial Property Endorsement - FA 269 05 16

## Educational Institutions Commercial Property Endorsement - FA 282 05 16

## The Bridge Endorsement - FA 286 05 16

- The **FM 101, A.5. Coverage Extensions, b. Business Income and Extra Expense, (3) Tenant Premises** no longer exists in the revised **FM 101**. So we completely removed reference to this extension in the Premises Boundary Increase section of our endorsement. (Reduction)

- The **FM 101, A.5. Coverage Extensions, b. Business Income and Extra Expense, (5) Alterations and New Buildings** is renumbered as **(4)**. We have fixed any references to this extension to **(4)** in the endorsement. (Clarification)

- Revised **FM 101** language is added for Voluntary Parting Under False Pretense exclusion (previously False Pretense). (Clarification) (Applicable to **FA 282** only)

## Brewery Property Endorsement - FA 273 05 16

## Winery Property Endorsement - FA 274 05 16

## Distillery Property Endorsement - FA 275 05 16

- The endorsement has a Table of Contents added at the beginning to list each section and its corresponding page number. (Clarification)

- In paragraphs indicating that a loss will be paid, the phrase "in any one occurrence" or "in any one coverage term" has been moved to be in front of the Limit of Insurance, for emphasis, rather than having the phrase at the end of the sentence. (Clarification)

- The item Tank Collapse clarifies policy intent that an insured event of collapse must be abrupt and clarifies that the collapse coverage includes a building "or structure" or any part of a building "or structure". (Clarification)

- The items Tank Collapse and Tank Leakage each have revised wording for implosion or inward collapse of a tank. Coverage is broadened because we have removed language concerning the cause of the implosion or inward collapse. For Tank Collapse we removed the wording "due to the failure of a pressure relief device on the tank". For Tank Leakage we removed the wording "due to the failure of a pressure relief device on the tank, vessel or barrel". (Broadening)

## Restaurant Property Endorsement - FA 276 05 16

- In paragraphs indicating that a loss will be paid, the phrase "in any one occurrence" or "in any one coverage term" has been moved to be in front of the Limit of Insurance, for emphasis, rather than having the phrase at the end of the sentence. (Clarification)

- The endorsement has a Table of Contents added at the beginning to list each section and its corresponding page number. (Clarification)

## Crisis Event Expense Coverage Endorsement - FA 283 05 16

Under Item **D.1.** revised **FM 101** wording is added for Dishonest or Criminal Acts (previously Dishonest Acts) exclusion. (Clarification)

## Golf & Country Club Outdoor Trees, Shrubs and Plants - FA 288 05 16

- Clarifies that coverage does not apply to trees, shrubs or plants that are part of a vegetative roof. Vegetative roofs are considered part of the building and therefore not considered Outdoor Property. (Clarification)

## Distilled Spirits and Wines Market Value - FA 456 05 16

- All mention of "loss" is now described as direct "loss", for clarification purposes. (Clarification)

- The endorsement has a Table of Contents added at the beginning to list each section and its corresponding page number. (Clarification)

# CinciPlus<sup>TM</sup>

# COMMERCIAL PROPERTY EXPANDED COVERAGE (XC<sup>TM</sup>) ENDORSEMENT
## SUMMARY OF COVERAGE LIMITS

This is a summary of the Coverages and the Limits of Insurance provided by the Commercial Property Expanded Coverage (XC™) Endorsement, **FA 237**, in combination with the Commercial Property Coverage Form, **FM 101**, which is included in this policy. **No coverage is provided by this summary.** Refer to endorsement **FA 237** and the Commercial Property Coverage Form, **FM 101**, to determine the scope of your insurance protection.

| Coverages: | Limits of Insurance: | Page No. (FA 237) |
|---|---|---|
| Accounts Receivable | $50,000 | 1 |
| Business Income and Extra Expense | $50,000 | 1 |
| Electronic Data Processing Property (EDP): | $10,000 | 1 |
|    Duplicate and Backup Electronic Data | $2,000  Outside of the above Limit of Insurance | 2 |
|    Newly Acquired EDP | $10,000 Outside of the above Limit of Insurance | 2 |
|    In Transit or Away From Premises | $10,000 Outside of the above Limit of Insurance | 2 |
| Fine Arts | $25,000 | 4 |
| Fire Department Service Charge | $25,000 | 5 |
| Ordinance or Law: | | 4 |
|    Loss of Value (undamaged portion) | Subject to the Building Limit of Insurance | 4 |
|    Demolition and Increased Costs | $20,000 | 4 |
| Outdoor Property | $10,000 ($1,000 for any one tree, shrub or plant) | 5 |
| Personal Effects | $25,000 ($1,000 for loss by theft) | 5 |
| Pollutant Clean Up and Removal | $20,000 | 4 |
| Signs | $10,000 | 5 |
| Underground Property | $25,000 | 4 |
| Valuable Papers and Records | $50,000 | 5 |
| Water Backup from Sewers, Drains or Sumps | $10,000 | 5 |

**FA 4052 04 06**

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. Concealment, Misrepresentation or Fraud

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

## B. Control of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of direct "loss", the breach of condition does not exist.

## C. Insurance Under Two or More Coverages

If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

## D. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct "loss" occurred.

## E. Liberalization

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

## F. No Benefit to Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. Other Insurance

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered "loss". Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same "loss", other than that described in 1. above, we will pay only for the amount of covered "loss" in excess of the amount due from that other insurance, whether you can collect on it or not. **However, we will not reimburse any deductible or difference between Actual Cash Value and Replacement Cost valuations.** We will not pay more than the applicable Limit of Insurance.

## H. Policy Period, Coverage Territory

Under this Coverage Part:

1. We cover "loss" commencing:

    a. During the policy period shown in the Declarations; and

    b. Within the coverage territory.

2. The coverage territory:

    a. The United States of America (including its territories and possessions);

    b. Puerto Rico; and

    c. Canada.

## I. Transfer of Rights of Recovery Against Others to Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after direct "loss" to impair them. But you may waive your rights against another party in writing:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FA 450 05 16                                                   Page 1 of 2

1. Prior to a direct "loss" to your Covered Property or Covered Income.

2. After a direct "loss" to your Covered Property or Covered Income only if, at time of direct "loss", that party is one of the following:

   a. Someone insured by this insurance;

b. A business firm:

   (1) Owned or controlled by you; or

   (2) That owns or controls you; or

c. Your tenant.

This will not restrict your insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FA 450 05 16

Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES - RIGHTS OF RECOVERY

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**A.** Unless Section **B.** of this endorsement applies, **COMMERCIAL PROPERTY CONDITIONS, I. Transfer of Rights of Recovery Against Others to Us** is deleted in its entirety and replaced by the following:

**Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. Our right to recover damages from another may be enforced even if the person or organization to or for whom we make payment has not been fully compensated for damages.

The person or organization to or for whom we make payment must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a "loss" to your Covered Property or Covered Income.

**2.** After a "loss" to your Covered Property or Covered Income only if, at time of "loss", that party is one of the following:

    **a.** Someone insured by this insurance;

    **b.** A business firm:

        **(1)** Owned or controlled by you; or

        **(2)** That owns or controls you; or

    **c.** Your tenant.

    This will not restrict your insurance.

**B.** In **MORTGAGE INTEREST COVERAGE FORM, SECTION K. CONDITIONS APPLICABLE TO ALL COVERAGES, 6. Transfer of Rights of Recovery Against Others to Us** is deleted in its entirety and replaced by the following:

**Transfer of Rights of Recovery Against Others to Us**

    **a.** Under **COVERAGES A** and **B,** if any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. Our right to recover damages from another may be enforced even if the person or organization to or for whom we make payment has not been fully compensated for damages.

The person or organization to or for whom we make payment must do everything necessary to secure our rights and must do nothing after "loss" to impair them. But you may waive your rights against another party in writing:

    **(1)** Prior to a "loss" to your Covered Property.

    **(2)** After a "loss" to your Covered Property only if, at time of "loss", that party is one of the following:

        **(a)** Someone insured by this insurance;

        **(b)** A business firm:

            **1)** Owned or controlled by you; or

            **2)** That owns or controls you; or

        **(c)** Your tenant.

    This will not restrict your insurance.

    **b.** Under **COVERAGES C** and **D,** if you have rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. Our right to recover damages may be enforced even if you have not been fully compensated for damages.

You must do nothing after "loss" to impair our rights to recover all or part of any payment we have made under this Coverage Part. At our request, you will bring "suit" or transfer those rights to us and help us enforce them.

**FA 499 IN 04 04**                 Contains copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CINCIPLUS®
# COMMERCIAL PROPERTY XC®
# (EXPANDED COVERAGE) ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**The insurance coverage and Limits of Insurance provided by this endorsement are excess of, and apply in addition to, any similar or identical coverage provided by any other endorsement attached to this Coverage Part, or by any other Coverage Part forming a part of the policy of insurance of which this Coverage Part forms a component.**

**A. Accounts Receivable**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Accounts Receivable Coverage Extension is $50,000.

**B. Business Income and Extra Expense**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this "Business Income" and Extra Expense Coverage Extension is $50,000.

**C. Electronic Data Processing Property**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended by adding the following:

**Electronic Data Processing Property**

**(1) Covered Property**

You may extend the Coverage provided by this Coverage Part to apply to direct "loss" to Covered Property consisting of your:

**(a)** Data processing equipment;

**(b)** Air conditioning and other electrical equipment, used exclusively with your data processing equipment;

**(c)** Programming documentation and instruction manuals;

**(d)** "Electronic data", but only as excess over what is valid and collectible under **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data;**

**(e)** Media, meaning materials on which "electronic data" is recorded, such as magnetic tapes, disc packs, paper tapes and cards, floppy discs and compact discs used in processing units; and

**(f)** Property of others in your care, custody or control that is similar to property described in **(1)(a)** through **(e)** above.

**(2) Property Not Covered**

This Coverage Extension does not apply to:

**(a)** Accounts, records, documents and other "valuable papers and records" unless they are programming documentation or instruction manuals.

However, we will cover these items once they are converted to "electronic data" form.

**(b)** "Electronic data" or media that cannot be replaced with similar property of equal quality.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FA 237 05 16      Page 1 of 6

(c) Your property that you have rented or leased to someone else and that property is not at your "premises".

(d) Any machine or apparatus that is used for research, medical, diagnostic, surgical, dental or pathological purposes.

(e) "Production equipment".

(3) **Exclusions**

(a) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

  1) **Exclusion (1)(c) Governmental Action;**

  2) **Exclusion (1)(d) Nuclear Hazard;**

  3) **Exclusion (1)(f) War and Military Action;**

  4) **Exclusion (2)(b) Delay or Loss of Use;**

  5) **Exclusion (2)(d) Miscellaneous Causes of Loss, 1)** Wear and tear;

  6) **Exclusion (2)(h) Dishonest or Criminal Acts;**

  7) **Exclusion (3)(b) Acts or Decisions**; and

  8) **Exclusion (3)(c) Defects, Errors and Omissions.**

(b) In addition to Paragraph (3)(a) of this Coverage Extension, we will not pay for the following:

  Hidden or latent defect, gradual deterioration, and depreciation. However, if direct "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss".

(4) **Duplicate and Backup "Electronic Data"**

We will pay for direct "loss" resulting from any of the Covered Causes of Loss to duplicate and backup "electronic data" that you store at a "premises" not described in the Declarations providing such "electronic data" is not covered by another policy. The most we will pay for loss in any one occurrence is $2,000. This Limit of Insurance is in addition to the other limits provided by this Coverage Extension.

(5) **Newly Purchased Electronic Data Processing Property**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, i. Newly Purchased, Leased or Constructed Property** is deleted in its entirety and replaced by the following:

(a) We will pay for direct "loss" from a Covered Cause of Loss to newly acquired Covered Property described in Paragraph **(1)** of this Coverage Extension while at:

  1) Locations that are newly purchased or leased;

  2) Your newly constructed buildings or additions at a "premises"; or

  3) Any "premises" described in the Declarations.

(b) Insurance under this Coverage Extension for such newly acquired property, or Covered Property already insured by this Coverage Extension which is moved to a newly acquired location, will end when any of the following first occurs:

  1) This Coverage Part expires;

  2) 90 days pass from the date you acquire your new property or move Covered Property to a newly acquired location; or

  3) You report values to us.

The most we will pay for loss in any one occurrence is $10,000. This Limit of Insurance is in addition to the other limits provided by this Coverage Extension.

(6) **In Transit or Away From Premises**

**SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs or Trade Shows, m. Property Off Premises** and **p. Transportation** are deleted in their entirety and replaced by the following:

(a) You may extend the insurance provided by this Coverage Extension to apply to Covered Property as described in Paragraph **(1)**:

  1) While in or on a vehicle, including loading and unloading; or

  2) While at a location that is not your "premises".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FA 237 05 16

**(b)** This **In Transit or Away From Premises** coverage does not apply per location.

The most we will pay for loss in any one occurrence is $10,000. This Limit of Insurance is not in addition to the other limits provided by this Coverage Extension.

**(7) Electronic Data Processing Property Deductible**

**SECTION C. DEDUCTIBLE** is amended to include the following:

We will not pay for direct "loss" in any one occurrence unless the amount of "loss" exceeds the Deductible shown in the Declarations. We will then pay the amount of "loss" in excess of the Deductible, up to the Limit of Insurance provided by this Coverage Extension.

However, "loss" caused by or resulting from any of the following Causes of Loss will have the greater of the Deductible shown in the Declarations or $1,000 as the applicable deductible:

**a.** "Loss" caused by faulty construction, error in design or processing, or service or work upon the data processing system;

**b.** "Loss" resulting in mechanical breakdown, short circuiting, blowout, or other electrical damage, unless caused by lightning; or

**c.** "Loss" caused by or resulting from interruption of power supply, power surge, blackout or brownout.

**(8) Electronic Data Processing Property Valuation**

**SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

**7.** <u>Valuation of Electronic Data Processing Property</u>

In the event of direct "loss", we will determine the value of Covered Property as described in Paragraph **(1)** of this Coverage Extension as follows:

**a.** Except for "electronic data":

**(1)** If you repair or replace this Electronic Data Processing property within a reasonable time following the "loss", the property will be valued at the full cost of repair or replacement.

However, the most we will pay is the least of the following:

**(a)** The actual cost to repair or restore the property with materials of like kind and quality;

**(b)** The cost of replacing that property with property of similar quality and function;

**(c)** The amount you actually and necessarily spend to repair or replace the property; or

**(d)** The Limit of Insurance applicable to the property.

**(2)** If you do not repair or replace this property within a reasonable time following a "loss", the most we will pay will be the least of the following:

**(a)** "Actual cash value" of the property;

**(b)** "Actual cash value" of repairs with material of like kind and quality; or

**(c)** The Limit of Insurance applicable to the property.

We reserve the right to repair or replace the property or to pay for the property in money.

In the event of "loss", the value of property will be determined at the time of "loss".

**b.** For "electronic data":

We will not pay more than the actual reproduction costs of your "electronic data". If you do not replace or reproduce your "electronic data" following the "loss", the most we will pay is the cost of blank media as described in Paragraph **C.(1)(e)** of this Coverage Extension.

**(9) Electronic Data Processing Property Additional Definition**

The following definition is added to **SECTION G. DEFINITIONS** of the

Electronically Filed 01/09/2023 08:39 / / CV 23-35503 / Confirmation Number 3742861 / CL: SZ

FA 237 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 3 of 6

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM:**

"Production equipment" means any machinery and related components, including any integrated or dedicated computer system, which is used, or can be used, to produce or process other tangible property.

The most we will pay for loss in any one occurrence under this Electronic Data Processing Coverage Extension for coverages described in Paragraphs **C.(1)** and **C.(6)** is $10,000.

**D. Fine Arts**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

<u>Fine Arts</u>

**(1)** We will pay for direct "loss" to paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art of rarity, historical value, or artistic merit. The direct "loss" must be caused by or result from a Covered Cause of Loss.

**(2) SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

We will determine the value of Covered Property in the event of direct "loss" at the market value at the time of "loss".

The most we will pay for loss in any one occurrence under this Fine Arts Coverage Extension is $25,000.

**E. Ordinance or Law**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence in this Coverage Extension under Paragraph **(1)(a) Loss of Use of Undamaged Parts of the Building** is the Limit of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** as applicable to the covered building or structure sustaining "loss". This Coverage is included within, and not in addition to, that applicable Limit of Insurance.

The most we will pay for all loss in any one occurrence under Paragraph **(1)(b) Demoli-**

tion Costs and Paragraph **(1)(c) Increased Costs of Construction** is $20,000 per building or structure sustaining loss. This is an additional Limit of Insurance applicable to the building or structure sustaining loss.

**F. Pollutant Clean Up and Removal**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, h. Pollutant Clean Up and Removal,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for each "premises" is $20,000 for the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

**G. Underground Property**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

<u>Underground Property</u>

**(1)** We will pay for direct "loss" resulting from any of the Covered Causes of Loss to:

    **(a)** Foundations of covered buildings, structures, machinery or boilers, if their foundations are below the lowest basement floor or the surface of the ground if there is no basement; and

    **(b)** Underground pipes, flues or drains if they are attached to Covered Property.

**(2) SECTION A. COVERAGE, 2. Property Not Covered, g. Foundations** is deleted in its entirety and replaced by the following:

    **g.** <u>Foundations</u>

    Foundations of buildings, structures, machinery or boilers, if their foundations are below:

    **(1)** The lowest basement floor; or

    **(2)** The surface of the ground, if there is no basement;

    except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions.**

Electronically Filed 01/09/2023 08:39 / CV 23 973599 / Confirmation Nbr. 2742954 / CLJSZ
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(3) **SECTION A. COVERAGE, 2. Property Not Covered, n. Underground Pipes, Flues or Drains** is deleted in its entirety and replaced by the following:

n. <u>Underground Pipes, Flues or Drains</u>

Underground pipes, flues or drains, except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions.**

The most we will pay for loss in any one occurrence for this Underground Property Coverage Extension is $25,000.

H. **Valuable Papers and Records**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Valuable Papers Coverage Extension is $50,000.

I. **Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems**

For the purposes of this endorsement only:

(1) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusion, (1)(g) Water,** Paragraph **3)** is deleted in its entirety and replaced by the following:

3) Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

(2) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water,** Paragraph **5)** is deleted in its entirety and replaced by the following:

5) Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1), 3)** or **4),** or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2).**

(3) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems**

We will pay for "loss" caused by or resulting from water or waterborne material that has entered and then backs up through and is discharged from a sewer, drain (including roof drains and related fixtures), septic system, sump pump system or related equipment.

(4) **SECTION C. DEDUCTIBLE** is amended by adding the following:

<u>Water Backup Deductible</u>

We will not pay for "loss" in any one occurrence caused by or resulting from water or waterborne material which backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment, until the amount of "loss" exceeds the Deductible shown in the Declarations, or $1,000, whichever is greater. We will then pay the amount of "loss" in excess of that deductible, up to the applicable limit indicated in Paragraph **(5)** of this Coverage Extension.

(5) The most we will pay for loss in any one occurrence under this Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems Coverage Extension is $10,000, including any "Business Income", "Rental Value" and Extra Expense loss.

J. **Fire Department Service Charge**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, c. Fire Department Service Charge** is deleted in its entirety and replaced by the following:

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000 in any one occurrence for your liability, which is determined prior to direct "loss", for fire department service charges:

(1) Assumed by contract or agreement; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** Required by local ordinance.

This Coverage is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** and applies per location. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

## K. Signs

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, n. Signs**, the second paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Sign Coverage Extension is $10,000.

## L. Outdoor Property

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, k. Outdoor Property**, the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Outdoor Property Coverage Extension is $10,000, but not more than $1,000 for any one tree, shrub, or plant.

## M. Personal Effects

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, l. Personal Effects**, the last two paragraphs are deleted in their entirety and replaced by the following:

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Coverage Extension has a $1,000 per occurrence limitation for "loss" by theft.

The most we will pay for loss in any one occurrence under this Personal Effects Coverage Extension is $25,000.

Electronically Filed 01/09/2023 08:39 / CV 23 973508 / Confirmation Nbr. 2742954 / CLJSZ

FA 237 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 6 of 6

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F. DEFINITIONS.**

## SECTION A. COVERAGE

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

**a.** "Business Income" including "Rental Value".

**b.** "Business Income" other than "Rental Value".

**c.** "Rental Value".

If option **a.** above is selected, the term "Business Income" will include "Rental Value". If option **c.** above is selected, the term "Business Income" will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

**1.** **Business Income**

**a.** We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. With respect to "loss" to personal property in the open (or personal property in a vehicle or portable storage unit), the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

**b.** With respect to the requirements set forth in the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purposes of this Coverage Part only, your "premises" is the portion of the building which you rent, lease or occupy, including:

**(1)** Any area within the building or on the site at which the "premises" are lo-

cated if that area services or is used to gain access to the described "premises".

**(2)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

**2.** **Extra Expense**

**a.** Extra Expense coverage is provided at the "premises" described in the Declarations only if the Declarations show that "Business Income" coverage applies at that "premises".

**b.** Extra Expense means necessary expenses you sustain (as described in Paragraphs **2.c., d.** and **e.**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

**c.** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **2.d.**) to:

**(1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

**(a)** At the "premises"; or

**(b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

**d.** We will also pay expenses to:

**(1)** Repair or replace property; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**FA 213 05 16**        **Page 1 of 9**

(2) Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage Form will be reduced by the salvage value of that property.

**e.** Extra Expense as described in Paragraphs **2.a.** thru **2.d.** does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

3. **Covered Causes of Loss**

See **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss.**

4. **Limitation for Electronic Data**

**a.** Coverage for "Business Income" does not apply when a "suspension" of "operations" is caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations**.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations**.

**c.** This Limitation does not apply when "loss" to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

5. **Additional Coverages**

The Additional Coverages in Paragraphs **5.a.** through **5.e.** are included within and not additional "Business Income" and Extra Expense Limits of Insurance.

**a.** **Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain due to direct "loss" at the "premises" caused by or re-

sulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

(a) Used in the construction, alterations or additions; or

(b) Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

**b.** **Civil Authority**

When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for "Business Income" will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will apply for a period of up to 30 consecutive days from the date on which such coverage began.

Civil Authority coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will end 30 consecutive days after the date of that action; or when your Civil Authority coverage for "Business income" coverage ends, whichever is later.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FA 213 05 16

c. **Extended Business Income**

(1) "Business Income" Other Than "Rental Value"

If the necessary "suspension" of your "operations" produces a "Business Income" "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain during the period that:

(a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(b) Ends on the earlier of:

(i) The date you could restore your "operations", with reasonable speed, to the level which would generate the "Business Income" amount that would have existed if no direct "loss" had occurred; or

(ii) 60 consecutive days after the date determined in **c.(1)(a)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

(2) "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you sustain during the period that:

(a) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

(b) Ends on the earlier of:

(i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

(ii) 60 consecutive days after the date determined in **c.(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the described "premises" caused by or resulting from any Covered Cause of Loss.

d. **Interruption of Computer Operations**

(1) Subject to all provisions of this Additional Coverage - **Interruption of Computer Operations**, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss. This Additional Coverage - **Interruption of Computer Operations** does not apply when "loss" to "electronic data" only involves "loss" to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

(2) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage - **Interruption of Computer Operations** is $2,500 for all "loss" sustained and expense sustained in any "coverage term", regardless of the number of interruptions or the number of "premises", locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this

Electronically Filed 01/09/2023 08:39 / / CV 23 / CV 23 / A765593 / Confirmation Number 2742081 / CL CLSZ

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FA 213 05 16

Page 3 of 9

amount, then the balance is available for "loss" or expense sustained as a result of subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not increase the amount of insurance in the next "coverage term". With respect to any interruption which begins in one "coverage term" and continues or results in additional "loss" or expense in that subsequent "coverage term", all "loss" and expense is deemed to be sustained in the "coverage term" in which the interruption began.

**(4)** This Additional Coverage - **Interruption in Computer Operations** does not apply to "loss" sustained or expense sustained after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **d.(3)** of this Additional Coverage has not been exhausted.

**e. Ingress and Egress**

We will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by the prevention of existing ingress or egress at a "premises" shown in the Declarations due to direct "loss" by a Covered Cause of Loss at a location contiguous to such "premises". However, coverage does not apply if ingress or egress from the "premises" is prohibited by civil authority.

Ingress and egress coverage for "Business Income" will begin immediately after the time of the direct "loss" and will continue for a period up to 30 consecutive days.

Ingress and egress coverage for Extra Expense will begin at time of the direct "loss" and will continue for 30 consecutive days or whenever your Ingress and Egress "business income" coverage ends, whichever occurs first.

**6. Coverage Extension**

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance. **SECTION D. ADDITIONAL CONDITION, 1. Coinsurance** does not apply to this Coverage Extension.

**Newly Purchased or Leased Locations**

**a.** You may extend your "Business Income" and Extra Expense coverages to apply to property located at:

**(1)** New buildings or additions while being built on a "premises";

**(2)** Buildings you newly purchase or become required to insure by written contract; or

**(3)** Leased buildings or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

This does not apply to property situated at trade shows, fairs or exhibitions.

**b.** The most we will pay in total for "Business Income" and Extra Expense "loss" under this Coverage Extension is $100,000 at each location described in Paragraph **6.a.**

**c.** Insurance under this Coverage Extension will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

**(3)** 90 days pass from the date you purchase, lease, or become contractually required to insure property described in Paragraphs **6.a.(2)** and **(3)**; or

**(4)** You report values to us when you acquire your new building or business personal property.

We will charge you additional premium for values reported from the date you purchase or lease the property or begin construction on that part of the building that would qualify as Covered Property.

**SECTION B. LIMITS OF INSURANCE**

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

**SECTION C. LOSS CONDITIONS**

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

**1. Appraisal**

If we and you disagree on the amount of "Business Income" or Extra Expense "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separate-

ly the amount of "Business Income" or Extra Expense "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.**  Pay its chosen appraiser; and

**b.**  Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2.  Duties in the Event of Loss**

**a.**  You must see that the following are done in the event you have a "Business Income" or Extra Expense "loss":

**(1)**  Notify the police if a law may have been broken.

**(2)**  Give us prompt notice of the direct "loss". Include a description of the property involved.

**(3)**  As soon as possible, give us a description of how, when, and where the direct "loss" occurred.

**(4)**  Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)**  As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)**  Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)**  Cooperate with us in the investigation or settlement of the claim.

**(8)**  If you intend to continue your business, you must resume all or part of

your "operations" as quickly as possible.

**b.**  We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3.  Loss Determination**

**a.**  The amount of "Business Income" "loss" will be determined based on:

**(1)**  The Net Income of the business before the direct "loss" occurred;

**(2)**  The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)**  The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

**(4)**  Other relevant sources of information, including:

**(a)**  Your financial records and accounting procedures;

**(b)**  Bills, invoices and other vouchers; and

**(c)**  Deeds, liens or contracts.

**b.**  The amount of Extra Expense will be determined based on:

**(1)**  All expenses that exceed the normal operating expenses that would have been sustained by "operations" during the "period of restoration" if no direct "loss" had occurred. We will deduct from the total of such expenses:

**(a)**  The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**(b)**  Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(2) Necessary expenses that reduce the "Business Income" "loss" that otherwise would have been incurred.

**c.** **Resumption of Operations**

We will reduce the amount of your:

(1) "Business Income" "loss", other than Extra Expense to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the "premises" or elsewhere.

(2) Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4.** **Loss Payment**

We will pay for insured "loss" within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**a.** We have reached agreement with you on the amount of "loss"; or

**b.** An appraisal award has been made.

**SECTION D. ADDITIONAL CONDITION**

**1.** **Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS**.

We will not pay the full amount of any "Business Income" "loss" if the Limit of Insurance for "Business Income" is less than:

**a.** The Coinsurance percentage shown for "Business Income" in the Declarations; times

**b.** The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) Operating expenses, including payroll expenses,

that would have been earned or incurred (had no direct "loss" occurred) by your "operations" at the "premises" for the 12 months following the inception, or last previous anniversary date, of this Coverage Part (whichever is later).

Instead, we will determine the most we will pay using the following steps:

**1.** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this Coverage Part by the Coinsurance percentage;

**2.** Divide the Limit of Insurance for the described "premises" by the figure determined in Step **1.**; and

**3.** Multiply the total amount of "loss" by the figure determined in Step **2.**

We will pay the amount determined in Step **3.** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**1.** Prepaid freight - outgoing;

**2.** Returns and allowances;

**3.** Discounts;

**4.** Bad debts;

**5.** Collection expenses;

**6.** Cost of raw stock and factory supplies consumed (including transportation charges);

**7.** Cost of merchandise sold (including transportation charges);

**8.** Cost of other supplies consumed (including transportation charges);

**9.** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

**10.** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

**11.** All payroll expenses or the amount of payroll expense excluded (if Form **FA 465** is attached); and

**12.** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion - not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

When: The Net Income and operating expenses for the 12 months follow-

Electronically Filed 01/09/2023 08:39 / CV-23-973598 Confirmation Nbr. 2742954 / CLJSZ

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ing the inception, or last previous anniversary date of this Coverage Part at "premises" would have been $400,000.

| | |
|---|---|
| The Coinsurance percentage is | 50% |
| The Limit of Insurance Is | $150,000 |
| "Business Income" "loss" is | $80,000 |

Step 1:   $400,000 X 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2:   $150,000 ÷ $200,000 = .75

Step 3:   $ 80,000 X .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example No. 2 (Adequate Insurance):**

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date of this Coverage Part at the "premises" would have been $400,000.

| | |
|---|---|
| The Coinsurance percentage is | 50% |
| The Limit of Insurance Is | $200,000 |
| "Business Income" "loss" is | $80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of "loss").

This condition does not apply to Extra Expense.

## SECTION E. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period of Indemnity**

   a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. The most we will pay in total for "Business Income" and Extra Expense "loss" is the lesser of:

      (1) The amount of "Business Income" and Extra Expense "loss" sustained during the 120 days immediately following the beginning of the "period of restoration"; or

      (2) The Limit of Insurance shown in the Declarations.

2. **Monthly Limit of Indemnity**

   a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. The most we will pay for "Business Income" "loss" in each period of 30 consecutive days after the beginning of the "period of restoration" is:

      (1) The Limit of Insurance; multiplied by

      (2) The fraction shown in the Declarations for this Optional Coverage.

**Example:**

When: The "Business Income" Limit of Insurance is $120,000

The fraction shown in the Declarations for this Optional Coverage is 1/4

The most we will pay for "loss" in each period of 30 consecutive days is: $120,000 X 1/4 = $30,000.

If, in this example, the actual amount of "Business Income" "loss" is:

| | | |
|---|---|---|
| Days | 1-30 | $40,000 |
| Days | 31-60 | 20,000 |
| Days | 61-90 | 30,000 |
| | | $90,000 |

We will pay:

| | | |
|---|---|---|
| Days | 1-30 | $30,000 |
| Days | 31-60 | 20,000 |
| Days | 61-90 | 30,000 |
| | | $80,000 |

The remaining $10,000 is not covered.

3. **Business Income Agreed Value**

   a. To activate this Optional Coverage:

      (1) A Business Income Report/Work Sheet must be on file with the Company and must show financial data for your "operations":

         (a) During the 12 months prior to the date of the Work Sheet; and

         (b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

      (2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies. The "Business Income" Limit of Insurance indicated on the Declarations should

Electronically Filed 01/09/2023 08:39 / / CV 23 / CV 23 / Confirmation Nbr. 2747864 / CL JSZ

FA 213 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 7 of 9

be at least equal to the Agreed Value, which is determined by:

    **(a)** The Coinsurance percentage shown in the Declarations; multiplied by

    **(b)** The amount of Net Income and Operating Expenses for the following 12 months you report on the Work Sheet.

**b.** Except as noted in **c.** below, the **ADDITIONAL CONDITION Coinsurance** is suspended until the expiration date of this Coverage Part.

**c.** We will reinstate the **ADDITIONAL CONDITION Coinsurance** automatically if you do not submit a new Work Sheet and Agreed Value:

    **(1)** When you request a change in your "Business Income" Limit of Insurance; or

    **(2)** When you request the coinsurance percentage be changed on the Work Sheet.

**d.** If the "Business Income" Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

    **(1)** The "Business Income" Limit of Insurance; divided by

    **(2)** The Agreed Value.

**Example:**

When:   The Limit of Insurance is $100,000

        The Agreed Value is $200,000

        "Business Income" "loss" is $80,000

Step (a): $100,000 ÷ $200,000 = .50

Step (b): .50 X $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4.** **Extended Period of Indemnity**

In **SECTION A. COVERAGE, 5. Additional Coverages, c. Extended Business Income,** the number "60" in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## SECTION F. DEFINITIONS

**1.** "Business Income" means the:

    **a.** Net income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

    **b.** Continuing normal operating expenses sustained, including payroll.

**2.** "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**3.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

    **a.** The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

        **(1)** The day the policy period shown in the Declarations ends; or

        **(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

    **b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**4.** "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

**5.** "Finished stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a coinsurance percentage shown for "Business Income" in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

6   "Loss" means accidental physical loss or accidental physical damage.

7.   "Operations" means:

   a.   Your business activities occurring at the "premises"; and

   b.   The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

8.   "Period of restoration" means the period of time that:

   a.   Begins at the time of direct "loss".

   b.   Ends on the earlier of:

      (1)   The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2)   The date when business is resumed at a new permanent location.

   c.   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1)   Regulates the construction, use or repair, or requires the tearing down of any property; or

      (2)   Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

   d.   The expiration date of the Coverage Part will not cut short the "period of restoration".

9.   "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

   a.   You are regularly or otherwise engaged in activities which taint or degrade the environment; or

   b.   You use, generate or produce the "pollutant".

10.   "Premises" means the Locations and Buildings described in the Declarations.

11.   "Rental Value" means "Business Income" that consists of:

   a.   Net income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

   b.   Continuing normal operating expenses incurred in connection with that "premises", including:

      (1)   Payroll; and

      (2)   The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

12.   "Suspension" means:

   a.   The slowdown or cessation of your business activities; and

   b.   That a part or all of the "premises" is rendered untenantable if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

13.   "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information. But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# THE CINCINNATI INDEMNITY COMPANY

**A Stock Insurance Company**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: ▆▆▆▆▆▆▆▆▆

Named Insured is the same as it appears in the Common Policy Declarations

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | ANY ONE PERSON OR ORGANIZATION |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | | ANY ONE |
| $100,000 limit unless otherwise indicated herein: | $ SEE GA227 | PREMISES |
| MEDICAL EXPENSE LIMIT | | |
| $5,000 limit unless otherwise indicated herein: | $ | ANY ONE PERSON |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | A - Area<br>B - Payroll<br>C - Gross Sales<br>D - Units<br>E - Other | Products / Completed Operations | All Other | Products / Completed Operations | All Other |
| LOC. 1 - IN<br>BUILDINGS OR PREMISES<br>LRO - OT NFP<br>INCL PROD AND/OR COMP OP | 61212 | A 25,000 | | 90.892 | | 2,272 |
| LOC. 2 - IN<br>VACANT LAND - OT NFP<br>INCL PROD AND/OR COMP OP | 49451 | E 3 EACH | | 3.432 | | 10 |
| BUILDINGS OR PREMISES<br>LRO - OT NFP<br>INCL PROD AND/OR COMP OP | 61212 | A 46,000 | | 90.892 | | 4,181 |
| LOC. 3 - IN<br>VACANT LAND - OT NFP<br>INCL PROD AND/OR COMP OP | 49451 | E 3 EACH | | 3.432 | | 10 |
| EXTENDED LIABILITY | 20296 | | | 2% | | 129 |

The General Liability Coverage Part is subject to an annual minimum premium.

TOTAL ANNUAL PREMIUM  $ 6,602

### FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:

| | | |
|---|---|---|
| GA101 | 12/04 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| GA4251 | 01/06 | NOTICE TO POLICYHOLDERS - MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS |
| CG0123 | 03/97 | INDIANA CHANGES - POLLUTION EXCLUSION |
| CG2144 | 07/98 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT |
| GA227 | 02/07 | COMMERCIAL GENERAL LIABILITY EXTENDED LIABILITY ENDORSEMENT |
| GA3019IN | 02/14 | INDIANA AMENDATORY EXCLUSION - LIABILITY ARISING FROM STATUTE OR REGULATION |
| GA3024 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

| | | |
|---|---|---|
| GA323 | 10/01 | EXCLUSION - LEAD LIABILITY |
| GA4250 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS |
| GA4486 | 04/17 | NOTICE TO POLICYHOLDERS LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION ENDORSEMENT |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

    No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)** Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

    **c.** "Bodily injury" or "property damage" which:

        **(1)** Occurs during the "coverage term"; and

        **(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

    includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

    **d.** You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

        **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

        **(3)** First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

        **(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

        **(5)** Becomes aware, or reasonably should have become aware, of a

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

condition from which "bodily injury" or "property damage" is substantially certain to occur.

e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected or Intended Injury

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured sustained in the "workplace";

**(2)** An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

**(3)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraphs **(1)** or **(2)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollutant

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, Paragraph **(a)** does not apply to:

**1)** "Bodily injury" to any person injured while on any premises, site or location owned or occupied by, or rented or loaned to, you provided:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**a)** The injury is caused by the inadequate ventilation of vapors;

**b)** The person injured is first exposed to such vapors during the policy period; and

**c)** Within 30 days of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

This exception **1)** shall apply only to Named Insureds; we shall have no duty to defend or pay damages for any person or organization that is not a Named Insured. However, this paragraph does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

For the purpose of the exception granted in Paragraph **1)** only, vapors means any gaseous or airborne irritant or airborne contaminant, including smoke, fumes, vapor or soot, but excluding asbestos, which is discharged, dispersed, emitted, released or escapes from materials, machinery or equipment used in the service or maintenance of the premises. Vapors does not mean any gaseous or airborne irritants or contaminants used in a manufacturing process or which is the product or by-product of any manufacturing process;

**2)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to this Coverage Part as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**1)** Any insured; or

**2)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, Paragraph **(d)** does not apply to:

**1)** "Bodily injury" or "property damage" arising out of the discharge, dispersal, seepage, migration, release, es-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

cape or emission of fuels, lubricants or other operating fluids, or exhaust gases, which are needed to perform, or are the result of, the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted with the intent to cause "bodily injury" or "property damage" or with the knowledge that "bodily injury" or "property damage" is substantially certain to occur, or if such fuels, lubricants or other operating fluids, or exhaust gases, are brought on or to the premises, site or location with such intent to escape, seep or migrate, or be discharged, dispersed, released or emitted as part of the operations being performed by such insured, contractor or subcontractor;

2) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

3) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the op-

erations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, Paragraphs **(2)(a)** and **(b)** do not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.  Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 51 feet long; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**GA 101 12 04**                                                                **Page 4 of 22**

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.   Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.   War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by

governmental authority in hindering or defending against any of these.

**j.   Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire or explosion) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days, for which the amount we will pay is limited to the Damage To Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.   Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**GA 101 12 04**                                                        **Page 5 of 22**

**l.** **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.** **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.** **Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.** **Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.** **Asbestos**

"Bodily injury" or "property damage" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.** **Employment-Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**r.** **Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, prior to the "coverage term" in which such "bodily injury" or "property damage" occurs or begins to occur.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that "bodily injury" or "property damage" has occurred or has begun to occur at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

Electronically Filed 01/09/2023 08:39 / CV-23-973509 / Confirmation Nbr. 2742854 / CLJSZ

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GA 101 12 04                                                                 Page 6 of 22

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

(3) First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

(4) Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

(5) Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

**s. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**t. Distribution of Material in Violation of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **q.** do not apply to "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the Damage to Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS.**

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.**

**b.** This insurance applies to "personal and advertising injury" only if:

(1) The "personal and advertising injury" is caused by an offense arising out of your business; and

(2) The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and

(3) Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d.** below, that the offense had been committed or had begun to be committed, in whole or in part.

**c.** "Personal and advertising injury" caused by an offense which:

(1) Was committed during the "coverage term"; and

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have been committed;

includes any continuation, change or resumption of that offense after the end of the "coverage term" in which it first became known by you.

**d.** You will be deemed to know that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

**(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

**(4)** Becomes aware, or reasonably should have become aware, by any means, other than as described in **(3)** above, that the offense had been committed or had begun to be committed; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**2.   Exclusions**

This insurance does not apply to:

**a.   Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b.   Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.   Material Published Prior to Coverage Term**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the later of the following:

**(1)** The inception of this Coverage Part; or

**(2)** The "coverage term" in which insurance coverage is sought.

**d.   Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e.   Contractual Liability**

"Personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" is caused by or arises out of an offense committed subsequent to the execution of the contract or agreement. When a claim for such "personal and advertising injury" is made, we will defend that claim, provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

**f.   Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g.   Quality or Performance of Goods - Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h.   Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i.   Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, pat-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**GA 101 12 04**

ent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.   Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **17. a., b.** and **c.** of "personal and advertising injury" under **SECTION V - DEFINITIONS**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.   Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board any insured hosts, owns, or over which any insured exercises control.

**l.   Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.  Employment Related Practices**

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation

or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**n.   Pollutant**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**o.   Pollutant-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**p.   Asbestos**

"Personal and advertising injury" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.   Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that a "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part, prior to the "coverage term" in which such offense

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

was committed or began to be committed.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that a "personal and advertising injury" offense has been committed or has begun to be committed at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

(1) Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

(3) First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

(4) Becomes aware, or reasonably should have become aware, by any means other than as described in (3) above, that the "personal and advertising injury" offense had been committed or had begun to be committed; or

(5) Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

r. **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

s. **Distribution of Material in Violation of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C. MEDICAL PAYMENTS**

1. **Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within three years of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a. **Any Insured**

To any insured, except "volunteer work-ers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury on Normally Occupied Premises**

To a person injured on that part of prem-ises you own or rent that the person nor-mally occupies.

d. **Workers' Compensation and Similar Laws**

To a person, whether or not an "em-ployee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletic Activities**

To any person injured while officiating, coaching, practicing for, instructing or participating in any physical exercises or games, sports, or athletic contests or ex-hibitions of an athletic or sports nature.

f. **Products-Completed Operations Haz-ard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LI-ABILITY**.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investi-gate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required be-cause of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  We do not have to furnish these bonds.

4. All reasonable expenses incurred by the in-sured at our request to assist us in the inves-tigation or defense of the claim or "suit", in-cluding actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we be-come obligated to pay and which falls within the applicable limit of insurance.  If we make an offer to pay the applicable limit of insur-ance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or de-posited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insur-ance.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured.  Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an in-sured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are in-sureds, but only with respect to their du-ties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive offi-cers" and directors are insureds, but only with respect to their duties as your offi-cers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured.  Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while per-forming duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by

Includes copyright material of Insurance Services Office, Inc., with its permission.

you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

   **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

   **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

   **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

   **(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

   **(a)** Owned, occupied or used by; or

   **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

   you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Insurance under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2. a.** The General Aggregate Limit is the most we will pay for the sum of:

   **(1)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

   **(2)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **(3)** Damages under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.**

   This General Aggregate Limit will not apply if either the Location General Aggre-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GA 101 12 04                                                       **Page 12 of 22**

gate Limit of Insurance, Paragraph **2.b.**, or the Construction Project General Aggregate Limit of Insurance, Paragraph **2.c.** applies.

**b.** A separate Location General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each location owned by, or rented or leased to you and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS,**

which can be attributed to operations at only a single location owned by, or rented or leased to you.

**c.** A separate Construction Project General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each construction project and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

which can be attributed only to ongoing operations and only at a single construction project.

**d.** Only for the purpose of determining which General Aggregate Limit of Insurance, **2.a.**, **2.b.**, or **2.c.**, applies:

**(1)** Location means premises involving the same or connecting lots, or premises, whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**(2)** Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on

your behalf at the same location for the same persons or organizations, no matter how often or under how many different contracts, will be deemed to be a single construction project.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.a.** above, the Personal and Advertising Injury Limit is the most we will pay under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2. or 3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**; and

**b.** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire or explosion, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under **COVERAGE C. MEDICAL PAYMENTS** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**GA 101 12 04**                                                                 **Page 13 of 22**

a "personal and advertising injury" offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable

under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for "your work";

**(b)** That is Fire or Explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**GA 101 12 04**                                                    **Page 14 of 22**

premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto or Watercraft**.

**(2)** Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the insured has been added as an additional insured by attachment of an endorsement.

**(3)** Any other insurance:

**(a)** Whether primary, excess, contingent or on any other basis, except when such insurance is written specifically to be excess over this insurance; and

**(b)** That is a consolidated (wrap-up) insurance program which has been provided by the prime contractor/project manager or owner of the consolidated project in which you are involved.

When this insurance is excess, we will have no duty under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance

shown in the Declarations of this Coverage Part.

**c.** **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**6.** **Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only.  At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured.  The due date for audit and retrospective premiums is the date shown as the due date on the bill.  If:

**(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

**(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7.** **Representations**

By accepting this Coverage Part, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this Coverage Part in reliance upon your representations.

**8.** **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**GA 101 12 04**

**Page 15 of 22**

    **a.** As if each Named Insured were the only Named Insured; and

    **b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Part and any other Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "personal and advertising injury" offense, the aggregate maximum limit of insurance under all the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable limit of insurance under any one Coverage Form, Coverage Part or policy. This condition does not apply to any Coverage Form, Coverage Part or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Part.

**11. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For purposes of this definition:

    **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

**2.** "Authorized representative" means:

    **a.** If you are designated in the Declarations as:

        **(1)** An individual, you and your spouse are "authorized representatives".

        **(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

        **(3)** A limited liability company, your members and your managers are "authorized representatives".

        **(4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

        **(5)** A trust, your trustees are "authorized representatives".

    **b.** Your "employees":

        **(1)** Assigned to manage your insurance program; or

        **(2)** Responsible for giving or receiving notice of an "occurrence", "personal and advertising injury" offense, claim or "suit";

    are also "authorized representatives".

**3.** "Auto" means:

    **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

    **a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

(1) The day the policy period shown in the Declarations ends; or

(2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

6. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in **a.** above;

(2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication,

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement to which we agree.

7. "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

9. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

10. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

11. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

12. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any rail-

Includes copyright material of Insurance Services Office, Inc., with its permission.

road property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities;

**(4)** That indemnifies an advertising, public relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing communications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materials; market research; public relations and new product development;

**(5)** Under which the insured, if an advertising, public relations or media consulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph **(4)**, above;

**(6)** That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or failure to execute Internet services. Internet services include but are not limited to design, production, distribution, maintenance and administration of web-sites and web-banners; hosting web-sites; registering domain names; registering with search

engines; marketing analysis; and providing access to the Internet or other similar networks; or

**(7)** Under which the insured, if a web-site designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to render Internet services, including those listed in Paragraph **(6)**, above.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

16. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

18. "Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

a. The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

b. The insured uses, generates or produces the "pollutant".

19. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed; or

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a schedule, states that products-completed operations are included.

**20.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**21.** "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**23.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**24.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

**25.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**26.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (Broad Form)

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an insured under this Coverage Part is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this Coverage Part not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured, or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this exclusion:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

   "Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

   "Nuclear facility" means:

   A. Any "nuclear reactor";

   B. Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   C. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**GA 101 12 04**                                                          **Page 21 of 22**

**D.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# NOTICE TO POLICYHOLDERS - MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS

This is a notice of a change in your policy.  NO COVERAGE IS PROVIDED BY THIS NOTICE nor can it be construed to replace any provisions of your policy.  YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE for complete information on the coverage you are provided.  If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

**GA 4250** Mobile Equipment Subject to Motor Vehicle Insurance Laws has been added to your policy.

This endorsement revises the definitions of "mobile equipment" and "auto" to those definitions used prior to the introduction of Commercial General Liability Form, **GA 101 12 04.**  This endorsement only applies if you have no Auto Coverage Form in force or the land vehicle does not meet the definition of auto in your Auto Coverage Form.

**GA 4251 01 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES - POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following is added to Subparagraph **f., Pollution** of Paragraph **2., Exclusions** of **Bodily Injury and Property Damage Liability Coverage (Section I - Coverages)** and to Paragraph **2., Exclusions** of **Personal and Advertising Injury Liability Coverage (Section I - Coverages)** or to any amendment to or replacement thereof:

This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location.

**CG 01 23 03 97**                    Copyright, Insurance Services Office, Inc., 1996

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| |
|---|
| **Premises:**<br>3517-3635 E RAYMOND ST<br>INDIANAPOLIS, IN 46203 |
| **Project:** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1.  The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2.  The project shown in the Schedule.

**CG 21 44 07 98**                    Copyright, Insurance Services Office, Inc., 1997

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMERCIAL GENERAL LIABILITY EXTENDED LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.  Endorsement - Table of Contents:**

**Coverage:**                                                                                                    **Begins on Page:**

1.  Employee Benefit Liability Coverage ........................................................................ 2
2.  Unintentional Failure to Disclose Hazards ............................................................. 8
3.  Damage to Premises Rented to You ......................................................................... 8
4.  Supplementary Payments ......................................................................................... 9
5.  180 Day Coverage for Newly Formed or Acquired Organizations ........................ 9
6.  Waiver of Subrogation ............................................................................................. 9
7.  Automatic Additional Insured - Specified Relationships:  ..................................... 10
    - Managers or Lessors of Premises;
    - Lessor of Leased Equipment;
    - Vendors; and
    - State or Political Subdivisions - Permits Relating to Premises
8.  Property Damage to Borrowed Equipment ............................................................. 12
9.  Employees as Insureds - Specified Health Care Services:  .................................... 13
    - Nurses;
    - Emergency Medical Technicians; and
    - Paramedics
10. Broadened Notice of Occurrence ............................................................................. 13

**B.  Limits of Insurance:**

The Commercial General Liability Limits of Insurance apply to the insurance provided by this endorsement, except as provided below:

**1.  Employee Benefit Liability Coverage**

| | |
|---|---|
| Each Employee Limit: | $ 1,000,000 |
| Aggregate Limit: | $ 3,000,000 |
| Deductible: | $      1,000 |

**3.  Damage to Premises Rented to You**

The lesser of:

**a.**  The Each Occurrence Limit shown in the Declarations; or

**b.**  $500,000 unless otherwise stated $ _____

**4.  Supplementary Payments**

**a.**  Bail bonds:          $      1,000

**b.**  Loss of earnings:   $        350

**8.  Property Damage to Borrowed Equipment**

| | |
|---|---|
| Each Occurrence Limit | $      10,000 |
| Deductible | $         250 |

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**GA 227 02 07**                                                                                            **Page 1 of 13**

**C. Coverages**

1. **Employee Benefit Liability Coverage**

   a. The following is added to **SECTION I - COVERAGES: Employee Benefit Liability Coverage.**

      **(1) Insuring Agreement**

         **(a)** We will pay those sums that the insured becomes legally obligated to pay as damages caused by any act, error or omission of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any claim or "suit" that may result. But:

            **1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE;** and

            **2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

            No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

         **(b)** This insurance applies to damages only if the act, error or omission, is negligently committed in the "administration" of your "employee benefit program"; and

            **1)** Occurs during the policy period; or

         **2)** Occurred prior to the effective date of this endorsement provided:

            **a)** You did not have knowledge of a claim or "suit" on or before the effective date of this endorsement.

               You will be deemed to have knowledge of a claim or "suit" when any "authorized representative";

               **i)** Reports all, or any part, of the act, error or omission to us or any other insurer;

               **ii)** Receives a written or verbal demand or claim for damages because of the act, error or omission; and

            **b)** There is no other applicable insurance.

      **(2) Exclusions**

         This insurance does not apply to:

         **(a) Bodily Injury, Property Damage or Personal and Advertising Injury**

            "Bodily injury", "property damage" or "personal and advertising injury".

         **(b) Dishonest, Fraudulent, Criminal or Malicious Act**

            Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(c) Failure to Perform a Contract**

Damages arising out of failure of performance of contract by any insurer.

**(d) Insufficiency of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**(e) Inadequacy of Performance of Investment / Advice Given with Respect to Participation**

Any claim based upon:

1) Failure of any investment to perform;

2) Errors in providing information on past performance of investment vehicles; or

3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**(f) Workers' Compensation and Similar Laws**

Any claim arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**(g) ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**(h) Available Benefits**

Any claim for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**(i) Taxes, Fines or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**(j) Employment-Related Practices**

Any liability arising out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment - related practices, acts or omissions; or

(4) Consequential liability as a result of **(1), (2)** or **(3)** above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(3) Supplementary Payments**

SECTION I - COVERAGES, SUPPLEMENTARY PAYMENTS - COVERAGES A AND B also apply to this Coverage.

**b. Who is an Insured**

As respects Employee Benefit Liability Coverage, **SECTION II - WHO IS AN INSURED** is deleted in its entirety and replaced by the following:

**(1)** If you are designated in the Declarations as:

**(a)** An individual, you and your spouse are insureds, but

Electronically Filed 01/09/2023 08:39 / / CV 23 978509 / Confirmation Nbr. 2742964 / CLJSZ

GA 227 02 07

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 3 of 13

only with respect to the conduct of a business of which you are the sole owner.

**(b)** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds but only with respect to the conduct of your business.

**(c)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(d)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(e)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**(2)** Each of the following is also an insured:

**(a)** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**(b)** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**(c)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**(3)** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However, coverage under this provision:

**(a)** Is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**(b)** Does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**c.** **Limits of Insurance**

As respects Employee Benefit Liability Coverage, **SECTION III - LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following:

**(1)** The Limits of Insurance shown in Section **B. Limits of Insurance**, **1. Employee Benefit Liability Coverage** and the rules below fix the most we will pay regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought;

**(c)** Persons or organizations making claims or bringing "suits";

**(d)** Acts, errors or omissions; or

**(e)** Benefits included in your "employee benefit program".

**(2)** The Aggregate Limit shown in Section **B. Limits of Insurance**, **1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**(3)** Subject to the limit described in **(2)** above, the Each Employee Limit shown in Section **B. Limits of Insurance**, **1. Employee Benefit Liability Coverage** of this endorsement is the most we

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**GA 227 02 07**                                                                                       **Page 4 of 13**

will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(a)** An act, error or omission; or

**(b)** A series of related acts, errors or omissions, regardless of the amount of time that lapses between such acts, errors or omissions.

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program."

**(4) Deductible Amount**

**(a)** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Declarations as applicable to Each Employee.  The limits of insurance shall not be reduced by the amount of this deductible.

**(b)** The deductible amount stated in the Declarations applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**(c)** The terms of this insurance, including those with respect to:

**1)** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or claim,

apply irrespective of the application of the deductible amount.

**(d)** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**d. Additional Conditions**

As respects **Employee Benefit Liability Coverage, SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended as follows:

**(1)** Item **2. Duties in the Event of Occurrence, Offense, Claim or Suit** is deleted in its entirety and replaced by the following:

**2. Duties in the Event of an Act, Error or Omission, or Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim. To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written no-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GA 227 02 07                                                                 Page 5 of 13

tice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

(2) Item **5. Other Insurance** is deleted in its entirety and replaced by the following:

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **c.** below applies. If this

insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

b. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

c. **No Coverage**

This insurance shall not cover any loss for which the insured is entitled to recovery under any other insurance in force previous to the effective date of this Coverage Part.

e. **Additional Definitions**

As respects **Employee Benefit Liability Coverage, SECTION V - DEFINITIONS** is amended as follows:

(1) The following definitions are added:

1. "Administration" means:

a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or

Electronically Filed 01/09/2023 08:39 / CV23-273598 / Confirmation Nbr. 2742954 / CLJSZ

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GA 227 02 07      Page 6 of 13

scope of "employee benefit programs";

**b.** Interpreting the "employee benefit programs";

**c.** Handling records in connection with the "employee benefit programs"; or

**d.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include:

**a.** Handling payroll deductions; or

**b.** The failure to effect or maintain any insurance or adequate limits of coverage of insurance, including but not limited to unemployment insurance, social security benefits, workers' compensation and disability benefits.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow "employees" to elect to pay for certain benefits with pre-tax dollars.

**3.** "Employee benefit programs" means a program providing some of all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

**a.** Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

**c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits; and

**d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies.

**(2)** The following definitions are deleted in their entirety and replaced by the following:

**21.** "Suit" means a civil proceeding in which money damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

**8.** "Employee" means a person actively employed, formerly

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**GA 227 02 07** | **Page 7 of 13**

employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

2. **Unintentional Failure to Disclose Hazards**

   **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 7. Representations** is hereby amended by the addition of the following:

   Based on our dependence upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not reject coverage under this Coverage Part based solely on such failure.

3. **Damage to Premises Rented to You**

   a. The last Subparagraph of Paragraph **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY 2., Exclusions** is hereby deleted and replaced by the following:

      Exclusions **c.** through **q.** do not apply to damage by fire, explosion, lightning, smoke or soot to premises while rented to you or temporarily occupied by you with permission of the owner.

   b. The insurance provided under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** applies to "property damage" arising out of water damage to premises that are both rented to and occupied by you.

      (1) As respects Water Damage Legal Liability, as provided in Paragraph **3.b.** above:

          The exclusions under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, other than **i. War** and the **Nuclear Energy Liability Exclusion**, are deleted and the following are added:

          This insurance does not apply to:

          (a) "Property damage":

              1) Assumed in any contract; or

2) Loss caused by or resulting from any of the following:

   a) Wear and tear;

   b) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

   c) Smog;

   d) Mechanical breakdown including rupture or bursting caused by centrifugal force;

   e) Settling, cracking, shrinking or expansion; or

   f) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

(b) Loss caused directly or indirectly by any of the following:

   1) Earthquake, volcanic eruption, landslide or any other earth movement;

   2) Water that backs up or overflows from a sewer, drain or sump;

   3) Water under the ground surface pressing on, or flowing or seeping through:

      a) Foundations, walls, floors or paved surfaces;

      b) Basements, whether paved or not; or

      c) Doors, windows or other openings.

(c) Loss caused by or resulting from water that leaks or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

flows from plumbing, heating, air conditioning, or fire protection systems caused by or resulting from freezing, unless:

1) You did your best to maintain heat in the building or structure; or

2) You drained the equipment and shut off the water supply if the heat was not maintained.

(d) Loss to or damage to:

1) Plumbing, heating, air conditioning, fire protection systems, or other equipment or appliances; or

2) The interior of any building or structure, or to personal property in the building or structure caused by or resulting from rain, snow, sleet or ice, whether driven by wind or not.

c. **Limit of Insurance**

The Damage to Premises Rented to You Limit as shown in the Declarations is amended as follows:

(2) Paragraph **6.** of **SECTION III - LIMITS OF INSURANCE** is hereby deleted and replaced by the following:

6. Subject to **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one "occurrence" to which this insurance applies.

(3) The most we will pay is limited as described in Section **B. Limits of Insurance, 3. Damage to Premises Rented to You** of this endorsement.

4. **Supplementary Payments**

Under **SECTION I - COVERAGE, SUPPLEMENTARY PAYMENTS - COVERAGES A AND B:**

a. Paragraph **2.** is replaced by the following:

Up to the limit shown in Section **B. Limits of Insurance, 4.a.** Bail Bonds of this endorsement for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

b. Paragraph **4.** is replaced by the following:

All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to the limit shown in Section **B. Limits of Insurance, 4.b.** Loss of Earnings of this endorsement per day because of time off from work.

5. **180 Day Coverage for Newly Formed or Acquired Organizations**

**SECTION II - WHO IS AN INSURED** is amended as follows:

Subparagraph **a.** of Paragraph **4.** is hereby deleted and replaced by the following:

a. Insurance under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

6. **Waiver of Subrogation**

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 9. Transfer of Rights of Recovery Against Others to Us** is hereby amended by the addition of the following:

We waive any right of recovery we may have because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a written contract requiring such waiver with that person or organization and included in the "products-completed operations hazard". However, our rights may only be waived prior to the "occurrence" giving rise to the injury or damage for which we make payment under this

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Coverage Part. The insured must do nothing after a loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

**7. Automatic Additional Insured - Specified Relationships**

a. The following is hereby added to SECTION II - WHO IS AN INSURED:

(1) Any person or organization described in Paragraph **7.a.(2)** below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of:

(a) A written contract or agreement; or

(b) An oral agreement or contract where a certificate of insurance showing that person or organization as an additional insured has been issued,

is an insured, provided:

(a) The written or oral contract or agreement is:

1) Currently in effect or becomes effective during the policy period; and

2) Executed prior to an "occurrence" or offense to which this insurance would apply; and

(b) They are not specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part.

(2) Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:

(a) The manager or lessor of a premises leased to you with whom you have agreed per Paragraph **7.a.(1)** above to provide insurance, but only with respect to liability arising out of the ownership, maintenance or use of that

part of a premises leased to you, subject to the following additional exclusions:

This insurance does not apply to:

1) Any "occurrence" which takes place after you cease to be a tenant in that premises.

2) Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

(b) Any person or organization from which you lease equipment with whom you have agreed per Paragraph **7.a.(1)** above to provide insurance. Such person(s) or organization(s) are insureds solely with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s). However, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

(c) Any person or organization (referred to below as vendor) with whom you have agreed per Paragraph **7.a.(1)** above to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1) The insurance afforded the vendor does not apply to:

a) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

b) Any express warranty unauthorized by you;

c) Any physical or chemical change in the product made intentionally by the vendor;

d) Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

e) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

f) Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

g) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2) This insurance does not apply to any insured person or organization:

a) From whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products; or

b) When liability included within the "products-completed operations hazard" has been excluded under this Coverage Part with respect to such products.

(d) Any state or political subdivision with which you have agreed per Paragraph **7.a.(1)** above to provide insurance, subject to the following additional provision:

This insurance applies only with respect to the following hazards for which the state or political subdivision has issued a permit in connection with premises you own, rent or control and to which this insurance applies:

1) The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, street banners, or decorations and similar exposures; or

2) The construction, erection, or removal of elevators; or

3) The ownership, maintenance, or use of any elevators covered by this insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(3) Any insurance provided to an additional insured designated under Paragraph **7.a.(2)** Subparagraphs **(a)**, **(b)** and **(d)** does not apply to "bodily injury", "property damage" or, "personal and advertising injury" arising out of the sole negligence or willful misconduct of the additional insured or their agents, "employees" or any other representative of the additional insured.

b. **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is hereby amended as follows:

Condition **5. Other Insurance** is amended to include:

(1) Where required by a written contract or agreement, this insurance is primary and / or non-contributory as respects any other insurance policy issued to the additional insured, and such other insurance policy shall be excess and / or noncontributing, whichever applies, with this insurance.

(2) Any insurance provided by this endorsement shall be primary to other insurance available to the additional insured except:

(a) As otherwise provided in **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 5. Other Insurance, b. Excess Insurance;** or

(b) For any other valid and collectible insurance available to the additional insured as an additional insured by attachment of an endorsement to another insurance policy that is written on an excess basis. In such case, the coverage provided under this endorsement shall also be excess.

8. **Property Damage to Borrowed Equipment**

a. The following is hereby added to Exclusion **j. Damage to Property** of Paragraph **2., Exclusions SECTION I - COVERAGES, COVERAGE A. -**

**BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

Paragraphs **(3)** and **(4)** of this exclusion do not apply to tools or equipment loaned to you, provided they are not being used to perform operations at the time of loss.

b. With respect to the insurance provided by this section of the endorsement, the following additional provisions apply:

(1) The Limits of Insurance shown in the Declarations are replaced by the limits designated in **Property Damage to Borrowed Equipment Section B. Limits of Insurance, 8. Property Damage to Borrowed Equipment** of this endorsement with respect to coverage provided by this endorsement. These limits are inclusive of and not in addition to the limits being replaced. The Limits of Insurance shown in Section **B. Limits of Insurance, 8. Property Damage to Borrowed Equipment** of this endorsement fix the most we will pay in any one "occurrence" regardless of the number of:

(a) Insureds;

(b) Claims made or "suits" brought; or

(c) Persons or organizations making claims or bring "suits".

(2) **Deductible Clause**

(a) Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" which are in excess of the deductible amount stated in Section **B. Limits of Insurance, 8. Property Damage to Borrowed Equipment** of this endorsement. The limits of insurance will not be reduced by the application of such deductible amount.

(b) **SECTION I - COMMERCIAL LIABILITY CONDITIONS 2. Duties in the Event of Occurrence, Offense, Claim or Suit,** applies to each claim or "suit" irrespective of the amount.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**(c)** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

9. **Employees as Insureds - Specified Health Care Services**

It is hereby agreed that Paragraph **2.a.(1)(d)** of **SECTION II - WHO IS AN INSURED**, does not apply to your "employees" who provide professional health care services on your behalf as duly licensed:

**a.** Nurses;

**b.** Emergency Medical Technicians; or

**c.** Paramedics,

in the jurisdiction where an "occurrence" or offense to which this insurance applies takes place.

10. **Broadened Notice of Occurrence**

Paragraph **a.** of Condition **2. Duties in the Event of Occurrence, Offense, Claim or Suit (SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS)** is hereby deleted and replaced by the following:

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

This requirement applies only when the "occurrence" or offense is known to an "authorized representative".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GA 227 02 07                                                                 Page 13 of 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA AMENDATORY
# EXCLUSION - LIABILITY ARISING FROM STATUTE OR REGULATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

**Description of Statute:**

Clean Air Act (CAA): 42 U.S.C. §7401 *et seq.*; Clean Water Act (CWA): 33 U.S.C. §1251 *et seq.*; Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA or Superfund): 42 U.S.C. §9601 *et seq.*; Emergency Planning and Community Right to Know Act of 1986 (EPCRA): 42 U.S.C. §11004 *et seq.*; Federal Insecticide, Fungicide and Rodenticide Act (FIFRA): 7 U.S.C. §136 *et seq.*; Marine Protection, Research and Sanctuaries Act of 1972 (MPRAS): 33 U.S.C. §1401-1445; 16 U.S.C. §1431-1445; Oil Pollution Act of 1990 (OPA): 33 U.S.C. §2701 *et seq.*; Resource Conservation and Recovery Act (RCRA): 42 U.S.C. §6901 *et seq.*; Rivers and Harbors Act of 1899: 33 U.S.C. §407 *et seq.*; Safe Drinking Water Act (SDWA): 42 U.S.C. §300f *et seq.*; Surface Mining Control and Reclamation Act of 1977 (SMCRA): 30 U.S.C. §1234-1328; Toxic Substances Control Act of 1976 (TSCA): 15 U.S.C. § 2601-2695; Pollution Prevention Act (PPA): 42 U.S.C. §13101 *et seq.*; Indiana code, Title 13. Environmental (including but not limited the following sections): Enforcement and Legal Actions: I.C. §13-30 *et seq.*; Environmental Legal Action Statute (ELA): I.C. §13-30-9 et seq.; Environmental Management; I.C. §13-13 *et seq.*; Air Pollution: I.C. §13-17 *et seq.*; Water Pollution: I.C. §13-18 *et seq.*; Solid Waste Management: I.C. §13-20 *et seq.*; Electronic Waste: I.C. §13-20.5 *et seq.*; Hazardous Waste Management: I.C. §13-22 *et seq.*; Underground Storage Tank: I.C. §13-23 *et seq.*; Petroleum: I.C. §13-24 *et seq.*; Hazard Substances: I.C. §13-25 *et seq.*; and Industrial Pollution: I.C. §13-27 *et seq.*

The following exclusion is added to Paragraph **2. Exclusions** of SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to liability arising out of one or more of the statutes shown in the Schedule, as amended, or any regulation authorized by or implementing the statutes.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** Exclusion **2.s.** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced by the following:

**2.  Exclusions**

This insurance does not apply to:

**s.  Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal and Advertising Injury Liability:**

**2.  Exclusions**

This insurance does not apply to:

**Access or Disclosure of Confidential or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**GA 3024 05 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - LEAD LIABILITY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusions are added to Paragraph **2. Exclusions** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph **2. Exclusions** of **SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, resulting from, or in any way caused by or contributing to the actual, alleged or threatened ingestion, inhalation, absorption of, exposure to or presence of lead in any form emanating from any source.

2. Any loss, cost or expense arising out of, resulting from or in any way related to any:

    a. Claim, suit, request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of lead in any form; or

    b. Claim or suit by or on behalf of any person, entity, or governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead in any form.

**GA 323 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g.** Aircraft, Auto or Watercraft is replaced by the following:

This insurance does not apply to:

**g.** **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises that you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.**

**(2)** or **f. (3)** of the definition of "mobile equipment".

**B.** **SECTION II - WHO IS AN INSURED** is amended to include:

**4.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**C.** **SECTION V - DEFINITIONS, 3.** "Auto" and **15.** "Mobile equipment" are replaced by the following:

**3.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

Includes copyrighted material of ISO Properties, Inc., with its permission

GA 4250 11 05

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted;

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**D.** This endorsement does not apply to any liability arising from an "occurrence" caused by or arising from any land vehicle if:

  **1.** You have an Auto Coverage Form in force at the time of the "occurrence"; and

  **2.** The land vehicle meets the definition of auto in your Auto Coverage Form or policy, regardless of whether or not such land vehicle is:

    **a.** A covered auto under such Auto Coverage Form or policy; or

    **b.** Specifically described on a schedule of covered autos on your Auto Coverage Form or policy.

Includes copyrighted material of ISO Properties, Inc., with its permission

GA 4250 11 05            Page 2 of 2

# NOTICE TO POLICYHOLDERS
## LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION ENDORSEMENT

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following revised endorsement, which applies to your renewal policy being issued by us:

**Limitation of Coverage to Designated Premises, Project or Operation - CG 2144 04 17**

When this endorsement is attached to your policy, coverage is limited to specific premises and/or projects or operations designated in the Schedule of the endorsement. This endorsement has been revised to explicitly address, in the context of a scheduled premises, the location wherein:

- Under Coverage **A,** bodily injury or property damage must occur;

- Under Coverage **B,** the following location-based offenses must be committed:

  1. False arrest, detention or imprisonment; or

  2. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; and

- Under Coverage **C,** bodily injury must occur.

If the previous edition of this endorsement was attached to your policy, the attachment of this endorsement may result in a reduction of coverage in the context of a scheduled premises, to the extent coverage might have been previously available or provided for bodily injury or property damage that occurs, or a location-based offense that is committed, away from a scheduled premises.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.

**GA 4486 04 17**

# THE CINCINNATI INDEMNITY COMPANY
## CINCINNATI, OHIO

### BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**
Attached to and forming part of POLICY NUMBER: ▮▮▮▮▮▮▮▮▮ ‎
Named Insured is the same as it appears in the Common Policy Declarations.

**ITEM TWO**       **SCHEDULE OF COVERAGES AND COVERED AUTOS**
This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 8, 9 | $1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | Separately stated in each P.I.P. endorsement minus $      Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | Separately stated in each added P.I.P. endorsement | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P.I. endorsement minus $      Ded. for each accident | |
| AUTO. MEDICAL PAYMENTS | | $ | |
| UNINSURED MOTORISTS | 8, 9 | $ 1,000,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 8, 9 | $ SEE AA4183 | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $ Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $      Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $ Ded for each covered auto. See Item Three for hired or borrowed "autos". | |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $      for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

| | | |
|---|---|---|
| AA4183 | 02/06 | AUTOMOBILE SCHEDULE |
| AA101 | 03/06 | BUSINESS AUTO COVERAGE FORM |
| AA2009 | 01/17 | CHANGES - TOWING AND LABOR |
| AA296 | 07/12 | CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE |
| AA327IN | 02/14 | INDIANA AMENDATORY EXCLUSION - LIABILITY ARISING FROM STATUTE OR REGULATION |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AAD505 03 06**          ▮▮▮▮▮▮▮▮▮▮        **Page 1 of 3**

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

```
AA4078IN   12/15   INDIANA UNDERINSURED MOTORIST COVERAGE
AA4170IN   12/15   INDIANA - UNINSURED AND UNDERINSURED MOTORIST PROTECTION
                   SELECTION/REJECTION FORM
AA4263     04/10   OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT
AA484IN    12/15   INDIANA UNINSURED MOTORIST COVERAGE
CA0119     07/09   INDIANA CHANGES
```

* This policy may be subject to final audit

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
AAD505 03 06

# QUICK REFERENCE
# COMMERCIAL AUTO COVERAGE PART
# BUSINESS AUTO COVERAGE FORM
### READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGES**

Named Insured and Mailing Address
Policy Period
Description of Business
Coverages and Limits of Insurance

**SECTION I - COVERED AUTOS**                                              **Beginning on Page**

Description of Covered Auto Designation Symbols...................................................................1
Owned Autos You Acquire After the Policy Begins ...................................................................1
Certain Trailers, Mobile Equipment and
Temporary Substitute Autos...................................................................................................... 2

**SECTION II - LIABILITY COVERAGE**

Coverage............................................................................................................................... 2
Who is an Insured ................................................................................................................. 2
Coverage Extensions
 Supplementary Payments.................................................................................................. 2
 Out of State......................................................................................................................... 3
Exclusions ............................................................................................................................ 3
Limit of Insurance ................................................................................................................ 5

**SECTION III - PHYSICAL DAMAGE COVERAGE**

Coverage............................................................................................................................... 7
Exclusions ............................................................................................................................ 7
Limit of Insurance ................................................................................................................ 8
Deductible.............................................................................................................................. 8

**SECTION IV - BUSINESS AUTO CONDITIONS**

Loss Conditions
 Appraisal for Physical Damage Loss ............................................................................... 9
 Duties in the Event of Accident, Claim, Suit or Loss....................................................... 9
 Legal Action Against Us..................................................................................................... 9
 Loss Payment - Physical Damage Coverages.................................................................. 9
 Transfer of Rights of Recovery Against Others to Us..................................................... 10
General Conditions
 Bankruptcy ........................................................................................................................ 10
 Concealment, Misrepresentation or Fraud...................................................................... 10
 Liberalization ..................................................................................................................... 10
 No Benefit to Bailee - Physical Damage Coverages....................................................... 10
 Other Insurance ................................................................................................................ 10
 Premium Audit................................................................................................................... 10
 Policy Period, Coverage Territory .................................................................................... 10
 Two or More Coverage Forms or Policies Issued by Us................................................. 11

**SECTION V - DEFINITIONS** ............................................................................................. 11

**COMMON POLICY CONDITIONS**

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
**AAD505 03 06**                                                                    Page  3  of  3

# AUTOMOBILE SCHEDULE

## ITEM   THREE

Attached to and forming a part of Policy Number ███████████ , effective  12-20-2017

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

<u>POLICY LIMITS</u>

State: <u>IN</u>

| | | | |
|---|---|---|---|
| Bodily Injury: | 1,000,000 CSL | Property Damage: | INCLUDED |
| UM/UIM: | 1,000,000 | UMPD | INCLUDED |
| UMPD DED: | NONE | | |
| | | (*UMPD APPLIES) | |

| Veh. No. | Vehicle Information | | | |
|---|---|---|---|---|
| | HIRED AND NON-OWNED | | Class: | Territory |
| | OTC-COMP DED: N/A | Coll Ded: N/A | | |

| | BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|---|
| | 84 | INCL | N/A | | | 8 | 92 |

SYMBOLS:

| | | | | |
|---|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils | |
| PD | -- Property Damage | COLL | -- Collision | |
| MP | -- Medical Payments | UM | -- Uninsured Motorists | |
| OTC | -- Other Than Collision (ACV Coverage applies unless Stated Amount Value is indicated) | UIM | -- Underinsured Motorists | |
| | | PIP | -- Personal Injury Protection | |
| CAC | -- Combined Additional Coverage | T&L | -- Towing and Labor Costs | |
| FT&S | -- Fire, Theft, and Supplemental | RR | -- Rental Reimbursement | |
| UMPD | -- Uninsured Motorists PD | | | |

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer **to SECTION V - DEFINITIONS**.

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**

| SYMBOL | DESCRIPTION |
|---|---|
| **1 =** | ANY "AUTO". |
| **2 =** | OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3 =** | OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4 =** | OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5 =** | OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| **6 =** | OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where |

they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

**7 =** SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE).

**8 =** HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

**9 =** NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

**B. Owned Autos You Acquire After the Policy Begins**

**1.** If Symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

**2.** But, if Symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

  **a.** We already cover all "autos" that you own for that coverage or it replaces

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

an "auto" you previously owned that had that coverage; and

**b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** "Loss"; or

**e.** Destruction.

# SECTION II - LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who is an Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

quired because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the "insured" or which is in fact expected or intended by the "insured", even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" sustained in the "workplace";

**b.** An "employee" of the "insured" arising out of the performance of duties related to the conduct of the "insured's" business; or

**c.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** or **b.** above.

This Exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 101 03 06**

**Page 3 of 14**

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract" other than a contract or agreement with a labor leasing firm. For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement of Property by Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollutant**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

However, this exception to Paragraph a. does not apply if the fuels, lubricants, fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed or released.

Paragraphs b. and c. of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

d. At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(1) If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

(2) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Subparagraph d.(1) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

12. War

"Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

13. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**D. Mobile Equipment Subject to Motor Vehicle Insurance Laws**

As respects **SECTION II - LIABILITY COVERAGE** any land vehicle, which would qualify as "mobile equipment", except that it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged, is considered a covered "auto" under **SECTION II - LIABILITY COVERAGE,** irrespective of the Auto Designation Symbols shown for **SECTION II - LIABILITY COVERAGE** in the Declarations.

# SECTION III - PHYSICAL DAMAGE COVERAGE

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage**

      From any cause except:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

   b. **Specified Causes of Loss Coverage**

      Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage**

      Caused by:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

      We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"auto" is returned to use or we pay for its "loss".

**b. Loss of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority

in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown; or

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal for Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

Electronically Filed 01/09/2023 08:39 / CV/23 973508 / Confirmation Nbr. 2742854 / CLJSZ

**AA 101 03 06**    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    **Page 8 of 14**

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Cov-

erage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**4. No Benefit to Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 101 03 06** Page 9 of 14

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the Policy Period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America;

**b.** The territories and possessions of the United States of America;

**c.** Puerto Rico;

**d.** Canada; and

**e.** Anywhere in the world if:

**(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

Electronically Filed 01/09/2023 08:39 / CV 23 973509 / Confirmation Nbr. 2742954 / CLJSZ

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

AA 101 03 06                                                                    Page 10 of 14

## SECTION V - DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

  **1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

  **2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

  **1.** Any request, demand, order or statutory or regulatory requirement that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

  **2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

  **a.** That are, or that are contained in any property that is:

    **(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

    **(2)** Otherwise in the course of transit by or on behalf of the "insured";

    **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto"; or

  **b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place

where they are accepted by the "insured" for movement into or onto the covered "auto"; or

  **c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

    **(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(2)** The discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract":

**1.** Means:

**a.** A lease of premises;

**b.** A sidetrack agreement;

**c.** An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**f.** That part of any other contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

**2.** Does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraphs **1.**, **2.**, or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1.**, **2.**, **3.**, or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

Electronically Filed 01/09/2023 08:39 / CV623 873508 / Confirmation Number 2742954 / CLJSZ

AA 101 03 06      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      Page 12 of 14

    **(1)** Snow removal;

    **(2)** Road maintenance, but not construction or resurfacing; or

    **(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and their by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**1.** The "insured" is regularly or otherwise engaged in activities which taint or degrade the environment; or

**2.** The "insured" uses, generates or produces the "pollutant".

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

**Q.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of the "accident".

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

    **(1)** With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

    **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazard-

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**AA 101 03 06**

ous properties" of "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**AA 101 03 06** Page 14 of 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - TOWING AND LABOR

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COV-ERAGE, A. Coverage, 2. Towing** is deleted in its entirety and replaced with:

   2. **Towing**

      We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" is disabled. However, the labor must be performed at the place of disablement.

**AA 2009 01 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 4.** is deleted in its entirety and replaced with:

   4. We will not pay for "loss" to any of the following:

      a. Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

      b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

      c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

      d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

   Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

      a. Permanently installed in or upon the covered "auto";

      b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

      c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

      d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

2. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limits of Insurance, 1.** is deleted in its entirety and replaced with:

   1. The most we will pay for:

      a. "Loss" to any covered "auto" is the lesser of;

         (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

         (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind or quality.

      b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss", is up to $1,000, if, at the time of "loss", such electronic equipment is:

         (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

         (2) Removable from a permanently installed housing unit as described in Paragraph **b.1.** above; or

         (3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

3. **AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE ADDED LIMITS**

   The sub-limit in Paragraph **1.b.** above is in addition to the Limit of Insurance shown in the Schedule of the Audio, Visual and Data Equipment Coverage endorsement, if purchased.

**AA 296 07 12**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA AMENDATORY
# EXCLUSION - LIABILITY ARISING FROM STATUTE
# OR REGULATION

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE PART**
**GARAGE COVERAGE PART**

### SCHEDULE

**Description of Statute:**

Clean Air Act (CAA): 42 U.S.C. §7401 *et seq.*; Clean Water Act (CWA): 33 U.S.C. §1251 *et seq.*; Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA or Superfund): 42 U.S.C. §9601 *et seq.*; Emergency Planning and Community Right to Know Act of 1986 (EPCRA): 42 U.S.C. §11004 *et seq.*; Federal Insecticide, Fungicide and Rodenticide Act (FIFRA): 7 U.S.C. §136 *et seq.*; Marine Protection, Research and Sanctuaries Act of 1972 (MPRAS): 33 U.S.C. §1401-1445; 16 U.S.C. §1431-1445; Oil Pollution Act of 1990 (OPA): 33 U.S.C. §2701 *et seq.*; Resource Conservation and Recovery Act (RCRA): 42 U.S.C. §6901 *et seq.*; Rivers and Harbors Act of 1899: 33 U.S.C. §407 *et seq.*; Safe Drinking Water Act (SDWA): 42 U.S.C. §300f *et seq.*; Surface Mining Control and Reclamation Act of 1977 (SMCRA): 30 U.S.C. §1234-1328; Toxic Substances Control Act of 1976 (TSCA): 15 U.S.C. § 2601-2695; Pollution Prevention Act (PPA): 42 U.S.C. §13101 *et seq.*; Indiana code, Title 13. Environmental (including but not limited the following sections): Enforcement and Legal Actions: I.C. §13-30 *et seq.*; Environmental Legal Action Statute (ELA): I.C. §13-30-9 et seq.; Environmental Management; I.C. §13-13 *et seq.*; Air Pollution: I.C. §13-17 *et seq.*; Water Pollution: I.C. §13-18 *et seq.*; Solid Waste Management: I.C. §13-20 et seq.; Electronic Waste: I.C. §13-20.5 *et seq.*; Hazardous Waste Management: I.C. §13-22 *et seq.*; Underground Storage Tank: I.C. §13-23 *et seq.*; Petroleum: I.C. §13-24 *et seq.*; Hazard Substances: I.C. §13-25 *et seq.*; and Industrial Pollution: I.C. §13-27 *et seq.*

The following is added to **SECTION II - LIABILITY COVERAGE, B. Exclusions:**

This insurance does not apply to liability arising out of one or more of the statutes shown in the Schedule, as amended, or any regulation authorized by or implementing the statutes.

**AA 327 IN 02 14**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA UNDERINSURED MOTORIST COVERAGE

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as the Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Indiana, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below:

| Endorsement Effective: | Policy Number: |
|---|---|
| 12-20-2017 | ████████ |
| Named Insured:<br><br>RAYMOND STREET PARTNERS LLC | |

**SCHEDULE**

| "Bodily Injury" | $ SEE AA4183 | Each "Accident" |
|---|---|---|

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "underinsured motor vehicle". The damage must result from "bodily injury" sustained by the "insured" and caused by an "accident" with an "underinsured motor vehicle".

   The owner's or operator's liability for this damage must result from the ownership, maintenance or use of the "underinsured motor vehicle".

2. We will pay under this endorsement only if **a.** or **b.** below applies:

   **a.** The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   **b.** Tentative settlement has been made between an "insured" and the insurer of an "underinsured motor vehicle" which would exhaust the limits of liability under any applicable bond or policy, and we:

   (1) Have been given prompt written notice of such tentative settlement; and

   (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after the receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

## B. Who is an Insured

The following are "insureds":

1. If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

   **a.** Natural persons specially listed as a Named Insured on this endorsement.

   **b.** "Family members" of natural persons specifically listed as a Named Insured on this endorsement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**AA 4078 IN 12 15**                                                                                                    **Page 1 of 5**

c. Any natural person, but only for injuries that occur while "occupying" a covered "auto" or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

d. Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a., b.** or **c.**

e. Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when the person is an "insured" for Liability under the Coverage Form.

2. If an entity other than a natural person is listed as a Named Insured on this endorsement, the following persons are "insureds":

a. Any natural person, but only for injuries that occur while "occupying" a covered "auto" or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

c. Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when the person is an "insured" for Liability under the Coverage Form.

3. Employees of the Named Insured, but only for injuries arising out of and incurred while in the course and scope of employment for the Named Insured shown in the endorsement.

4. Anyone for injuries incurred while "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

5. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to:

1. Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits, or similar laws.

3. The direct or indirect benefit of any insurer of property.

4. "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

5. "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without a reasonable belief that he or she is entitled to do so. Under no circumstances will a person whose license has been suspended, revoked or never issued be held to have a reasonable belief that he or she is entitled to operate a "motor vehicle".

6. Punitive or exemplary damages.

7. "Noneconomic loss" sustained by any "insured" if such "insured" is an uninsured motorist with a previous violation as defined in Indiana Code Section 27-7-5.1.

However, Exclusion **C.7.** does not apply to an "insured" under 18 years of age.

## D. Limit of Insurance

1. Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages, including damages claimed by any person or organization for care, loss of services, or death due to and arising out of any one "accident" is the limit of **Underinsured Motorist Coverage** shown in the Schedule or the Declarations.

2. The limit of insurance provided in this endorsement shall be reduced by all sums available for payment to the "insured" for "bodily injury" under all liability bonds or polices covering persons or organizations legally liable for the "accident".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 4078 IN 12 15**                                                                 **Page 2 of 5**

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form or Medical Payments Coverage endorsement attached to this Coverage Form.

We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits, or similar laws, including medical payments made under any statute.

4. No "insured" shall recover duplicate payments for the same elements of "loss" or payments in excess of damages sustained.

E. **Changes in Conditions**

The **Conditions** for **Indiana Underinsured Motorist Coverage** are changed as follows:

1. **Other Insurance Condition** in the Business Auto and Garage Coverage Forms is changed as follows:

If there is other applicable insurance available under one or more policies or provisions of coverage, the following priorities of coverage apply:

| FIRST PRIORITY | The Underinsured Motorist Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
|---|---|
| SECOND PRIORITY | Any other Coverage Form or policy affording Underinsured Motorist Coverage to the "insured". |

a. The limit of insurance under the "motor vehicle" the "insured" was "occupying" under the Coverage Form or policy in the first priority shall first be exhausted.

b. The maximum recovery for damages under all Coverage Forms or policies may equal but shall not exceed the highest applicable limit of any one "motor vehicle" under any insurance providing coverage on either a first or second priority basis.

c. We will pay only our share of the "loss". Our share is the proportion that our limit of liability bears to the total of all limits applicable to the same level of priority.

2. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

a. You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought;

b. You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the accident and all insurers who may be obligated to provide coverage; and

c. A person seeking Underinsured Motorist Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle", and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the person(s) or organization(s) who may be legally responsible for the "accident", or the insurer, owner or operator of such "underinsured motor vehicle".

3. **Transfer of Rights of Recovery Against Others To Us** is changed by adding the following:

a. If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

b. Our rights do not apply under this provision if we:

(1) Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of the "underinsured motor vehicle"; and

(2) Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of such notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after notification:

(a) That payment will be separate from any amount the "insured" is entitled to recover under the provisions of this coverage; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**AA 4078 IN 12 15**

**(b)** We also have the right to recover the advance payment from the insured or the owner or operator of the "underinsured motor vehicle".

**c.** If we make a payment because the insurer of the "underinsured motor vehicle" is or becomes insolvent, the **Transfer of Rights of Recovery Against Others To Us** Condition does not apply to any rights of recovery against:

**(1)** The Indiana Guaranty Fund; or

**(2)** The insured of the insolvent insurer, except in amounts that exceed the limit of liability of the Coverage Form or policy that was issued by that insolvent insurer.

**4. Legal Action Against Us**

No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Underinsured Motorist Coverage of this coverage form unless the "insured" has satisfied all of the things that "insured" is required to do under this endorsement. Any claim or suit for Underinsured Motorist Coverage must be brought within two (2) years from the date of the accident.

**5.** The following Condition is added:

**ARBITRATION**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or operator of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured" then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

**(1)** Whether the "insured" is legally entitled to recover damages from a party responsible for the "accident"; and

**(2)** The amount of damages.

This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Indiana. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made in 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

**F. Additional Definitions**

As used on this endorsement:

**1.** "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured in this endorsement. Such relation may be by blood, marriage or adoption, and may include a ward or foster child.

**2.** "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

**3.** "Noneconomic loss" means costs for physical and emotional pain and suffering, physical impairment, emotional distress, mental anguish, loss of enjoyment, loss of companionship, services and consortium, and any other noneconomic damages.

**4.** "Occupying" means in, upon, getting in, on, out or off.

**5.** "Underinsured motor vehicle" means a land "motor vehicle" or "trailer" for which the sum of all liability bonds or policies at

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

the time of an "accident" provides at least the amounts required by the financial responsibility law of Indiana but their limits are either:

**a.** Less than the Limit of Insurance available for payment to the "insured" under this endorsement; or

**b.** Reduced by payments to others injured in the "accident" to an amount which is less than the Limit of Insurance under this endorsement.

However, "underinsured motor vehicle" does not include any "motor vehicle":

**a.** Owned or operated by a self insurer under any applicable motor vehicle law, except a self insurer who is or becomes insolvent and can not provide the amounts required by that motor vehicle law.

**b.** Owned by a governmental unit or agency.

**c.** Designed for use mainly off public roads while not on public roads.

**d.** Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

**e.** For which liability coverage is afforded under this Coverage Form.

Includes copyright material of Insurance Services Office, Inc., with its permission.

**AA 4078 IN 12 15**

# INDIANA - UNINSURED AND UNDERINSURED MOTORIST PROTECTION SELECTION/REJECTION FORM

Indiana law permits you to make certain decisions regarding Uninsured Motorist Coverage and Underinsured Motorist Coverage. This document briefly describes these coverages and the options available. You should read this document carefully and contact us or your agent if you have any questions regarding Uninsured Motorist Coverage or Underinsured Motorist Coverage and your options with respect to these coverages. This document includes general descriptions of coverage. However, no coverage is provided by this document. You should read your policy and review your Declarations Page(s) and/or Schedule(s) for complete information on the coverages you are provided.

In accordance with the Indiana law, automobile liability policies may make available Uninsured and Underinsured Motorist Coverage limits equal to the Bodily Injury Liability limits of the policy to which the coverage attaches and to Property Damage Liability equal to the financial responsibility limits for the state of Indiana. Uninsured Motorist Property Damage coverage is available only if you purchase Uninsured Motorist Bodily Injury coverage. You may, however, reject Bodily Injury Liability. A named insured has the right to reject Uninsured Motorist and Underinsured Motorist Coverage on behalf of all other named insureds, all other insureds, and all other persons entitled to coverage under the policy. A rejection of coverage applies to all subsequent policy renewals or replacements. If a named insured rejects Uninsured Motorist Coverage or Underinsured Motorist Coverage in the underlying policy, the rejection also applies to an umbrella or excess liability policy.

If you elect to purchase Uninsured Motorist Bodily Injury coverage, you also may choose to purchase Uninsured Motorist Property Damage coverage. You may also reject Uninsured Motorists Property Damage entirely. This is our offer to you of your Uninsured Motorist and Underinsured Motorist Coverage options.

Please indicate your choice by selecting one option in both Bodily Injury and Property Damage below.

## BODILY INJURY OPTIONS
### (Please select only one.)

_____ I hereby reject Uninsured Motorist Coverage and Underinsured Motorist Coverage.

_____ I hereby accept Uninsured Motorist Coverage for Bodily Injury at limits equal to my Bodily Injury Liability limits with Underinsured Motorists Coverage.

_____ I hereby accept Uninsured Motorist Coverage for Bodily Injury at limits equal to my Bodily Injury Liability limits without Underinsured Motorist Coverage.

## PROPERTY DAMAGE OPTIONS
### (Please select only one.)

_____ I hereby reject Uninsured Motorist Property Damage.

_____ I hereby accept Uninsured Motorist Property Damage at limits equal to my Property Damage Liability limit subject to a $300 deductible.**

_____ I hereby accept Uninsured Motorist Property Damage at limits equal to my Property Damage Liability not subject to a deductible.**

_____ I hereby accept Uninsured Motorist Property Damage at limits equal to the financial responsibility limit subject to a $300 deductible.**

_____ I hereby accept Uninsured Motorist Property Damage at limits equal to the financial responsibility limit not subject to a deductible.**

** This option is available only when Uninsured Motorist Bodily Injury Coverage is accepted.

I, the insured, understand that I and those who are to be protected under my policy would best be protected by my choosing to purchase Uninsured and Underinsured Motorist Coverage at limits equal to the Bodily Injury Liability limits provided in my policy. Nevertheless, I choose instead to purchase a more limited form of coverage, as specified above.

Attached to and forming a part of Policy Number ▬▬▬▬▬▬▬ and any subsequent policy renewals or replacements thereof.

Effective Date: __12-20-2017__

Named Insured

Signature of Authorized Representative

Title

Printed Name of Authorized Representative

Title

Agent's Signature

GREGORY & APPEL, INC. 13-295
INDIANAPOLIS, IN

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

    **BUSINESS AUTO COVERAGE FORM**
    **GARAGE COVERAGE FORM**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** of the **BUSINESS AUTO COVERAGE FORM** and **SECTION V - GARAGE CONDITIONS, B. General Conditions** of the **GARAGE COVERAGE FORM** are amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**AA 4263 04 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA UNINSURED MOTORIST COVERAGE

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Indiana, this endorsement modifies insurance provided under the following:

    **BUSINESS AUTO COVERAGE FORM**
    **GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 12-20-2017 | ██████████ |
| Named Insured:  RAYMOND STREET PARTNERS LLC | |

### Schedule

| | | |
|---|---|---|
| Bodily Injury | $ | Each Accident |
| Bodily Injury and Property Damage | $ SEE AA4183 | Each Accident |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Section **C** - EXCLUSIONS applies in its entirety unless an "X" is entered below:

☒ If an "X" is entered in this box, Exclusion **8.** does not apply.

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "uninsured motor vehicle". The damages must result from:

   a. "Bodily injury" sustained by the "insured" and caused by an "accident" with an "uninsured motor vehicle"; or

   b. "Property damage" caused by an "accident" with an "uninsured motor vehicle" if the Schedule or the Declarations indicates that both "bodily injury" and "property damage" Uninsured Motorist Coverage apply.

   The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

## B. Who is an Insured

The following are "insureds":

1. If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

   a. Natural persons specifically listed as a Named Insured on this endorsement.

   b. "Family members" of natural persons specifically listed as a Named Insured on this endorsement.

   c. Any natural person, but only for injuries that occur while "occupying" a covered "auto" or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 484 IN 12 15**                                                          **Page 1 of 5**

**d.** Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a.**, **b.** or **c.**

**e.** Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when the person is an "insured" for Liability under the Coverage Form.

**2.** If an entity other than a natural person is listed as a Named Insured on this endorsement, the following persons are "insureds":

**a.** Any natural person, but only for injuries that occur while "occupying" a covered "auto" or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**b.** Any natural person as an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

**c.** Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when the person is an "insured" for Liability under the Coverage Form.

**3.** Employees of the Named Insured, but only for injuries arising out of and incurred while in the course and scope of employment for the Named Insured shown in the endorsement.

**4.** Anyone for injuries incurred while "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**5.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**6.** The Named Insured for "property damage" only.

## C. Exclusions

This insurance does not apply to:

**1.** Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits, or similar laws.

**3.** The direct or indirect benefit of any insurer of property.

**4.** "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

**5.** "Property damage" to an "auto" or to property contained in an "auto" owned by you which is not a covered "auto".

**6.** "Bodily injury" suffered by any "insured" while operating or "occupying" a "motor vehicle" without a reasonable belief they are entitled to do so. Under no circumstances will an "insured" whose license has been suspended, revoked or never issued be held to have a reasonable belief they are entitled to operate a "motor vehicle".

**7.** "Property damage" for which the "insured" has been or is entitled to be compensated by other property or physical damage insurance.

**8.** The first $300 of the amount of "property damage" to the property of each "insured" as the result of any one "accident". This exclusion does not apply if your covered "auto" is legally parked and unoccupied when involved in an "accident" with an "uninsured motor vehicle".

**9.** "Property damage" caused by a hit-and-run vehicle.

**10.** Punitive or exemplary damages.

**11.** "Noneconomic loss" sustained by any "insured" if such "insured" is an uninsured motorist with a previous violation as defined in Indiana code Section 27-7-5.1.

However, Exclusion **C.11.** does not apply to an "insured" under 18 years of age.

## D. Limit of Insurance

**1.** Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages, including damages claimed by any person or organization for care, loss of services, or death due to and arising out of any one "accident" is the limit of **Uninsured Mo-**

Electronically Filed 01/09/2023 08:39 /s/ GV-23 973509 / Confirmation Nbr. 2742954 / CLJSZ

AA 484 IN 12 15     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     Page 2 of 5

torist Coverage shown in the Schedule or the Declarations.

2. The limit of insurance provided in this endorsement shall be reduced by all sums available for payment to the "insured" for "bodily injury" under all liability bonds or polices covering person or organizations legally liable for the "accident".

3. Any amount payable for damages under this coverage shall be reduced by all sums paid or payable under any workers' compensation, personal injury protection benefits, disability benefits, pension statutes, or similar laws.

4. No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement or any Liability Coverage Form.

   We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits, or similar laws, including medical payments made under any statute.

5. We will not pay for a "loss" which is paid or payable under Physical Damage Coverage.

6. No "insured" shall recover duplicate payments for the same elements of "loss" or payments in excess of damages sustained.

E. **Changes in Conditions**

The **Conditions** for **Indiana Uninsured Motorist Coverage** are changed as follows:

1. **Other Insurance Condition** in the Business Auto and Garage Coverage Forms changed as follows:

   If there is other applicable insurance available under one or more policies or provisions of coverage, the following priorities of coverage apply:

| FIRST PRIORITY | The Uninsured Motorist Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
|---|---|
| SECOND PRIORITY | Any other Coverage Form or policy affording Uninsured Motorist Coverage to the "insured". |

   a. The Limit of Insurance for the "motor vehicle" the "insured" was "occupying" under the Coverage Form or policy in the first priority shall first be exhausted.

   b. The maximum recovery for damages under all Coverage Forms or policies may equal but shall not exceed the highest applicable limit for any one "motor vehicle" under any insurance providing coverage on either a first or second priority basis.

   c. We will pay only our share of the "loss". Our share is the proportion that our limit of insurance bears to the total of all limits applicable to the same level of priority.

2. **Transfer of Rights of Recovery Against Others to Us** is changed by adding the following:

   a. If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   b. If we make a payment because the insurer of the "uninsured motor vehicle" is or becomes insolvent, the **Transfer of Rights of Recovery Against Others to Us** Condition does not apply to any rights of recovery against:

      (1) The Indiana Guaranty Fund; or

      (2) The "insured" of the insolvent insurer, except in amounts that exceed the limit of liability of the Coverage Form or policy that was issued by that insolvent insurer.

3. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

   a. You or any other involved "insured" must promptly notify the police if a hit-and-run driver is involved;

   b. You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought; and

   c. You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of any claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the accident and all insurers who may be obligated to provide coverage.

4. **Legal Action Against Us**

   No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Uninsured Motorist Coverage of this Coverage Form unless the "insured" has satisfied all of the things that

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"insured" is required to do under this endorsement. Any claim or suit for Uninsured Motorist Coverage must be brought within two (2) years from the date of the "accident".

5. The following Condition is added:

**ARBITRATION**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or operator of an "uninsured motor vehicle" or do not agree as to the amount of damages that is recoverable by that "insured" then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

(1) Whether the "insured" is legally entitled to recover damages; and

(2) The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Indiana. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

F. **Additional Definitions**

As used on this endorsement:

1. "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured in this endorsement. Such relation may be by blood, marriage or adoption, and may include a ward or foster child.

2. "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails, or any similar vehicle.

3. "Noneconomic loss" means costs for physical and emotional pain and suffering, physical impairment, emotional distress, mental anguish, loss of enjoyment, loss of companionship, services and consortium, and any other noneconomic damages.

4. "Occupying" means in, upon, getting in, on, out or off.

5. "Property damage" means damage to a covered "auto" property owned by the Named Insured, if the Named Insured is an individual, a "family member" while contained in a covered "auto". However, "property damage" does not include loss of use of damaged or destroyed property. This definition replaces the definition in the Policy.

6. "Uninsured motor vehicle" means a land "motor vehicle" or "trailer":

a. For which no liability bond or policy applies at the time of an "accident" provides at least the amounts required by the financial responsibility law of Indiana;

b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

c. Which is a hit-and-run "motor vehicle" and neither the operator nor owner can be identified. A hit and run vehicle is one that causes "bodily injury" to an "insured" by hitting the "insured", a covered "auto" or a "motor vehicle" an "insured" is "occupying".

We will only accept convincing evidence which may include the testimony, under oath, of a person making claim under this or similar coverage.

However, "uninsured motor vehicle" does not include any "motor vehicle":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

**b.** Owned by a governmental unit or agency.

**c.** Designed for use mainly off public roads while not on public roads.

**d.** Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

**e.** For which liability coverage is afforded under this Coverage Form.

Electronically Filed 01/09/2023 08:39 / / CV 23 973599 / Confirmation Nbr. 2742954 / CLJSZ

**AA 484 IN 12 15**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 5 of 5**

COMMERCIAL AUTO
CA 01 19 07 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES

For a covered "auto" licensed in, or "garage operations" conducted in, Indiana, this endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> GARAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement or to any amendment to or replacement thereof, the provisions of the coverage form apply unless modified by the endorsement.

**Changes In Conditions**

**A.** Except as provided in Paragraph **B.** of this endorsement, **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms is changed by adding the following and supersedes any provision to the contrary:

If there is other applicable insurance available under one or more policies or provisions of coverage, any insurance we provide for any covered "auto" owned by an "insured" is primary and shall first be exhausted.

**B.** **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms is changed by adding the following:

**1.** When two coverage forms providing liability coverage apply to an "auto" and:

**a.** One provides coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing "autos"; and

**b.** The other provides coverage to a person not engaged in that business; and

**c.** At the time of an "accident" a person described in **1.b.** is operating an "auto" owned by the business described in **1.a.**, then that person's liability coverage is primary and the coverage form issued to a business described in **1.a.** is excess over any coverage available to that person.

**2.** When two coverage forms providing liability coverage apply to an "auto" and:

**a.** One provides coverage to a named insured engaged in the business of repairing, servicing, parking or storing "autos"; and

**b.** The other provides coverage to a person not engaged in that business; and

**c.** At the time of an "accident" an "insured" under the coverage form described in **2.a.** is operating an "auto" owned by a person described in **2.b.**, then the liability coverage form issued to the business described in **2.a.** is primary and the coverage form issued to a person described in **2.b.** is excess over any coverage available to the business.

CA 01 19 07 09                    © Insurance Services Office, Inc., 2009                    Page 1 of 1  ☐

# THE CINCINNATI INDEMNITY COMPANY

## COMMERCIAL UMBRELLA LIABILITY COVERAGE
## PART DECLARATIONS

Previous Policy Number  **ENP0111968**

Attached to and forming part of POLICY NUMBER ▮▮▮▮▮▮▮  Effective Date: **12-20-2017**

**NAMED INSURED** is the same as it appears in the Common Policy Declarations unless another entry is made here.

**LIMITS OF INSURANCE**
$    2 ,000,000 Each Occurrence Limit    $    2 ,000,000 Aggregate Limit

**ADVANCE PREMIUM** $    1,371
Applicable to Premium, if box is checked:
☒ Subject to Annual Adjustment
☐ Subject to Audit (see Premium Computation Endorsement for Rating Basis)

### SCHEDULE OF UNDERLYING INSURANCE

| Insurer, Policy Number & Period: | Underlying Insurance: | Underlying Limits: |
|---|---|---|
| **(a)** | Employer's Liability | Bodily Injury by Accident:<br>$                    Each Accident<br>Bodily Injury by Disease:<br>$                    Each Employee<br>Bodily Injury by Disease:<br>$                    Policy Limit |
| **(b) CINCINNATI IND. CO.**<br>▮▮▮▮▮▮▮<br>12-20-2017 TO 12-20-2020 | ☒ Commercial General Liability Including:<br>☒ Products-Completed Operations Coverage<br><br>☐ Cemetery Professional<br>☐ Druggist Professional<br>☐ Funeral Service Provider<br>☐ Pedorthists Professional<br><br>or<br><br>☐ Business Liability Including:<br>☐ Funeral Service Provider<br>☐ Druggist Professional | Bodily Injury and Property Damage Liability:<br>$    1,000,000 Each Occurrence Limit<br>$    2,000,000 General Aggregate Limit<br>$    2,000,000 Products-Completed Operations Aggregate Limit<br><br>Personal and Advertising Injury Limit:<br>$    1,000,000 Any One Person or Organization |
| **(c) CINCINNATI IND. CO.**<br>▮▮▮▮▮▮▮<br>12-20-2017 TO 12-20-2020 | Automobile Liability Including:<br>☐ Owned Autos<br>☒ Non-Owned Autos<br>☒ Hired Autos<br>☐ Any Auto | Bodily Injury Liability Limit:<br>$                    Each Person<br>$                    Each Occurrence<br>Property Damage Liability Limit:<br>$                    Each Occurrence<br>or<br>Bodily Injury Liability and / or Property Damage Liability or Both Combined Limit:<br>$    1,000,000 Each Occurrence |

| | | | |
|---|---|---|---|
| **(d)** | Professional | $ | |
| | | $ | Aggregate |

| | | | |
|---|---|---|---|
| **(e)** CINCINNATI IND. CO. | Employee Benefit Liability | $ 1,000,000 | Each Employee Limit |
| | | $ 3,000,000 | Aggregate Limit |
| 12-20-2017 TO 12-20-2020 | | | |
| **(f)** | Liquor Liability | $ | Each Common Cause Limit |
| | | $ | Aggregate Limit |

Other

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**

| | | |
|---|---|---|
| US101UM | 12/04 | COMMERCIAL UMBRELLA - TABLE OF CONTENTS |
| US302 | 12/04 | POLLUTANT EXCLUSION - OTHER THAN AUTO |
| US3090IN | 05/14 | INDIANA AMENDATORY EXCLUSION - LIABILITY ARISING FROM STATUTE OR REGULATION |
| US3093 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| US395 | 12/04 | LEAD LIABILITY EXCLUSION |
| US4062 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION |
| US407 | 12/04 | EMPLOYEE BENEFIT LIABILITY |
| US4098 | 04/10 | OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT |

# COMMERCIAL UMBRELLA - TABLE OF CONTENTS

**Coverage Part Provision:**                                                                                  **Begins on Page:**

Preamble ...................................................................................................................... 3

**SECTION I - COVERAGE:** ....................................................................................... 3

    **A.**   **Insuring Agreement** ...................................................................................... 3

    **B.**   **Exclusions:** ..................................................................................................... 4

        **1.**  Asbestos .................................................................................................. 4
        **2.**  Breach of Contract, Failure to Perform, Wrong Description and
            Violation of Another's Rights ................................................................. 4
        **3.**  Contractual Liability ............................................................................... 4
        **4.**  Damage to Impaired Property or Property Not Physically Injured.......... 4
        **5.**  Damage to Property ............................................................................... 4
        **6.**  Damage to Your Product......................................................................... 4
        **7.**  Damage to Your Work ............................................................................ 4
        **8.**  Distribution of Material in Violation of Statutes ..................................... 5
        **9.**  Electronic Chatrooms or Bulletin Boards .............................................. 5
      **10.**  Electronic Data. ..................................................................................... 5
      **11.**  Employer's Liability Limitation .............................................................. 5
      **12.**  Employment-Related Practices.............................................................. 5
      **13.**  Expected or Intended Injury ................................................................... 5
      **14.**  Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses ....................... 6
      **15.**  Infringement of Copyright, Patent, Trademark or Trade Secret ............ 6
      **16.**  Pollutant - Auto ...................................................................................... 6
      **17.**  Pollutant - Other Than Auto................................................................... 7
      **18.**  Recall of Products, Work or Impaired Property ..................................... 9
      **19.**  Unauthorized Use of Another's Name or Product .................................. 9
      **20.**  Uninsured / Underinsured Motorist ....................................................... 9
      **21.**  War ......................................................................................................... 9
      **22.**  Workers' Compensation ........................................................................ 9

    **C.**   **Defense and Supplementary Payments** .................................................... 9

**SECTION II - WHO IS AN INSURED** ...................................................................... 10

**SECTION III - LIMITS OF INSURANCE** ................................................................. 11

**SECTION IV - CONDITIONS:** ................................................................................. 12

        **1.**  Appeals ................................................................................................ 12
        **2.**  Audit ..................................................................................................... 13
        **3.**  Bankruptcy............................................................................................ 13
        **4.**  Duties in the Event of Occurrence, Claim or Suit ................................ 13
        **5.**  First Named Insured ............................................................................. 13
        **6.**  Legal Action Against Us and Loss Payments ....................................... 13
        **7.**  Liberalization ........................................................................................ 14
        **8.**  Maintenance of Underlying Insurance .................................................. 14
        **9.**  Other Insurance .................................................................................... 14
      **10.**  Premium ............................................................................................... 14
      **11.**  Representations ................................................................................... 14
      **12.**  Separation of Insureds ......................................................................... 14
      **13.**  Transfer of Rights of Recovery Against Others to Us .......................... 15
      **14.**  When We Do Not Renew ...................................................................... 15

**SECTION V - DEFINITIONS:** .................................................................................. 15

        **1.**  "Advertisement" .................................................................................... 15
        **2.**  "Authorized representative" .................................................................. 15
        **3.**  "Auto" ................................................................................................... 15
        **4.**  "Bodily injury" ...................................................................................... 16
        **5.**  "Coverage term" .................................................................................. 16
        **6.**  "Coverage territory" ............................................................................. 16

Includes copyrighted material of ISO
Properties, Inc., with its permission.

| Coverage Part Provision: | Begins on Page: |
|---|---|

7.  "Electronic data" .................................................................................................... 16
8.  "Employee" ............................................................................................................. 16
9.  "Executive officer" .................................................................................................. 16
10. "Hostile fire" .......................................................................................................... 16
11. "Impaired property" ............................................................................................... 16
12. "Insured contract" .................................................................................................. 16
13. "Leased worker" ...................................................................................................... 17
14. "Loading or unloading" ........................................................................................... 17
15. "Mobile equipment" ............................................................................................... 18
16. "Occurrence" .......................................................................................................... 18
17. "Personal and advertising injury" ............................................................................ 18
18. "Pollutants" ............................................................................................................ 19
19. "Products-completed operations hazard" ................................................................ 19
20. "Property damage" .................................................................................................. 19
21. "Subsidiary" ............................................................................................................ 19
22. "Suit" ...................................................................................................................... 19
23. "Temporary worker" ............................................................................................... 20
24. "Ultimate net loss" .................................................................................................. 20
25. "Underlying insurance" ............................................................................................ 20
26. "Underlying limit" .................................................................................................... 20
27. "Workplace" ............................................................................................................ 20
28. "Your product" ........................................................................................................ 20
29. "Your work" ............................................................................................................ 20

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT** .................................................................. 21

Electronically Filed 01/09/2023 08:39 / / CV 23 978500 /Confirmation Nbr. 2742854 / CLJSZ

**US 101 UM 12 04**

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**Page 2 of 22**

# COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance.  Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part.  The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning.  Refer to **SECTION V - DEFINITIONS.**

## SECTION I - COVERAGE

### A.  Insuring Agreement

1.  We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

    **a.**  Which is in excess of the "underlying insurance"; or

    **b.**  Which is either excluded or not insured by "underlying insurance".

2.  This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:

    **a.**  The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    **b.**  The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; or

    **c.**  The "personal and advertising injury" results from an "occurrence" that takes place during the policy period shown in the Declarations; and

    **d.**  Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, or a "personal and advertising injury" offense is committed, you did not know, per Paragraph **5.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, or

that the "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part.

3.  "Bodily injury" or "property damage" which:

    **a.**  Occurs during the "coverage term"; and

    **b.**  Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have occurred;

    includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

4.  "Personal and advertising injury" caused by an offense which:

    **a.**  Was committed during the "coverage term"; and

    **b.**  Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have been committed;

    includes any continuation, change or resumption of that "personal and advertising injury" offense after the end of the "coverage term" in which it first became known by you.

5.  You will be deemed to know that "bodily injury" or "property damage" has occurred, or that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

    **a.**  Reports all, or any part, of the "bodily injury", "personal and advertising injury" or "property damage" to us or any other insurer;

    **b.**  Receives a written or verbal demand or claim for damages because of the "bodily injury", "personal and advertising injury" or "property damage";

    **c.**  First observes, or reasonably should have first observed, the "bodily injury" or "property damage", or the offense that caused the "personal and advertising injury";

    **d.**  Becomes aware, or reasonably should have become aware, by any means, other than as described in **c.** above, that "bodily injury" or "prop-

Includes copyrighted material of ISO Properties, Inc., with its permission.

erty damage" had occurred or had begun to occur, or that the "personal and advertising injury" offense had been committed or had begun to be committed; or

**e.** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury", "personal and advertising injury" or "property damage" is substantially certain to occur.

**6.** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE.**

No other obligation or liability to pay sums or perform acts or services is covered, unless expressly provided for under **SECTION I - COVERAGE, C. Defense and Supplementary Payments.**

**B. Exclusions**

This insurance does not apply to:

**1. Asbestos**

Any liability arising out of, attributable to or any way related to asbestos in any form or transmitted in any manner.

**2. Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights**

"Personal and advertising injury":

**a.** Arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**b.** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**c.** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement"; or

**d.** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**3. Contractual Liability**

Any liability for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "bodily injury", "personal

and advertising injury" or "property damage":

**a.** That the insured would have in the absence of the contract or agreement; or

**b.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury", "personal and advertising injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

**4. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**a.** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**b.** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**5. Damage to Property**

"Property damage" to property owned by any insured, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

**6. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**7. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Electronically Filed 01/09/2023 08:39 / / CV 23 978500 /Confirmation Nbr. 2742854 / CLSZ

Includes copyrighted material of ISO Properties, Inc., with its permission.

US 101 UM 12 04                                                                 Page 4 of 22

8. **Distribution of Material in Violation of Statutes**

Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

9. **Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

10. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

11. **Employer's Liability Limitation**

Any liability arising from any injury to:

a. An "employee" of the insured sustained in the "workplace";

b. An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

c. The spouse, child, parent, brother or sister of that "employee" as a consequence of **a.** or **b.** above.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply when such insurance is provided by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance, or

would have been provided by such listed "underlying insurance" except for the exhaustion by payment of claims of its limits of insurance, and then only for such hazards for which coverage is provided by such "underlying insurance", unless otherwise excluded by this Coverage Part.

12. **Employment-Related Practices**

Any liability arising from any injury to:

a. A person arising out of any:

   (1) Refusal to employ that person;

   (2) Termination of that person's employment; or

   (3) Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

b. The spouse, child, parent, brother or sister of that person as a consequence of any injury to that person at whom any of the employment-related practices described in Paragraphs **(1)**, **(2)**, or **(3)** above is directed.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

13. **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually intended or expected.

However, this exclusion does not apply to:

a. "Bodily injury" resulting from the use of reasonable force to protect persons or property; or

b. "Bodily injury" or "property damage" resulting from the use of reasonable force to prevent or eliminate danger

Includes copyrighted material of ISO Properties, Inc., with its permission.

**US 101 UM 12 04**

in the operation of "autos" or water-craft.

### 14. Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses

"Personal and advertising injury":

a. Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

b. Arising out of oral or written publication of material whose first publication took place before the later of the following:

    (1) The inception of this Coverage Part; or

    (2) The "coverage term" in which insurance coverage is sought;

c. Arising out of a criminal act committed by or at the direction of the insured; or

d. Committed by an insured whose business is:

    (1) Advertising, broadcasting, publishing or telecasting;

    (2) Designing or determining content of web-sites for others; or

    (3) An Internet search, access, content or service provider.

However, Paragraph **d.** does not apply to Paragraphs **17.a., b., c., d.** and **i.** of "personal and advertising injury" under **SECTION V - DEFINITIONS.**

For the purposes of Paragraph **d.**, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

### 15. Infringement of Copyright, Patent, Trademark or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement in your "advertisement", of copyright, trade dress or slogan.

### 16. Pollutant - Auto

a. "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

    (1) That are, or that are contained in any property that is:

        (a) Being transported or towed by, handled, or handled for movement into, onto or from, an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

        (b) Otherwise in the course of transit by or on behalf of the insured; or

        (c) Being stored, disposed of, treated or processed in or upon an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

    (2) Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the insured for movement into or onto an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; or

    (3) After the "pollutants" or any property in which the "pollutants" are contained are moved from an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion to the place where they are finally delivered, disposed of or abandoned by the insured.

Paragraph **(1)** above does not apply to "bodily injury" or "property damage" arising from fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their

Includes copyrighted material of ISO Properties, Inc., with its permission.

behalf in any other fashion or its parts, if:

**(a)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(b)** The "bodily injury" or "property damage" does not arise out of the operation of any equipment listed in Paragraphs **f.(2)** and **(3)** of the definition of "mobile equipment".

However, this exception to Paragraph **(1)** does not apply if the fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed, emitted or released.

Paragraphs **(2)** and **(3)** above do not apply to an "occurrence" that occurs away from premises owned by or rented to an insured with respect to "pollutants" not in or upon an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; and

**(b)** The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**b.** Any liability caused by "pollutants" and arising from the operation, maintenance, use, "loading or unloading" of an "auto", for which insurance coverage is excluded by "underlying insurance".

**17. Pollutant - Other Than Auto**

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

**(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

However, Paragraph **a.(1)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, but only to the extent insurance is provided at the "underlying limit" specified in the Schedule of Underlying Insurance for the "underlying insurance" listed and subject to all its terms, limitations and conditions:

**(a)** "Bodily injury", if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

**(b)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to your "underlying insurance" as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(c)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(2)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

Includes copyrighted material of ISO Properties, Inc., with its permission.

**(3)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

**(4)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

However, Paragraph **a.(4)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, but only to the extent insurance is provided at the "underlying limit" specified in the Schedule of Underlying Insurance for the "underlying insurance" listed and subject to all its terms, limitations and conditions:

**(a)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by

such insured, contractor or subcontractor;

**(b)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(c)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(5)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.** "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**c.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph **c.** does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement,

Includes copyrighted material of ISO Properties, Inc., with its permission.

or such claim or "suit" by or on behalf of a governmental authority.

d. Any liability caused by "pollutants", for which insurance coverage is excluded by "underlying insurance".

### 18. Recall of Products, Work or Impaired Property

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a. "Your product";

b. "Your work"; or

c. "Impaired Property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

### 19. Unauthorized Use of Another's Name or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag or any other similar tactics to mislead another's potential customers.

### 20. Uninsured / Underinsured Motorist

Any liability or obligation to any insured or anyone else under any uninsured motorist, underinsured motorist, automobile no-fault or first party personal injury law.

### 21. War

Any liability, however caused, arising directly or indirectly, out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

### 22. Workers' Compensation

Any liability or obligation of the insured under any workers' compensation, unemployment compensation, disability benefits or similar law. However, this exclusion does not apply to liability of others assumed by you under an "insured contract" in existence at the time of "occurrence".

### C. Defense and Supplementary Payments

1. We will have the right and duty to defend the insured against any "suit" seeking damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies. We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result when:

   a. The applicable limits of the "underlying insurance" and any other insurance have been exhausted by payment of claims; or

   b. Damages are sought for "bodily injury", "personal and advertising injury" or "property damage" which are not covered by "underlying insurance" or other insurance.

2. Our right and duty to defend ends when the applicable Limits of Insurance, as stated in the Declarations, has been exhausted by payment of claims.

3. We have no duty to investigate, settle or defend any claim or "suit" other than those circumstances described in Paragraph **C.1.** However, we do have the right to participate in the investigation, settlement or defense of any claim or "suit" to which this insurance applies. If we exercise this right, we will do so at our expense.

4. If there is no underlying insurer or other insurance obligated to do so, we will pay the following when we provide a defense:

   a. All expenses we incur.

   b. The cost of bail bonds up to $3,000. We do not have to furnish these bonds.

   c. The cost of bonds to appeal a judgment or award in any claim or "suit" we defend and the cost of bonds to

Includes copyrighted material of ISO Properties, Inc., with its permission.

**US 101 UM 12 04**                                                                                          **Page 9 of 22**

release attachments, but only for bond amounts within the applicable Limits of Insurance. We do not have to furnish these bonds.

   **d.** Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including the actual loss of earnings.

   **e.** All costs taxed against the insured in the "suit."

5. If there is no underlying insurer obligated to do so, we will pay the following for an "occurrence" to which this insurance applies, even if we have no duty to provide a defense:

   **a.** Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable Limit of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on the period of time after the offer.

   **b.** All interest awarded against the insured on the full amount of any judgment that accrues:

      **(1)** After entry of the judgment; and

      **(2)** Before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

6. The payments described in Paragraphs **4.** and **5.** above will not reduce the Limits of Insurance provided by this Coverage Part when defense or supplementary payments provided by the "underlying insurance" do not reduce their Limits of Insurance. However, when defense or supplementary payments provided by the "underlying insurance" reduce their Limits of Insurance then such expense payments paid by us will reduce the Limits of Insurance provided by this Coverage Part.

7. If we are prevented by law or otherwise from carrying out any of the provisions of **SECTION I - COVERAGE, C. Defense and Supplementary Payments**, we will pay any expense incurred with our written consent.

## SECTION II - WHO IS AN INSURED

1. Except for liability arising out of the ownership, maintenance, occupancy or use of an "auto":

   **a.** If you are designated in the Declarations as:

      **(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

      **(2)** A partnership or joint venture, you are an insured. Your members, partners and their spouses are also insureds, but only with respect to the conduct of your business.

      **(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

      **(4)** An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders. Each of the following is also a Named Insured:

         **(a)** Any "subsidiary" company of such organization, including any "subsidiary" of such "subsidiary":

            **1)** Existing at the inception of this Coverage Part; or

            **2)** Formed or acquired on or after the inception of this Coverage Part.

         **(b)** Any other company controlled and actively managed by such organization or any "subsidiary" thereof:

            **1)** At the inception of this Coverage Part; or

            **2)** If the control and active management thereof is acquired on or after the inception of this Coverage Part.

      **(5)** A trust, you are an insured. Your trustees are also insureds, but only

Includes copyrighted material of ISO Properties, Inc., with its permission.
**US 101 UM 12 04**                                             **Page 10 of 22**

with respect to their duties as trustees.

**b.** Each of the following is also an insured:

    **(1)** Any "employee" of yours while acting within the scope of their duties as such.

    **(2)** Any person or organization while acting as your real estate manager.

    **(3)** Any person or organization having proper temporary custody of your property if you die, but only:

        **(a)** With respect to liability arising out of the maintenance or use of that property; and

        **(b)** Until your legal representative has been appointed.

    **(4)** Your legal representative if you die, but only with respect to duties as such.

**2.** Only with respect to liability arising out of the ownership, maintenance, occupancy or use of an "auto":

**a.** You are an insured.

**b.** Anyone else while using with your permission an "auto" you own, hire or borrow is also an insured except:

    **(1)** The owner or any other person or organization (except your "executive officers" or principals) from whom you hire or borrow an "auto", unless such persons or organizations are insureds in your "underlying insurance" listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is provided by such "underlying insurance". This exception does not apply if the "auto" is a trailer or semitrailer connected to an "auto" you own.

    **(2)** Your "employee", if the "auto" is owned by that "employee" or a member of his or her household, unless:

        **(a)** Such "employee" is an insured with respect to that "auto" in the "underlying insurance" listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is provided by such "underlying insurance"; or

        **(b)** The "bodily injury" or "property damage" is sustained by a co-"employee" of such "employee".

    **(3)** Someone using an "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos", unless that business is yours.

    **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from an "auto".

**c.** Anyone liable for the conduct of an insured described in Paragraphs **2.a.** and **b.** above is also an insured, but only if they are provided insurance coverage for such liability by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance and then only for such hazards for which coverage is provided by such "underlying insurance".

**3.** At your option and subject to the terms of this insurance, any additional insureds not addressed by Paragraphs **1.** and **2.** above covered in the "underlying insurance" listed in the Schedule of Underlying Insurance are also insureds, but only to the extent that insurance is provided for such additional insureds thereunder.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all damages:

**a.** Included in the "products-completed operations hazard";

**b.** Because of "bodily injury" by disease sustained by your "employees" arising out of and in the course of their employment by you; or

Includes copyrighted material of ISO Properties, Inc., with its permission.
**US 101 UM 12 04**

   **c.** Because of "bodily injury", "personal and advertising injury" or "property damage" not included within **a.** or **b.** above. However, this Aggregate Limit will not apply to damages which are not subject to an Aggregate Limit in the "underlying insurance".

The Aggregate Limit applies separately to **a.**, **b.** and **c.** The Aggregate Limit described in **c.** will apply only to damages not subject to **a.** or **b.** above.

**3.** Subject to the Limit of Insurance described in **2.c.** above:

   **a.** Only in the event that "underlying insurance" specifically listed in the Schedule of Underlying Insurance provides an annual Aggregate Limit of Insurance for damages that would not be subject to **2.a.** or **b.** above that is applicable separately to each:

      **(1)** Location owned by, or rented or leased to you solely with respect to damages which are the result of a claim or "suit" for "bodily injury" or "property damage" which can be attributed to operations at only a single location, then the Aggregate Limit described in **2.c.** above applies separately to each location owned by, or rented or leased to you.

      **(2)** Of your construction projects solely with respect to damages which are the result of a claim or "suit" for "bodily injury" or "property damage" which can be attributed only to ongoing operations and only at a single construction project, then the Aggregate Limit described in **2.c.** above applies separately to each of your construction projects.

   **b.** Only with respect to the application of Limits of Insurance described in **3.a.** above, the following terms location and construction project will have the following meanings:

      **(1)** Location means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

      **(2)** Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on your behalf at the same location for the same persons or entities, no matter how often or under how many different contracts, will be deemed to be a single construction project.

**4.** Subject to the limits described in **2.** and **3.** above, the Each Occurrence Limit is the most we will pay for the "ultimate net loss":

   **a.** In excess of the applicable limits of "underlying insurance"; or

   **b.** If an "occurrence" is not covered by "underlying insurance", but covered by the terms and conditions of this Coverage Part,

Because of all "bodily injury", "personal and advertising injury" and "property damage" arising out of any one "occurrence".

We will not pay more than the Limit of Insurance shown in this Coverage Part's Declarations for each "occurrence" because any Personal Umbrella Liability Policy(ies) is / are attached to this policy.

**5.** Subject to the limits described in **2.**, **3.** and **4.** above and to the terms and conditions of the "underlying insurance":

   **a.** If the limits of "underlying insurance" have been reduced by payment of claims, this Coverage Part will continue in force as excess of the reduced "underlying insurance"; or

   **b.** If the limits of "underlying insurance" have been exhausted by payment of claims, this Coverage Part will continue in force as "underlying insurance".

**6.** The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

**SECTION IV - CONDITIONS**

**1. Appeals**

If the insured or any insurer who provides the applicable "underlying insurance" elects not to appeal a judgment which exceeds the "underlying limit", we may elect to do so at our own expense. We shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall this provision increase our liability beyond:

   **a.** Our applicable Limits of Insurance for all "ultimate net loss";

   **b.** Our applicable Defense and Supplementary Payments as described in **SEC-**

Includes copyrighted material of ISO Properties, Inc., with its permission.

**TION I - COVERAGE, C. Defense and Supplementary Payments**; and

**c.** The expense of such appeal.

**2. Audit**

If this Coverage Part is subject to Audit, as indicated in the Declarations, then the following Condition applies:

**a.** The premium shown in the Premium Computation Endorsement as Advance Premium is a deposit premium. At the close of each audit period, we will compute the earned premium for that period. If:

**(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

**(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

However, in no event will the earned premium be less than the Minimum Premium stated in the Premium Computation Endorsement.

**b.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**3. Bankruptcy**

Bankruptcy or insolvency of the insured or the insured's estate shall not relieve us of any obligations under this Coverage Part.

**4. Duties in the Event of Occurrence, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim or "suit". To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence".

This requirement applies only when the "occurrence" is known to an "authorized representative".

**b.** If a claim is made or "suit" is brought against any insured that is likely to involve this Coverage Part, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

This requirement will not be considered breached unless the breach occurs after such claim or "suit" is known to an "authorized representative".

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**5. First Named Insured**

The person or organization first named in the Declarations will act on behalf of all other insureds where indicated in this Coverage Part.

**6. Legal Action Against Us and Loss Payments**

**a.** No legal action may be brought against us unless there has been full compliance with all the terms of this Coverage Part nor until the amount of the insured's obligation to pay has been finally determined as provided below. No person or organization has any right under this Coverage Part to bring us into any action to determine the liability of the insured.

**b.** We shall be liable for payment of the "ultimate net loss" for any "occurrence" to which this Coverage Part applies:

**(1)** For "occurrences" not covered by "underlying insurance"; or

Includes copyrighted material of ISO Properties, Inc., with its permission.

**(2)** In excess of the "underlying limit" applicable to the "occurrence" only after the insurers who provide the applicable "underlying insurance" have paid or become obligated to pay the amount of the "underlying limit" applicable to the "occurrence".

Our payment will be made following final determination of the amount of the insured's obligation to pay either by final judgment against the insured or by written agreement with the insured, the claimant, the underlying insurers and us.

**7. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

Will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**8. Maintenance of Underlying Insurance**

**a.** While this Coverage Part is in effect, the insured shall maintain in force the "underlying insurance" listed in the Schedule of Underlying Insurance as collectible insurance. The terms, conditions and endorsements of "underlying insurance" will not materially change and renewals or replacements of "underlying insurance" will not be more restrictive in coverage.

**b.** Limits of "underlying insurance" will not be reduced, except for any reduction or exhaustion in the aggregate limits of insurance due to payment of claims which are in accordance with **SECTION I - COVERAGE, A. Insuring Agreement**, Paragraph **2.** of this Coverage Part.

**c.** In the event you fail or neglect to maintain "underlying insurance" as required, this Coverage Part will apply as though such "underlying insurance" was in force and collectible at the time a claim is presented to us which is in accordance with **SECTION I - COVERAGE, A. Insuring Agreement**, Paragraph **2.** of this Coverage Part.

**d.** The limits of "underlying insurance" shall be deemed applicable, regardless of any defense which the insurer who provides the "underlying insurance" may assert because of the insured's failure to comply with any Condition of the policy or the inability of the insurer to pay by reason of bankruptcy or insolvency.

**9. Other Insurance**

This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

**10. Premium**

The premium for this Coverage Part shall be as stated in the Declarations. The advance and anniversary premiums are not subject to adjustment, except as stated in the Declarations, or as stated in an endorsement issued by us to form a part of this Coverage Part.

You shall maintain records of such information as is necessary for premium computation, and shall, if requested by us, send copies of such records to us at the end of the "coverage term" and at such times during the policy period as we may direct.

**11. Representations**

**a.** By acceptance of this Coverage Part, you agree that the statements in the Declarations are your agreements and representations, that this Coverage Part is issued in reliance upon the truth of such representations and that this Coverage Part embodies all agreements existing between you and us or any of our agents relating to this insurance.

**b.** However, to the extent that the following applies in the "underlying insurance" listed specifically in the Schedule of Underlying Insurance, it will also apply to this Coverage Part:

Based on our reliance upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of this Coverage Part, we will not reject coverage under this Coverage Part based solely on such failure.

**12. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

Includes copyrighted material of ISO Properties, Inc., with its permission.

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**13. Transfer of Rights of Recovery Against Others to Us**

**a.** If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**b.** Any recoveries shall be applied as follows:

**(1)** First, we will reimburse anyone, including the insured, the amounts actually paid by them that were in excess of our payments;

**(2)** Next, we will be reimbursed to the extent of our actual payment; and

**(3)** Lastly, any amounts left after meeting the obligations outlined in **(1)** and **(2)** above will be distributed to anyone else known to us at the time a recovery is made and who is legally entitled to such recovery.

Expenses incurred in the recovery shall be apportioned among all interests in the ratio of their respective recoveries as finally settled. If there is no recovery as a result of our attempts, we shall bear all of the recovery expenses.

**c.** If prior to an "occurrence" to which this Coverage Part would apply, you and the issuer of your applicable "underlying insurance" listed specifically in the Schedule of Underlying Insurance waive any right of recovery against a person or organization for injury or damage, we will also waive any rights we may have against such person or organization.

**14. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

**2.** "Authorized representative" means:

**a.** If you are:

**(1)** An individual, you and your spouse are "authorized representatives".

**(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

**(3)** A limited liability company, your members and your managers are "authorized representatives".

**(4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

**(5)** A trust, your trustees are "authorized representatives".

**b.** Your "employees" assigned to manage your insurance program, or assigned to give or receive notice of an "occurrence", claim or "suit" are also "authorized representatives".

**3.** "Auto" means:

**a.** Any land motor vehicle, trailer or semi-trailer designed for travel on public roads; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

"Auto" does not include "mobile equipment".

Includes copyrighted material of ISO Properties, Inc., with its permission.
**US 101 UM 12 04**     

4. "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

5. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

   a. The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

      (1) The day the policy period shown in the Declarations ends; or

      (2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

   b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

6. "Coverage territory" means anywhere.

7. "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

9. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any similar governing document.

10. "Hostile fire" means one that becomes uncontrollable or breaks out from where it was intended to be.

11. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement,

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

12. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business, other than a contract or agreement pertaining to the rental or lease of any "auto", (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

   g. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

Includes copyrighted material of ISO Properties, Inc., with its permission.

Paragraphs **f.** and **g.** do not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing. However, if such liability is insured by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, this Paragraph **(1)** shall not apply for such hazards for which insurance coverage is afforded by such "underlying insurance";

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities;

**(4)** That indemnifies an advertising, public relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing communications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materials; market research; public relations and new product development;

**(5)** Under which the insured, if an advertising, public relations or media con-

sulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph **(4)**, above;

**(6)** That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or failure to execute Internet services. Internet Services include but are not limited to design, production, distribution, maintenance and administration of web-sites and web-banners; hosting web-sites; registering domain names; registering with search engines; marketing analysis; and providing access to the Internet or other similar networks;

**(7)** Under which the insured, if a web-site designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to render Internet services, including those listed in Paragraph **(6)**, above;

**(8)** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**(9)** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of an "auto" over a route or territory that person or organization is authorized to serve by public authority.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

Includes copyrighted material of ISO Properties, Inc., with its permission.

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

15. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      **(1)** Power cranes, shovels, loaders, diggers or drills; or

      **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

      **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

      However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      **(1)** Equipment designed primarily for:

         **(a)** Snow removal;

         **(b)** Road maintenance, but not construction or resurfacing; or

         **(c)** Street cleaning;

      **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

   However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

16. "Occurrence" means:

   **a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or

   **b.** An offense that results in "personal and advertising injury".

      All damages arising from the same accident, continuous or repeated exposure to substantially the same general harmful conditions, act or offense shall be deemed to arise from one "occurrence" regardless of:

      **(1)** The frequency of repetition;

      **(2)** The number or kind of media used; or

      **(3)** The number of claimants.

17. "Personal and advertising injury" means injury, including "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** Abuse of process;

   **d.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **e.** Defamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

Includes copyrighted material of ISO
Properties, Inc., with its permission.

f.   Oral or written publication, in any manner, of material that violates a person's right of privacy;

g.   The use of another's advertising idea in your "advertisement";

h.   Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

i.   Discrimination, unless insurance coverage therefor is prohibited by law or statute.

18.  "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.  "Pollutants" include, but are not limited to, substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

a.   The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

b.   The insured uses, generates or produces the "pollutant".

19.  "Products-completed operations hazard":

a.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)  Products that are still in your physical possession; or

(2)  Work that has not yet been completed or abandoned.   However, "your work" will be deemed completed at the earliest of the following times:

(a)  When all of the work called for in your contract has been completed.

(b)  When all of the work to be done at the site has been completed, if your contract calls for work at more than one site.

(c)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.   Does not include "bodily injury" or "property damage" arising out of:

(1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2)  The existence of tools, uninstalled equipment or abandoned or unused materials.

20.  "Property damage" means:

a.   Physical injury to or destruction of tangible property including all resulting loss of use.    All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

b.   Loss of use of tangible property that is not physically injured.   All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

21.  "Subsidiary" means any organization in which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors is owned or controlled, directly or indirectly, in any combination, by one or more of the Named Insureds.

22.  "Suit" means a civil proceeding in which money damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies are alleged.  "Suit" includes:

a.   An arbitration proceeding in which such money damages are claimed and to which the insured must submit or does submit with our consent;

b.   Any other alternative dispute resolution proceeding in which such money damages are claimed and to which the insured submits with our consent; or

c.   An appeal of a civil proceeding.

Includes copyrighted material of ISO Properties, Inc., with its permission.

23. "Temporary worker" means a person who is furnished to you to:

   a. Substitute for a permanent "employee" on leave; or

   b. Meet seasonal or short-term workload conditions.

24. "Ultimate net loss" means the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance, either by adjudication or compromise. "Ultimate net loss" does not include Defense and Supplementary Payments as described in **SECTION I - COVERAGE, C. Defense and Supplementary Payments** of this Coverage Part.

25. "Underlying insurance" means the insurance listed in the Schedule of Underlying Insurance and the insurance available to the insured under all other insurance policies applicable to the "occurrence". "Underlying insurance" also includes any type of self-insurance or alternative method by which the insured arranges for funding of legal liabilities that affords coverage that this Coverage Part covers.

26. "Underlying limit" means the total of the applicable limits of all "underlying insurance" less the amount, if any, by which the applicable limit of the applicable policy listed in the Schedule of Underlying Insurance has been reduced solely by payment of loss resulting from claims which are in accordance with **SECTION I - COVERAGE, A. Insuring Agreement**, Paragraph **2.** of this Coverage Part.

27. "Workplace" means that place and during such hours to which the "employee" sustaining injury was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

28. "Your product":

   a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (a) You;

   (b) Others trading under your name; or

   (c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product; and

(2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

29. "Your work":

   a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**US 101 UM 12 04**                                                **Page 20 of 22**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**

**A.** **SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to:

1. Any liability:

   **a.** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **b.** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(1)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(2)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Any liability resulting from the "hazardous properties" of "nuclear material", if

   **a.** The "nuclear material" **(1)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(2)** has been discharged or dispersed therefrom,

   **b.** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   **c.** The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if

such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **c.** applies only to "property damage" to such "nuclear facility" and any property thereat.

**B.** **SECTION V - DEFINITIONS** is hereby modified to add the following definitions:

1. "Hazardous properties" include radioactive, toxic or explosive properties;

2. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

3. "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

4. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

5. "Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

6. "Nuclear facility" means:

   **a.** Any "nuclear reactor";

   **b.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", **(3)** or handling, processing or packaging "waste";

   **c.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear materials", if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of

Includes copyrighted material of ISO Properties, Inc., with its permission.

**US 101 UM 12 04**

plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**d.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations con-ducted on such site and all premises used for such operations;

**7.** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**8.** "Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of ISO Properties, Inc., with its permission.

US 101 UM 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLLUTANT EXCLUSION - OTHER THAN AUTO

This endorsement modifies insurance provided under the following:

> COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
> PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
> PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:  Subparagraph **1.**) is modified as follows:

Exclusion **17. Pollutant - Other Than Auto** (Exclusion **1.q.** in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made) is hereby deleted and replaced by the following:

**Pollutant - Other Than Auto**

This insurance does not apply to:

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

    **(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

    **(2)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(3)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    **(4)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

Subparagraphs **a.(1)** and **a.(4)** do not apply:

    **(a)** To "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

    **(b)** If insurance is provided to the insured by "underlying insurance" specifically listed in the Schedule of Underlying Insurance at the "underlying limit" scheduled, but only to the extent "bodily injury" or "property damage" coverage is provided by that "underlying insurance" specifically listed in the Schedule of Underlying Insurance and subject to all its terms and conditions.

    **(5)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.** "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape emission of "pollutants" at any time.

**c.** Any loss, cost or expense arising out of any:

    **(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(2)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**d.** Any liability caused by "pollutants" excluded by "underlying insurance".

Includes copyrighted material of ISO Properties, Inc., with its permission.

**US 302 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA AMENDATORY
# EXCLUSION - LIABILITY ARISING FROM STATUTE
# OR REGULATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

## SCHEDULE

**Description of Statute:**

Clean Air Act (CAA): 42 U.S.C. §7401 *et seq.*; Clean Water Act (CWA): 33 U.S.C. §1251 *et seq.*; Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA or Superfund): 42 U.S.C. §9601 *et seq.*; Emergency Planning and Community Right to Know Act of 1986 (EPCRA): 42 U.S.C. §11004 *et seq.*; Federal Insecticide, Fungicide and Rodenticide Act (FIFRA): 7 U.S.C. §136 *et seq.*; Marine Protection, Research and Sanctuaries Act of 1972 (MPRAS): 33 U.S.C. §1401-1445; 16 U.S.C. §1431-1445; Oil Pollution Act of 1990 (OPA): 33 U.S.C. §2701 *et seq.*; Resource Conservation and Recovery Act (RCRA): 42 U.S.C. §6901 *et seq.*; Rivers and Harbors Act of 1899: 33 U.S.C. §407 *et seq.*; Safe Drinking Water Act (SDWA): 42 U.S.C. §300f *et seq.*; Surface Mining Control and Reclamation Act of 1977 (SMCRA): 30 U.S.C. §1234-1328; Toxic Substances Control Act of 1976 (TSCA): 15 U.S.C. § 2601-2695; Pollution Prevention Act (PPA): 42 U.S.C. §13101 *et seq.*; Indiana code, Title 13. Environmental (including but not limited the following sections): Enforcement and Legal Actions: I.C. §13-30 *et seq.*; Environmental Legal Action Statute (ELA): I.C. §13-30-9 et seq.; Environmental Management; I.C. §13-13 *et seq.*; Air Pollution: I.C. §13-17 *et seq.*; Water Pollution: I.C. §13-18 *et seq.*; Solid Waste Management: I.C. §13-20 et seq.; Electronic Waste: I.C. §13-20.5 *et seq.*; Hazardous Waste Management: I.C. §13-22 *et seq.*; Underground Storage Tank: I.C. §13-23 *et seq.*; Petroleum: I.C. §13-24 *et seq.*; Hazard Substances: I.C. §13-25 *et seq.*; and Industrial Pollution: I.C. §13-27 *et seq.*

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified to add the following:

This insurance does not apply to liability arising from one or more of the statutes shown in the Schedule, as amended, or any regulation authorized by or implementing the statutes.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

> **COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified to delete Exclusion **10. Electronic Data** in its entirety and replace it with the following:

This insurance does not apply to:

**10. Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

Any liability arising out of:

**a.** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**b.** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **a.** or **b.** above.

However, this exclusion does not apply:

**(1)** To damages because of "bodily injury", unless Paragraph **a.** above applies; and

**(2)** When such insurance is provided by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance, or would have been provided by such listed "underlying insurance" except for the exhaustion by payment of claims of its limits of insurance, and then only for such hazards for which coverage is provided by such "underlying insurance", unless otherwise excluded by this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**US 3093 05 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LEAD LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

> **COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:  Subparagraph **1.**) is modified to add the following:

This insurance does not apply to:

**a.**   Any liability arising out of, resulting from, or in any way caused by or contributing to the actual, alleged or threatened ingestion, inhalation, absorption of, exposure to or presence of lead in any form emanating from any source.

**b.**   Any loss, cost or expense arising out of, resulting from or in any way related to any:

    **(1)**   Claim, "suit", request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of lead in any form; or

    **(2)**   Claim or "suit" by or on behalf of any person, entity, or governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead in any form.

**US 395 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:  Subparagraph **1.**) is modified to add the following:

This insurance does not apply to:

Any liability arising out of the ownership, maintenance, occupancy, operation, use, "loading or unloading" of any land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law, unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance", unless otherwise excluded by this Coverage Part.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission

**US 4062 11 05**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFIT LIABILITY

This endorsement modifies insurance provided under the following:

> **COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

This policy is modified to add the following:

**I.**    **SECTION I - COVERAGE, A. Insuring Agreement(s) is** modified to add the following:

**EMPLOYEE BENEFIT LIABILITY:**

We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages because of any negligent act, error or omission of the insured or any other person for whose acts the insured is legally liable arising out of the administration of the insured's employee benefit programs.

This insurance applies only to negligent acts, errors or omissions:

**a.**    Whose damages are in excess of the "underlying insurance" provided by an Employee Benefit Liability policy listed in the Schedule of Underlying Insurance; and

**b.**    Which occur during the policy period.

**II.**    **SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:  Subparagraph **1.**) is modified to add the following exclusion:

This insurance does not apply to:

Any liability arising out of employee benefit programs unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance".

**US 407 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC)
# COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

> **COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION - IV CONDITIONS** is amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**US 4098 04 10**

# The Cincinnati Indemnity Company

A Stock Insurance Company

# CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: ▮▮▮▮▮▮▮▮▮  Effective Date 12-20-2017

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:**   12-20-2017

## Limits of Insurance and Deductible

| Insuring Agreement | | Annual Aggregate | Sublimit | | Deductible |
|---|---|---|---|---|---|
| A | Response Expenses | $50,000 | | | $1,000 |
| | | | Named Malware | $50,000 | |
| | | | Forensic IT Review | $5,000 | |
| | | | Legal Review | $5,000 | |
| | | | PR Services | $5,000 | |
| | | | Regulatory Fines and Penalties | $10,000 | |
| | | | PCI Fines and Penalties | $10,000 | |
| B | Defense and Liability | $50,000 | | | $1,000 |
| | | | Named Malware | $50,000 | |
| C | Identity Recovery | $25,000 | | | $250 |
| | | | Lost Wages and Child and Elder Care | $5,000 | |
| | | | Mental Health Counseling | $1,000 | |
| | | | Miscellaneous Unnamed Costs | $1,000 | |

| TOTAL ANNUAL PREMIUM | $143 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 28 |
| 2 YEAR | 56 |
| 3 YEAR | 74 |
| 4 YEAR | 93 |
| 5 YEAR | 102 |
| 6 YEAR | 111 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

HCD 502 01 16

HC102     01/16 CINCINNATI DATA DEFENDER™ COVERAGE FORM
HC478IN   08/16 INDIANA CHANGES - NOTICE OF CLAIM OR LOSS

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

## TABLE OF CONTENTS

**Coverage Part Provision:**                                                              **Begins on Page:**

Preamble ................................................................................................................................3

SECTION I - COVERAGES ...................................................................................................3

A.  Insuring Agreements ......................................................................................................3

  1.  Insuring Agreement A - Response Expenses .........................................................3
  2.  Insuring Agreement B - Defense and Liability ........................................................5
  3.  Insuring Agreement C - Identity Recovery .............................................................5

B.  Exclusions ...................................................................................................................5

  1.  Applicable to Insuring Agreements A and B .........................................................5

    a.  Criminal Investigations or Proceedings ..........................................................5
    b.  Deficiency Correction ...................................................................................5
    c.  Extortion .......................................................................................................5
    d.  Fraudulent, Dishonest or Criminal Acts .........................................................6
    e.  Non-monetary Relief ....................................................................................6
    f.  Previously Reported Data Compromises ........................................................6
    g.  Prior Data Compromises ..............................................................................6
    h.  Prior or Pending Litigation ............................................................................6
    i.  Reckless Disregard ......................................................................................6
    j.  Unencrypted Data .........................................................................................6
    k.  Uninsurable ...................................................................................................6
    l.  Willful Complicity ...........................................................................................6

  2.  Applicable to Insuring Agreement C .....................................................................6

    a.  Fraudulent, Dishonest or Criminal Acts .........................................................6
    b.  Professional or Business Identity ...................................................................6
    c.  Unreported Identity Theft ..............................................................................6

  3.  Applicable to Insuring Agreements A, B and C .....................................................6

    a.  Nuclear .........................................................................................................6
    b.  War ...............................................................................................................6

SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE .................................................7

SECTION III - DEFENSE AND SETTLEMENT ......................................................................8

SECTION IV - CONDITIONS .................................................................................................9

  1.  Bankruptcy ...........................................................................................................9
  2.  Due Diligence .......................................................................................................9
  3.  Duties in the Event of a Claim or Loss ..................................................................9
  4.  Help Line .............................................................................................................10
  5.  Legal Action Against Us .......................................................................................10
  6.  Legal Advice ........................................................................................................10
  7.  Office of Foreign Assets Control (OFAC) Compliance ..........................................11
  8.  Other Insurance ...................................................................................................11
  9.  Pre-Notification Consultation ...............................................................................11
  10. Representations ...................................................................................................11
  11. Separation of Insureds .........................................................................................11
  12. Service Providers .................................................................................................11
  13. Services ...............................................................................................................11
  14. Subrogation .........................................................................................................12
  15. Valuation - Settlement ..........................................................................................12
  16. When We Do Not Renew ......................................................................................12

Includes copyrighted material of Insurance
Services Office, Inc. with its permission.

## TABLE OF CONTENTS (CONT'D)

| Coverage Part Provision: | Begins on Page: |
|---|---|
| SECTION V - EXTENDED REPORTING PERIODS | 12 |
| SECTION VI - DEFINITIONS | 13 |
| 1. "Affected individual" | 13 |
| 2. "Authorized representative" | 13 |
| 3. "Claim" | 13 |
| 4. "Coverage term" | 14 |
| 5. "Coverage territory" | 14 |
| 6. "Data compromise liability" | 14 |
| 7. "Defense costs" | 14 |
| 8. "Employee" | 14 |
| 9. "Executive" | 15 |
| 10. "Identity recovery case manager" | 15 |
| 11. "Identity recovery expenses" | 15 |
| 12. "Identity recovery insured" | 16 |
| 13. "Identity theft" | 16 |
| 14. "Insured" | 16 |
| 15. "Loss" | 16 |
| 16. "Malware-related compromise" | 16 |
| 17. "Named insured" | 16 |
| 18. "Personal data compromise" | 16 |
| 19. "Personally identifying information" | 17 |
| 20. "Personally sensitive information" | 17 |
| 21. "Policy period" | 17 |

Electronically Filed 01/09/2023 08:39 / / CV 23 9735098 / Confirmation Nbr. 2742954 / CLJSZ

HC 102 01 16                    Includes copyrighted material of Insurance
Services Office, Inc. with its permission.                    Page 2 of 17

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DE-DUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

1. **Insuring Agreement A - Response Expenses**

   a. Coverage under Insuring Agreement **A** - Response Expenses applies only if all of the following conditions are met:

      (1) There has been a "personal data compromise"; and

      (2) Such "personal data compromise" is first discovered by you during the "coverage term"; and

      (3) Such "personal data compromise" took place in the "coverage territory"; and

      (4) Such "personal data compromise" is reported to us within 60 days after the date it is first discovered by you.

   b. If the conditions listed in **a.** above have been met, then we will provide coverage for the following expenses when they arise directly from the "personal data compromise" described in **a.** above and are necessary and reasonable. Coverages **(4)** and **(5)** apply only if there has been a notification of the "personal data compromise" to "affected individuals" as covered under coverage **(3)**.

   (1) **Forensic IT Review**

   Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

   This does not include costs to analyze, research or determine any of the following:

   (a) Vulnerabilities in systems, procedures or physical security;

   (b) Compliance with PCI or other industry security standards; or

   (c) The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

   If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

   (2) **Legal Review**

   Professional legal counsel review of the "personal data compromise" and how you should best respond to it. If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HC 102 01 16                                         **Page 3 of 17**

Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(3) Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**(4) Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals":

**(a)** The following services apply to any "personal data compromise".

**1) Informational Materials**

A packet of loss prevention and customer support information.

**2) Help Line**

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in **(b)1)** and **2)** below.

Note, calls by "affected individuals" or their representatives to the Help Line do not constitute the making of a "claim" under Insuring Agreement **B** - Defense and Liability.

**(b)** The following additional services apply to "personal data compromise" events involving "personally identifying information".

**1) Credit Report and Monitoring**

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

**2) Identity Restoration Case Management**

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**(5) PR Services**

Professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships.

This includes costs to implement public relations recommendations of such firm. This may include advertising and special promotions designed to retain your relationship with "affected individuals". However, we will not pay for promotions:

**(a)** Provided to any of your "executives" or "employees"; or

**(b)** Costing more than $25 per "affected individual".

**(6) Regulatory Fines and Penalties**

Any fine or penalty imposed, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HC 102 01 16 | Page 4 of 17

**(7) PCI Fines and Penalties**

Any Payment Card Industry fine or penalty imposed under a contract to which you are a party. PCI Fines and Penalties do not include any increased transaction costs.

**2. Insuring Agreement B - Defense and Liability**

a. Coverage under Insuring Agreement **B** - Defense and Liability applies only if all of the following conditions are met:

(1) During the "coverage term" or any applicable Extended Reporting Period, you first receive notice of a "claim" which:

(a) Arises from a "personal data compromise" that:

1) Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period";

2) Took place in the "coverage territory"; and

3) Was submitted to us and covered under Insuring Agreement **A** - Response Expenses; and

(b) Is brought by one or more "affected individuals" or by a governmental entity on behalf of one or more "affected individuals"; and

(2) Such "claim" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

b. If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" "defense costs" and "data compromise liability" directly arising from the "claim".

c. All "claims" caused by a single "personal data compromise" will be deemed to have been made at the time that notice of the first of those "claims" is received by you.

**3. Insuring Agreement C - Identity Recovery**

a. Coverage under Insuring Agreement **C** - Identity Recovery applies only if all of the following conditions are met:

(1) There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this Coverage Part; and

(2) Such "identity theft" is first discovered by the "identity recovery insured" during the "coverage term"; and

(3) Such "identity theft" took place in the "coverage territory"; and

(4) Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured".

b. If the conditions listed in **a.** above have been met, then we will provide the following to the "identity recovery insured":

(1) Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

(2) Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft".

**B. Exclusions**

**1.** Applicable to Insuring Agreements **A** and **B** only:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

a. **Criminal Investigations or Proceedings**

Any criminal investigations or proceedings.

b. **Deficiency Correction**

Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your systems, procedures or physical security that may have contributed to a "personal data compromise".

c. **Extortion**

Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**d. Fraudulent, Dishonest or Criminal Acts**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

**e. Non-monetary Relief**

That part of any "claim" seeking any non-monetary relief.

**f. Previously Reported Data Compromises**

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

**g. Prior Data Compromises**

Any "personal data compromise" first occurring before the Retroactive Date shown in the Declarations, or any "claim" arising from a "personal data compromise" that first occurred prior to the Retroactive Date shown in the Declarations.

**h. Prior or Pending Litigation**

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

**i. Reckless Disregard**

Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

**j. Unencrypted Data**

Any "personal data compromise" involving data that is being transmitted electronically, unless such data is encrypted to protect the security of the transmission.

**k. Uninsurable**

Any amount not insurable under applicable law.

**l. Willful Complicity**

The "insured's" intentional or willful complicity in a "personal data compromise".

**2.** Applicable to Insuring Agreement **C** only:

This insurance does not apply to:

**a. Fraudulent, Dishonest or Criminal Acts**

Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any "authorized representative" of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

**b. Professional or Business Identity**

The theft of a professional or business identity.

**c. Unreported Identity Theft**

An "identity theft" that is not reported in writing to the police.

**3.** Applicable to Insuring Agreements **A, B** and **C**:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Nuclear**

Nuclear reaction or radiation or radioactive contamination, however caused.

**b. War**

(1) War, including undeclared or civil war or civil unrest;

(2) Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

Electronically Filed 01/09/2023 08:39 / 1 CV-23-973508 / Confirmation Nbr. 2742954 / CLJSZ

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HC 102 01 16

Page 6 of 17

## SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE

**A.** Insuring Agreement **A** - Response Expenses:

1. The most we will pay under Insuring Agreement **A** - Response Expenses is the Response Expenses Limit of Insurance stated in the Declarations.

2. The Response Expenses Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Response Expenses arising out of all "personal data compromise" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

3. A "personal data compromise" may be first discovered by you in one "coverage term" but cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "personal data compromise" will be subject to the Response Expenses Limit of Insurance applicable to the "coverage term" when the "personal data compromise" was first discovered by you.

4. The most we will pay under Insuring Agreement **A** - Response Expenses for "loss" arising from any "malware-related compromise" is the Named Malware sublimit stated in the Declarations. This sublimit is included within and not in addition to the Aggregate Limit of Insurance referenced in Paragraph **2**. For the purpose of the Named Malware sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to be a single "personal data compromise".

5. The most we will pay under Insuring Agreement **A** - Response Expenses for Forensic IT Review, Legal Review, PR Services, Regulatory Fines and Penalties and PCI Fines and Penalties coverages for "loss" arising from any one "personal data compromise" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2**. PR Services coverage is also subject to a limit per "affected individual" as described in Section **I., A.1.b.(5)** PR Services.

6. Coverage for Services to "affected individuals" is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals". Notwithstanding the foregoing, coverage for Identity Restoration Case Management services initiated within such one year period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

7. Response Expenses coverage is subject to the Response Expenses Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount in order to respond effectively to a "personal data compromise" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**B.** Insuring Agreement **B** - Defense and Liability:

1. The most we will pay under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) is the Limit of Insurance stated in the Declarations.

2. The Insuring Agreement **B** - Defense and Liability Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for all "loss" covered under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) arising out of all "claims".

3. The most we will pay under Defense and Liability coverage for "loss" arising from any "malware-related compromise" is the Named Malware sublimit stated in the Declarations. This sublimit is included within and not in addition to the Aggregate Limit of Insurance referenced in Paragraph **2**. For the purpose of the Named Malware sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to be a single "claim".

4. The Defense and Liability Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Defense and Liability Limit for the immediately preceding "coverage term".

5. The Insuring Agreement **B** - Defense and Liability coverage is subject to the Deductible stated in the Declarations. You shall be responsible for such deductible

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

amount as respects each "claim" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim" or "loss" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

C.  Insuring Agreement **C** - Identity Recovery:

1.  Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the Limit of Insurance available for "identity recovery expenses".

2.  Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Annual Aggregate Limit of Insurance stated in the Declarations per "identity recovery insured". Regardless of the number of "identity theft" incidents, this limit is the most we will pay for the total of all "loss" arising out of all "identity thefts" suffered by one "identity recovery insured" which are first discovered by the "identity recovery insured" during the "coverage term". If an "identity theft" is first discovered in one "coverage term" and continues into other "coverage terms", all "loss" arising from such "identity theft" will be subject to the aggregate Limit of Insurance applicable to the "coverage term" when the "identity theft" was first discovered.

3.  Legal costs as provided under Item **d.** of the definition of "identity recovery expenses" are part of, and not in addition to, the aggregate limit described in Paragraph **2.**

4.  Item **e.** (Lost Wages) and Item **f.** (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

5.  Item **g.** (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate limit described in Paragraph **2.** Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

6.  Item **h.** (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

7.  Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Identity Recovery Deductible stated in the Declarations. Each "identity recovery insured" shall be responsible for such deductible amount only once during each "coverage term". This deductible applies only to "identity recovery expenses".

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

1.  We will have the right and duty to select counsel and defend the "insured" against any "claim" covered by Insuring Agreement **B** - Defense and Liability, regardless of whether the allegations of such "claim" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" seeking damages or other relief not insured by Insuring Agreement **B** - Defense and Liability.

2.  We may, with your written consent, make any settlement of a "claim" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

3.  We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim", after the Insuring Agreement **B** - Defense and Liability Limit of Insurance has been exhausted.

4.  We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance which accrues:

    a.  After entry of judgment; and

    b.  Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire In-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
**HC 102 01 16**                                                                                   **Page 8 of 17**

suring Agreement **B** - Defense and Liability Limit of Insurance.

These interest payments shall be in addition to and not part of the Defense and Liability Limit.

## SECTION IV – CONDITIONS

### 1. Bankruptcy

Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

### 2. Due Diligence

You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security;

**c.** Maintaining and updating at appropriate intervals backups of computer data;

**d.** Protecting transactions, such as processing credit card, debit card and check payments; and

**e.** Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

### 3. Duties in the Event of a Claim or Loss

**a.** If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

**(1)** The specific details, including the date, of the circumstance;

**(2)** The alleged injuries or damage sustained or which may be sustained;

**(3)** The names of potential claimants; and

**(4)** The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" is brought against any "insured", you must:

**(1)** Immediately record the specifics of the "claim" and the date received; and

**(2)** Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "claim" is first received by you.

**(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

**(4)** Authorize us to obtain records and other information;

**(5)** Cooperate with us in the investigation, settlement or defense of the "claim";

**(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" to which this insurance may also apply; and

**(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim".

**c.** In the event of a "personal data compromise" covered under Insuring Agreement **A** - Response Expenses, you must see that the following are done:

**(1)** Notify the police if a law may have been broken.

**(2)** Notify us as soon as practicable, but in no event more than 60 days after the "personal data compromise". Include a description of any property involved.

**(3)** As soon as possible, give us a description of how, when and where the "personal data compromise" occurred.

**(4)** As often as may be reasonably required, permit us to:

**(a)** Inspect the property proving the "personal data compromise";

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**HC 102 01 16**                                                   **Page 9 of 17**

**(b)** Examine your books, records, electronic media and records and hardware;

**(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

**(d)** Make copies from your books, records, electronic media and records and hardware.

**(5)** Send us signed, sworn proof of loss containing the information we request to investigate the "personal data compromise". You must do this within 60 days after our request. We will supply you with the necessary forms.

**(6)** Cooperate with us in the investigation of the "personal data compromise" or settlement of the "loss".

**(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**(8)** Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our prior written consent.

**(9)** Promptly send us any legal papers or notices received concerning the "personal data compromise" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-866-219-9831**. The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

**a.** Information and advice for how to respond to a possible "identity theft"; and

**b.** Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records that support his or her claim for "identity recovery expenses".

**5. Legal Action Against Us**

**a.** No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

**(2)** To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**6. Legal Advice**

We are not your legal advisor. Our determination of what is or is not covered under this Coverage Part does not represent advice or counsel from us about what you should or should not do.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

### 7. Office of Foreign Assets Control (OFAC) Compliance

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

### 8. Other Insurance

a. If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part by reference in such other policy to this policy's policy number.

b. When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

### 9. Pre-Notification Consultation

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this Coverage Part for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under Condition 12. Service Providers. You must provide the following at our pre-notification consultation with you:

a. The exact list of "affected individuals" to be notified, including contact information.

b. Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

c. The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected individuals" without exceeding the available Response Expenses Limit.

### 10. Representations

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

### 11. Separation of Insureds

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom a "claim" is made.

### 12. Service Providers

a. We will only pay under this Coverage Part for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Coverage Part. We will not unreasonably withhold such approval.

b. Prior to the Pre-Notification Consultation described in the Pre-Notification Consultation Condition above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

(1) Such alternate service provider must be approved by us;

(2) Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

(3) Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

### 13. Services

The following conditions apply as respects any services provided to you or any "affected individual" or "identity recovery insured" by us, our designees or any service firm paid for in whole or in part under this Coverage Part:

a. The effectiveness of such services depends on the cooperation and assistance

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

of you, "affected individuals" and "identity recovery insureds".

**b.** All services may not be available or applicable to all individuals. For example, "affected individuals" and "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

**c.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**d.** Except for the services of an "identity recovery case manager" under Insuring Agreement **C** - Identity Recovery, which we will provide directly, you will have a direct relationship with the professional service firms paid for in whole or in part under this Coverage Part. Those firms work for you.

## 14. Subrogation

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, will be distributed as follows:

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

## 15. Valuation - Settlement

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is

agreed upon, or the other component of "loss" is due, respectively.

## 16. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - EXTENDED REPORTING PERIODS

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a "claim" of which you first receive notice during said Automatic Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown on the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" of which you first receive notice during said Supplemental Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

Includes copyrighted material of Insurance
Services Office, Inc. with its permission.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

**c.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods shall be part of, and not in addition to, the Defense and Liability Limit of Insurance for the immediately preceding "coverage term".

## SECTION VI - DEFINITIONS

**1.** "Affected individual" means any person who is your current, former or prospective customer, client, patient, member, owner, student, "executive" or "employee" and whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this Coverage Part. This definition is subject to the following provisions:

**a.** "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

**b.** An "affected individual" must have a direct relationship with your interests as insured under this policy. The following are examples of individuals who would not meet this requirement:

**(1)** If you aggregate or sell information about individuals as part of your business, the individuals about whom you keep such information do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an "employee" of yours.

**(2)** If you store, process, transmit or transport records, the individuals whose "personally identifying information" or "personally sensitive information" you are storing, processing, transmitting or transporting for another entity do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an "employee" of yours.

**(3)** You may have operations, interests or properties that are not insured under this policy. Individuals who have a relationship with you through such other operations, interests or properties do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an "employee" of the operation insured under this policy.

**c.** An "affected individual" may reside anywhere in the world.

**2.** "Authorized representative" means a person or entity authorized by law or contract to act on behalf of an "identity recovery insured".

**3.** "Claim":

**a.** Means:

**(1)** A civil proceeding in which it is alleged that one or more "affected individuals" suffered damages arising from:

**(a)** A "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses section of this Coverage Part and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses; or

**(b)** The violation of a governmental statute or regulation arising from a "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses.

**(2)** "Claim" includes:

**(a)** An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent;

**(b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(c)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

**b.** Does not include any demand or action brought by or on behalf of someone who is:

**(1)** Your "executive";

**(2)** Your owner or part-owner; or

**(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action. "Claim" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

**c.** Does not include any demand or action brought by or on behalf of an organization, business, institution or any other party that is not an "affected individual" or governmental entity.

**4.** "Coverage term" means the following individual increment, or if a multi-year "policy period", increments, of time, which comprise the "policy period" of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the "policy period" shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Coverage territory" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses, anywhere in the world.

**b.** With respect to Insuring Agreement **B** - Defense and Liability, anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

**c.** With respect to Insuring Agreement **C** - Identity Recovery, anywhere in the world

**6.** "Data compromise liability":

**a.** Means the following, when they arise from a "claim":

**(1)** Damages, judgments or settlements to "affected individuals";

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

**(3)** Pre-judgment interest on that part of any judgment paid by us.

**b.** Does not include:

**(1)** Damages, judgments or settlements to anyone who is not an "affected individual";

**(2)** Civil or criminal fines or penalties imposed by law;

**(3)** Punitive or exemplary damages;

**(4)** The multiplied portion of multiplied damages;

**(5)** Taxes; or

**(6)** Matters which may be deemed uninsurable under the applicable law.

**7.** "Defense costs":

**a.** Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

**b.** Do not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

**8.** "Employee" means any natural person, other than an "executive", who was, now is or will be:

**a.** Employed on a full- or part-time basis by you;

    **b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

    **c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **8.b.**; or

    **d.** Your volunteer worker, which includes unpaid interns.

**9.** "Executive" means any natural person who was, now is or will be:

    **a.** The owner of a sole proprietorship that is a "named insured"; or

    **b.** A duly elected or appointed:

        **(1)** Director;

        **(2)** Officer;

        **(3)** Managing Partner;

        **(4)** General Partner;

        **(5)** Member (if a limited liability company);

        **(6)** Manager (if a limited liability company); or

        **(7)** Trustee,

    of a "named insured".

**10.** "Identity recovery case manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured". This includes, with the permission and cooperation of the "identity recovery insured", written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**11.** "Identity recovery expenses" means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft" suffered by an "identity recovery insured":

    **a.** Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft".

    **b.** Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft".

    **c.** Costs for credit reports from established credit bureaus.

    **d.** Fees and expenses for an attorney approved by us for the following:

        **(1)** The defense of any civil suit brought against an "identity recovery insured".

        **(2)** The removal of any civil judgment wrongfully entered against an "identity recovery insured".

        **(3)** Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

        **(4)** Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

        **(5)** The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured".

    **e.** Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

    **f.** Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

    **g.** Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

    **h.** Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft":

        **(1)** Such costs include:

Includes copyright material of Insurance Services Office, Inc. with its permission.

**(a)** Costs by the "identity recovery insured" to recover control over his or her personal identity.

**(b)** Deductibles or service fees from financial institutions.

**(2)** Such costs do not include:

**(a)** Costs to avoid, prevent or detect "identity theft" or other loss.

**(b)** Money lost or stolen.

**(c)** Costs that are restricted or excluded elsewhere in this Coverage Part or policy.

**12.** "Identity recovery insured" means the following:

**a.** When the entity insured under this Coverage Part is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the "named insured".

**b.** When the "named insured" under this Coverage Part is a partnership, the "identity recovery insureds" are the current partners.

**c.** When the "named insured" under this Coverage Part is a corporation or other form of organization, other than those described in **a.** or **b.** above, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

**(1)** The chief executive of the insured entity; or

**(2)** As respects a religious institution, the senior ministerial employee.

**d.** The legally recognized spouse of any individual described in **a.**, **b.** or **c.** above.

An "identity recovery insured" must always be an individual person. The "named insured" under this Coverage Part is not an "identity recovery insured".

**13.** "Identity theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**14.** "Insured" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses any "named insured".

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** Any "named insured"; and

**(2)** Any "employee" or "executive" of a "named insured", but:

**(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

**(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**c.** With respect to Insuring Agreement **C** - Identity Recovery any "named insured".

**15.** "Loss" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses:

Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** "Defense costs"; and

**(2)** "Data compromise liability".

**c.** With respect to Insuring Agreement **C** - Identity Recovery, "identity recovery expenses".

**16.** "Malware-related compromise" means a "personal data compromise" that is caused, enabled or abetted by a virus or other malicious code that, at the time of the "personal data compromise", is named and recognized by the CERT® Coordination Center, McAfee®, Secunia, Symantec or other comparable third party monitors of malicious code activity.

**17.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

**18.** "Personal data compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying infor-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

mation", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

**a.** At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

    **(1)** You; or

    **(2)** A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, processing, transmission or transportation of such information.

**b.** "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

    **(1)** The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

    **(2)** Such disposal or abandonment must take place during the time period for which this Coverage Part is effective.

**c.** "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

**d.** All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

**19.** "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual" or "identity recovery insured". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**20.** "Personally sensitive information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

**21.** "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

HC 102 01 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES - NOTICE OF CLAIM OR LOSS

This endorsement modifies insurance provided under the following:

**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

The following condition is added to **SECTION IV - CONDITIONS** (**SECTION V - CONDITIONS** of the Cincinnati Cyber Defense™ Coverage Part):

**Notice of Claim or Loss**

Notice given by or on behalf of the first "named insured" to any of our authorized agents in Indiana, with particulars sufficient to identify the first "named insured", shall be considered to be notice to us.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**HC 478 IN 08 16**



The Cincinnati Insurance Company ■ The Cincinnati Indemnity Company
The Cincinnati Casualty Company

Today's Date:   12-11-2017

To:   RAYMOND STREET PARTNERS LLC

Policy Number:   ███████████
Expiration Date:   12-20-2020
Agency:   GREGORY & APPEL, INC. 13-295

### Data privacy management services and resources added to your insurance policy

Dear Policyholder:

Your policy includes Cincinnati Data Defender™ coverage for an additional premium. This data privacy exposure coverage helps safeguard your business against the potentially costly risk of a data breach and assists you in the event of identity theft. Please save this information so you can access all the tools and resources that come with your cyber protection coverage. Refer to Cincinnati Data Defender Coverage Form, HC102, for a complete statement of coverages, exclusions and limits of insurance.

### Policyholder tools and resources

*Data breach portal* – For your convenience, Cincinnati policyholders who purchase Data Defender coverage gain access to *www.eriskhub.com/cic*, a website that provides you with the comprehensive, on-demand resources you need to:

- Prepare in advance:
  - Access online resources when you need them
  - Create your breach response plan from the template
  - Learn about breach laws that apply to your business
- Review risk management resources:
  - Use the compliance reference guide and notification letter examples
  - Locate credit bureau and government agency notification information
  - Learn how to contact data risk management experts for more help
- Manage your breach response:
  - Call the help line for breach information and assistance
  - Arrange assistance with notification letters
  - Access public relations resources to help you respond to the media

The first time you visit this website, please complete new user registration using this information:

### Access code = 12116-868

*Identity theft services* - This coverage also includes case management services and reimbursement for covered expenses if you, as a business owner, become the victim of identity theft or account takeover. If you suspect that you may be an identity theft victim or you have questions, please call our Identity Recovery Help Line, 866-219-9831.

**IA4465 (01/16)**

**Mailing Address:** P.O. Box 145496 ● Cincinnati, Ohio 45250-5496 ● **Headquarters:** 6200 S. Gilmore Road ● Fairfield, Ohio 45014-5141
*www.cinfin.com* ● 513-870-2000

## Claims services

If you suspect or know that a data breach may have exposed or compromised your organization's private, customer or personal data, a swift response is critical for your protection. Please note that the Web portal and help line provide advice and information, and using them does not satisfy any notice of claim requirement. The only way to report a claim is to contact your independent agent or call us directly, 877-242-2544. Your agent and Cincinnati Insurance will work with you to help preserve your company's goodwill, prevent regulatory sanctions or fines, avoid civil litigation and safeguard your business reputation.

While we believe this is valuable coverage to have in today's world, you may have it removed from your policy by notifying your agent.

## Additional cyberattack coverage

To round out your cyber risk liability insurance, consider adding Cincinnati Network Defender™ coverage for the computer systems and data that are integral to your business. This valuable protection pays the covered costs associated with restoring computer software and recovering data following a cyberattack. It also protects you against third-party liabilities you may incur as a result of your computer system's security failure. Please see the enclosed brochure for details.

You can purchase Cincinnati Network Defender with a coverage limit of $100,000 for an annual premium of $ __300__ . Please contact your independent agent representing Cincinnati to add this coverage to your policy or to request quotes for higher coverage limits. This quote is valid for sixty (60) days from the date of this letter.

Thank you for trusting your agent and Cincinnati to protect your business.

Sincerely,


COMMERCIAL LINES DEPARTMENT

Commercial Lines


Enclosure: Cincinnati Network Defender brochure, Adv. 715

IA4465 (01/16)

☐ **The Cincinnati Insurance Company**
☐ **The Cincinnati Casualty Company**
☒ **The Cincinnati Indemnity Company**

# COMMERCIAL LINES DEPARTMENT SPECIAL REQUEST

Date: <u>12-11-2017</u>

Insured:  <u>RAYMOND STREET PARTNERS LLC</u>

**Policy Number:**  ██████████ / ██████████

**To Agent:**  <u>GREGORY & APPEL, INC. 13-295</u>

☐ **1.** Coverage has been issued subject to satisfactory driver information. Please complete the enclosed form(s) and return promptly.

☒ **2.** Please return one signed copy of the enclosed endorsement. `IA460 CP1515`

☐ **3.** Please countersign the enclosed policy and return to the producer of record in the enclosed envelope.

☐ **4.** The MVR(s) for _____ has been returned from the state showing the license number is incorrect. Please forward the correct driver's license number(s) or Social Security number (GA, IN, IA, KY, OH, VA).

☐ **5.** The state requires us to report the complete VIN. Please supply us with the entire VIN for every vehicle.

☐ **6.** Please forward a **signed** Statement of Values. This is required whenever Blanket Insurance or Agreed Valued coverage is written.

☐ **7.** A completed _____ application is required. Please submit as soon as possible.

☒ **8.** We suggest that you send a letter to the insured making them aware of the endorsement and the consequences of its application. `IA460`

☐ **9.** This policy / endorsement has been issued subject to rate. We have ordered the loss costs, and we will endorse the policy when we receive them.

☐ **10.** Please complete and forward the **FA-492**, Actual Loss Sustained Business Income Worksheet. These are required annually.

☐ **11.** Please forward a photograph of the building located at _____ .

☐ **12.** The property (Loc. Number _____ Item Number _____) doesn't appear to be insured to value. Please advise how you determined the current limits.

☐ **13.** Please let us know when the following were updated for each building over 25 years old:

Bldg. _____ Yr. built _____ Electrical _____ Heating _____ Plumbing _____ Roof _____

Bldg. _____ Yr. built _____ Electrical _____ Heating _____ Plumbing _____ Roof _____

☐ **14.** Please find enclosed an Excess UM/UIM Selection Form(s) to be completed and signed by the insured.
Forms attached for Commercial Umbrella and any related Personal Umbrella(s): _____
_____

Thank you.

Cordially,

COMMERCIAL LINES DEPARTMENT

Date: 12-11-2017

Insured: RAYMOND STREET PARTNERS LLC

Policy Number: ████████████ / ████████████

Dear Agent:

The captioned policy has been issued with the following additional liability exclusion(s)/conditions(s):

☐ **Exterior Insulation and Finish Systems (EIFS) and Direct Applied Exterior Finish Systems (DEFS) Liability Exclusion**

☐ **Fungi or Bacteria Liability Exclusion**

☐ **Bodily Injury and /or Property Damage Deductible**

☒ **Lead Liability Exclusion**

☐ **Bodily Injury and/or Property Damage Fungi or Bacteria Deductible**

Please be sure that the insured understands the above.

Cordially,

Commercial Lines Department

**MI 1603 10 03**

# BUSINESS INCOME REPORT/WORK SHEET

Date    12-11-2017

Your Name    RAYMOND STREET PARTNERS LLC

Location

This work sheet must be completed on an accrual basis.

The beginning and ending inventories in all calculations should be based on the same valuation method.

## APPLICABLE WHEN THE AGREED VALUE COVERAGE OPTION APPLIES:

I certify that this is a true and correct report of values as required under this policy for the periods indicated and that the Agreed Value for the period of coverage is $ _____ ,based on a Co-insurance percentage of _____ %

Signature

Official Title

## APPLICABLE WHEN THE PREMIUM ADJUSTMENT FORM APPLIES:

I certify that this is a true and correct report of values as required under this policy for the 12 months ended _____

Signature

Official Title

Agent or Broker

Mailing Address

**CP 15 15 06 95** Copyright, Insurance Services Office, Inc., 1994        **Page 1 of 5**

**BUSINESS INCOME REPORT/WORK SHEET**
**FINANCIAL ANALYSIS**

| | 12 Month Period Ending _____ | | Estimated for 12 Month Period Beginning _____ | |
|---|---|---|---|---|
| Income and Expenses | Manufacturing | Non-Manufacturing | Manufacturing | Non-Manufacturing |
| **A.** Gross Sales | $ _____ | $ _____ | $ _____ | $ _____ |
| **B.** DEDUCT: Finished Stock Inventory (at sales value) at Beginning | - _____ | XXXXXX | - _____ | XXXXXX |
| | _____ | XXXXXX | _____ | XXXXXX |
| **C.** ADD: Finished Stock Inventory (at sales value) at End | + _____ | XXXXXX | + _____ | XXXXXX |
| **D.** Gross Sales Value of Production | $ _____ | XXXXXX | $ _____ | XXXXXX |
| **E.** DEDUCT: Prepaid Freight - Outgoing | - _____ | - _____ | - _____ | - _____ |
| Returns & Allowances | - _____ | - _____ | - _____ | - _____ |
| Discounts | - _____ | - _____ | - _____ | - _____ |
| Bad Debts | - _____ | - _____ | - _____ | - _____ |
| Collection Expenses | - _____ | - _____ | - _____ | - _____ |
| **F.** Net Sales | | $ _____ | | $ _____ |
| Net Sales Value of Production | $ _____ | | $ _____ | |
| **G.** ADD: Other Earnings from your business operations (not investment income or rents from other properties): Commissions or Rents | + _____ | + _____ | + _____ | + _____ |
| Cash Discounts Received | + _____ | + _____ | + _____ | + _____ |
| Other | + _____ | + _____ | + _____ | + _____ |
| **H.** Total Revenues | $ _____ | $ _____ | $ _____ | $ _____ |

| Income and Expenses | 12 Month Period Ending _____ | | Estimated for 12 Month Period Beginning _____ | |
|---|---|---|---|---|
| | Manufacturing | Non-Manufacturing | Manufacturing | Non-Manufacturing |
| Total Revenues (Line **H.** from previous page | $ _____ | $ _____ | $ _____ | $ _____ |
| | _____ | _____ | _____ | _____ |
| **I.** DEDUCT: Cost of goods sold (see next page for instructions) | - _____ | - _____ | - _____ | - _____ |
| Cost of services purchased from outsiders (not your employees) to resell, that do not continue under contract | - _____ | - _____ | - _____ | - _____ |
| Power, heat and refrigeration expenses that do not continue under contract (if **CP 15 11** is attached) | - _____ | - XXXXXX | - _____ | - XXXXXX |
| All ordinary payroll expenses or the amount of payroll expense excluded (if **CP 15 10** is attached) | - _____ | - XXXXXX | - _____ | - XXXXXX |
| Special deductions for mining properties (see next page for instructions) | - _____ | - _____ | - _____ | - _____ |
| **J.1.** Business Income exposure for 12 months | $ ========== | ========== | ========== | ========== |
| **J.2.** Combined (firms engaged in manufacturing & non-manufacturing operations) | $ ========== | | $ ========== | |
| The figures in **J.1. or J.2** represent 100% of your actual and estimated Business Income exposure for 12 months | | | | |
| **K.** Additional Expenses: | | | | |
| **1.** Extra Expenses - form **CP 00 30** only (expenses incurred to avoid or minimize suspension of business & to continue operations) | | | $ _____ | $ _____ |

**2.** Extended Business Income

and Extended Period of
Indemnity - form **CP 00 30** or
**CP 00 32** (loss of Business
Income following resumption
of operations, up to 30 days
or the no. of days selected
under Extended Period of
Indemnity option)

3. Combined (all amounts in **K.1.**
and **K.2.**)
$ _____

$ + _____ + _____

"Estimated" column

L.    Total of **J.** and **K.**
$ _____

The figure in **L.** represents 100% of your estimated Business Income exposure for 12 months, and additional expenses.  Using this figure as information, determine the approximate amount of insurance needed based on your evaluation of the number of months needed (may exceed 12 months) to replace your property, resume operations and restore the business to the condition that would have existed if no property damage had occurred.

Refer to the agent or Company for information on available Coinsurance levels and indemnity options.  The Limit of Insurance you select will be shown in the Declarations of the policy.

## Supplementary Information

| | 12 Month Period Ending | | Estimated for 12 Month Period Beginning | |
|---|---|---|---|---|
| | Manufacturing | Non-Manufacturing | Manufacturing | Non-Manufacturing |
| CALCULATION OF COST OF GOODS SOLD | | | | |
| Inventory at beginning of year (Including raw material and stock in process, but not finished stock, for manufacturing risks) | $ _____ | $ _____ | $ _____ | $ _____ |
| Add: The following purchase costs: Cost of raw stock (including transportation charges) | + _____ | XXXXXX | + _____ | XXXXXX |
| Cost of factory supplies consumed | + _____ | XXXXXX | + _____ | XXXXXX |
| Cost of merchandise sold including transportation charges (for manufacturing risks, means cost of merchandise sold but not manufactured by you) | + _____ | + _____ | + _____ | + _____ |
| Cost of other supplies consumed (including transportation charges) | + _____ | + _____ | + _____ | + _____ |
| Cost of goods available for sale | $ _____ | $ _____ | $ _____ | $ _____ |
| Deduct: Inventory at end of year (Including raw material and stock in process, but not finished stock, for manufacturing risks) | - _____ | - _____ | - _____ | - _____ |
| Costs of Goods Sold (Enter this figure in Item **I.** on previous page | $ _____ | $ _____ | $ _____ | $ _____ |

**CP 15 15 06 95**  Copyright, Insurance Services Office, Inc., 1994

**CALCULATION OF SPECIAL
DEDUCTIONS - MINING PROPERTIES**

Royalties, unless specifically
included in coverage                              $ _____        $ _____

Actual depletion, commonly known
as unit or cost depletion (not
percentage depletion)                            + _____        + _____

Welfare and retirement fund
charges based on tonnage                        + _____        + _____

Hired trucks                                           + _____        + _____

Enter this figure in Item I. on
previous page                                        $ _____        $ _____

**CP 15 15 06 95** Copyright, Insurance Services Office, Inc., 1994                **Page 5 of 5**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

Policy Number  ████████████████

This endorsement modifies insurance provided under the following:

### COMMERCIAL INLAND MARINE COVERAGE PART
### COMMERCIAL PROPERTY COVERAGE PART
### FARM COVERAGE PART

**SCHEDULE**

| Loc. Number | Bldg. Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | P-1 |

**Describe any "P-9":**

**A.** The following is added to the:

**Commercial Property Conditions**
**Farm Property Coverage Form, General Conditions**
**Commercial Inland Marine Conditions**

**PROTECTIVE SAFEGUARDS**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the **SCHEDULE** of this endorsement.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

   **"P-1"  Automatic Sprinkler System,** including related supervisory services.

   Automatic Sprinkler System means:

   **a.** Any automatic fire protective or extinguishing system, including connected:

      **(1)** Sprinklers and discharge nozzles;

      **(2)** Ducts, pipes, valves and fittings;

      **(3)** Tanks, their component parts and supports; and

      **(4)** Pumps and private fire protection mains.

   **b.** When supplied from an automatic fire protective system:

      **(1)** Non-automatic fire protective systems; and

      **(2)** Hydrants, standpipes and outlets.

   **"P-2"  Automatic Fire Alarm,** protecting the entire building, that is:

   **a.** Connected to a central station; or

   **b.** Reporting to a public or private fire alarm station.

   **"P-3"  Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the "premises" are not in actual operation.

   **"P-4"  Service Contract** with a privately owned fire department providing fire protection service to the "premises".

   **"P-5"  Automatic Commercial Cooking Exhaust and Extinguishing System** installed on cooking appliances and having the following components:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**IA 460 01 16**                                                                 **Page 1 of 2**

a.   Hood;

b.   Grease removal device;

c.   Duct system; and

d.   Wet chemical fire extinguishing equipment.

**"P-9"**   The protective system described in the **SCHEDULE** of this endorsement.

B.   The following is added to the **EXCLUSIONS** section of any Coverage Form within the Commercial Property, Farm or Commercial Inland Marine Coverage Part:

**Failure to Maintain Protective Safeguards**

We will not pay for "loss" caused by or resulting from fire, if prior to the fire, you:

1)   Knew of any suspension or impairment in any protective safeguard listed in the **SCHEDULE** of this endorsement and failed to notify us of that fact; or

2)   Failed to maintain in complete working order any protective safeguard listed in the **SCHEDULE** of this endorsement over which you had control.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you restore full protection within 48 hours.

Date _____

Signature of Insured _____

GREGORY & APPEL, INC. 13-295
INDIANAPOLIS, IN

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# NOTICE TO POLICYHOLDERS
## DIRECT BILL ACCOUNT CREDIT PROCEDURE

This is a notice of how an account credit will be applied to your policy or to all of the policies being billed as single account.

**Account Credits**

A.  If your account is comprised of **a single policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied to that policy. If your account does not have a future installment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account. If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

B.  If your account is comprised of **more than one policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied in the following manner:

- Payments previously applied to your account are deferred.

- The credit that results from the endorsement or audit is applied to the policy generating the credit.

- The payments that were deferred are then reapplied to the account in order to satisfy the amount due.

- Any excess payment that results from the credit is applied proportionately to your policies with a future payment or installment due.

- If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

- If your account does not have a future installment or payment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account.

(Does not apply to audit return premium for payors located in New York; Does not apply to premiums due more than 30 days from the date of processing for payors located in New Hampshire. These credits are automatically refunded to the payor)

To request a refund, contact us at:

| Mailing Address | Toll free phone number | Electronic mail |
|---|---|---|
| The Cincinnati Insurance Company<br>PO Box 14529<br>Cincinnati, OH 45250-0529 | 877-942-2455 | CinciBill@cinfin.com |

**IA 4407 03 13**

# DISCLOSURE OF DIRECT BILL FEES AND CHARGES

NO COVERAGE IS PROVIDED BY THIS DISCLOSURE, nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages provided.

Your insurance premium is being paid directly to us rather than to your insurance agency. We appreciate your prompt payment of the premium. Please note that these fees apply only in the event your payment is late, is returned to us for insufficient funds, or if your policy was previously canceled for nonpayment of premium and has been reinstated at either your or your agents request. We are not required to reinstate a policy once cancellation for nonpayment of premium has become effective. The decision to reinstate coverage is solely at the discretion of the company.

Not all fees are applicable in all states. The types of fees are listed below.  Following the description of each fee, we list the states where the fee applies and the amount of the fee.  Fees are not levied in KY, MD, MT and NC.

**Non-Sufficient Funds (NSF) Charge:** The first time a premium payment is returned due to Non-Sufficient Funds (NSF), the premium due is the installment amount. For each succeeding return of payment while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, NJ, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI, WV and WY.

**Reinstatement Charge:** The first time your account is reinstated for nonpayment of premium, the premium due is the installment amount. For each succeeding reinstatement due to nonpayment of premium while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA and WY.

**Late Charge:** A charge is added to your next account statement each time your payment is received and processed after the due date as shown on the account statement. This fee will not apply to Electronic Funds Transfer (EFT). The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, RI, and SC;

$15 MA; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI and WY.

IA 4421 03 13

# THE
# CINCINNATI INSURANCE COMPANIES

☐ THE CINCINNATI INSURANCE COMPANY  ☒ THE CINCINNATI INDEMNITY COMPANY
☐ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**  RAYMOND STREET PARTNERS LLC

**Policy Number:**  ████████ / █████████

**Policy Period:**  12-20-2017 to 12-20-2020

**Effective Date of Change:**  12-20-2019

**Endorsement Number:**  5

**Agency Name:**  GREGORY & APPEL, INC. 13-295
INDIANAPOLIS, IN

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies.  Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $**  381
This premium  is for the time period of  12-20-2019  to  12-20-2020. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
GREGORY & APPEL, INC.
1402 N CAPITOL AVE STE 400
INDIANAPOLIS, IN 46202-2375

317-634-7491

### This is not a bill. No payment is necessary at this time.

**IA 4319 08 07**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| Auto / Garage Policy Number | All Other Policy Number | Effective Date of Endorsement | 12-20-2019 |
|---|---|---|---|

Issued to  RAYMOND STREET PARTNERS LLC

Agent GREGORY & APPEL, INC. 13-295

INDIANAPOLIS, IN

Endorsement #  5

## PREMIUM INFORMATION

Additional Premium Due at Endorsement Effective Date REFER TO IA4319 _____

Subsequent Quarterly Installments Increased by       $ _____

Revised Quarterly Installment Payment(s)             $ _____

**It is agreed that the policy is amended as indicated by** ☒

☐ **Policy Installment Premium Amended to:**
  ☐ Annual   ☐ Semi-Annual   ☐ Quarterly

☐ **Named Insured**

☐ **Mailing Address**

☐ **Form(s) Added**

☐ **Form(s) Deleted**

## All Other Reason for Change

AMENDING ALL ITEMS ON FMD502 PER REVISED ATTACHED
BLANKET BUILDING TO 5,542,659

## Auto / Garage Reason for Change

10-11-2019 15:46

IA 4329 12 09

Page  1 of  1

# THE **CINCINNATI INDEMNITY COMPANY**

### A Stock Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.** **(address)**
PER STATEMENT OF VALUES ON FILE
REFER TO IA904

| | | | | | OPTIONAL COVERAGES<br>Applicable only when an entry is made |
|---|---|---|---|---|---|

| | COVERAGE PROVIDED | | | | | | | | Business<br>Income<br>Indemnity | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Item | Coverage | Limits | Coin-<br>surance | Covered<br>Cause Of<br>Loss | Inflation<br>Guard<br>(%) | Replace-<br>ment Cost<br>(x) | Replace-<br>ment Cost<br>Incl. Stock<br>(x) | Agreed<br>Value<br>(x) | Monthly<br>Limit<br>(fraction) | Maximum<br>Period<br>(X) | Extended<br>Period<br>(Days) |
| | BLANKET BUILDING | 5,542,659 | 100% | SPECIAL | 4% | X | | X | | | |
| | BLANKET BUSINESS<br>INCOME W/EXTRA<br>EXPENSE (c) | 185,000 | 100% | SPECIAL | | | | X | | | |
| 1-2 | CONCRETE<br>CONSTRUCTION<br>EQUIPMENT IN THE<br>OPEN - BARRIERS | 5,000 | 80% | SPECIAL | | X | | | | | |
| 1-3 | FENCES AND ARBORS | 11,000 | 80% | SPECIAL | | X | | | | | |

DEDUCTIBLE: $500.00 unless otherwise stated $   SEE FA475

| MORTGAGE HOLDER | |
|---|---|
| Item | Name and Address |

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| CP1515 | 06/95 | BUSINESS INCOME REPORT/WORK SHEET |
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| FA4052 | 04/06 | CINCIPLUS™ COMMERCIAL PROPERTY EXPANDED COVERAGE (XC™) ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA475 | 04/04 | MULTIPLE DEDUCTIBLE FORM |
| FA499IN | 04/04 | INDIANA CHANGES - RIGHTS OF RECOVERY |
| FA237 | 05/16 | CINCIPLUS® COMMERCIAL PROPERTY XC® (EXPANDED COVERAGE) ENDORSEMENT |
| FA213 | 05/16 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |

FMD502 07 08

# THE
# CINCINNATI INSURANCE COMPANIES

☐ THE CINCINNATI INSURANCE COMPANY   ☒ THE CINCINNATI INDEMNITY COMPANY
☐ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**   RAYMOND STREET PARTNERS LLC

**Policy Number:**   ██████████ / ██████████

**Policy Period:**   12-20-2017 to 12-20-2020

**Effective Date of Change:**   12-20-2019

**Endorsement Number:**   4

**Agency Name:**   GREGORY & APPEL, INC. 13-295
INDIANAPOLIS, IN

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies. Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $   51**
This premium   is for the time period of   12-20-2019   to   12-20-2020. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
GREGORY & APPEL, INC.
1402 N CAPITOL AVE STE 400
INDIANAPOLIS, IN 46202-2375

317-634-7491

### This is not a bill. No payment is necessary at this time.

**IA 4319 08 07**

# THE CINCINNATI INDEMNITY COMPANY

P.O. BOX 145496, CINCINNATI, OHIO 45250-5496

513-870-2000

A STOCK INSURANCE COMPANY

## AUTOMOBILE / GARAGE
## RENEWAL CERTIFICATE

### ATTACH THIS CERTIFICATE TO YOUR POLICY

| POLICY NUMBER | RENEWAL DATE 12-20-2019 | EXPIRATION DATE 12-20-2020 |
|---|---|---|

NAMED INSURED
RAYMOND STREET PARTNERS LLC
3603 E RAYMOND ST
INDIANAPOLIS, IN 46203-4762

AGENCY
GREGORY & APPEL, INC. 13-295
INDIANAPOLIS, IN

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY UNLESS OTHERWISE SPECIFIED, THE ABOVE NUMBERED POLICY IS RENEWED FOR THE TERM SHOWN ABOVE.

### COVERAGE PROVIDED

| | |
|---|---|
| AUTOMOBILE - SEE SCHEDULE | PREMIUM $ REFER TO IA102A |

FORMS APPLICABLE AT RENEWAL
IAD509    01/12  COMMON POLICY DECLARATIONS
IA102A    09/08  SUMMARY OF PREMIUMS CHARGED
AAD505    03/06  BUSINESS AUTO COVERAGE PART DECLARATIONS

10-03-2019 14:00

Countersigned _____ By _____
                        (Date)                                    (Authorized Representative)

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

AAD602 05 09                                                       Page  1 of  2

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Electronically Filed 01/09/2023 08:39 / SCV-23-976500 / Confirmation Nbr. 2743854 / CLJSZ
IL 00 17 11 98                    Copyright, Insurance Services Office, Inc., 1998                    Page  2 of  2

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER: ▆▆▆▆▆▆ / ▆▆▆▆▆▆▆▆▆        Effective Date: 12-20-2019

Named Insured: RAYMOND STREET PARTNERS LLC

## THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | | |
|---|---|---|
| Commercial Property Coverage Part | $ | 10,147 |
| Commercial General Liability Coverage Part | $ | 6,602 |
| Commercial Auto Coverage Part | $ | 187 |
| Commercial Umbrella / Excess Liability Coverage Part | $ | 1,380 |
| DATA DEFENDER COVERAGE PART | $ | 143 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| Terrorism Coverage | $ | 154 |
| Installment Charge | $ | |
| ANNUAL TOTAL | $ | 18,613 |

**PAYMENTS**

| | First Installment | Remaining Installment(s) |
|---|---|---|
| QUARTERLY | * | * |

*SEE BILLING STATEMENT MAILED SEPARATELY

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

IA 102 A 09 08

# THE CINCINNATI INDEMNITY COMPANY
## CINCINNATI, OHIO
### BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**
Attached to and forming part of POLICY NUMBER: ████████████
Named Insured is the same as it appears in the Common Policy Declarations.

**ITEM TWO**      **SCHEDULE OF COVERAGES AND COVERED AUTOS**
This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 8, 9 | $1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | Separately stated in each P.I.P. endorsement minus $          Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | Separately stated in each added P.I.P. endorsement | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P.I. endorsement minus $          Ded. for each accident | |
| AUTO. MEDICAL PAYMENTS | | $ | |
| UNINSURED MOTORISTS | 8, 9 | $ 1,000,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 8, 9 | $ SEE AA4183 | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $ Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $          Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $ Ded for each covered auto. See Item Three for hired or borrowed "autos". | |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $          for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

| | | |
|---|---|---|
| AA4183 | 02/06 | AUTOMOBILE SCHEDULE |
| AA101 | 03/06 | BUSINESS AUTO COVERAGE FORM |
| AA2009 | 01/17 | CHANGES - TOWING AND LABOR |
| AA296 | 07/12 | CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE |
| AA327IN | 02/14 | INDIANA AMENDATORY EXCLUSION - LIABILITY ARISING FROM STATUTE OR REGULATION |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AAD505 03 06**          ████████          **Page 1 of 3**

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

```
AA4078IN   12/15  INDIANA UNDERINSURED MOTORIST COVERAGE
AA4170IN   12/15  INDIANA - UNINSURED AND UNDERINSURED MOTORIST PROTECTION
                  SELECTION/REJECTION FORM
AA4263     04/10  OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT
AA484IN    12/15  INDIANA UNINSURED MOTORIST COVERAGE
CA0119     07/09  INDIANA CHANGES
```

* This policy may be subject to final audit

Electronically Filed 01/09/2023 08:39 / INFORMATION / 49D05-2104-CT-012054 / CLJSZ
Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
AAD505 03 06                                                          Page  2 of 3

# QUICK REFERENCE
# COMMERCIAL AUTO COVERAGE PART
# BUSINESS AUTO COVERAGE FORM
### READ YOUR POLICY CAREFULLY

## DECLARATIONS PAGES

Named Insured and Mailing Address
Policy Period
Description of Business
Coverages and Limits of Insurance

## SECTION I - COVERED AUTOS                                     Beginning on Page

Description of Covered Auto Designation Symbols....................................................1
Owned Autos You Acquire After the Policy Begins ...................................................1
Certain Trailers, Mobile Equipment and
Temporary Substitute Autos.......................................................................................2

## SECTION II - LIABILITY COVERAGE

Coverage....................................................................................................................2
Who is an Insured .....................................................................................................2
Coverage Extensions
    Supplementary Payments ......................................................................................2
    Out of State.............................................................................................................3
Exclusions .................................................................................................................3
Limit of Insurance .....................................................................................................5

## SECTION III - PHYSICAL DAMAGE COVERAGE

Coverage....................................................................................................................7
Exclusions .................................................................................................................7
Limit of Insurance .....................................................................................................8
Deductible..................................................................................................................8

## SECTION IV - BUSINESS AUTO CONDITIONS

Loss Conditions
    Appraisal for Physical Damage Loss .....................................................................9
    Duties in the Event of Accident, Claim, Suit or Loss..............................................9
    Legal Action Against Us .........................................................................................9
    Loss Payment - Physical Damage Coverages........................................................9
    Transfer of Rights of Recovery Against Others to Us...........................................10
General Conditions
    Bankruptcy ...........................................................................................................10
    Concealment, Misrepresentation or Fraud...........................................................10
    Liberalization ........................................................................................................10
    No Benefit to Bailee - Physical Damage Coverages.............................................10
    Other Insurance ...................................................................................................10
    Premium Audit......................................................................................................10
    Policy Period, Coverage Territory .........................................................................10
    Two or More Coverage Forms or Policies Issued by Us........................................11

## SECTION V - DEFINITIONS                                            11

## COMMON POLICY CONDITIONS

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

## ENDORSEMENTS (If Any)

Electronically Filed 01/09/2023 08:39 / Includes copyrighted material of Insurance

AAD505 03 06                    Services Office, Inc., with its permission.                    Page  3  of  3

# AUTOMOBILE SCHEDULE

## ITEM   THREE

Attached to and forming a part of Policy Number ███████████ , effective  12-20-2019

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

### POLICY LIMITS
State: IN

| | | | |
|---|---|---|---|
| Bodily Injury: | 1,000,000 CSL | Property Damage: | INCLUDED |
| UM/UIM: | 1,000,000 | UMPD | INCLUDED |
| UMPD DED: | NONE | | |
| | | (*UMPD APPLIES) | |

| Veh. No. | Vehicle Information | | |
|---|---|---|---|
| | HIRED AND NON-OWNED | Class: | Territory |
| | OTC-COMP DED: N/A | Coll Ded: N/A | |

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 179 | INCL | N/A | | | 8 | 187 |

SYMBOLS:

| | | | |
|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils |
| PD | -- Property Damage | COLL | -- Collision |
| MP | -- Medical Payments | UM | -- Uninsured Motorists |
| OTC | -- Other Than Collision (ACV Coverage applies unless Stated Amount Value is indicated) | UIM | -- Underinsured Motorists |
| | | PIP | -- Personal Injury Protection |
| CAC | -- Combined Additional Coverage | T&L | -- Towing and Labor Costs |
| FT&S | -- Fire, Theft, and Supplemental | RR | -- Rental Reimbursement |
| UMPD | -- Uninsured Motorists PD | | |

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer **to SECTION V - DEFINITIONS**.

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**

| SYMBOL | DESCRIPTION |
|---|---|
| **1 =** | ANY "AUTO". |
| **2 =** | OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3 =** | OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4 =** | OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5 =** | OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| **6 =** | OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where |

they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

| | |
|---|---|
| **7 =** | SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE). |
| **8 =** | HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9 =** | NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

**B. Owned Autos You Acquire After the Policy Begins**

**1.** If Symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

**2.** But, if Symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

**a.** We already cover all "autos" that you own for that coverage or it replaces

Electronically Filed 01/09/2023 08:39 / / CV 23 973599 / Confirmation Nbr. 2742854 / CLJSZ

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AA 101 03 06                                                                 Page 1 of 14

an "auto" you previously owned that had that coverage; and

**b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** "Loss"; or

**e.** Destruction.

# SECTION II - LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who is an Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

quired because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the "insured" or which is in fact expected or intended by the "insured", even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" sustained in the "workplace";

**b.** An "employee" of the "insured" arising out of the performance of duties related to the conduct of the "insured's" business; or

**c.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** or **b.** above.

This Exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 101 03 06**         **Page 3 of 14**

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract" other than a contract or agreement with a labor leasing firm. For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement of Property by Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollutant**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 101 03 06**

Page 4 of 14

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

However, this exception to Paragraph **a.** does not apply if the fuels, lubricants, fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed or released.

Paragraphs **b.** and **c.** of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**d.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(1) If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

(2) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Subparagraph **d.(1)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This

Electronically Filed 01/09/2023 08:39 / / CV 23-975599 / Confirmation Nbr. 2742954 / CL JSZ

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 101 03 06**                                                                    **Page 5 of 14**

insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

### C. Limit of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

### D. Mobile Equipment Subject to Motor Vehicle Insurance Laws

As respects **SECTION II - LIABILITY COVERAGE** any land vehicle, which would qualify as "mobile equipment", except that it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged, is considered a covered "auto" under **SECTION II - LIABILITY COVERAGE,** irrespective of the Auto Designation Symbols shown for **SECTION II - LIABILITY COVERAGE** in the Declarations.

## SECTION III - PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage**

      From any cause except:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

   b. **Specified Causes of Loss Coverage**

      Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage**

      Caused by:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

      We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"auto" is returned to use or we pay for its "loss".

**b. Loss of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown; or

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal for Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

Electronically Filed 01/09/2023 08:39 / CV-23 973509 / Confirmation Nbr. 2742954 / CLJSZ

**AA 101 03 06**     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     **Page 8 of 14**

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Cov-

erage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**4. No Benefit to Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 101 03 06**                                                    **Page 9 of 14**

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the Policy Period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America;

**b.** The territories and possessions of the United States of America;

**c.** Puerto Rico;

**d.** Canada; and

**e.** Anywhere in the world if:

**(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## SECTION V - DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

   **1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

   **2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

   **1.** Any request, demand, order or statutory or regulatory requirement that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   **2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

   **a.** That are, or that are contained in any property that is:

      **(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

      **(2)** Otherwise in the course of transit by or on behalf of the "insured";

      **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto"; or

   **b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place

where they are accepted by the "insured" for movement into or onto the covered "auto"; or

   **c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

      **(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

      **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

      **(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

      **(2)** The discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract":

**1.** Means:

**a.** A lease of premises;

**b.** A sidetrack agreement;

**c.** An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**f.** That part of any other contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

**2.** Does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** Power cranes, shovels, loaders, diggers or drills; or

**b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and their by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**1.** The "insured" is regularly or otherwise engaged in activities which taint or degrade the environment; or

**2.** The "insured" uses, generates or produces the "pollutant".

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

**Q.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of the "accident".

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazard-

ous properties" of "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been

used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 101 03 06**                                                                                     **Page 14 of 14**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - TOWING AND LABOR

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 2. Towing** is deleted in its entirety and replaced with:

   2. **Towing**

      We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" is disabled. However, the labor must be performed at the place of disablement.

**AA 2009 01 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 4.** is deleted in its entirety and replaced with:

   4. We will not pay for "loss" to any of the following:

      a. Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

      b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

      c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

      d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

      Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

      a. Permanently installed in or upon the covered "auto";

      b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

      c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

      d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

2. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limits of Insurance, 1.** is deleted in its entirety and replaced with:

   1. The most we will pay for:

      a. "Loss" to any covered "auto" is the lesser of;

         (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

         (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind or quality.

      b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss", is up to $1,000, if, at the time of "loss", such electronic equipment is:

         (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

         (2) Removable from a permanently installed housing unit as described in Paragraph **b.1.** above; or

         (3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

3. **AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE ADDED LIMITS**

   The sub-limit in Paragraph **1.b.** above is in addition to the Limit of Insurance shown in the Schedule of the Audio, Visual and Data Equipment Coverage endorsement, if purchased.

**AA 296 07 12**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA AMENDATORY
# EXCLUSION - LIABILITY ARISING FROM STATUTE
# OR REGULATION

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE PART**
**GARAGE COVERAGE PART**

### SCHEDULE

**Description of Statute:**

Clean Air Act (CAA): 42 U.S.C. §7401 *et seq.*; Clean Water Act (CWA): 33 U.S.C. §1251 *et seq.*; Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA or Superfund): 42 U.S.C. §9601 *et seq.*; Emergency Planning and Community Right to Know Act of 1986 (EPCRA): 42 U.S.C. §11004 *et seq.*; Federal Insecticide, Fungicide and Rodenticide Act (FIFRA): 7 U.S.C. §136 *et seq.*; Marine Protection, Research and Sanctuaries Act of 1972 (MPRAS): 33 U.S.C. §1401-1445; 16 U.S.C. §1431-1445; Oil Pollution Act of 1990 (OPA): 33 U.S.C. §2701 *et seq.*; Resource Conservation and Recovery Act (RCRA): 42 U.S.C. §6901 *et seq.*; Rivers and Harbors Act of 1899: 33 U.S.C. §407 *et seq.*; Safe Drinking Water Act (SDWA): 42 U.S.C. §300f *et seq.*; Surface Mining Control and Reclamation Act of 1977 (SMCRA): 30 U.S.C. §1234-1328; Toxic Substances Control Act of 1976 (TSCA): 15 U.S.C. § 2601-2695; Pollution Prevention Act (PPA): 42 U.S.C. §13101 *et seq.*; Indiana code, Title 13. Environmental (including but not limited the following sections): Enforcement and Legal Actions: I.C. §13-30 *et seq.*; Environmental Legal Action Statute (ELA): I.C. §13-30-9 et seq.; Environmental Management; I.C. §13-13 *et seq.*; Air Pollution: I.C. §13-17 *et seq.*; Water Pollution: I.C. §13-18 *et seq.*; Solid Waste Management: I.C. §13-20 *et seq.*; Electronic Waste: I.C. §13-20.5 *et seq.*; Hazardous Waste Management: I.C. §13-22 *et seq.*; Underground Storage Tank: I.C. §13-23 *et seq.*; Petroleum: I.C. §13-24 *et seq.*; Hazard Substances: I.C. §13-25 *et seq.*; and Industrial Pollution: I.C. §13-27 *et seq.*

The following is added to **SECTION II - LIABILITY COVERAGE, B. Exclusions:**

This insurance does not apply to liability arising out of one or more of the statutes shown in the Schedule, as amended, or any regulation authorized by or implementing the statutes.

**AA 327 IN 02 14**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA UNDERINSURED MOTORIST COVERAGE

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as the Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Indiana, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below:

| Endorsement Effective: 12-20-2019 | Policy Number: ███████████ |
|---|---|
| Named Insured: RAYMOND STREET PARTNERS LLC | |

## SCHEDULE

| "Bodily Injury" | $ SEE AA4183 | Each "Accident" |
|---|---|---|

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "underinsured motor vehicle". The damage must result from "bodily injury" sustained by the "insured" and caused by an "accident" with an "underinsured motor vehicle".

   The owner's or operator's liability for this damage must result from the ownership, maintenance or use of the "underinsured motor vehicle".

2. We will pay under this endorsement only if **a.** or **b.** below applies:

   **a.** The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   **b.** Tentative settlement has been made between an "insured" and the insurer of an "underinsured motor vehicle" which would exhaust the limits of liability under any applicable bond or policy, and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after the receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

## B. Who is an Insured

The following are "insureds":

1. If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

   **a.** Natural persons specially listed as a Named Insured on this endorsement.

   **b.** "Family members" of natural persons specifically listed as a Named Insured on this endorsement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AA 4078 IN 12 15 ・ Page 1 of 5

c.  Any natural person, but only for injuries that occur while "occupying" a covered "auto" or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

d.  Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a.**, **b.** or **c.**

e.  Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when the person is an "insured" for Liability under the Coverage Form.

2.  If an entity other than a natural person is listed as a Named Insured on this endorsement, the following persons are "insureds":

a.  Any natural person, but only for injuries that occur while "occupying" a covered "auto" or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b.  Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

c.  Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when the person is an "insured" for Liability under the Coverage Form.

3.  Employees of the Named Insured, but only for injuries arising out of and incurred while in the course and scope of employment for the Named Insured shown in the endorsement.

4.  Anyone for injuries incurred while "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

5.  Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C.  Exclusions

This insurance does not apply to:

1.  Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

2.  The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits, or similar laws.

3.  The direct or indirect benefit of any insurer of property.

4.  "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

5.  "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without a reasonable belief that he or she is entitled to do so. Under no circumstances will a person whose license has been suspended, revoked or never issued be held to have a reasonable belief that he or she is entitled to operate a "motor vehicle".

6.  Punitive or exemplary damages.

7.  "Noneconomic loss" sustained by any "insured" if such "insured" is an uninsured motorist with a previous violation as defined in Indiana Code Section 27-7-5.1.

    However, Exclusion **C.7.** does not apply to an "insured" under 18 years of age.

## D.  Limit of Insurance

1.  Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages, including damages claimed by any person or organization for care, loss of services, or death due to and arising out of any one "accident" is the limit of **Underinsured Motorist Coverage** shown in the Schedule or the Declarations.

2.  The limit of insurance provided in this endorsement shall be reduced by all sums available for payment to the "insured" for "bodily injury" under all liability bonds or polices covering persons or organizations legally liable for the "accident".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 4078 IN 12 15**

3.  No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form or Medical Payments Coverage endorsement attached to this Coverage Form.

We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits, or similar laws, including medical payments made under any statute.

4.  No "insured" shall recover duplicate payments for the same elements of "loss" or payments in excess of damages sustained.

E.  **Changes in Conditions**

The **Conditions** for **Indiana Underinsured Motorist Coverage** are changed as follows:

1.  **Other Insurance Condition** in the Business Auto and Garage Coverage Forms is changed as follows:

If there is other applicable insurance available under one or more policies or provisions of coverage, the following priorities of coverage apply:

| FIRST PRIORITY | The Underinsured Motorist Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
|---|---|
| SECOND PRIORITY | Any other Coverage Form or policy affording Underinsured Motorist Coverage to the "insured". |

a.  The limit of insurance under the "motor vehicle" the "insured" was "occupying" under the Coverage Form or policy in the first priority shall first be exhausted.

b.  The maximum recovery for damages under all Coverage Forms or policies may equal but shall not exceed the highest applicable limit of any one "motor vehicle" under any insurance providing coverage on either a first or second priority basis.

c.  We will pay only our share of the "loss". Our share is the proportion that our limit of liability bears to the total of all limits applicable to the same level of priority.

2.  **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

a.  You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought;

b.  You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the accident and all insurers who may be obligated to provide coverage; and

c.  A person seeking Underinsured Motorist Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle", and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the person(s) or organization(s) who may be legally responsible for the "accident", or the insurer, owner or operator of such "underinsured motor vehicle".

3.  **Transfer of Rights of Recovery Against Others To Us** is changed by adding the following:

a.  If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

b.  Our rights do not apply under this provision if we:

(1)  Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of the "underinsured motor vehicle"; and

(2)  Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of such notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after notification:

(a)  That payment will be separate from any amount the "insured" is entitled to recover under the provisions of this coverage; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(b)** We also have the right to recover the advance payment from the insured or the owner or operator of the "underinsured motor vehicle".

**c.** If we make a payment because the insurer of the "underinsured motor vehicle" is or becomes insolvent, the **Transfer of Rights of Recovery Against Others To Us** Condition does not apply to any rights of recovery against:

**(1)** The Indiana Guaranty Fund; or

**(2)** The insured of the insolvent insurer, except in amounts that exceed the limit of liability of the Coverage Form or policy that was issued by that insolvent insurer.

**4. Legal Action Against Us**

No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Underinsured Motorist Coverage of this coverage form unless the "insured" has satisfied all of the things the "insured" is required to do under this endorsement. Any claim or suit for Underinsured Motorist Coverage must be brought within two (2) years from the date of the accident.

**5.** The following Condition is added:

**ARBITRATION**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or operator of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured" then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration proce-

dure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

**(1)** Whether the "insured" is legally entitled to recover damages from a party responsible for the "accident"; and

**(2)** The amount of damages.

This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Indiana. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made in 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

**F. Additional Definitions**

As used on this endorsement:

**1.** "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured in this endorsement. Such relation may be by blood, marriage or adoption, and may include a ward or foster child.

**2.** "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

**3.** "Noneconomic loss" means costs for physical and emotional pain and suffering, physical impairment, emotional distress, mental anguish, loss of enjoyment, loss of companionship, services and consortium, and any other noneconomic damages.

**4.** "Occupying" means in, upon, getting in, on, out or off.

**5.** "Underinsured motor vehicle" means a land "motor vehicle" or "trailer" for which the sum of all liability bonds or policies at

Electronically Filed 01/09/2023 08:39 /MREVIEW/Confirmation Nbr. 2742954 / CLJSZ
AA 4078 IN 12 15

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

Page 4 of 5

the time of an "accident" provides at least the amounts required by the financial responsibility law of Indiana but their limits are either:

**a.** Less than the Limit of Insurance available for payment to the "insured" under this endorsement; or

**b.** Reduced by payments to others injured in the "accident" to an amount which is less than the Limit of Insurance under this endorsement.

However, "underinsured motor vehicle" does not include any "motor vehicle":

**a.** Owned or operated by a self insurer under any applicable motor vehicle

law, except a self insurer who is or becomes insolvent and can not provide the amounts required by that motor vehicle law.

**b.** Owned by a governmental unit or agency.

**c.** Designed for use mainly off public roads while not on public roads.

**d.** Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

**e.** For which liability coverage is afforded under this Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 4078 IN 12 15**

# INDIANA - UNINSURED AND UNDERINSURED MOTORIST PROTECTION SELECTION/REJECTION FORM

Indiana law permits you to make certain decisions regarding Uninsured Motorist Coverage and Underinsured Motorist Coverage. This document briefly describes these coverages and the options available. You should read this document carefully and contact us or your agent if you have any questions regarding Uninsured Motorist Coverage or Underinsured Motorist Coverage and your options with respect to these coverages. This document includes general descriptions of coverage. However, no coverage is provided by this document. You should read your policy and review your Declarations Page(s) and/or Schedule(s) for complete information on the coverages you are provided.

In accordance with the Indiana law, automobile liability policies may make available Uninsured and Underinsured Motorist Coverage limits equal to the Bodily Injury Liability limits of the policy to which the coverage attaches and to Property Damage Liability equal to the financial responsibility limits for the state of Indiana. Uninsured Motorist Property Damage coverage is available only if you purchase Uninsured Motorist Bodily Injury coverage. You may, however, reject Bodily Injury Liability. A named insured has the right to reject Uninsured Motorist and Underinsured Motorist Coverage on behalf of all other named insureds, all other insureds, and all other persons entitled to coverage under the policy. A rejection of coverage applies to all subsequent policy renewals or replacements. If a named insured rejects Uninsured Motorist Coverage or Underinsured Motorist Coverage in the underlying policy, the rejection also applies to an umbrella or excess liability policy.

If you elect to purchase Uninsured Motorist Bodily Injury coverage, you also may choose to purchase Uninsured Motorist Property Damage coverage. You may also reject Uninsured Motorists Property Damage entirely. This is our offer to you of your Uninsured Motorist and Underinsured Motorist Coverage options.

Please indicate your choice by selecting one option in both Bodily Injury and Property Damage below.

## BODILY INJURY OPTIONS
### (Please select only one.)

_____ I hereby reject Uninsured Motorist Coverage and Underinsured Motorist Coverage.

_____ I hereby accept Uninsured Motorist Coverage for Bodily Injury at limits equal to my Bodily Injury Liability limits with Underinsured Motorists Coverage.

_____ I hereby accept Uninsured Motorist Coverage for Bodily Injury at limits equal to my Bodily Injury Liability limits without Underinsured Motorist Coverage.

## PROPERTY DAMAGE OPTIONS
### (Please select only one.)

_____ I hereby reject Uninsured Motorist Property Damage.

_____ I hereby accept Uninsured Motorist Property Damage at limits equal to my Property Damage Liability limit subject to a $300 deductible.**

_____ I hereby accept Uninsured Motorist Property Damage at limits equal to my Property Damage Liability not subject to a deductible.**

_____ I hereby accept Uninsured Motorist Property Damage at limits equal to the financial responsibility limit subject to a $300 deductible.**

_____ I hereby accept Uninsured Motorist Property Damage at limits equal to the financial responsibility limit not subject to a deductible.**

** This option is available only when Uninsured Motorist Bodily Injury Coverage is accepted.

I, the insured, understand that I and those who are to be protected under my policy would best be protected by my choosing to purchase Uninsured and Underinsured Motorist Coverage at limits equal to the Bodily Injury Liability limits provided in my policy. Nevertheless, I choose instead to purchase a more limited form of coverage, as specified above.

Attached to and forming a part of Policy Number ▆▆▆▆▆▆▆▆▆▆▆ and any subsequent policy renewals or replacements thereof.

Effective Date:  __12-20-2019__

Named Insured

Signature of Authorized Representative

Title

Printed Name of Authorized Representative

Title

Agent's Signature

GREGORY & APPEL, INC. 13-295
INDIANAPOLIS, IN

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC)
# COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** of the **BUSINESS AUTO COVERAGE FORM** and **SECTION V - GARAGE CONDITIONS, B. General Conditions** of the **GARAGE COVERAGE FORM** are amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**AA 4263 04 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA UNINSURED MOTORIST COVERAGE

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Indiana, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below.

| Endorsement Effective:  12-20-2019 | Policy Number: ▊▊▊▊▊▊▊▊▊ |
|---|---|
| Named Insured:  RAYMOND STREET PARTNERS LLC | |

### Schedule

| | | |
|---|---|---|
| Bodily Injury | $ | Each Accident |
| Bodily Injury and Property Damage | $ SEE AA4183 | Each Accident |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Section **C** - EXCLUSIONS applies in its entirety unless an "X" is entered below:

☒ If an "X" is entered in this box, Exclusion **8.** does not apply.

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "uninsured motor vehicle". The damages must result from:

   **a.** "Bodily injury" sustained by the "insured" and caused by an "accident" with an "uninsured motor vehicle"; or

   **b.** "Property damage" caused by an "accident" with an "uninsured motor vehicle" if the Schedule or the Declarations indicates that both "bodily injury" and "property damage" Uninsured Motorist Coverage apply.

   The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

## B. Who is an Insured

The following are "insureds":

1. If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

   **a.** Natural persons specifically listed as a Named Insured on this endorsement.

   **b.** "Family members" of natural persons specifically listed as a Named Insured on this endorsement.

   **c.** Any natural person, but only for injuries that occur while "occupying" a covered "auto" or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 484 IN 12 15**     

**d.** Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a.**, **b.** or **c.**

**e.** Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when the person is an "insured" for Liability under the Coverage Form.

**2.** If an entity other than a natural person is listed as a Named Insured on this endorsement, the following persons are "insureds":

**a.** Any natural person, but only for injuries that occur while "occupying" a covered "auto" or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**b.** Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

**c.** Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when the person is an "insured for Liability under the Coverage Form.

**3.** Employees of the Named Insured, but only for injuries arising out of and incurred while in the course and scope of employment for the Named Insured shown in the endorsement.

**4.** Anyone for injuries incurred while "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**5.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**6.** The Named Insured for "property damage" only.

## C. Exclusions

This insurance does not apply to:

**1.** Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits, or similar laws.

**3.** The direct or indirect benefit of any insurer of property.

**4.** "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

**5.** "Property damage" to an "auto" or to property contained in an "auto" owned by you which is not a covered "auto".

**6.** "Bodily injury" suffered by any "insured" while operating or "occupying" a "motor vehicle" without a reasonable belief they are entitled to do so. Under no circumstances will an "insured" whose license has been suspended, revoked or never issued be held to have a reasonable belief they are entitled to operate a "motor vehicle".

**7.** "Property damage" for which the "insured" has been or is entitled to be compensated by other property or physical damage insurance.

**8.** The first $300 of the amount of "property damage" to the property of each "insured" as the result of any one "accident". This exclusion does not apply if your covered "auto" is legally parked and unoccupied when involved in an "accident" with an "uninsured motor vehicle".

**9.** "Property damage" caused by a hit-and-run vehicle.

**10.** Punitive or exemplary damages.

**11.** "Noneconomic loss" sustained by any "insured" if such "insured" is an uninsured motorist with a previous violation as defined in Indiana code Section 27-7-5.1.

However, Exclusion **C.11.** does not apply to an "insured" under 18 years of age.

## D. Limit of Insurance

**1.** Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages, including damages claimed by any person or organization for care, loss of services, or death due to and arising out of any one "accident" is the limit of **Uninsured Mo-**

Electronically Filed 01/09/2023 08:39 A / CV-23-973509 / Confirmation Nbr. 2742954 / CLJSZ

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 484 IN 12 15**

**Page 2 of 5**

torist Coverage shown in the Schedule or the Declarations.

2. The limit of insurance provided in this endorsement shall be reduced by all sums available for payment to the "insured" for "bodily injury" under all liability bonds or polices covering person or organizations legally liable for the "accident".

3. Any amount payable for damages under this coverage shall be reduced by all sums paid or payable under any workers' compensation, personal injury protection benefits, disability benefits, pension statutes, or similar laws.

4. No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement or any Liability Coverage Form.

   We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits, or similar laws, including medical payments made under any statute.

5. We will not pay for a "loss" which is paid or payable under Physical Damage Coverage.

6. No "insured" shall recover duplicate payments for the same elements of "loss" or payments in excess of damages sustained.

## E. Changes in Conditions

The **Conditions** for **Indiana Uninsured Motorist Coverage** are changed as follows:

1. **Other Insurance Condition** in the Business Auto and Garage Coverage Forms changed as follows:

   If there is other applicable insurance available under one or more policies or provisions of coverage, the following priorities of coverage apply:

   | FIRST PRIORITY | The Uninsured Motorist Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
   |---|---|
   | SECOND PRIORITY | Any other Coverage Form or policy affording Uninsured Motorist Coverage to the "insured". |

   a. The Limit of Insurance for the "motor vehicle" the "insured" was "occupying" under the Coverage Form or policy in the first priority shall first be exhausted.

   b. The maximum recovery for damages under all Coverage Forms or policies may equal but shall not exceed the highest applicable limit for any one "motor vehicle" under any insurance providing coverage on either a first or second priority basis.

   c. We will pay only our share of the "loss". Our share is the proportion that our limit of insurance bears to the total of all limits applicable to the same level of priority.

2. **Transfer of Rights of Recovery Against Others to Us** is changed by adding the following:

   a. If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   b. If we make a payment because the insurer of the "uninsured motor vehicle" is or becomes insolvent, the **Transfer of Rights of Recovery Against Others to Us** Condition does not apply to any rights of recovery against:

      (1) The Indiana Guaranty Fund; or

      (2) The "insured" of the insolvent insurer, except in amounts that exceed the limit of liability of the Coverage Form or policy that was issued by that insolvent insurer.

3. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

   a. You or any other involved "insured" must promptly notify the police if a hit-and-run driver is involved;

   b. You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought; and

   c. You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of any claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the accident and all insurers who may be obligated to provide coverage.

4. **Legal Action Against Us**

   No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Uninsured Motorist Coverage of this Coverage Form unless the "insured" has satisfied all of the things that

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 484 IN 12 15** | | **Page 3 of 5**

"insured" is required to do under this endorsement. Any claim or suit for Uninsured Motorist Coverage must be brought within two (2) years from the date of the "accident".

**5.** The following Condition is added:

**ARBITRATION**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or operator of an "uninsured motor vehicle" or do not agree as to the amount of damages that is recoverable by that "insured" then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

**(1)** Whether the "insured" is legally entitled to recover damages; and

**(2)** The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Indiana. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## F.  Additional Definitions

As used on this endorsement:

**1.** "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured in this endorsement. Such relation may be by blood, marriage or adoption, and may include a ward or foster child.

**2.** "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails, or any similar vehicle.

**3.** "Noneconomic loss" means costs for physical and emotional pain and suffering, physical impairment, emotional distress, mental anguish, loss of enjoyment, loss of companionship, services and consortium, and any other noneconomic damages.

**4.** "Occupying" means in, upon, getting in, on, out or off.

**5.** "Property damage" means damage to a covered "auto" property owned by the Named Insured, if the Named Insured is an individual, a "family member" while contained in a covered "auto". However, "property damage" does not include loss of use of damaged or destroyed property. This definition replaces the definition in the Policy.

**6.** "Uninsured motor vehicle" means a land "motor vehicle" or "trailer":

**a.** For which no liability bond or policy applies at the time of an "accident" provides at least the amounts required by the financial responsibility law of Indiana;

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

**c.** Which is a hit-and-run "motor vehicle" and neither the operator nor owner can be identified. A hit and run vehicle is one that causes "bodily injury" to an "insured" by hitting the "insured", a covered "auto" or a "motor vehicle" an "insured" is "occupying".

We will only accept convincing evidence which may include the testimony, under oath, of a person making claim under this or similar coverage.

However, "uninsured motor vehicle" does not include any "motor vehicle":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 484 IN 12 15**                                                        **Page 4 of 5**

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

b. Owned by a governmental unit or agency.

c. Designed for use mainly off public roads while not on public roads.

d. Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

e. For which liability coverage is afforded under this Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

COMMERCIAL AUTO
CA 01 19 07 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES

For a covered "auto" licensed in, or "garage operations" conducted in, Indiana, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement or to any amendment to or replacement thereof, the provisions of the coverage form apply unless modified by the endorsement.

**Changes In Conditions**

A. Except as provided in Paragraph **B.** of this endorsement, **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms is changed by adding the following and supersedes any provision to the contrary:

   If there is other applicable insurance available under one or more policies or provisions of coverage, any insurance we provide for any covered "auto" owned by an "insured" is primary and shall first be exhausted.

B. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms is changed by adding the following:

   1. When two coverage forms providing liability coverage apply to an "auto" and:

      a. One provides coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing "autos"; and

      b. The other provides coverage to a person not engaged in that business; and

      c. At the time of an "accident" a person described in **1.b.** is operating an "auto" owned by the business described in **1.a.**, then that person's liability coverage is primary and the coverage form issued to a business described in **1.a.** is excess over any coverage available to that person.

   2. When two coverage forms providing liability coverage apply to an "auto" and:

      a. One provides coverage to a named insured engaged in the business of repairing, servicing, parking or storing "autos"; and

      b. The other provides coverage to a person not engaged in that business; and

      c. At the time of an "accident" an "insured" under the coverage form described in **2.a.** is operating an "auto" owned by a person described in **2.b.**, then the liability coverage form issued to the business described in **2.a.** is primary and the coverage form issued to a person described in **2.b.** is excess over any coverage available to the business.

**CA 01 19 07 09**                    © Insurance Services Office, Inc., 2009                    Page 1 of 1  ☐

# THE
# CINCINNATI INSURANCE COMPANIES

☐ THE CINCINNATI INSURANCE COMPANY   ☒ THE CINCINNATI INDEMNITY COMPANY
☐ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**   RAYMOND STREET PARTNERS LLC

**Policy Number:**   ▬▬▬▬▬▬ / ▬▬▬▬▬▬

**Policy Period:**   12-20-2017 to 12-20-2020

**Effective Date of Change:**   12-20-2018

**Endorsement Number:**   3

**Agency Name:**   GREGORY & APPEL, INC. 13-295
                   INDIANAPOLIS, IN

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies.   Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $   20**
This premium  is for the time period of  12-20-2018  to  12-20-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
GREGORY & APPEL, INC.
1402 N CAPITOL AVE STE 400
INDIANAPOLIS, IN 46202-6148

317-634-7491

### This is not a bill. No payment is necessary at this time.

**IA 4319 08 07**

# THE CINCINNATI INDEMNITY COMPANY

P.O. BOX 145496, CINCINNATI, OHIO 45250-5496
513-870-2000
A STOCK INSURANCE COMPANY

## AUTOMOBILE / GARAGE
## RENEWAL CERTIFICATE

### ATTACH THIS CERTIFICATE TO YOUR POLICY

| POLICY NUMBER | RENEWAL DATE<br>12-20-2018 | EXPIRATION DATE<br>12-20-2019 |
|---|---|---|

NAMED INSURED
RAYMOND STREET PARTNERS LLC
3603 E RAYMOND ST
INDIANAPOLIS, IN 46203-4762

AGENCY
GREGORY & APPEL, INC. 13-295
INDIANAPOLIS, IN

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY UNLESS OTHERWISE SPECIFIED,
THE ABOVE NUMBERED POLICY IS RENEWED FOR THE TERM SHOWN ABOVE.

### COVERAGE PROVIDED

| AUTOMOBILE - SEE SCHEDULE | PREMIUM<br>$ REFER TO IA102A |
|---|---|

FORMS APPLICABLE AT RENEWAL
IAD509    01/12  COMMON POLICY DECLARATIONS
IA102A    09/08  SUMMARY OF PREMIUMS CHARGED
AAD505    03/06  BUSINESS AUTO COVERAGE PART DECLARATIONS

10-04-2018 15:25

Countersigned _____    By _____
                         (Date)                              (Authorized Representative)

Electronically Filed 01/09/2023 08:39 / / CV 23 973509 / Confirmation Nbr. 2742854 / CL JSZ
AAD602 05 09                  Includes copyrighted material of Insurance
                              Services Office, Inc., with its permission.            Page  1 of  2

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Electronically Filed 01/09/2023 08:39 / SCV-23-976809 / Confirmation Nbr. 2743254 / CLJSZ

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER: ▮▮▮▮▮▮▮ / ▮▮▮▮▮▮▮        Effective Date: 12-20-2018

Named Insured: RAYMOND STREET PARTNERS LLC

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part | $ 10,147 |
| Commercial General Liability Coverage Part | $ 6,602 |
| Commercial Auto Coverage Part | $ 136 |
| Commercial Umbrella / Excess Liability Coverage Part | $ 1,380 |
| DATA DEFENDER COVERAGE PART | $ 143 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Terrorism Coverage | $ 154 |
| Installment Charge | $ |
| **ANNUAL TOTAL** | $ 18,562 |

**PAYMENTS**

|  | First Installment | Remaining Installment(s) |
|---|---|---|
| QUARTERLY | * | * |

*SEE BILLING STATEMENT MAILED SEPARATELY

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 102 A 09 08

# THE CINCINNATI INDEMNITY COMPANY
## CINCINNATI, OHIO
## BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**
Attached to and forming part of POLICY NUMBER: ▮▮▮▮▮▮▮▮▮
Named Insured is the same as it appears in the Common Policy Declarations.

**ITEM TWO**          **SCHEDULE OF COVERAGES AND COVERED AUTOS**
This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 8, 9 | $1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | Separately stated in each P.I.P. endorsement minus $      Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | Separately stated in each added P.I.P. endorsement | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P.I. endorsement minus $      Ded. for each accident | |
| AUTO. MEDICAL PAYMENTS | | $ | |
| UNINSURED MOTORISTS | 8, 9 | $ 1,000,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 8, 9 | $ SEE AA4183 | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $ Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $      Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $ Ded for each covered auto. See Item Three for hired or borrowed "autos". | |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $      for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

| AA4183 | 02/06 | AUTOMOBILE SCHEDULE |
|---|---|---|
| AA101 | 03/06 | BUSINESS AUTO COVERAGE FORM |
| AA2009 | 01/17 | CHANGES - TOWING AND LABOR |
| AA296 | 07/12 | CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE |
| AA327IN | 02/14 | INDIANA AMENDATORY EXCLUSION - LIABILITY ARISING FROM STATUTE OR REGULATION |

Includes copyrighted material of Insurance
Services Office, Inc., with its permission. ▮▮▮▮▮▮

**AAD505 03 06**                                                    **Page  1 of 3**

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

```
AA4078IN   12/15  INDIANA UNDERINSURED MOTORIST COVERAGE
AA4170IN   12/15  INDIANA - UNINSURED AND UNDERINSURED MOTORIST PROTECTION
                  SELECTION/REJECTION FORM
AA4263     04/10  OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT
AA484IN    12/15  INDIANA UNINSURED MOTORIST COVERAGE
CA0119     07/09  INDIANA CHANGES
```

---

* This policy may be subject to final audit

Services Office, Inc., with its permission.
AAD505 03 06

# QUICK REFERENCE
## COMMERCIAL AUTO COVERAGE PART
## BUSINESS AUTO COVERAGE FORM
### READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGES**

    Named Insured and Mailing Address
    Policy Period
    Description of Business
    Coverages and Limits of Insurance

**SECTION I - COVERED AUTOS**                                **Beginning on Page**

    Description of Covered Auto Designation Symbols ................................................................ 1
    Owned Autos You Acquire After the Policy Begins ................................................................ 1
    Certain Trailers, Mobile Equipment and
    Temporary Substitute Autos ................................................................................................ 2

**SECTION II - LIABILITY COVERAGE**

    Coverage ............................................................................................................................. 2
    Who is an Insured ............................................................................................................... 2
    Coverage Extensions
        Supplementary Payments ............................................................................................. 2
        Out of State ................................................................................................................. 3
    Exclusions ........................................................................................................................... 3
    Limit of Insurance ............................................................................................................... 5

**SECTION III - PHYSICAL DAMAGE COVERAGE**

    Coverage ............................................................................................................................. 7
    Exclusions ........................................................................................................................... 7
    Limit of Insurance ............................................................................................................... 8
    Deductible ........................................................................................................................... 8

**SECTION IV - BUSINESS AUTO CONDITIONS**

    Loss Conditions
        Appraisal for Physical Damage Loss .......................................................................... 9
        Duties in the Event of Accident, Claim, Suit or Loss .................................................... 9
        Legal Action Against Us .............................................................................................. 9
        Loss Payment - Physical Damage Coverages .............................................................. 9
        Transfer of Rights of Recovery Against Others to Us .................................................. 10
    General Conditions
        Bankruptcy ................................................................................................................ 10
        Concealment, Misrepresentation or Fraud ................................................................. 10
        Liberalization ............................................................................................................ 10
        No Benefit to Bailee - Physical Damage Coverages .................................................... 10
        Other Insurance ........................................................................................................ 10
        Premium Audit .......................................................................................................... 10
        Policy Period, Coverage Territory ............................................................................... 10
        Two or More Coverage Forms or Policies Issued by Us ............................................... 11

**SECTION V - DEFINITIONS** ................................................................................................ 11

**COMMON POLICY CONDITIONS**

    Cancellation
    Changes
    Examination of Your Books and Records
    Inspections and Surveys
    Premiums
    Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.
AAD505 03 06                                                  **Page  3 of 3**

# AUTOMOBILE SCHEDULE

## ITEM   THREE

Attached to and forming a part of Policy Number ███████████████ , effective  12-20-2018

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

### POLICY LIMITS
### State: IN

| | | | |
|---|---|---|---|
| Bodily Injury: | 1,000,000 CSL | Property Damage: | INCLUDED |
| UM/UIM: | 1,000,000 | UMPD | INCLUDED |
| UMPD DED: | NONE | | |
| | | (*UMPD APPLIES) | |

Veh.
No.    Vehicle Information

HIRED AND NON-OWNED                                              Class:        Territory
OTC-COMP DED: N/A                    Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM* | TOTAL |
|---|---|---|---|---|---|---|
| 128 | INCL | N/A | | | 8 | 136 |

SYMBOLS:

| | | | | |
|---|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils | |
| PD | -- Property Damage | COLL | -- Collision | |
| MP | -- Medical Payments | UM | -- Uninsured Motorists | |
| OTC | -- Other Than Collision (ACV Coverage applies unless Stated Amount Value is indicated) | UIM | -- Underinsured Motorists | |
| CAC | -- Combined Additional Coverage | PIP | -- Personal Injury Protection | |
| FT&S | -- Fire, Theft, and Supplemental | T&L | -- Towing and Labor Costs | |
| | | RR | -- Rental Reimbursement | |
| UMPD | -- Uninsured Motorists PD | | | |

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer **to SECTION V - DEFINITIONS**.

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**

**SYMBOL**       **DESCRIPTION**

**1 =** ANY "AUTO".

**2 =** OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

**3 =** OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins.

**4 =** OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins.

**5 =** OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged.

**6 =** OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

**7 =** SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE).

**8 =** HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

**9 =** NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

**B. Owned Autos You Acquire After the Policy Begins**

1. If Symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 101 03 06**                                    **Page 1 of 14**

an "auto" you previously owned that had that coverage; and

**b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** "Loss"; or

**e.** Destruction.

# SECTION II - LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who is an Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

quired because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the "insured" or which is in fact expected or intended by the "insured", even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" sustained in the "workplace";

**b.** An "employee" of the "insured" arising out of the performance of duties related to the conduct of the "insured's" business; or

**c.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** or **b.** above.

This Exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**AA 101 03 06**                                            **Page 3 of 14**

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract" other than a contract or agreement with a labor leasing firm. For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement of Property by Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollutant**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 101 03 06** — Page 4 of 14

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

However, this exception to Paragraph **a.** does not apply if the fuels, lubricants, fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed or released.

Paragraphs **b.** and **c.** of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**d.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(1)** If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

**(2)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Subparagraph **d.(1)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AA 101 03 06                                                                    **Page 5 of 14**

insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

## C. Limit of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## D. Mobile Equipment Subject to Motor Vehicle Insurance Laws

As respects **SECTION II - LIABILITY COVERAGE** any land vehicle, which would qualify as "mobile equipment", except that it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged, is considered a covered "auto" under **SECTION II - LIABILITY COVERAGE,** irrespective of the Auto Designation Symbols shown for **SECTION II - LIABILITY COVERAGE** in the Declarations.

# SECTION III - PHYSICAL DAMAGE COVERAGE

## A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage**

      From any cause except:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

   b. **Specified Causes of Loss Coverage**

      Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage**

      Caused by:

      (1) The covered "auto's" collision with another object; or

      (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs

incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

      We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"auto" is returned to use or we pay for its "loss".

**b. Loss of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority

in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown; or

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

Electronically Filed 01/09/2023 08:39 / / CV 23 978599 / Confirmation Nbr. 2742864 / CLABZ

AA 101 03 06                    Services Office, Inc., with its permission.                    Page 7 of 14

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal for Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Cov-

erage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**4. No Benefit to Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 101 03 06**                                                **Page 9 of 14**

**5. Other Insurance**

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

   (1) Excess while it is connected to a motor vehicle you do not own.

   (2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the Policy Period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico;

d. Canada; and

e. Anywhere in the world if:

   (1) A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

   (2) The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AA 101 03 06      Page 10 of 14

## SECTION V - DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semi-trailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured";

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto"; or

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 101 03 06**     **Page 11 of 14**

Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract":

   1. Means:

      a. A lease of premises;

      b. A sidetrack agreement;

      c. An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

      d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

      e. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

      f. That part of any other contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

   2. Does not include that part of any contract or agreement:

      a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; or

      b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

      c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   2. Vehicles maintained for use solely on or next to premises you own or rent;

   3. Vehicles that travel on crawler treads;

   4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      a. Power cranes, shovels, loaders, diggers or drills; or

      b. Road construction or resurfacing equipment such as graders, scrapers or rollers.

   5. Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      b. Cherry pickers and similar devices used to raise or lower workers.

   6. Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      a. Equipment designed primarily for:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and their by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**1.** The "insured" is regularly or otherwise engaged in activities which taint or degrade the environment; or

**2.** The "insured" uses, generates or produces the "pollutant".

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

**Q.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of the "accident".

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with

respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazard-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ous properties" of "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - TOWING AND LABOR

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 2. Towing** is deleted in its entirety and replaced with:

    2. **Towing**

        We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" is disabled. However, the labor must be performed at the place of disablement.

**AA 2009 01 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 4.** is deleted in its entirety and replaced with:

   4. We will not pay for "loss" to any of the following:

      a. Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

      b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

      c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

      d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

   Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

      a. Permanently installed in or upon the covered "auto";

      b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

      c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

      d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

2. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limits of Insurance, 1.** is deleted in its entirety and replaced with:

   1. The most we will pay for:

      a. "Loss" to any covered "auto" is the lesser of;

         (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

         (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind or quality.

      b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss", is up to $1,000, if, at the time of "loss", such electronic equipment is:

         (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

         (2) Removable from a permanently installed housing unit as described in Paragraph **b.1.** above; or

         (3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

3. **AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE ADDED LIMITS**

   The sub-limit in Paragraph **1.b.** above is in addition to the Limit of Insurance shown in the Schedule of the Audio, Visual and Data Equipment Coverage endorsement, if purchased.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA AMENDATORY
# EXCLUSION - LIABILITY ARISING FROM STATUTE
# OR REGULATION

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE PART**
**GARAGE COVERAGE PART**

### SCHEDULE

**Description of Statute:**

Clean Air Act (CAA): 42 U.S.C. §7401 *et seq.*; Clean Water Act (CWA): 33 U.S.C. §1251 *et seq.*; Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA or Superfund): 42 U.S.C. §9601 *et seq.*; Emergency Planning and Community Right to Know Act of 1986 (EPCRA): 42 U.S.C. §11004 *et seq.*; Federal Insecticide, Fungicide and Rodenticide Act (FIFRA): 7 U.S.C. §136 *et seq.*; Marine Protection, Research and Sanctuaries Act of 1972 (MPRAS): 33 U.S.C. §1401-1445; 16 U.S.C. §1431-1445; Oil Pollution Act of 1990 (OPA): 33 U.S.C. §2701 *et seq.*; Resource Conservation and Recovery Act (RCRA): 42 U.S.C. §6901 *et seq.*; Rivers and Harbors Act of 1899: 33 U.S.C. §407 *et seq.*; Safe Drinking Water Act (SDWA): 42 U.S.C. §300f *et seq.*; Surface Mining Control and Reclamation Act of 1977 (SMCRA): 30 U.S.C. §1234-1328; Toxic Substances Control Act of 1976 (TSCA): 15 U.S.C. § 2601-2695; Pollution Prevention Act (PPA): 42 U.S.C. §13101 *et seq.*; Indiana code, Title 13. Environmental (including but not limited the following sections): Enforcement and Legal Actions: I.C. §13-30 *et seq.*; Environmental Legal Action Statute (ELA): I.C. §13-30-9 et seq.; Environmental Management; I.C. §13-13 *et seq.*; Air Pollution: I.C. §13-17 *et seq.*; Water Pollution: I.C. §13-18 *et seq.*; Solid Waste Management: I.C. §13-20 et seq.; Electronic Waste: I.C. §13-20.5 *et seq.*; Hazardous Waste Management: I.C. §13-22 *et seq.*; Underground Storage Tank: I.C. §13-23 *et seq.*; Petroleum: I.C. §13-24 *et seq.*; Hazard Substances: I.C. §13-25 *et seq.*; and Industrial Pollution: I.C. §13-27 *et seq.*

The following is added to **SECTION II - LIABILITY COVERAGE, B. Exclusions:**

This insurance does not apply to liability arising out of one or more of the statutes shown in the Schedule, as amended, or any regulation authorized by or implementing the statutes.

**AA 327 IN 02 14**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## INDIANA UNDERINSURED MOTORIST COVERAGE

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as the Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Indiana, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below:

| Endorsement Effective: | Policy Number: |
|---|---|
| 12-20-2018 | ▇▇▇▇▇▇▇ |
| Named Insured: | |
| RAYMOND STREET PARTNERS LLC | |

### SCHEDULE

| "Bodily Injury" | $ SEE AA4183 | Each "Accident" |
|---|---|---|

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

### A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "underinsured motor vehicle". The damage must result from "bodily injury" sustained by the "insured" and caused by an "accident" with an "underinsured motor vehicle".

   The owner's or operator's liability for this damage must result from the ownership, maintenance or use of the "underinsured motor vehicle".

2. We will pay under this endorsement only if **a.** or **b.** below applies:

   **a.** The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   **b.** Tentative settlement has been made between an "insured" and the insurer of an "underinsured motor vehicle" which would exhaust the limits of liability under any applicable bond or policy, and we:

   (1) Have been given prompt written notice of such tentative settlement; and

   (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after the receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

### B. Who is an Insured

The following are "insureds":

1. If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

   **a.** Natural persons specially listed as a Named Insured on this endorsement.

   **b.** "Family members" of natural persons specifically listed as a Named Insured on this endorsement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 4078 IN 12 15**                                                                 **Page 1 of 5**

c. Any natural person, but only for injuries that occur while "occupying" a covered "auto" or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

d. Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a., b.** or **c.**

e. Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when the person is an "insured" for Liability under the Coverage Form.

2. If an entity other than a natural person is listed as a Named Insured on this endorsement, the following persons are "insureds":

a. Any natural person, but only for injuries that occur while "occupying" a covered "auto" or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

c. Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when the person is an "insured" for Liability under the Coverage Form.

3. Employees of the Named Insured, but only for injuries arising out of and incurred while in the course and scope of employment for the Named Insured shown in the endorsement.

4. Anyone for injuries incurred while "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

5. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to:

1. Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits, or similar laws.

3. The direct or indirect benefit of any insurer of property.

4. "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

5. "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without a reasonable belief that he or she is entitled to do so. Under no circumstances will a person whose license has been suspended, revoked or never issued be held to have a reasonable belief that he or she is entitled to operate a "motor vehicle".

6. Punitive or exemplary damages.

7. "Noneconomic loss" sustained by any "insured" if such "insured" is an uninsured motorist with a previous violation as defined in Indiana Code Section 27-7-5.1.

   However, Exclusion **C.7.** does not apply to an "insured" under 18 years of age.

## D. Limit of Insurance

1. Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages, including damages claimed by any person or organization for care, loss of services, or death due to and arising out of any one "accident" is the limit of **Underinsured Motorist Coverage** shown in the Schedule or the Declarations.

2. The limit of insurance provided in this endorsement shall be reduced by all sums available for payment to the "insured" for "bodily injury" under all liability bonds or polices covering persons or organizations legally liable for the "accident".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**AA 4078 IN 12 15**                                                          **Page 2 of 5**

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form or Medical Payments Coverage Form endorsement attached to this Coverage Form.

We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits, or similar laws, including medical payments made under any statute.

4. No "insured" shall recover duplicate payments for the same elements of "loss" or payments in excess of damages sustained.

E. **Changes in Conditions**

The **Conditions** for **Indiana Underinsured Motorist Coverage** are changed as follows:

1. **Other Insurance Condition** in the Business Auto and Garage Coverage Forms is changed as follows:

If there is other applicable insurance available under one or more policies or provisions of coverage, the following priorities of coverage apply:

| FIRST PRIORITY | The Underinsured Motorist Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
|---|---|
| SECOND PRIORITY | Any other Coverage Form or policy affording Underinsured Motorist Coverage to the "insured". |

a. The limit of insurance under the "motor vehicle" the "insured" was "occupying" under the Coverage Form or policy in the first priority shall first be exhausted.

b. The maximum recovery for damages under all Coverage Forms or policies may equal but shall not exceed the highest applicable limit of any one "motor vehicle" under any insurance providing coverage on either a first or second priority basis.

c. We will pay only our share of the "loss". Our share is the proportion that our limit of liability bears to the total of all limits applicable to the same level of priority.

2. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

a. You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought;

b. You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the accident and all insurers who may be obligated to provide coverage; and

c. A person seeking Underinsured Motorist Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle", and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the person(s) or organization(s) who may be legally responsible for the "accident", or the insurer, owner or operator of such "underinsured motor vehicle".

3. **Transfer of Rights of Recovery Against Others To Us** is changed by adding the following:

a. If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

b. Our rights do not apply under this provision if we:

(1) Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of the "underinsured motor vehicle"; and

(2) Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of such notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after notification:

(a) That payment will be separate from any amount the "insured" is entitled to recover under the provisions of this coverage; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 4078 IN 12 15**         **Page 3 of 5**

**(b)** We also have the right to recover the advance payment from the insured or the owner or operator of the "underinsured motor vehicle".

**c.** If we make a payment because the insurer of the "underinsured motor vehicle" is or becomes insolvent, the **Transfer of Rights of Recovery Against Others To Us** Condition does not apply to any rights of recovery against:

**(1)** The Indiana Guaranty Fund; or

**(2)** The insured of the insolvent insurer, except in amounts that exceed the limit of liability of the Coverage Form or policy that was issued by that insolvent insurer.

**4. Legal Action Against Us**

No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Underinsured Motorist Coverage of this coverage form unless the "insured" has satisfied all of the things that "insured" is required to do under this endorsement. Any claim or suit for Underinsured Motorist Coverage must be brought within two (2) years from the date of the accident.

**5.** The following Condition is added:

**ARBITRATION**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or operator of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured" then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration proce-

dure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

**(1)** Whether the "insured" is legally entitled to recover damages from a party responsible for the "accident"; and

**(2)** The amount of damages.

This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Indiana. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made in 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

**F. Additional Definitions**

As used on this endorsement:

**1.** "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured in this endorsement. Such relation may be by blood, marriage or adoption, and may include a ward or foster child.

**2.** "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

**3.** "Noneconomic loss" means costs for physical and emotional pain and suffering, physical impairment, emotional distress, mental anguish, loss of enjoyment, loss of companionship, services and consortium, and any other noneconomic damages.

**4.** "Occupying" means in, upon, getting in, on, out or off.

**5.** "Underinsured motor vehicle" means a land "motor vehicle" or "trailer" for which the sum of all liability bonds or policies at

the time of an "accident" provides at least the amounts required by the financial responsibility law of Indiana but their limits are either:

**a.** Less than the Limit of Insurance available for payment to the "insured" under this endorsement; or

**b.** Reduced by payments to others injured in the "accident" to an amount which is less than the Limit of Insurance under this endorsement.

However, "underinsured motor vehicle" does not include any "motor vehicle":

**a.** Owned or operated by a self insurer under any applicable motor vehicle law, except a self insurer who is or becomes insolvent and can not provide the amounts required by that motor vehicle law.

**b.** Owned by a governmental unit or agency.

**c.** Designed for use mainly off public roads while not on public roads.

**d.** Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

**e.** For which liability coverage is afforded under this Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 4078 IN 12 15**

# INDIANA - UNINSURED AND UNDERINSURED MOTORIST PROTECTION SELECTION/REJECTION FORM

Indiana law permits you to make certain decisions regarding Uninsured Motorist Coverage and Underinsured Motorist Coverage. This document briefly describes these coverages and the options available. You should read this document carefully and contact us or your agent if you have any questions regarding Uninsured Motorist Coverage or Underinsured Motorist Coverage and your options with respect to these coverages. This document includes general descriptions of coverage. However, no coverage is provided by this document. You should read your policy and review your Declarations Page(s) and/or Schedule(s) for complete information on the coverages you are provided.

In accordance with the Indiana law, automobile liability policies may make available Uninsured and Underinsured Motorist Coverage limits equal to the Bodily Injury Liability limits of the policy to which the coverage attaches and to Property Damage Liability equal to the financial responsibility limits for the state of Indiana. Uninsured Motorist Property Damage coverage is available only if you purchase Uninsured Motorist Bodily Injury coverage. You may, however, reject Bodily Injury Liability. A named insured has the right to reject Uninsured Motorist and Underinsured Motorist Coverage on behalf of all other named insureds, all other insureds, and all other persons entitled to coverage under the policy. A rejection of coverage applies to all subsequent policy renewals or replacements. If a named insured rejects Uninsured Motorist Coverage or Underinsured Motorist Coverage in the underlying policy, the rejection also applies to an umbrella or excess liability policy.

If you elect to purchase Uninsured Motorist Bodily Injury coverage, you also may choose to purchase Uninsured Motorist Property Damage coverage. You may also reject Uninsured Motorists Property Damage entirely. This is our offer to you of your Uninsured Motorist and Underinsured Motorist Coverage options.

Please indicate your choice by selecting one option in both Bodily Injury and Property Damage below.

## BODILY INJURY OPTIONS
### (Please select only one.)

_____ I hereby reject Uninsured Motorist Coverage and Underinsured Motorist Coverage.

_____ I hereby accept Uninsured Motorist Coverage for Bodily Injury at limits equal to my Bodily Injury Liability limits with Underinsured Motorists Coverage.

_____ I hereby accept Uninsured Motorist Coverage for Bodily Injury at limits equal to my Bodily Injury Liability limits without Underinsured Motorist Coverage.

## PROPERTY DAMAGE OPTIONS
### (Please select only one.)

_____ I hereby reject Uninsured Motorist Property Damage.

_____ I hereby accept Uninsured Motorist Property Damage at limits equal to my Property Damage Liability limit subject to a $300 deductible.**

_____ I hereby accept Uninsured Motorist Property Damage at limits equal to my Property Damage Liability not subject to a deductible.**

_____ I hereby accept Uninsured Motorist Property Damage at limits equal to the financial responsibility limit subject to a $300 deductible.**

_____ I hereby accept Uninsured Motorist Property Damage at limits equal to the financial responsibility limit not subject to a deductible.**

** This option is available only when Uninsured Motorist Bodily Injury Coverage is accepted.

I, the insured, understand that I and those who are to be protected under my policy would best be protected by my choosing to purchase Uninsured and Underinsured Motorist Coverage at limits equal to the Bodily Injury Liability limits provided in my policy. Nevertheless, I choose instead to purchase a more limited form of coverage, as specified above.

Attached to and forming a part of Policy Number ██████████████ and any subsequent policy renewals or replacements thereof.

Effective Date:  __12-20-2018__

Named Insured

Signature of Authorized Representative

Title

Printed Name of Authorized Representative

Title

Agent's Signature

```
GREGORY & APPEL, INC. 13-295
INDIANAPOLIS, IN
```

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** of the **BUSINESS AUTO COVERAGE FORM** and **SECTION V - GARAGE CONDITIONS, B. General Conditions** of the **GARAGE COVERAGE FORM** are amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**AA 4263 04 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA UNINSURED MOTORIST COVERAGE

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Indiana, this endorsement modifies insurance provided under the following:

   **BUSINESS AUTO COVERAGE FORM**
   **GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below.

| Endorsement Effective: 12-20-2018 | Policy Number: ████████████ |
|---|---|
| Named Insured: RAYMOND STREET PARTNERS LLC | |

### Schedule

| Bodily Injury | $ | Each Accident |
|---|---|---|
| Bodily Injury and Property Damage | $ SEE AA4183 | Each Accident |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Section **C** - EXCLUSIONS applies in its entirety unless an "X" is entered below:

☒ If an "X" is entered in this box, Exclusion **8.** does not apply.

## A. Coverage

1.  We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "uninsured motor vehicle". The damages must result from:

    a.  "Bodily injury" sustained by the "insured" and caused by an "accident" with an "uninsured motor vehicle"; or

    b.  "Property damage" caused by an "accident" with an "uninsured motor vehicle" if the Schedule or the Declarations indicates that both "bodily injury" and "property damage" Uninsured Motorist Coverage apply.

    The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

## B. Who is an Insured

The following are "insureds":

1.  If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

    a.  Natural persons specifically listed as a Named Insured on this endorsement.

    b.  "Family members" of natural persons specifically listed as a Named Insured on this endorsement.

    c.  Any natural person, but only for injuries that occur while "occupying" a covered "auto" or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 484 IN 12 15**                                                                                           **Page 1 of 5**

**d.** Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a., b.** or **c.**

**e.** Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when the person is an "insured" for Liability under the Coverage Form.

**2.** If an entity other than a natural person is listed as a Named Insured on this endorsement, the following persons are "insureds":

**a.** Any natural person, but only for injuries that occur while "occupying" a covered "auto" or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**b.** Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

**c.** Anyone else "occupying" an "auto" you do not own who is an "insured" for Liability under the Coverage Form, but only at times when the person is an "insured for Liability under the Coverage Form.

**3.** Employees of the Named Insured, but only for injuries arising out of and incurred while in the course and scope of employment for the Named Insured shown in the endorsement.

**4.** Anyone for injuries incurred while "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**5.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**6.** The Named Insured for "property damage" only.

## C. Exclusions

This insurance does not apply to:

**1.** Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits, or similar laws.

**3.** The direct or indirect benefit of any insurer of property.

**4.** "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

**5.** "Property damage" to an "auto" or to property contained in an "auto" owned by you which is not a covered "auto".

**6.** "Bodily injury" suffered by any "insured" while operating or "occupying" a "motor vehicle" without a reasonable belief they are entitled to do so. Under no circumstances will an "insured" whose license has been suspended, revoked or never issued be held to have a reasonable belief they are entitled to operate a "motor vehicle".

**7.** "Property damage" for which the "insured" has been or is entitled to be compensated by other property or physical damage insurance.

**8.** The first $300 of the amount of "property damage" to the property of each "insured" as the result of any one "accident". This exclusion does not apply if your covered "auto" is legally parked and unoccupied when involved in an "accident" with an "uninsured motor vehicle".

**9.** "Property damage" caused by a hit-and-run vehicle.

**10.** Punitive or exemplary damages.

**11.** "Noneconomic loss" sustained by any "insured" if such "insured" is an uninsured motorist with a previous violation as defined in Indiana code Section 27-7-5.1.

However, Exclusion **C.11.** does not apply to an "insured" under 18 years of age.

## D. Limit of Insurance

**1.** Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages, including damages claimed by any person or organization for care, loss of services, or death due to and arising out of any one "accident" is the limit of **Uninsured Mo-**

Electronically Filed 01/09/2023 08:39 / ~~JDV-23 973509 / Confirmation Nbr. 2742954 /~~ CLJSZ

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 484 IN 12 15**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Page 2 of 5**

torist Coverage shown in the Schedule or the Declarations.

2. The limit of insurance provided in this endorsement shall be reduced by all sums available for payment to the "insured" for "bodily injury" under all liability bonds or policies covering person or organizations legally liable for the "accident".

3. Any amount payable for damages under this coverage shall be reduced by all sums paid or payable under any workers' compensation, personal injury protection benefits, disability benefits, pension statutes, or similar laws.

4. No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement or any Liability Coverage Form.

   We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits, or similar laws, including medical payments made under any statute.

5. We will not pay for a "loss" which is paid or payable under Physical Damage Coverage.

6. No "insured" shall recover duplicate payments for the same elements of "loss" or payments in excess of damages sustained.

E. Changes in Conditions

The **Conditions** for **Indiana Uninsured Motorist Coverage** are changed as follows:

1. **Other Insurance Condition** in the Business Auto and Garage Coverage Forms changed as follows:

   If there is other applicable insurance available under one or more policies or provisions of coverage, the following priorities of coverage apply:

| FIRST PRIORITY | The Uninsured Motorist Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
|---|---|
| SECOND PRIORITY | Any other Coverage Form or policy affording Uninsured Motorist Coverage to the "insured". |

   a. The Limit of Insurance for the "motor vehicle" the "insured" was "occupying" under the Coverage Form or policy in the first priority shall first be exhausted.

b. The maximum recovery for damages under all Coverage Forms or policies may equal but shall not exceed the highest applicable limit for any one "motor vehicle" under any insurance providing coverage on either a first or second priority basis.

c. We will pay only our share of the "loss". Our share is the proportion that our limit of insurance bears to the total of all limits applicable to the same level of priority.

2. **Transfer of Rights of Recovery Against Others to Us** is changed by adding the following:

   a. If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

   b. If we make a payment because the insurer of the "uninsured motor vehicle" is or becomes insolvent, the **Transfer of Rights of Recovery Against Others to Us** Condition does not apply to any rights of recovery against:

      (1) The Indiana Guaranty Fund; or

      (2) The "insured" of the insolvent insurer, except in amounts that exceed the limit of liability of the Coverage Form or policy that was issued by that insolvent insurer.

3. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

   a. You or any other involved "insured" must promptly notify the police if a hit-and-run driver is involved;

   b. You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought; and

   c. You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of any claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the accident and all insurers who may be obligated to provide coverage.

4. **Legal Action Against Us**

   No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Uninsured Motorist Coverage of this Coverage Form unless the "insured" has satisfied all of the things that

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**AA 484 IN 12 15**                                      **Page 3 of 5**

"insured" is required to do under this endorsement. Any claim or suit for Uninsured Motorist Coverage must be brought within two (2) years from the date of the "accident".

**5.** The following Condition is added:

**ARBITRATION**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or operator of an "uninsured motor vehicle" or do not agree as to the amount of damages that is recoverable by that "insured" then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

**(1)** Whether the "insured" is legally entitled to recover damages; and

**(2)** The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Indiana. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

**F. Additional Definitions**

As used on this endorsement:

**1.** "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured in this endorsement. Such relation may be by blood, marriage or adoption, and may include a ward or foster child.

**2.** "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails, or any similar vehicle.

**3.** "Noneconomic loss" means costs for physical and emotional pain and suffering, physical impairment, emotional distress, mental anguish, loss of enjoyment, loss of companionship, services and consortium, and any other noneconomic damages.

**4.** "Occupying" means in, upon, getting in, on, out or off.

**5.** "Property damage" means damage to a covered "auto" property owned by the Named Insured, if the Named Insured is an individual, a "family member" while contained in a covered "auto". However, "property damage" does not include loss of use of damaged or destroyed property. This definition replaces the definition in the Policy.

**6.** "Uninsured motor vehicle" means a land "motor vehicle" or "trailer":

**a.** For which no liability bond or policy applies at the time of an "accident" provides at least the amounts required by the financial responsibility law of Indiana;

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

**c.** Which is a hit-and-run "motor vehicle" and neither the operator nor owner can be identified. A hit and run vehicle is one that causes "bodily injury" to an "insured" by hitting the "insured", a covered "auto" or a "motor vehicle" an "insured" is "occupying".

We will only accept convincing evidence which may include the testimony, under oath, of a person making claim under this or similar coverage.

However, "uninsured motor vehicle" does not include any "motor vehicle":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**AA 484 IN 12 15**

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

**b.** Owned by a governmental unit or agency.

**c.** Designed for use mainly off public roads while not on public roads.

**d.** Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

**e.** For which liability coverage is afforded under this Coverage Form.

Electronically Filed 01/09/2023 08:39 / / CV 23 0735090 / Confirmation Nbr. 2742964 / CLJSZ

**AA 484 IN 12 15**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 5 of 5**

COMMERCIAL AUTO
CA 01 19 07 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES

For a covered "auto" licensed in, or "garage operations" conducted in, Indiana, this endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> GARAGE COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM
> TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement or to any amendment to or replacement thereof, the provisions of the coverage form apply unless modified by the endorsement.

**Changes In Conditions**

**A.** Except as provided in Paragraph **B.** of this endorsement, **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms is changed by adding the following and supersedes any provision to the contrary:

If there is other applicable insurance available under one or more policies or provisions of coverage, any insurance we provide for any covered "auto" owned by an "insured" is primary and shall first be exhausted.

**B.** **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms is changed by adding the following:

**1.** When two coverage forms providing liability coverage apply to an "auto" and:

**a.** One provides coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing "autos"; and

**b.** The other provides coverage to a person not engaged in that business; and

**c.** At the time of an "accident" a person described in **1.b.** is operating an "auto" owned by the business described in **1.a.,** then that person's liability coverage is primary and the coverage form issued to a business described in **1.a.** is excess over any coverage available to that person.

**2.** When two coverage forms providing liability coverage apply to an "auto" and:

**a.** One provides coverage to a named insured engaged in the business of repairing, servicing, parking or storing "autos"; and

**b.** The other provides coverage to a person not engaged in that business; and

**c.** At the time of an "accident" an "insured" under the coverage form described in **2.a.** is operating an "auto" owned by a person described in **2.b.,** then the liability coverage form issued to the business described in **2.a.** is primary and the coverage form issued to a person described in **2.b.** is excess over any coverage available to the business.

CA 01 19 07 09               © Insurance Services Office, Inc., 2009               Page 1 of 1  □

# THE
# CINCINNATI INSURANCE COMPANIES

☐ THE CINCINNATI INSURANCE COMPANY   ☒ THE CINCINNATI INDEMNITY COMPANY
☐ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**   RAYMOND STREET PARTNERS LLC

**Policy Number:**   ███████████ / ███████████

**Policy Period:**   12-20-2017 to 12-20-2020

**Effective Date of Change:**   12-20-2017

**Endorsement Number:**   2

**Agency Name:**   GREGORY & APPEL, INC. 13-295
                   INDIANAPOLIS, IN

## Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies.  Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $**   51
This premium   is for the time period of   12-20-2017   to   12-20-2018. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
GREGORY & APPEL, INC.
1402 N CAPITOL AVE STE 400
INDIANAPOLIS, IN 46202-6148

317-634-7491

## This is not a bill. No payment is necessary at this time.

IA 4319 08 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage Policy Number ████████ | All Other Policy Number ████████ | Effective Date of Endorsement  12-20-2017 |

Issued to  RAYMOND STREET PARTNERS LLC
Agent GREGORY & APPEL, INC. 13-295
      INDIANAPOLIS, IN                         Endorsement #  2

---

## PREMIUM INFORMATION

Additional Premium Due at Endorsement Effective Date REFER TO IA4319 _____

Subsequent Quarterly Installments Increased by        $ _____

Revised Quarterly Installment Payment(s)        $ _____

---

**It is agreed that the policy is amended as indicated by**   ☒

☐ **Policy Installment Premium Amended to:**
    ☐ Annual     ☐ Semi-Annual     ☐ Quarterly
☐ **Named Insured**


☐ **Mailing Address**


☒ **Form(s) Added**
    FA475 04/04       MULTIPLE DEDUCTIBLE FORM
☐ **Form(s) Deleted**

---

**All Other Reason for Change**

AMENDING IA904 PER REVISED ATTACHED

AMENDING FMD502 PER REVISED ATTACHED

---

**Auto / Garage Reason for Change**




---

05-09-2018 17:12

**IA 4329 12 09**                                            **Page  1 of  1**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 3617-3635 E RAYMOND ST INDIANAPOLIS, IN 46203 | | | |
| 2 | 3655 E RAYMOND ST INDIANAPOLIS, IN 46203-4762 | | | |
| 3 | 2205 HOBART ROAD INDIANAPOLIS, IN 46203 | | | |

**IA 904 04 04**

# THE CINCINNATI INDEMNITY COMPANY

### A Stock Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: ██████████

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.**  **(address)**
PER STATEMENT OF VALUES ON FILE
REFER TO IA904

|  |  |  |  |  | OPTIONAL COVERAGES Applicable only when an entry is made |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | COVERAGE PROVIDED | | | | | | | | Business Income Indemnity | | |
| Item | Coverage | Limits | Coin-surance | Covered Cause Of Loss | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Incl. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
| | BLANKET BUILDING | 5,329,480 | 100% | SPECIAL | 4% | X | | X | | | |
| | BLANKET BUSINESS INCOME W/EXTRA EXPENSE (c) | 185,000 | 100% | SPECIAL | | | | X | | | |
| 1-2 | CONCRETE CONSTRUCTION EQUIPMENT IN THE OPEN - BARRIERS | 5,000 | 80% | SPECIAL | | X | | | | | |
| 1-3 | FENCES AND ARBORS | 11,000 | 80% | SPECIAL | | X | | | | | |

DEDUCTIBLE: $500.00 unless otherwise stated $   SEE FA475

MORTGAGE HOLDER

| Item | Name and Address |
|---|---|

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**

| | | |
|---|---|---|
| CP1515 | 06/95 | BUSINESS INCOME REPORT/WORK SHEET |
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| FA4052 | 04/06 | CINCIPLUS™ COMMERCIAL PROPERTY EXPANDED COVERAGE (XC™) ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA475 | 04/04 | MULTIPLE DEDUCTIBLE FORM |
| FA499IN | 04/04 | INDIANA CHANGES - RIGHTS OF RECOVERY |
| FA237 | 05/16 | CINCIPLUS® COMMERCIAL PROPERTY XC® (EXPANDED COVERAGE) ENDORSEMENT |
| FA213 | 05/16 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MULTIPLE DEDUCTIBLE FORM

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

## SCHEDULE

| Loc. Number | Bldg. Number | Earthquake Deductible* | Flood Deductible** | Deductible (Except Earthquake or Flood) |
|---|---|---|---|---|
| 1 | 1 | | | 10,000 BUILDING |
| 1 | 2 | | | 1,000 PIO |
| 1 | 3 | | | 1,000 PIO |
| 2 | 1 | | | 10,000 BUILDING |

\*   Per the **EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT** or the **EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT - (SUB-LIMIT FORM)**

\*\*  Per the **FLOOD COVERAGE ENDORSEMENT**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION C. DEDUCTIBLE** is amended to include the following:

**Multiple Deductibles**

**a.** In the event that "loss" occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule in the column titled "Deductible - Except Earthquake or Flood" or in the Declarations, will apply. However, if less than 50% of the aggregate amount of "loss" from that occurrence occurs at the building with the highest deductible, the next highest deductible among the buildings in the Schedule or Declarations that has suffered "loss" should be applied.

**b.** Paragraph **a.** of this endorsement does not apply to any:

**(1)** Earthquake deductible applicable to the **EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT** or the **EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT - (SUB-LIMIT FORM),** or

**(2)** Flood deductible applicable to the **FLOOD COVERAGE ENDORSEMENT.**

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.

**FA 475 04 04**

# THE
# CINCINNATI INSURANCE COMPANIES

☐ THE CINCINNATI INSURANCE COMPANY   ☒ THE CINCINNATI INDEMNITY COMPANY
☐ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**   RAYMOND STREET PARTNERS LLC

**Policy Number:**   ▬▬▬▬▬▬▬ / ▬▬▬▬▬▬▬

**Policy Period:**   12-20-2017 to 12-20-2020

**Effective Date of Change:**   12-20-2017

**Endorsement Number:**   1

**Agency Name:**   GREGORY & APPEL, INC. 13-295
INDIANAPOLIS, IN

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies.   Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $**   NONE
This premium   is for the time period of   12-20-2017   to   12-20-2018.  You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
GREGORY & APPEL, INC.
1402 N CAPITOL AVE STE 400
INDIANAPOLIS, IN 46202-2375

317-634-7491

### This is not a bill. No payment is necessary at this time.

**IA 4319 08 07**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| Auto / Garage Policy Number | ██████████ | All Other Policy Number | ██████████ | Effective Date of Endorsement | 12-20-2017 |
|---|---|---|---|---|---|

Issued to   RAYMOND STREET PARTNERS LLC
Agent GREGORY & APPEL, INC. 13-295
       INDIANAPOLIS, IN                                         Endorsement #  1

---

## PREMIUM INFORMATION

Premium Due at Endorsement Effective Date <u>REFER TO IA4319</u>

Subsequent Quarterly Installments Increased by          $ _____

Revised Quarterly Installment Payment(s)                $ _____

**It is agreed that the policy is amended as indicated by   ☒**

☐ **Policy Installment Premium Amended to:**
   ☐ Annual      ☐ Semi-Annual       ☐ Quarterly
☐ **Named Insured**


☐ **Mailing Address**



☐ **Form(s) Added**


☒ **Form(s) Deleted**
   CG2144 07/98      LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR
                     PROJECT

**All Other Reason for Change**

DELETING CG2144 LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR
PROJECT

**Auto / Garage Reason for Change**


---

03-12-2018 10:48

IA 4329 12 09                                                    Page  1 of  1

Exhibit

B

## TOLLING AGREEMENT

This Tolling Agreement ("Agreement") is entered into and made by and between Raymond Street Partners ("Raymond") and The Cincinnati Insurance Company ("Cincinnati"). Cincinnati and Raymond are collectively the "Parties".

### RECITALS

WHEREAS, Raymond submitted a claim to Cincinnati for hail damage to a building located at 3603 E Raymond Street in Indianapolis, IN 46203 with a date of loss of July 11, 2020 "Hail Loss." Cincinnati investigated the Hail Loss under claim No. 3889194.

WHEREAS, Cincinnati issued commercial property coverage to Raymond under policy number ENP 0111968 with effective dates of December 20, 2017 to December 20, 2020 ("Policy").

WHEREAS, pursuant to the Policy, Raymond is required to initiate any litigation against Cincinnati related to the Hail Loss on or before July 11, 2022.

WHEREAS, the Parties desire to toll the running of the contractual limitation of the Policy and/or any applicable statute of limitations on any and all causes of action against each other related to the Hail Loss.

NOW THEREFORE, in consideration of the mutual covenants set forth herein, which the Parties deem to be good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, and fully intending to be legally bound, the Parties covenant and agree as follows:

1.  **Tolling Period.** The term of this Agreement (the "Tolling Period") shall be from July 11, 2022 through and including January 11, 2023 or the termination of this Agreement by any Party in accordance with the terms and conditions of this Agreement. If any Party terminates the

Agreement in accordance with the procedure set forth in Paragraph Three below, the Tolling Period shall be from July 11, 2022 until thirty (30) calendar days after delivery of the notice of termination, but in no event beyond January 11, 2023.

      2.    **Claims and Defenses.** The Parties covenant and agree that the Tolling Period shall not be included in calculating any statute of limitations, statute of repose or other time-related defense, whether statutory, contractual or otherwise and whether at law, in equity, or otherwise (including, but not limited to, the doctrines of waiver, laches, acquiescence or estoppel) that might be applicable to any claims of any type in law or equity that Raymond or Cincinnati may assert against each other based on, arising out of, or relating to, directly or indirectly, the Policy and the Hail Loss (the "Tolled Claims"). Cincinnati further agrees not to assert that the time elapsed during the Tolling Period should be considered for the purpose of applying any such statute of limitation, statute of repose, or other time-related defense that might be applicable to any of the Tolled Claims.

Raymond shall not assert any claims of any kind whatsoever against Cincinnati which is based upon the passage of time during the Tolling Period, including but not limited to claims for breach of the covenant of good faith and fair dealing.

      3.    **Termination and Notice of Termination.** Any Party to this Agreement may terminate this Agreement by providing written notice to all other Parties ("Notice of Termination"). In the event such notice is given, this Agreement shall terminate thirty (30) calendar days after delivery by overnight delivery service and by email of such Notice of Termination. Such date thirty (30) calendar days after Notice of Termination is given shall be referred to as the "Termination Date." Upon the Termination Date, the Parties shall be restored to their respective positions with respect to any statute of limitations, statute of repose or other time-related defense, whether statutory, contractual or otherwise and whether at law, in equity, or

Electronically Filed 01/09/2023 08:39 / / CV 23 973509 / Confirmation Nbr. 2742954 / CLJSZ

otherwise (including, but not limited to, the doctrines of waiver, laches, acquiescence or estoppel), excluding the Tolling Period, and the periods for time-related defenses will once again begin to run on the Termination Date.

The Notice of Termination shall be provided to:

**RAYMOND:**

> Compass Adjusting Inc.
> 180 N. Main St.
> Martinsville, IN 46151
> 317-525-4127
> Matt@Compassadjusting.net

**CINCINNATI:**

> Mike Myers
> Regional Property Claims Manager – Western U.S.
> 6200 S. Gilmore Rd.
> Fairfield, OH 45014
> 513.870.2576
> mike_myers@cinfin.com

4.      **Right to Pursue Claims.** Nothing herein shall be construed to prohibit any party from taking legal action against any other party to this Tolling Agreement, at any time.

5.      **Agreement Authorized and Binding.** Each person executing this Agreement represents that he or she has the full power, capacity, and authority to execute this Agreement on behalf of the Party or Parties he or she purports to represent, and that they intend the Agreement to be a valid and binding obligation, enforceable in accordance with its terms. The provisions of this Agreement will be binding on and shall inure to the benefit of the successors and assigns of the Parties. This Agreement is not intended to benefit, and shall not be construed to benefit, any person or entity not a Party to this Agreement.

6.      **Joint Preparation.** In interpreting this Agreement, the Parties expressly agree that the Agreement was prepared jointly by the Parties, and that no ambiguity shall be resolved against

any Party on the basis that it was responsible, or primarily responsible, for having drafted the Agreement.

7.    **Governing Law.** This Agreement shall be construed and interpreted in accordance with the laws of the State of Indiana, without giving effect to its conflicts of laws doctrine.

8.    **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but also which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the date first above written.

**RAYMOND STREET PARTNERS:**

By: _____

Sam Sutphin, Authorized Representative

**THE CINCINNATI CINCINNATTI INSURANCE COMPANY:**

By: _____

Dana McKenzie
Field Claim Superintendent

4 of 4